Columbia Pictures Industries Inc v. Bunnell

Doc. 177



FILED
CLERK, U.S. DISTRICT COURT

MAY 29 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

SCANNED

1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, et al.,<br><br>Plaintiff,<br><br>v.<br><br>JUSTIN BUNNELL, et al.,<br><br>Defendants. | ) Case No. CV 06-1093 FMC(JCx)<br>)<br>) ORDER (1) GRANTING IN PART<br>) AND DENYING IN PART<br>) PLAINTIFFS' MOTION TO<br>) REQUIRE DEFENDANTS TO<br>) PRESERVE AND PRODUCE<br>) SERVER LOG DATA AND FOR<br>) EVIDENTIARY SANCTIONS; AND<br>) (2) DENYING DEFENDANTS'<br>) REQUEST FOR ATTORNEYS' FEES<br>) AND COSTS<br>)<br>) [UNDER SEAL] |

## I.    SUMMARY

Pending before the court are (1) plaintiffs' motion to require defendants to preserve and produce certain electronic data, and for evidentiary sanctions, based upon defendants' failure to date to preserve and produce such data; and (2) defendants' request for attorneys' fees and costs.

Based upon the court's consideration of the extensive arguments and evidence presented, the court's assessment of the credibility of the declarants and witnesses who testified at the evidentiary hearing in this matter, and the applicable law, the court finds: (1) the data in issue is extremely relevant and within the



DOCKETED ON CM

JUN 20 2007

BY



Dockets.Justia.co

1  scope of information sought by plaintiffs' discovery requests; (2) the data in issue

2  which was formerly temporarily stored in defendants' website's random access

3  memory ("RAM") constituted "electronically stored information" and was within

4  the possession, custody and control of defendants; (3) the data in issue which is

5  currently routed to a third party entity under contract to defendants and received in

6  said entity's RAM, constitutes "electronically stored information," and is within

7  defendants' possession, custody or control by virtue of defendants' ability to

8  manipulate at will how the data in issue is routed;[1] (4) defendants have failed to

9  demonstrate that the preservation and production of such data is unduly

10  burdensome, or that the other reasons they articulate justify the ongoing failure to

11  preserve and produce such data; (5) defendants must preserve the pertinent data

12  within their possession, custody or control and produce any such data in a manner

13  which masks the Internet Protocol addresses ("IP addresses") of the computers

14  used by those accessing defendants' website; (6) sanctions against defendants for

15  spoliation of evidence are not appropriate in light of the lack of precedent for

16  requiring the retention of data in RAM, the lack of a preservation request

17  specifically directed to data present only in RAM, and the fact that defendants'

18  failure to retain such data did not violate any preservation order; and (7) awarding

19  attorneys' fees and costs are not appropriate.

20  ## II.    PROCEDURAL HISTORY

21      On February 23, 2006, plaintiffs filed a complaint against defendants for

22  copyright infringement.  Plaintiffs allege, inter alia, that defendants knowingly

23

24  _____

25  [1]It may also be the case that the data in issue is within defendants'
    possession, custody and control by virtue of defendants' contractual relationship

26  with the third party entity.  In that circumstance, defendants would, at a minimum,
    have an obligation to make reasonable inquiry of the third party entity for the data

27  in issue.  See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D.

28  Cal. 2006).

1  enable, encourage, induce, and profit from massive online piracy of plaintiffs'
2  copyrighted works through the operation of their internet website. The complaint
3  is predicated on theories of contributory infringement, secondary infringement,
4  and inducement. Defendants filed an Answer on May 24, 2006.

5       On March 12, 2007, plaintiffs filed a "Notice of Motion and Local Rule
6  37-1 Joint Stipulation Regarding Plaintiffs' Motion for an Order (1) Requiring
7  Defendants to Preserve and Produce Certain Server Log Data, and (2) for
8  Evidentiary Sanctions" ("Plaintiffs' Motion"), a declaration of plaintiffs' counsel
9  Duane C. Pozza ("Pozza I Decl."), a declaration of plaintiffs' expert Ellis
10 Horowitz ("Horowitz I Decl."), a declaration of defendants' counsel Ira P.
11 Rothken, and a declaration of defendant Wes Parker ("Parker I Decl."), as well as
12 accompanying exhibits to each declaration. Plaintiffs' Motion requests that the
13 court issue an order requiring defendants to preserve and produce certain data
14 responsive to plaintiffs' First Request for Production of Documents, Request Nos.
15 10 and 12.[2] Specifically, plaintiffs seek the preservation and production of the
16 following data: (a) the IP addresses of users of defendants' website who request
17 "dot-torrent" files; (b) the requests for "dot-torrent files"; and (c) the dates and
18 ///
19 ///
20

21       [2]Request No. 10 seeks "all documents that identify the dot-torrent files that
22 have been made available by, searched for, or downloaded by users of TorrentSpy,
23 including documents that identify the users who have made available, searched
24 for, or downloaded such dot-torrent files." Request No. 12 seeks "all documents,
   including server logs, databases of a similar nature, or reports derived from such
25 logs or databases that [defendants] maintain, have ever maintained, or have
26 available that record the activities of TorrentSpy or its users, including documents
27 concerning . . . Electronic communications of any type between TorrentSpy and
   [users]; . . . Logs of user activities; and . . . Logs or records of dot-torrent files
28 made available, uploaded, searched for, or downloaded on TorrentSpy."

1  times of such requests (collectively "Server Log Data").[3]  Plaintiffs' Motion also

2  seeks evidentiary sanctions against defendants for their alleged spoliation of the

3  Server Log Data.  Defendants request that the court require plaintiffs to pay

4  reasonable expenses incurred in opposing Plaintiffs' Motion, including attorneys'

5  fees, pursuant to F.R. Civ. P. 37(a)(4)(B).

6      On March 20, 2007, plaintiffs filed a supplemental memorandum in support

7  of Plaintiffs' Motion ("Plaintiffs' Supp. Memo I"), a supplemental declaration of

8  Duane C. Pozza, and accompanying exhibits.  On the same date, defendants filed a

9  supplemental memorandum in opposition to Plaintiffs' Motion ("Defendants'

10 Supp. Memo I") and a supplemental declaration of Wes Parker ("Parker II Decl.").

11     On March 21, 2007, the court directed the parties to file additional items.

12 On March 27, 2007, plaintiffs filed a supplemental brief ("Plaintiffs' Supp. Memo

13 II") and another declaration of Ellis Horowitz ("Horowitz II Decl."), and

14 defendants filed a supplemental brief ("Defendants' Supp. Memo II"), a joint

15 declaration of Justin Bunnell and Wes Parker ("Jt. Bunnell/Parker Decl."), and

16 accompanying exhibits.  On March 30, 2007, in response to the court's request

17 that the parties submit statements as to whether certain declarants should attend

18 and be available to testify at the hearing on this matter, the parties each submitted

19 brief additional filings.

20     On April 3, 2007, the court held an evidentiary hearing at which declarants

21 Ellis Horowitz, Wesley Parker, and Justin Bunnell testified, and the court heard

---

24  [3]As the Server Log Data is temporarily stored in RAM and constitutes a
document that identifies dot-torrent files that have, at a minimum, been searched
25  for by users of TorrentSpy, it is encompassed by Document Request No. 10.
Similarly, as the Server Log Data constitutes an available document concerning
26  electronic communications between TorrentSpy and users and a record of dot-
torrent files made available or searched for on TorrentSpy, it is also encompassed
27  by Document Request No. 12.
28

4

1    the arguments of counsel.[4]  The court took Plaintiffs' Motion under submission at

2    the conclusion of the hearing.[5]

3    **III.   FACTS[6]**

4           Defendants operate a website known as "TorrentSpy" which offers dot-

5    torrent files for download by users. (Horowitz I Decl. ¶ 5).  The dot-torrent files

6    offered on defendants' website do not contain actual copies of a full-length

7    content item. (Horowitz I Decl. ¶ 6).  Rather, they contain data used by a

8    "BitTorrent client" on a user's computer to access the content in issue.

9    (Horowitz I Decl. ¶ 6).

10          As certain aspects of the technical operation of the website are relevant to

11    the resolution of this matter, the court first sets forth its understanding and

12    findings, based upon the evidence presented, of the operation of the relevant

13    aspects of:  (i) websites in general; (ii) defendants' website prior to the filing of

14    Plaintiffs' Motion; and (iii) defendants' website proximate or subsequent to the

15    filing of Plaintiffs' Motion, as the record reflects that the method of operation

16    changed during the pendency of this action.

17

18    _____

19          [4]"RT" refers to the Reporter's Transcript of the April 3, 2007 hearing.

20          [5]Subsequent to the hearing, plaintiffs and defendants submitted proposed

21    findings regarding Plaintiffs' Motion for the court's consideration.

22          [6]The court finds plaintiffs' expert Ellis Horowitz to be the most credible of

23    the three technical declarants/witnesses (i.e., Horowitz, Parker, and Bunnell).  To

24    the extent the testimony and statements of Parker and Bunnell conflict with those
      of Horowitz, the court accepts the testimony and statements of Horowitz.  The

25    court finds that defendant Parker's testimony is credible in part and gives it some

26    weight.  However, as discussed below, the court finds that portions of Parker's

27    declarations and testimony are unsupported and not credible.  The court finds that
      defendant Bunnell's testimony is largely unsupported and lacks credibility.

28

## A.    Operation of Websites in General

In general, when a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or the file. (Horowitz I Decl. ¶ 11; Horowitz II Decl. ¶ 3). The request includes the IP address of the user's computer, and the name of the requested page or file, among other things.[7] (Horowitz I Decl. ¶ 11; Horowitz II Decl. ¶ 3). Such information is copied into and stored in RAM. (Horowitz II Decl. ¶ 4). RAM is a form of temporary storage that every computer uses to process data. (Horowitz II Decl. ¶ 4). Every user request for a page or file is stored by the web server program in RAM in this fashion. (Horowitz II Decl. ¶ 4). The web server interprets and processes that data, while it is stored in RAM, in order to respond to user requests. (Horowitz II Decl. ¶ 4). The web server then satisfies the request by sending the requested file to the user. (Horowitz II Decl. ¶ 3). If the website's logging function is enabled, the web server copies the request into a log file, as well as the fact that the requested file was delivered. (Horowitz I Decl. ¶ 12; Horowitz II Decl. ¶ 3). If the logging function is not enabled, the request is not retained. (Horowitz I Decl. ¶ 12; Horowitz II Decl. ¶ 3). While logging such information can be useful to a website operator in many respects, and may be a usual practice

///

///

_____

[7]An IP address is a standard way of identifying a computer that is connected to the Internet. United States v. Heckenkamp, 482 F.3d 1142, 1144 (9th Cir. 2007). With an IP address, a party could identify the Internet Service Provider ("ISP") providing internet service to the user of the computer corresponding to such IP address. See In Re Charter Communications, Inc., 393 F.3d 771, 774 (8th Cir. 2005). Only the ISP, however, could link the particular IP address to an individual subscriber. Id. As in the case of a subscriber to a particular telephone number, the identity of the subscriber to an IP address is not necessarily indicative of the person using the service at a given time.

1  of many website operators, such logging is not essential to the functionality of a

2  website.[8]   (Horowitz I Decl. ¶ 13; RT 41-42).

3  **B.    Operation of Defendants' Website Prior to the Filing of Plaintiffs'**

4  **Motion**

5  Defendants' web server is located in the Netherlands.  (Jt. Bunnell/Parker

6  Decl. ¶ 6).  A factor in the decision to use a server in the Netherlands was to attract

7  business from those individuals who did not wish their identities to be known, as

8  defendants believe the Netherlands to have stricter privacy laws governing such

9  information.  (RT 122-23).  Defendants use the web server Microsoft Internet

10  Information Services (IIS) 6.0 to operate their website.  (Horowitz I Decl. ¶ 9

11  Horowitz II Decl. ¶ 2; Jt. Bunnell/Parker Decl. ¶ 5).  The IIS web server program

12  contains logging functionality – meaning that it has the capacity, if the logging

13  function is not disabled, to retain the Server Log Data.  (Horowitz I Decl. ¶ 10;

14  Horowitz II Decl. ¶ 2; Jt. Bunnell/Parker Decl. ¶ 5).[9]

15  Since its inception, defendants' website's logging function has not been

16  enabled to retain the Server Log Data.  (RT 99; Parker I Decl. ¶ 3).  Such logging

17  is not necessary to, or part of defendants' business operations.  (Parker I Decl.

18  ¶ 3).  The decision not to enable the logging function was based, at least in part, on

19  the belief that the failure to log such information would make the site more

20  ///

21  ///

22  ///

23  ———————————————

24  [8]As a general matter, logging data can be useful for maintenance and upkeep
of a site, to identify and correct technical problems with the site, to examine the
25  website traffic patterns and evaluate the performance of the site, and to audit and
26  evaluate data related to advertising on the site.  (Horowitz I Decl. ¶ 3).

27  [9]It is the default when IIS is installed, for logging to be on.  (RT 144;
28  Horowitz I Decl. ¶ 10).

1  attractive to users who did not want their identities known for whatever reason.[10]

2  (RT 122). Although defendants did not affirmatively retain the Server Log Data

3  through logging or other means, the data went through and was temporarily stored

4  in the RAM of defendants' website server for approximately six hours. (RT 47-

5  48, 49-50, 54-55, 76; Jt. Bunnell/Parker Decl. ¶ 5).

6      **C.**    **Operation of Defendants' Website Proximate or Subsequent to**

7             **the Filing of Plaintiffs' Motion**

8        At some point proximate or subsequent to the filing of Plaintiffs' Motion,

9  defendants altered the method through which the website operates. (RT 54).

10  Defendants' server no longer receives all, or all facets of the Server Log Data, or

11  at least not in the same way.[11] (RT 47, 56, 111). Instead, defendants now contract

12

13

---

14      [10]Defendants' privacy policy, which is posted on defendants' website,
advises users, inter alia, that the site "will not collect any personal information
15  about you [the user] except when you [the user] specifically and knowingly
provide such information." (Parker I Decl., Ex. B). The policy further reflects
16  that the site reserves the right at any time to modify, alter or update the policy, but
17  that if the site does so, it will post the changes so that users are always aware of
what information the site collects, how the information is used, and under what
18  circumstances the information is disclosed. (Parker I Decl., Ex. B). Defendants
19  have presented no evidence as to whether or how the term "personal information"
is defined in the privacy policy. As an IP address identifies a computer, rather
20  than a specific user of a computer, it is not clear that IP addresses, let alone the
21  other components of the Server Log Data in issue, are encompassed by the term
"personal information" in defendants' website's privacy policy. See supra note 7.
22

23      [11]Prior to the filing of Plaintiffs' Motion, defendants' website provided links
24  to third-party sites that have torrent files on their sites, as well as links to torrent
files on the cache of defendants' website. (RT 111). Once defendants made the
25  recent change in their method of operation, defendants' website no longer does
26  such caching. (RT 111). Instead, a third party under contract to defendants
performs that function. (RT 111). However, when a user runs a search on
27
28                                        (continued...)

1    with a third party entity, "Panther," which essentially serves as a middleman in the

2    process. (RT 98). Panther has multiple servers around the world, including

3    approximately 25 servers in the United States. (RT 48, 55). Requests from users

4    who visit defendants' website for a dot-torrent file on defendants' server are now

5    routed from a location not hosted on defendants' server to a Panther server

6    geographically proximate to the users making the requests. (RT 53, 56-57).

7    Panther's servers in the United States serve United States users. (RT 124). In

8    cases involving an initial request for a specific dot-torrent file, defendants' website

9    now receives such request **from Panther**. (RT 57). Defendants' website sends

10   the requested dot-torrent file to Panther. (RT 57). Panther then sends the file to

11   the original requesting party. (RT 57). However, once a particular dot-torrent file

12   has been requested from defendants' website by Panther, Panther then caches it

13   and can provide it in response to subsequent requests for the same dot-torrent file

14   without the need to obtain it from defendants' server. (RT 51-53, 57-58). In the

15   latter circumstance, defendants' server no longer receives data reflecting a request

16   to download the particular dot-torrent file. (RT 58). Thus, Panther now receives

17   the Server Log Data in issue in its RAM. (RT 98). Panther, however, does not

18   retain logs of such information.[12]  (RT 75). Defendant Parker testified that

19

20   _____

21        [11](...continued)

22   defendants' website, every search is a request on defendants' server. (RT 126).
     Similarly, when a user gets a list of results back, clicks one of those links, and gets

23   taken to a detailed dot-torrent page hosted by defendants' server, all of those pages

24   – on which the names of dot-torrent files are identified – are hosted on

25   defendants' server. (RT 127).

26        [12]Defendant Parker testified that he was advised by a Panther representative

27   that Panther does not have the capacity for full-server logging on all of its servers.
     (RT 75). Although plaintiffs argue that Panther can selectively log certain data,

28                                                                          (continued...)

1  defendants switched to Panther because it allows for significantly faster

2  processing and delivery of content. (RT 102-03). Defendants deny that the

3  decision to contract with Panther was motivated by a desire to avoid being in

4  possession of Server Log Data or to bypass a possible court order. (RT 50, 103,

5  123).[13]

6  ## D.    Plaintiffs' Preservation Request

7  On May 15, 2006, defendants sent a notice to plaintiffs' counsel formally

8  reminding counsel and plaintiffs of their obligation to preserve all potentially

9  discoverable evidence in their possession, custody or control related to the

10  litigation, including all logs for the TorrentSpy website, and records of all

11  communications between defendants and users of the website, including instant -

12  messaging and other chat logs. (Pozza I Decl., Ex. H). This notice did not

13  specifically request that defendants preserve Server Log Data temporarily stored

14  only in RAM. Plaintiffs do not point to any other preservation request which

15  specifically addresses data temporarily stored only in RAM. The court further

16  notes that prior to the filing of Plaintiffs' Motion, the docket does not reflect that

17  plaintiffs sought a preservation order.

18  ///

19  ///

20

21

---

22  [12](...continued)
there is no evidence in the record as to whether Panther specifically has the

23  capacity to log the Server Log Data in issue. (RT 177).

24
25  [13]In light of the change in the method of operation, and the timing thereof,
as well as the other evidence in the record, the court finds that defendants have the

26  ability to manipulate at will how the Server Log Data is routed. Indeed,
defendants represent that they could disengage and resume the functions currently

27  performed by Panther if directed to log the Server Log Data in issue. (RT 72,
103-04).

28

## IV.   DISCUSSION

### A.    The Server Log Data in Issue Is Relevant

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  F.R. Civ. P. 26(b)(1).  Plaintiffs argue that the Server Log Data is relevant to numerous claims and defenses, including whether defendants' users have directly infringed plaintiffs' copyrighted works, and to what extent defendants' website is used for purposes of copyright infringement. (Plaintiffs' Motion at 1, 15-20).  The court agrees.  This case is predicated on theories of vicarious infringement, contributory infringement, and inducement. (Complaint ¶¶ 34-36).  Primary infringement is a necessary predicate to such claims.  Perfect 10, Inc. v. Amazon.com, Inc., 2007 WL 1428632, *15 (9th Cir. May 16, 2007) (citing A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2) (9th Cir. 2001)).  Defendants contest primary infringement.  (Answer ¶ 33). Indeed, defendant Parker's testimony suggests his view that without logs, a case cannot be made against a website alleged to have engaged in secondary/ contributory infringement because such logs are "essential" to finding direct infringers.  (RT 129-30).  There can be no serious dispute that the Server Log Data in issue is extremely relevant and may be key to the instant action.[14]

---

[14]Defendants contend that plaintiffs' request for Server Log Data is overbroad because the vast majority of the website's users are located overseas such that their conduct cannot constitute copyright infringement.  (RT 115-20, 125-26).  The court rejects this contention.  First, defendants' evidence regarding the volume of overseas traffic lacks foundation and is speculative at best.  Second, even if defendants are correct regarding the asserted volume of overseas traffic, the court still finds such data to be relevant or reasonably calculated to lead to the discovery of relevant admissible evidence.  Having said that, if (1) it is technically feasible; (2) defendants could reliably demonstrate that (i) Panther's United States

(continued...)

11

**B.    The Server Log Data in Issue Is Electronically Stored Information**

Rule 34(a) of the Federal Rules of Civil Procedure provides for the discovery of documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained. F.R. Civ. P. 34(a). "Rule 34(a) applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined." Advisory Comm. Notes to the 2006 Amendment of Rule 34. The Advisory Committee Notes further indicate that Rule 34(a)(1) "is expansive and includes any type of information that is stored electronically," and that it "is intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and development." Id.

///

---

[14](...continued)
servers process Server Log Data for users in the United States; and (ii) measures could be taken to protect against manipulation of the routing to alter the representative nature of such data; and (3) defendants choose to meet their obligations under this order by directing Panther to retain and provide defendants with the Server Log Data for dissemination to plaintiffs, the court would entertain a request to limit the required preservation and production to Server Log Data that is processed through the RAM of Panther's United States servers pursuant to its contract with defendants. Alternatively, if a reliable and verifiable means exists to identify the country from which requests to defendants' website for dot-torrent files originated, the court would entertain a request to limit the required preservation and production to Server Log Data originating from users of defendants' website in the United States. The court does not view the data provided on the optional registration surveys referenced by defendant Parker during his testimony as a reliable and verifiable means to identify the country from which user requests originate. (RT 126).

1    Defendants argue that the Server Log Data does not constitute electronically
2    stored information under F.R. Civ. P. 34(a) because the data has never been
3    electronically stored on their website or in any medium from which the data can be
4    retrieved or examined, or fixed in any tangible form, such as a hard drive.
5    (Defendants' Supp. Memo I at 1; Parker II Decl. ¶ 2). Plaintiffs assert that the
6    Server Log Data is electronically stored information because such data is copied to
7    the RAM while user requests are processed. (Plaintiffs' Supp. Memo II at 2;
8    Horowitz II Decl. ¶ 4).

9    Although the parties point to no cases in which a court has assessed whether
10   data present only in RAM constitutes electronically stored information under Rule
11   34, the Ninth Circuit has addressed whether data in RAM is electronically stored
12   information in another context. In MAI Systems Corp. v. Peak Computer, Inc.,
13   991 F.2d 511, 518-19 (9th Cir. 1993), the Ninth Circuit determined in the context
14   of the Copyright Act, that software copied into RAM was "fixed" in a tangible
15   medium and was sufficiently permanent or stable to permit it to be perceived,
16   reproduced, or otherwise communicated for a period of more than transitory
17   duration.[15]  It defined RAM as "a computer component in which data and
18   computer programs can be temporarily recorded." Id. at 519 (citing Apple

---

[15]The Ninth Circuit effectively reaffirmed the continuing viability of MAI in
it recent opinion Perfect 10, Inc. v. Amazon.com, Inc., 2007 WL 1428632 (9th Cir.
May 16, 2007). In that case, the court stated: "A photographic image is a work
that is '"fixed" in a tangible medium of expression' for purposes of the Copyright
Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other
storage device). The image stored in the computer is the 'copy' of the work for
purposes of copyright law. See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d
511, 517-18 (9th Cir. 1993) (a computer makes a 'copy' of a software program
when it transfers the program from a third party's computer (or other storage
device) into its own memory, because the copy of the program recorded in the
computer is 'fixed' in a manner that is 'sufficiently permanent or stable to permit it
to be perceived, reproduced, or otherwise communicated for a period of more than
transitory duration.'" Perfect 10, Inc., 2007 WL 1428632, at *6.

1  Computer, Inc. v. Formula International, Inc., 594 F. Supp. 617, 622 (C.D. Cal.

2  1984) (describing the copying of programs into RAM as a "temporary fixation")).

3  RAM has elsewhere been described as providing "temporary storage." See Adobe

4  Systems Inc. v. Macromedia, Inc., 201 F. Supp. 2d 309, 318 (D. Del. 2002)

5  (characterizing RAM as "temporary storage"); see also Apple Computer, Inc. v.

6  Franklin Computer Corp., 714 F.2d 1240, 1243 n.3 (3d Cir. 1983) ("RAM…is a

7  chip on which volatile internal memory is stored which is erased when the

8  computer's power is turned off.").

9      In light of the Ninth Circuit's decision in MAI, and the similarity between

10  the definitions of electronically stored information in the Advisory Committee

11  Notes to Rule 34 and the Copyright Act, the latter of which was in issue in MAI,

12  this court concludes that data in RAM constitutes electronically stored information

13  under Rule 34.  Based on the evidence in the record, the court finds that the Server

14  Log Data in this case is transmitted through and temporarily stored in RAM while

15  the requests of defendants' website users for dot-torrent files are processed.

16  Consequently, such data is electronically stored information under Rule 34.

17  **C.    The Server Log Data in Issue Is within the Possession, Custody or**

18  **Control of Defendants**

19      Rule 34(a) is limited in its scope to documents and electronically stored

20  information which are in the possession, custody or control of the party upon

21  whom the request is served.  F.R. Civ. P. 34(a); Rockwell Int'l Corp. v. H. Wolfe

22  Iron & Metal Co., 576 F. Supp. 511, 512 (W.D. Pa. 1983).

23      Prior to the filing of Plaintiffs' Motion, the Server Log Data was received,

24  at least in large part, in defendants' website's RAM, and therefore was clearly

25  within defendants' possession, custody and control.  As the Server Log Data is

26  now directed to Panther's RAM as opposed to the RAM on defendants' website,

27  ///

28

14

1  the court must also consider whether the Server Log Data routed to Panther is in

2  defendants' possession, custody or control.

3        Federal courts have consistently held that documents are deemed to be

4  within a party's possession, custody or control for purposes of Rule 34 if the party

5  has actual possession, custody or control, or has the legal right to obtain the

6  documents on demand. In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995);

7  see also United States v. International Union of Petroleum and Industrial,

8  Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir.1989) ("Control is defined as

9  the legal right to obtain documents upon demand."). The record reflects that

10  defendants have the ability to manipulate at will how the Server Log Data is

11  routed. Consequently, the court concludes that even though the Server Log Data

12  is now routed to Panther and is temporarily stored in Panther's RAM, the data

13  remains in defendants' possession, custody or control.

14      **D.**    **Requiring the Preservation and Production of the Server Log**

15               **Data Is Not Tantamount to Requiring the Creation of New Data**

16        Rule 34 only requires a party to produce documents that are already in

17  existence. Alexander v. FBI, 194 F.R.D. 305, 310 (D.D.C. 2000). Accordingly, "a

18  party cannot be compelled to create, or cause to be created, new documents solely

19  for their production." Paramount Pictures Corp. v. Replay TV ("Replay TV"),

20  2002 WL 32151632, *2 (C.D. Cal. 2002) (citing Alexander, 194 F.R.D. at 310).

21        Defendants argue that because their website has never recorded or stored

22  Server Log Data since the commencement of the website's operations, requiring

23  defendants to retain such data would be tantamount to requiring them to create a

24  record of the Server Log Data for its production. Plaintiffs contend that the Server

25  Log Data already exists because such data is generated by the website users,

26  received by a web server operated by, or under contract to defendants, and utilized

27  to respond to user requests. As suggested by the court's analysis above, the court

28

1  concludes that the Server Log Data in issue exists and, at least until recently, was

2  temporarily stored in defendants' RAM.

3       As noted above, because the Server Log Data is temporarily stored in

4  Panther's RAM, and is in the possession, custody or control of defendants,

5  defendants would not be required to create new information for its production.

6  This case is thus distinguishable from Replay TV, 2002 WL 32151632 (C.D. Cal.

7  2002) and Alexander, 194 F.R.D. 305 (D.D.C. 2000) on which defendants heavily

8  rely. In both of those cases, the courts found that the information sought by

9  plaintiffs was never in existence. See Replay TV, 2002 WL 32151632, *2 (C.D.

10  Cal. 2002) (denying production of customer data because such information "is not

11  now and has never been in existence"); Alexander v. FBI, 194 F.R.D. 305, 310

12  (D.D.C. 2000) (denying production of certain list of names because there was no

13  evidence that list existed and that the responding party was in possession of such

14  list). In the instant case, because the Server Log Data already exists, is

15  temporarily stored in RAM, and is controlled by defendants, an order requiring

16  defendants to preserve and produce such data is not tantamount to ordering the

17  creation of new data.

18  **E.    An Order Requiring the Preservation of Server Log Data Is**

19  **Appropriate**

20       Plaintiffs' Motion requests that the court issue an order requiring defendants

21  to preserve the Server Log Data. Plaintiffs contend, inter alia, that defendants are

22  and have been obligated to preserve the Server Log Data, and that activating a

23  logging function to preserve and store the server log data would impose no undue

24  burden or cost on defendants. Defendants object to plaintiffs' request for a

25  preservation order on the grounds that the Server Log Data is not subject to any

26  preservation obligation and that requiring such preservation would be unduly

27  burdensome.

28

1    In determining whether to issue a preservation order, courts undertake to
2  balance at least three factors:  (1) the level of concern the court has for the
3  continuing existence and maintenance of the integrity of the evidence in the
4  absence of an order directing preservation; (2) any irreparable harm likely to result
5  to the party seeking the preservation of the evidence absent an order directing
6  preservation; and (3) the capability of the party to maintain the evidence sought to
7  be preserved, not only as to the evidence's original form, condition or contents,
8  but also the physical, spatial and financial burdens created by ordering evidence
9  preservation.  Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220
10  F.R.D. 429, 432-33 (W.D. Pa. 2004).
11    As defendants do not currently retain and affirmatively object to retention of
12  the Server Log Data, and in light of the key relevance of such data in this action,
13  the first two factors clearly weigh in favor of requiring preservation of the Server
14  Log Data.
15    The third factor requires more analysis.  The parties offer drastically
16  different views regarding the degree to which defendants may be burdened if they
17  are required to preserve the Server Log Data.  As the "burden" issues relative to
18  preservation significantly overlap with the "burden" issues relative to production,
19  the court will address such issues together.
20    First, the court considers the potential burden attendant to employing a
21  technical mechanism through which retention of the Server Log Data in RAM may
22  be enabled.  Plaintiffs contend that employing such a technical mechanism would
23  be a trivial matter involving little more than a setting change on the web server
24  program. (Horowitz I. Decl. ¶ 15).  Defendants concede that the activation of a
25  logging function to enable the retention of Server Log Data in RAM, in and of
26  itself, would not be difficult. (Jt. Bunnell/Parker Decl. ¶ 7).  Consequently, the
27  court finds that it would not be an undue burden on defendants to employ a
28

1  technical mechanism through which retention of Server Log Data in RAM is

2  enabled.[16]

3      Second, the court considers the potential burden attendant to actually

4  retaining (i.e., recording and storing) and producing the Server Log Data.

5  Defendants contend that the burdens attendant to recording, storing and producing

6  the Server Log Data would be technically, financially, and legally prohibitive.

7  Plaintiffs disagree and argue that most of defendants' contentions are based on an

8  incorrect premise and a vastly overbroad assumption regarding the scope and

9  volume of data in issue.

10      **(i)    Volume of Data/Resulting Costs/Impact on Website Functionality**

11      Defendants represent that the Server Log Data would accumulate 30-40

12  gigabytes (30,000 to 40,000 megabytes) a day – a volume which defendants'

13  current server does not have the capacity to record, store or copy, and the retention

14  of which would negatively affect the functionality of their website, and require a

15  costly re-design of their system and the installation of new equipment.[17]

16  (Jt. Bunnell/Parker Decl. ¶¶ 6, 8).  Defendants further argue that the costs of

17

18

---

19      [16]The record also reflects that a programmatic method (which is distinct

20  from enabling the logging function) could be employed to retain the Server Log

21  Data from http headers while the data is in RAM.  (RT 78, 81).  Employing such a

22  technique would require the writing of a script to collect the Server Log Data
which would take several hours.  (RT 78, 81).  The court also find that the use of

23  the programmatic method would not impose an undue burden on defendants.

24      [17]Based on the (incorrect) assumption that the data to be preserved would

25  have a volume of 30 to 40 gigabytes a day, defendants estimate that they would

26  either need to redevelop their existing server at an estimated cost of $10,000 and
an expenditure of two weeks of time, or terminate their existing arrangement and

27  set up a new higher capacity server sytem at an estimated cost of $50,000.

28  (Defendants' Supp. Memo II at 5; Jt. Bunnell/Parker Decl. ¶¶ 6, 8).

1    producing such material would be prohibitive.[18]  However, during the hearing in

2    this matter, it became evident that defendants' representation regarding the volume

3    of Server Log Data was significantly overstated.  Rather than estimating the

4    volume of incoming Server Log Data **only**, defendants estimated the volume of all

5    requests for data.[19]  (RT 60-62).  On cross-examination, defendant Parker

6

7    [18]Defendants contend that since they are not physically in the Netherlands
     where their server is located, saving the Server Log Data would require a File
8    Transfer Protocol ("FTP") download of the files from the server.  (Jt. Bunnell/
9    Parker Decl. ¶ 6).  Based again on the (incorrect) assumption that the volume in
10   issue is 30 to 40 gigabytes a day, defendants represent that it would be impossible
     to download this volume in a single download day.  (Jt. Bunnell/Parker Decl. ¶ 6).
11   Defendants argue that even if this volume of data could be burned onto a DVD,
12   approximately 10 DVDs would need to be burned on a daily basis, and then
13   shipped overseas, requiring an unreasonable amount of human labor time spent
     processing and burning the data.  (Defendants' Supp. Memo II at 3; Jt. Bunnell/
14   Parker Decl. ¶ 6).

15
     [19]Defendant Parker testified that he based his estimate on the volume of
16   logging "everything" – "every image, any kind of thing that loads up to the user"
17   – because he did not believe that the logging function could be selectively enabled
18   to retain just the Server Log Data.  (RT 60-62).  The court does not accept
     defendant Parker's testimony regarding the inability to selectively enable logs to
19   retain solely the Server Log Data in issue.  Indeed, defendant Parker ultimately
20   conceded, after reviewing an exhibit offered by plaintiffs, that the software used
     by defendants' website could create server logs for limited amounts of data and
21   could save it in a particular folder.  (RT 78).  The court concludes that defendant
22   Parker either did not know that the logs could be selectively enabled to collect the
23   Server Log Data only or that he intentionally misrepresented the volume of data in
     issue.  The former suggests a lack of knowledge and expertise which significantly
24   undercuts his testimony.  The latter suggests a lack of candor which likewise
25   significantly undercuts his testimony.  As the incorrect assumption that logs could
26   not be selectively enabled serves as the predicate for virtually all of defendants'
     testimony and declarations regarding the alleged burden that would be imposed
27   upon defendants if they were required to preserve and produce just the Server Log
28                                                                    (continued...)

conceded that collecting and recording only the subset of Server Log Data would "most likely" result in a volume of data far less than 40 gigabytes (40,000 megabytes) a day. (RT 82). Plaintiffs' expert in fact testified that the Server Log Data would likely have a volume of one-hundredth of what defendant Parker had originally suggested (i.e., 300 to 400 megabytes).[20] (RT 134). Defendant Parker testified that he had not considered data storage issues if the volume was significantly smaller, i.e., if the Server Log Data in issue had a volume of only one gigabyte (1000 megabytes) a day.[21] (RT 82-83). He did concede, however, that if the logging was limited to only the Server Log Data (as opposed to all incoming data), he would not have the same concerns about, inter alia, computer processing unit usage.[22] (RT 86).

Based upon the evidence regarding the estimated volume of data resulting from the logging of solely the Server Log Data in issue (as opposed to all data) and the other evidence presented, the court finds that defendants would not be

---

[19](...continued)
Data, such testimony and declarations are completely undercut and not viewed by this court as credible.

[20]Plaintiffs contend that even if the data generated a few gigabytes of storage space per day, the data could be backed up on a DVD, which can store up to four gigabytes of data and would take around five to ten minutes. (Horowitz Decl. ¶ 18). Plaintiffs further assert that storing the data would not be costly because a DVD can be purchased for under a dollar. (Horowitz Decl. ¶ 18).

[21]Defendant Parker also failed to consider that the volume of even just the Server Log Data would be further significantly reduced if compressed, or if collected in binary (rather than text) format. (RT 83-84, 135-36).

[22]Defendant Parker similarly indicated that he would not have the same concerns if the programmatic method was limited to retention of only the Server Log Data (as opposed to all incoming data). (RT 86).

1  unduly burdened as a consequence of the volume of Server Log Data if required to

2  preserve and produce such data.

3  **(ii)    Privacy/First Amendment/Federal Statutory Issues**

4  Defendants also raise issues concerning the privacy of their website users

5  based upon defendants' privacy policy, the First Amendment and multiple federal

6  statutes. (Defendants' Supp. Memo II at 8-15). Although the court discusses each

7  such issue below, the court does not find defendants' arguments to be persuasive,

8  particularly in light of the fact that this order directs defendants to mask users' IP

9  addresses before the Server Log Data is produced.[23] The court finds that

10  defendants' asserted interest in maintaining the privacy of the users of their

11  website can be adequately protected by the protective order already entered in this

12  action and the masking of the users' IP addresses. See Farber, 234 F.R.D. at 191.

13  **(a)    Privacy Policy**

14  Defendants contend that Plaintiffs' Motion should be denied because

15  plaintiffs' privacy policy precludes them from preserving and producing "personal

16  information" about their website's users. The court rejects this contention.

17  First, defendants cannot insulate themselves from complying with their legal

18  obligations to preserve and produce relevant information within their possession,

19  custody or control and responsive to proper discovery requests, by reliance on a

20  privacy policy – the terms of which are entirely within defendants' control.

21  Second, even if a litigant's privacy policy could have such an impact, it is

22  not clear to the court that defendants' current privacy policy actually prohibits the

23  retention and production of the Server Log Data. See supra note 10.  Moreover,

24

25

_____

26  [23]Although defendants suggest that the actual IP addresses could be
retrieved from masked/encrypted IP addresses through "brute force," the court has
27  protected against that by prohibiting plaintiffs from taking any measures to
28  unmask or decrypt the masked/encrypted IP addresses.

21

1    the record reflects that despite this policy, defendants, unbeknownst to their users,

2    do disclose IP addresses and search queries to third parties, albeit without

3    disclosure of clicks on dot-torrent download links. (RT 90-97).

4        Third, to the extent defendants' privacy policy may prohibit the disclosure

5    of IP addresses, compliance with this order does not violate such policy because IP

6    addresses are to be masked.

7        Finally, even if the privacy policy currently prohibits the retention and

8    disclosure of the Server Log Data, the policy itself advises users that such policy

9    may be modified at any time. As this order does not contemplate the historical

10   retention and production of data from users who have arguably relied on the

11   existing policy, and as nothing in this order prevents defendants from modifying

12   their privacy policy so that it accurately reflects defendants' prospective retention

13   and production obligations pursuant to this order, defendants themselves retain the

14   ability to ensure that they do not violate their own privacy policy.

15            **(b)    First Amendment**

16       Defendants also argue that Plaintiffs' Motion should be denied because the

17   First Amendment protects anonymous speech on the internet.

18       The First Amendment protects anonymous speech, at least in circumstances

19   involving core First Amendment expression such as political speech. <u>See</u>

20   <u>McIntyre v. Ohio Elections Commission</u>, 514 U.S. 334 (1995) (discussing central

21   role of anonymous speech in free marketplace of ideas). At least one court, in the

22   context of a third party subpoena, has also concluded that the anonymous use of

23   file sharing/copying networks to download and disseminate copyrighted material

24   without permission qualifies for minimal First Amendment protection subject to

25   other considerations. <u>In re Verizon Internet Services, Inc.</u>, 257 F. Supp. 2d 244,

26   260 (D. D.C.), <u>rev'd on other grounds</u>, 351 F.3d 1229 (D. D.C. 2003).

27   ///

28

1   This court assumes, without deciding that the users of defendants' website

2   are entitled to limited First Amendment protection. However, even assuming such

3   protection applies, the court finds that the preservation and disclosure of the

4   Server Log Data does not encroach or substantially encroach upon such

5   protection, particularly in light of the fact that such data does not identify the users

6   of defendants' website and that the IP addresses of such users have been ordered

7   to be masked.

8               **(c)    Stored Communications Act**

9       Defendants argue that Plaintiffs' Motion should be denied because the

10  Stored Communications Act (18 U.S.C. §§ 2701-11) prohibits the disclosure of the

11  Server Log Data. Title 18, United States Code, Section 2702, generally prohibits a

12  person or entity providing an electronic communication service to the public from

13  knowingly divulging the contents of a communication while in electronic storage.

14  18 U.S.C. § 2702(a). Specifically excepted from this prohibition are disclosures of

15  the contents of communications (1) to an intended recipient of such

16  communication or an agent thereof; or (2) with the lawful consent of an intended

17  recipient of such communication.[24] 18 U.S.C. §§ 2702(b)(1), 2702(b)(3).

18      As defendants' website is the intended recipient of the Server Log Data, and

19  defendants have the ability to consent to the disclosure thereof, this statutory

20  provision does not provide a basis to withhold such data which is clearly within

21  defendants' possession, custody and control.[25]

22  _____

23      [24]As the cases upon which defendants rely involve third party subpoenas to

24  electronic server providers who were not the intended recipients of the
    communications in issue, they are not applicable.

25

26      [25]As the good faith reliance on a court order (such as the instant order)

27  provides a complete defense to any civil or criminal action predicated on a
    violation of the above-referenced non-disclosure provision, the court also rejects

28                                                      (continued...)

23

1       **(d)    The Wiretap Act**

2           Defendants argue that Plaintiffs' Motion should be denied because the

3   Wiretap Act (18 U.S.C. §§ 2510-22) prohibits the disclosure of the Server Log

4   Data.

5           Title 18, United States Code, Section 2511, generally prohibits the

6   intentional interception of electronic communications during the transmission

7   thereof and the disclosure of such intercepted communications.  18 U.S.C.

8   §§ 2511(a), 2511(c), 2510(12).  Title 18, United States Code, Section 2510(12)

9   defines "electronic communication" as "any transfer of signs, signals, writing,

10  images, sounds, data, or intelligence of any nature transmitted in whole or in part

11  by a wire, radio, electromagnetic, photoelectronic or photoptical system that

12  affects interstate or foreign commerce" except as expressly excluded therein.

13  Specifically excepted from the prohibition against the interception and disclosure

14  of electronic communications are:  (1) the interception by a party to the

15  communication; (2) the disclosure of the contents of such communication while in

16  transmission to the intended recipient of such communication or an agent thereof;

17  and (3) the disclosure of the contents of such communication while in

18  transmission with the lawful consent of an intended recipient of such

19  communication.  18 U.S.C. §§ 2511(2)(d), 2511(3)(a), 2511(3)(b)(ii).

20          First, the court concludes that this statute is not implicated because, as to

21  electronic communications, it only prohibits interceptions during transmission (not

22  while in electronic storage, i.e., RAM), and the disclosure of electronic

23  communications intercepted during transmission.  See Konop v. Hawaiian

24

25

---

26          [25](...continued)

27  defendants' assertions of burden based on the potential of being sued for violating

28  this provision. 18 U.S.C. § 2707(e).

1  Airlines, Inc., 302 F.3d 868, 878-79 (9th Cir. 2002).  This is true even though

2  storage is a necessary incident to transmission.  Id. at 879 n.6.

3       Second, even if the Server Log Data were considered to be in transmission

4  while in RAM, and therefore subject to this statute's prohibition against

5  interception and disclosure, the statute would still not relieve defendants of their

6  obligation to preserve and produce such data.  As defendants' website is the

7  intended recipient of the Server Log Data, and defendants can lawfully intercept

8  and consent to the disclosure thereof, this statutory provision, even if applicable

9  would not provide a basis to withhold such data which is clearly within

10  defendants' possession, custody and control.[26]

11            **(e)    The Pen Register Statute**

12       Defendants also argue that Plaintiffs' Motion should be denied based on the

13  Pen Register Statute (18 U.S.C. §§ 3121-27).

14       Title 18, United States Code, Section 3121, generally prohibits the

15  installation and use of pen registers and trap and trace devices except in the

16  circumstances referenced therein.  18 U.S.C. § 3121(a).  A pen register is

17  essentially a device which captures outgoing telephone numbers or IP addresses.[27]

18

19  _____

20  [26]As the good faith reliance on a court order (such as the instant order)
   provides a complete defense to any civil or criminal action predicated on a

21  violation of the above-referenced non-disclosure provision, the court also rejects
   defendants' assertions of burden based on the potential of being sued for violating

22  this provision. 18 U.S.C. § 2520(d)(1).

23
   [27]More specifically, a pen register is a device or process which records

24  dialing, routing, addressing or signaling information transmitted by an instrument
   or facility from which a wire or electronic communication is transmitted,

25  excluding the contents of any communication.  18 U.S.C. § 3127(3).  Such term
   does not include (i) any device or process used by a provider of electronic

26  communication service for billing, recording as an incident to billing, or providing

27                                                              (continued...)

28

A trap and trace device essentially captures incoming IP addresses or telephone numbers (such as a caller identification device).[28]  Excepted from this prohibition are pen register and trap and trace devices used by providers of electronic communication services relating to the operation and maintenance of such service. 18 U.S.C. § 3121(b)(1).

As the Server Log Data sought by plaintiffs encompasses incoming IP addresses, it arguably implicates the prohibition against the unauthorized use of trap and trace devices.  However, as plaintiffs correctly note, the collection of incoming IP addresses by defendants is exempt from this prohibition pursuant to 18 U.S.C. § 3121(b)(1) because defendants already and necessarily capture such data in their RAM (or Panther's RAM) to operate the website.

### (f)     Impact on Good Will

Defendants also argue that they would lose business and good will of customers and advertisers as result of the stigma that would flow from any order directing them to preserve and produce the Server Log Data.  (Jt. Bunnell/Parker Decl. ¶ 9; RT 152-55).

The testimony and declarations of defendants Parker and Bunnell regarding such loss of good will and business is largely speculative, conclusory and without

///

///

---

[27](...continued)
communications services; or (ii) any device or process used by such provider for cost accounting or other like purposes in the ordinary course of its business.  18 U.S.C. § 3127(3).

[28]More specifically, a "trap and trace device" is a device or process which captures the incoming electronic or other impulses which identify the originating number of an electronic communication, excluding the contents of any communication.  18 U.S.C. § 3127(4).

26

1    foundation.[29]  Nonetheless, in light of the discussion in <u>Gonzales v. Google, Inc.,</u>

2    234 F.R.D. 674, 684 (N.D. Cal. 2006), the court recognizes that the preservation

3    and production of the Server Log Data may negatively impact the way in which

4    defendants' website is perceived by its users and advertisers and result in a loss of

5    business and good will.  Notably, these concerns did not prevent the court in

6    <u>Gonzales</u> from ordering a third party to disclose certain data to the United States

7    government.

8        In this case involving the preservation and disclosure by a party to another

9    private civil litigant, the court finds that preservation and production of the Server

10   Log Data is appropriate in light of the conclusory and speculative nature of the

11   evidence presented regarding the loss of good will and business, the key relevance

12   and unique nature of the Server Log Data in this action, the lack of a reasonable

13

---

14      [29]For example, although defendant Bunnell testified that the sites Grokster

15   and Lokitorrent "were basically shut down" because they were "forced to turn over

16   log information" (RT 153), on cross-examination, it became clear that he did not
have any personal knowledge regarding such matters and that his testimony was,

17   at most, based on things he had read or heard which might or might not be true.

18   (RT 159-62).  Similarly, defendant Bunnell provided a declaration and testified
regarding his concern about suffering the same type of consequences as AOL,

19   which defendants contend was sued because it published search queries and log-in

20   information excluding IP addresses on the internet.  (RT 153-54).  However, it

21   again became clear during cross-examination that defendant Bunnell's testimony
was speculative and without foundation.  Indeed, although a copy of a complaint

22   against AOL was attached to and referenced in his declaration, Bunnell apparently

23   did not even realize that the testimony he was providing about such lawsuit related
to said complaint as he both denied having read it and then affirmed having read

24   it.  (RT 163-65).  The court observes, based on its review of the copy of the

25   complaint against AOL that is of record, that the data in issue in that case, unlike

26   the Server Log Data in issue here, encompassed personal identifying user names,
street addresses, dates of birth, phone numbers, credit card numbers, and social

27   security numbers.  (Jt. Bunnell/Parker Decl., Ex. C).  The AOL case also does not

28   appear to have involved disclosure pursuant to a court order as contemplated in
the instant case.  (Jt. Bunnell/Parker Decl., Ex. C).

1   alternative means to obtain such data, and the limitation imposed by the court

2   regarding the masking of IP addresses.[30]

3   **(iii)    International Issues**

4          Defendants further assert that any changes to the existing web server would

5   need to be in compliance with Netherlands law because defendants lease their

6   server from an Internet Service Provider in Amsterdam, Netherlands and their

7   server is located at the ISP's secure plant. (Defendants' Supp Memo II at 2;

8   Jt. Bunnell/Parker Decl. ¶ 6). Defendants have offered evidence that defendants'

9   contract with the entity from which it leases its Netherlands server is governed by

10  Netherlands law. (Jt. Bunnell/Parker Decl., Ex. A). Defendants have also

11  supplied the court with the Netherlands Personal Data Protection Act which is

12  directed to "information relating to an identified or identifiable person." (Jt.

13  Bunnell/Parker Decl., Ex B). The court is not persuaded that such concerns

14  should relieve defendants of their obligation to preserve and produce the Server

15  Log Data.

16  ———————————————

17          [30]Defendants suggest that Digital Millennium Copyright Act ("DMCA")

18  subpoenas are available to plaintiffs pursuant to 17 U.S.C. § 512(h), and provide a
    more convenient, less burdensome, and less expensive means of obtaining the

19  Server Log Data. The court rejects defendants' assertion. The DMCA permits,

20  under circumstances specified therein, subpoenas to be issued for "information
    sufficient to identify [an] alleged infringer." 17 U.S.C. § 512(h)(1). Defendants

21  have not satisfied the court that the Server Log Data (and all facets thereof) may

22  permissibly be sought pursuant to such subpoenas, or that DMCA subpoenas are a

23  viable alternative in this action. In any event, the court does not find that DMCA
    subpoenas would be "more convenient, less burdensome, or less expensive."

24          In light of fact that the Server Log Data is currently routed to Panther, the

25  court has also considered whether a third party discovery request to Panther would

26  be a viable alternative. The court concludes that while such data may well be
    obtainable from Panther, requiring plaintiffs to pursue that avenue would likely

27  not be "more convenient, less burdensome, or less expensive" in light of the nature

28  of the relationship between defendants and Panther, the nature of the information
    sought, and the other evidence presented in this matter.

1    First, as it now appears that the entity which has immediate possession of

2    the Server Log Data has over 25 United States servers, defendants' expressed

3    international concerns no longer appear valid. At a minimum, their expressed

4    concerns carry less weight in light of their use of Panther's services and the fact

5    that defendants retain the ability to manipulate the routing of the Server Log Data.

6    Second, even if such concerns remain, it is not clear that the Netherlands'

7    Personal Data Protection Act applies to IP addresses, let alone to the other Server

8    Log Data in issue, as an IP address identifies a computer, rather than a specific

9    user of a computer. See supra note 7. A party relying on foreign law has the

10   burden of showing that such law bars the discovery in issue. United States v.

11   Vetco, 691 F.2d 1281, 1289 (9th Cir. 1981). Defendants have not met this

12   burden.

13   Third, even if the Netherlands' statute applies and is read to prohibit

14   defendants' preservation or production of the Server Log Data, it is well settled

15   that foreign blocking statutes do not deprive an American court of the power to

16   order a party subject to its jurisdiction to produce (let alone preserve) evidence

17   even though the act of production may violate that statute. Richmark Corp. v.

18   Timber Falling Consultants, 959 F.2d 1468, 1474 (9th Cir. 1992) (citation and

19   internal quotations omitted). In considering whether to excuse noncompliance

20   with discovery orders based on foreign statutory bars, as opposed to issuance of an

21   order directing the preservation or production of evidence which is the issue here,

22   courts are to balance the relevant factors in issue. Id. at 1474-75. These factors

23   include the importance of the information requested in the litigation, the degree of

24   specificity of the request, whether the information originated in the United States,

25   the availability of alternative means of securing the information, the extent to

26   which noncompliance would undermine important interests of the United States or

27   compliance would undermine important interests of the state where the

28   ///

29

1  information is located, and the degree of hardship on the producing party and
2  whether such hardship is self-imposed. <u>Richmark Corp.</u>, 959 F.2d at 1475-77).

3      The court has weighed such factors in assessing whether to direct
4  defendants to preserve and produce the Server Log Data – to the extent evidence
5  bearing upon such factors has been presented. The court concludes that these
6  factors weigh in favor of requiring defendants to preserve and produce the Server
7  Log Data. The court primarily relies upon the key relevance of the Server Log
8  Data to this action, the specificity of the data sought, the lack of alternative means
9  to acquire such information, and the fact that defendants are United States
10  individuals and entities who affirmatively chose to locate their server in the
11  Netherlands at least in part to take advantage of the perceived protections afforded
12  by that country's information security law.

13      In sum, defendants have failed to demonstrate that their expressed
14  international concerns should relieve them of the obligation to preserve and
15  produce the Server Log Data.

16  **F.    An Order Requiring the Production of Certain Server Log Data**
17  **Is Appropriate**

18      Defendants contend that they should not be ordered to produce the Server
19  Log Data for the same reasons, discussed above, that cause defendants to believe
20  that a preservation order should not issue. Plaintiffs maintain that such data
21  should be produced, at least in a form that masks the IP addresses.

22      On a motion to compel discovery, the party from whom electronically stored
23  information is sought must show that the information is not reasonably accessible
24  because of undue burden or cost. F.R. Civ. P. 26(b)(2)(B). If such a showing is
25  made, a court may nonetheless order discovery from such sources if the requesting
26  party shows good cause, considering the limitations of F.R. Civ. P. (b)(2)(C). A
27  court may limit discovery of electronic materials under F.R. Civ. P. 26(b)(2)(C) if:
28  (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable

1  from some other source that is more convenient, less burdensome, or less

2  expensive; (ii) the party seeking discovery has had ample opportunity by discovery

3  in the action to obtain the information sought; or (iii) the burden or expense of the

4  proposed discovery outweighs its likely benefit, taking into account the needs of

5  the case, the amount in controversy, the parties' resources, the importance of the

6  issues at stake in the litigation, and the importance of the proposed discovery in

7  resolving the issues.  F.R. Civ. P. 26(b)(2)(C).

8      Based on the discussion, analysis, and findings above, the court further

9  finds:  (1) defendants have failed to demonstrate that the Server Log Data is not

10  reasonably accessible because of undue burden or cost; (2) plaintiffs have shown

11  good cause to order discovery of such data; (3) the discovery sought is not

12  unreasonably cumulative or duplicative or obtainable from some other source that

13  is more convenient, less burdensome, or less expensive; (4) plaintiffs have not

14  otherwise had the opportunity to obtain the data sought; and (5) the burden and

15  expense of the proposed discovery does not outweigh its likely benefit, taking into

16  account the needs of the case, the amount in controversy, the parties' resources,

17  the importance of the issues at stake in the litigation, and the importance of the

18  proposed discovery in resolving the issues.[31]

19  ///

20  ///

21  ///

22

23

24  [31]The court emphasizes that its ruling should <u>not</u> be read to require litigants
    in all cases to preserve and produce electronically stored information that is
25  temporarily stored only in RAM.  The court's decision in this case to require the
26  retention and production of data which otherwise would be temporarily stored
    only in RAM, is based in significant part on the nature of this case, the key and
27  potentially dispositive nature of the Server Log Data which would otherwise be
28  unavailable, and defendants' failure to provide what this court views as credible
    evidence of undue burden and cost.

### G. Evidentiary Sanctions

Plaintiffs' Motion also requests evidentiary sanctions against defendants in light of defendants' alleged wilful failure to preserve, and intentional spoliation of, the Server Log Data. (Plaintiffs' Motion at 13-14).

Pursuant to F.R. Civ. P. 37(f), absent exceptional circumstances, a court may not impose sanctions under the discovery rules based on a party's failure to provide electronically stored information lost as a result of the routine, good faith operation of an electronic information system. F.R. Civ. P. 37(a). A "good faith" operation may require a party to modify or suspend certain features of that routine operation to prevent the loss of information, if that information is subject to a preservation obligation. Advisory Comm. Notes to the 2006 Amendment to Rule 37.

A litigant is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or the subject of a pending discovery request. Wm. T. Thompson Co. v. General Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). Therefore, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake v. USB Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). As a general rule, the litigation hold does not apply to inaccessible electronically stored information, such as back-tapes, which may continue to be recycled on the schedule set forth in the company's policy. See id.

As noted above, although this court now finds that defendants have an obligation to preserve the Server Log Data in issue that is temporarily stored only in RAM, in the absence of (1) prior precedent directly on point in the discovery context; (2) a specific request by defendants to preserve Server Log Data present solely in RAM; and (3) a violation of a preservation order, this court finds that

1  defendants' failure to retain the Server Log Data in RAM was based on a good

2  faith belief that preservation of data temporarily stored only in RAM was not

3  legally required.  Consequently, the court finds that evidentiary sanctions against

4  defendants for spoliation of evidence are not appropriate.

5      **H.    Attorneys' Fees and Costs**

6      Defendants request that the court require plaintiffs to pay reasonable

7  expenses incurred in opposing Plaintiffs' Motion, including attorneys' fees,

8  pursuant to F.R. Civ. P. 37(a)(4)(B).  As Plaintiffs' Motion has largely been

9  granted, the court finds that the award of such fees is not appropriate.  To the

10  extent Plaintiffs' Motion has been denied in part, the court finds that the making of

11  such motion was substantially justified and that the award of expenses would be

12  unjust.

13  **V.    CONCLUSION**

14      Based upon the foregoing, IT IS HEREBY ORDERED:

15      1.    Defendants are directed to commence preservation of the Server Log

16  Data in issue within seven (7) days of this order and to preserve the Server Log

17  Data for the duration of this litigation or until further of this court or the assigned

18  District Judge.  As the record reflects that there are multiple methods by which

19  defendants can preserve such data, the court does not by this order mandate the

20  particular method by which defendants are to preserve the Server Log Data.

21      2.    Defendants shall initially produce the Server Log Data (with the

22  exception noted below) by no later than two weeks from the date of this order.

23  Defendants thereafter have a continuing obligation regularly (no less frequently

24  than every two weeks) to update such production.[32]  Although defendants are

25

26  ─────────────────────

27  [32]Plaintiffs have represented that they are willing to accept a sample of
Server Log Data of one hour a day, provided that the hour each day is selected to

28  provide a representative picture of the usage of defendants' site.  (RT 180-81).

(continued...)

required to preserve the IP addresses of the computers used to request dot-torrent files, defendant are not, at least at this juncture, ordered to produce such IP addresses in an unmasked/unencrypted form.  Instead, defendants shall mask, encrypt, or redact IP addresses through a hashing program or other means, provided, however, that if a given IP address appears more than once, such IP address is concealed in a manner which permits one to discern that the same IP address appears on multiple occasions.[33]  Plaintiffs are prohibited from using "brute force" or any other means to pierce or reverse any such mask/encryption/redaction.  The court does not by this order either mandate or prohibit notification to the users of defendants' website of the fact that the Server Log Data is being preserved and has been ordered produced with masked/encrypted/redacted IP addresses.[34]

---

[32](...continued)
The court has not limited its order to sampling at this juncture because of concerns that one hour a day will not provide a representative sample of activity in light of defendants' expressed concerns regarding its notification and disclosure obligations vis-a-vis its users.  However, the court encourages the parties to meet and confer regarding sampling, and, if appropriate, to prepare a stipulation accordingly modifying the scope of preservation and production required by this order.  In the absence of such a stipulation, the instant order is without prejudice to a request by defendants to share or shift the costs of preservation and production.

[33]For example, if, hypothetically, an IP address of "1234.5678.9101" which requested a dot-torrent file on day one at noon, was masked as "abcd.efgh.ijkl," and the same IP address requested a dot-torrent file on day two at noon, defendants' production should reflect that "abcd.efgh.ijkl" made the request on day two at noon as well as on day one at noon.

[34]Having said that, absent further order of this court or the assigned District Judge, the Clerk is directed to file and maintain this order under seal for a period of seven (7) days.  The court finds good cause to file such order under seal for at least the limited seven-day period in light of the nature of its contents and the fact
(continued...)

    3.    Plaintiffs' request for evidentiary sanctions based upon plaintiffs' failure to date to preserve the Server Log Data is denied.

    4.    Defendants' request for attorneys' fees and costs pursuant to F.R. Civ. P. 37(a)(4)(B) is denied.

IT IS SO ORDERED.

DATED:    May 29, 2007

_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[34](...continued)
that it may be based, at least in part on materials submitted <u>under seal</u> pursuant to a protective order. The parties shall have five (5) days from the date of this order to submit any objections to the public filing of this order or any portion thereof. Any such objections should state the legal reason therefor and be accompanied by a proposed redacted version of the order which, in the objecting parties' view, is appropriate for public filing. If no objections are timely received, and absent further order of this court or the assigned District Judge, the court will direct the Clerk to file this order in the public record at the expiration of the seven-day period.