```
JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
     sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
     kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
     dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC  20005
Telephone:   202-639-6000
Facsimile:    202-639-6066
```

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br>     Plaintiffs,<br>v.<br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,<br>     Defendants. | Case No. CV 06-1093 FMC (JCx)<br><br>**NOTICE OF APPLICATION AND EX PARTE APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION TO PRESERVE ASSETS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:  Hon. Florence-Marie Cooper<br>Ctrm:   750<br>Time:   TBD |

## EX PARTE APPLICATION

Plaintiffs hereby apply to the Court *ex parte* for:

1. A temporary restraining order restraining and enjoining defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, from selling, transferring or otherwise disposing of the torrentspy.com domain, or the technology that comprises the TorrentSpy website, either by acting individually or through any corporation or other entity that they own, control, or operate, until such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief.[1]

2. An order to show cause why defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, should not be preliminarily enjoined from selling, transferring or otherwise disposing of the torrentspy.com domain, or the technology that comprises the TorrentSpy website, either by acting individually or through any corporation or other entity that they own, control, or operate, until such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief.

Good cause exists for the foregoing order. As set forth in the attached Memorandum of Points and Authorities and supporting papers, defendants, who have been found liable of copyright infringement following this Court's order that default be entered against them based on their willful destruction of evidence, have recently ceased operation of the TorrentSpy website. There are various Internet

---

[1] The Court has ordered that the plaintiffs file their proposed permanent injunction by April 14, 2008. The relief sought here is preliminary to the final injunctive relief that plaintiffs will seek in their proposed permanent injunction, and designed simply to preserve the status quo until such time as the Court can consider and rule on a permanent injunction.

reports indicating that defendants are attempting to sell the domain name, which could easily be obtained by another pirate website operator, including one outside the United States, to continue infringement of plaintiffs' copyrighted works. Plaintiffs will be irreparably harmed, and the equitable relief of this Court will be frustrated, if the TorrentSpy domain name and technology are transferred to another entity and used for copyright infringement. Defendants have refused to agree to a stipulation not to transfer the very property that they use to facilitate copyright infringement.

This Ex Parte Application is based on this Notice, the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Steven B. Fabrizio dated April 4, 2008 ("Fabrizio Decl.") and exhibits; the concurrently-filed proposed Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction; all pleadings on file with the Court, all matters of which the Court may take judicial notice, and all such additional evidence and argument as may be presented to the Court during any hearing on this Application, if a hearing is required.

Pursuant to Local Rule 7-19.1, on March 28, 2008, counsel for plaintiffs provided notice by email to defendants' counsel of the substance of this Application and sought an accommodation whereby defendants would voluntarily agree to stipulate not to transfer the TorrentSpy domain name and the technology comprising the TorrentSpy website during the pendency of this litigation. Defendants' counsel refused this proposed accommodation. Fabrizio Decl. ¶ 4. Plaintiffs' counsel also suggested an accommodation whereby defendants would agree to provide 14-days notice of intention to transfer the TorrentSpy domain name and the technology comprising the TorrentSpy website, to allow the plaintiffs to seek court intervention prior to the transfer. Defendants' counsel declined even to respond to this proposal. On the date of this filing, plaintiffs' counsel spoke with defendants' counsel to reiterate the same "14-day notice" proposal and to advise of plaintiffs' intention to

1 file this motion this afternoon. Defendants' counsel indicated that he would confer
2 with his clients and try to get back to plaintiffs' counsel, but as of the time of
3 signing, had not responded. *Id.* Defendants have been provided with notice of
4 plaintiffs; intention to file this application. Based on the foregoing, plaintiffs'
5 understanding is that defendants will oppose this Application.

Respectfully submitted,

Dated: April 4, 2008   JENNER & BLOCK LLP

By: _____
Steven B. Fabrizio


STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
  JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
  LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
  15301 Ventura Boulevard, Bldg E
  Sherman Oaks, CA 91403


*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ....................................................................................................................... 5

I. LEGAL STANDARD ............................................................................................. 5

II. THE PLAINTIFFS SATISFY THE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF. ............................................................. 6

III. THE COURT IS AUTHORIZED TO ISSUE PRELIMINARY INJUNCTIVE RELIEF TO PRESERVE THE TORRENTSPY ASSETS. ................................................................................................................. 8

CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES
## CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .............. 5

*Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir. 1983) ................................................................................................................ 7

*Associate California Loggers, Inc. v. Kinder*, 79 Cal. App. 3d 34 (Cal. App. 2d Dist. 1978) ...................................................................................... 11

*Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476 (10th Cir. 1993) .................................................................................... 7

*Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) .......................................................................................... 7

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d, 878, 882 n.4 (9th Cir. 2003) ............................................................... 8

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) .................... 8, 9

*Dodge, Warren & Peterson Insurance Serv's, Inc. v. Riley*, 105 Cal. App. 4th 1414 (Cal. App. 4th Dist. 2003) ............................................... 11

*FDIC v. Antonio*, 843 F.2d 1311 (10th Cir. 1988) ....................................... 10

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ............... 3, 6

*In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2004) ............................. 8, 9

*Folz v. U.S. News & World Report*, 760 F.2d 1300 (D.C. Cir. 1985) ............ 9

*Lechman v. Ashkenazy Enterprises, Inc.*, 712 F.2d 327 (7th Cir. 1983) ...... 10

*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150 (9th Cir. 2006) .......................................................................................... 6

*Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp.
   1320, 1323 (N.D. Cal. 1995) .................................................................. 5

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ............ 9

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867
   (9th Cir. 2000) ........................................................................................ 5

*Reebok International, Ltd v. Marnatech Enterprises, Inc.*, 970 F.2d 552
   (9th Cir. 1992) ............................................................................... 5, 8, 10

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988) ......... 9

*United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489
   (4th Cir. 1999) ............................................................................... 8, 9, 10

*Williams-Sonoma, Inc. v. FriendFinder, Inc.*, No. C 06-6572 JSW
   *(MEJ)*, 2007 WL. 4973848 (N.D.Cal. Dec. 7, 2007) ............................... 9

*Wind v. Herbert*, 186 Cal. App. 2d 286 (Cal. App. 2d Dist. 1960) .............. 11

## STATUTES

17 U.S.C. § 502(a) ........................................................................................... 9

Cal. Civ. P. Code § 526(a)(2) ....................................................................... 11

Cal. Civ. P. Code § 526(a)(3) ................................................................... 6, 10

Fed. R. Civ. P. 64 .......................................................................................... 10

NOTICE OF EX PARTE APP. &
EX PARTE APP. FOR TRO AND OSC RE
PRELIMINARY INJUNCTION TO
PRESERVE ASSETS

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs seek immediate *ex parte* relief enjoining defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, from selling, transferring or otherwise disposing of the torrentspy.com domain or the technology that comprises the TorrentSpy website (the "TorrentSpy assets"), either by acting individually or through any corporation or other entity that they own, control, or operate, until such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief.[2] These assets are directly related to defendants' copyright infringement activities; indeed, they are the vehicle through which defendants engaged in their copyright infringement. A transfer of these assets would seriously undermine the equitable remedies to which plaintiffs are entitled, and the defendants' ability to satisfy any judgment the Court may issue in this case. Absent the requested relief to preserve the status quo, plaintiffs will be unable to obtain the full and complete equitable relief requested in the complaint and in the final judgment to be entered by the Court.

Following the entry of default against defendants in December, plaintiffs had been diligently pursuing settlement negotiations with defendants in pursuit of a final consent judgment. These efforts have been unsuccessful. Just last week, however, without any notice to the plaintiffs, defendants ceased operation of the TorrentSpy website, and plaintiffs immediately became aware of reports that defendants were

---

[2] The Court has ordered that the plaintiffs file their proposed permanent injunction by April 14, 2008. The relief sought here is preliminary to the final injunctive relief that plaintiffs will seek in their proposed permanent injunction and designed simply to preserve the status quo until such time as the Court can consider and rule on a permanent injunction.

attempting to sell the TorrentSpy domain name. Because a transfer of the TorrentSpy domain name and technology would effectively defeat the claims for equitable relief prayed for by plaintiffs in the complaint, plaintiffs' counsel immediately sought an agreement with defendants' counsel whereby the defendants would stipulate not to transfer the TorrentSpy assets during the pendency of the litigation. Fabrizio Decl. ¶4. In the alternative, plaintiffs' counsel proposed that defendants would agree to provide plaintiffs with 14-day advance notice of any such transfer to give the plaintiffs opportunity to seek relief from the Court. *Id*. Although defendants have denied any intention to transfer the TorrentSpy assets, tellingly, they have refused to enter any such stipulation. As a result, plaintiffs have no recourse against defendants transferring any of the TorrentSpy assets, and effectively defeating plaintiffs' equitable claims for relief, absent this Court's intervention to preserve the status quo.

Plaintiffs' complaint alleges that defendants induced, facilitated and profited from infringement of plaintiffs' copyrighted motion pictures and television programs via the TorrentSpy website. TorrentSpy users access the website at torrentspy.com in order to download dot-torrent files that automatically result in users obtaining unauthorized copies of plaintiffs' copyrighted works. Thus, the torrentspy.com domain and the technology used to run the TorrentSpy website are central to the allegations in this case and, in their complaint, plaintiffs request that defendants be enjoined from inducing or facilitating copyright infringement via the TorrentSpy website. Plaintiffs' claims for injunctive relief will be defeated if defendants are permitted to transfer the TorrentSpy assets to another entity. Given that TorrentSpy is well-known in the pirate community as a source for copyrighted content, such a transfer would almost certainly permit the widespread infringement of plaintiffs' copyrighted works to continue unabated.

Further, plaintiffs are unable to rely on defendants' bare assertions that they have no intention of transferring the TorrentSpy assets. Throughout this litigation,

NOTICE OF EX PARTE APP. &
EX PARTE APP. FOR TRO AND OSC RE
PRELIMINARY INJUNCTION TO
PRESERVE ASSETS

defendants have destroyed evidence and (as found by the Court and the Magistrate Judge) made material misrepresentations in an attempt to gain an advantage in this litigation. On December 13, 2007, this Court found that defendants had engaged in such willful destruction of evidence and other misconduct that terminating sanctions should be imposed and default entered against defendants, specifically concluding that defendants "have engaged in widespread and systematic efforts to destroy evidence and have provided false testimony under oath in an effort to hide evidence of such destruction." Dec. 13, 2007 Order at 15. Moreover, following default, defendants continued to operate the TorrentSpy website despite a finding of liability.

Given defendants' track record, there is a significant risk that defendants will attempt to transfer the TorrentSpy assets for immediate pecuniary gain, as Internet reports have suggested. And most tellingly, defendants have refused to agree to a stipulation that they not transfer the TorrentSpy assets, or even give the plaintiffs reasonable notice of an intent to transfer the TorrentSpy assets, during the pendency of the litigation. There is no reason for defendants not to agree to such a basic and straightforward stipulation, other than the possibility that defendants do intend to transfer the TorrentSpy assets to a third party. Plaintiffs' only recourse is to seek relief from the Court.

## FACTUAL BACKGROUND

On December 13, 2007, the Court entered an order granting plaintiffs' motion for terminating sanctions and directing the clerk to enter default against defendants, and default was entered in December 17, 2007. Upon the entry of default, the allegations of plaintiffs' complaint are taken to be true. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

In their complaint, defendants specifically claim that "[p]ursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of their copyrights and exclusive rights under copyright." *See* Complaint (Docket No. 1). Pursuant to the Court's order of March 31, 2008,

Plaintiffs will file and serve their proposed Permanent Injunction regarding their copyright claims by April 14, 2008.

In the last few days, shortly after defendants shut down the TorrentSpy website, at least two Internet reports have suggested that the defendants have offered to sell the torrentspy.com domain. Fabrizio Decl ¶ 3; Exs. 2, 3. One of those items appeared on a website dedicated to discussions of BitTorrent websites that are widely used for copyright infringement. Given the clandestine world in which defendants and their fellow infringers operate, these posts may be the best (and only) indicia that plaintiffs receive prior to transfer of the TorrentSpy assets. The danger to the plaintiffs is clear: any individual or entity that obtained the TorrentSpy assets could re-launch the TorrentSpy website, which has an established "brand name" as a website where copyrighted works are available for infringement. Indeed, the TorrentSpy assets would have little value to any potential transferee other than the website's notoriety as a means to obtain infringing content. And the transfer may be effected to individuals or entities whose identities the plaintiffs may be unable to discern, or who may reside outside of the United States.

In response to these reports, and recognizing the irreparable injury that could occur if defendants succeed in transferring the TorrentSpy assets, plaintiffs' counsel requested that defendants enter a stipulation agreeing that they not transfer the TorrentSpy assets. Fabrizio Decl. ¶ 4. In the alternative, plaintiffs' counsel proposed that defendants provide the plaintiffs with a reasonable 14-day notice of an intent to transfer the TorrentSpy assets, which would allow the plaintiffs to seek court intervention prior to any such transfer. *Id.* Defendants have refused to enter such a stipulation.

Thus, plaintiffs seek narrow and focused injunctive relief to preserve the status quo until the Court rules on plaintiffs' proposed final injunction, by ensuring that defendants do not transfer the assets that they have used to induce, facilitate and profit from infringement of plaintiffs' copyrighted works. Allowing the defendants

4

NOTICE OF EX PARTE APP. &
EX PARTE APP. FOR TRO AND OSC RE
PRELIMINARY INJUNCTION TO
PRESERVE ASSETS

to transfer the TorrentSpy assets would cause irreparable harm in that it would enable them to frustrate the injunctive relief requested by plaintiffs and would lessen defendants' ability to satisfy a final judgment.

## ARGUMENT

### I. LEGAL STANDARD.

To obtain a temporary restraining order or preliminary injunctive relief, the plaintiffs must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) serious questions raised and the balance of hardships tipping in the moving party's favor. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). These alternative sets of criteria "represent two points on a sliding scale" in which the requisite probability of success decreases as the degree of irreparable harm increases. *Prudential Real Estate*, 204 F.3d at 874; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

As explained below, the plaintiffs make a showing that satisfies either of these formulations. This Court has already entered default against defendants and therefore has concluded that defendants are liable for willful copyright infringement via the Torrentspy website. Further, the copyright infringement gives rise to a presumption of irreparable harm to plaintiffs, and all the traditional equitable factors favor granting the injunction.

The Court has authority to grant the limited asset preservation order in order to preserve the status quo and the Court's ability to impose the equitable remedies requested by plaintiffs. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992). Additionally, Rule 64 of the Federal Rules of Civil Procedure gives the Court the power to seize property to prevent defendants from dissipating assets that may be necessary to satisfy a judgment to the extent authorized under the

relevant state law, and California law expressly provides such a remedy. Cal. Civ. P. Code § 526(a)(3).

## II. THE PLAINTIFFS SATISFY THE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF.

There is no question here that plaintiffs have satisfied the requirements for preliminary injunctive relief. First, because default has been entered against defendants, the allegations of the complaint must be taken as true, and defendants have been found liable for willful copyright infringement, including the intentional encouragement and promotion of the massive infringement of plaintiffs' copyrighted motion pictures and television programs. *See Fair Housing of Marin*, 285 F.3d at 906. Thus, plaintiffs have already prevailed on the merits. All that remains is for the Court to determine the amount of damages and award final injunctive relief.

Second, as to the traditional indicia of irreparable harm, in a copyright infringement action, "a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1155 (9th Cir. 2006) (citation omitted). "A copyright holder seeking a preliminary injunction is . . . not required to make an independent demonstration of irreparable harm." *Id*. at 1155-56 (citing 4 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.06[A] (2004)); *see also id*. at 1156 (plaintiff "'need only show a reasonable likelihood of success on its copyright infringement claim' to obtain a preliminary injunction" (quoting *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989)). And in any event, it is clear that a transfer of assets used to infringe plaintiffs' copyrighted works will cause irreparable harm to plaintiffs. Such a transfer would enable other pirate operators to continue operating TorrentSpy and infringing plaintiffs' copyrighted works, notwithstanding the entry of a final judgment against defendants here. And because it is possible, if not likely, that any transfer would be

to a pirate operator outside the United States, further enforcement of plaintiffs' rights would be difficult.

At the same time, there will be no cognizable harm to defendants caused by entry of the narrow injunctive relief requested. The only possible detriment to defendants is a restriction on their ability to sell the TorrentSpy assets. However, the value that defendants would receive from the sale of the TorrentSpy assets would be based almost entirely on the widespread association of the TorrentSpy website with copyright infringement, a purpose for which it is overwhelmingly used. Selling the TorrentSpy assets would only allow the defendants to make additional profits from their infringing activities. *See Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown to be infringing, such an argument in defense merits little equitable consideration").

Finally, in copyright cases, "the issue of public policy is a genuine issue if the copyright owner has established a likelihood of success," *id.*, because "the public interest is the interest in upholding copyright protections." *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993). "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). The public interest will be served by restraining the transfer of a website used almost exclusively for copyright infringement. Indeed, as explained above, because the website is well-known for copyright infringement, it is likely to be used for that purpose if transferred.

## III. THE COURT IS AUTHORIZED TO ISSUE PRELIMINARY INJUNCTIVE RELIEF TO PRESERVE THE TORRENTSPY ASSETS.

As explained above, preliminary relief to preserve the status quo by restraining defendants from transferring the TorrentSpy assets is warranted on the facts here. Courts routinely issue such narrow and targeted asset preservation orders, and this Court has ample authority to do so pursuant to its equitable power to preserve potential equitable remedies against defendants, and its power under Rule 64 to prevent defendants from dissipating assets that may be necessary to satisfy a judgment.

First, the Court has the inherent equitable power to issue provisional remedies "ancillary to its authority to provide final equitable relief," *Reebok*, 970 F.2d at 559, including the power to enjoin defendants "from dissipating assets in order to preserve the possibility of equitable remedies." *Id.* (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) (en banc)); *accord Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940). A plaintiff is entitled to this remedy whenever it "asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets." *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004) (quotation marks omitted); *accord Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d, 878, 882 n.4 (9th Cir. 2003). Specifically, "a court may . . . invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *Focus Media*, 387 F.3d at 1085 (quoting *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999)); *see also Oncology Assocs.*, 198 F.3d at 497, 499 (examining whether asset freeze was "a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed" and holding "district court was

authorized by its traditional equitable power to issue a preliminary injunction . . . freezing the assets of the defendants").[3]

Plaintiffs' complaint against defendants seeks, *inter alia*, an injunction against copyright infringement via the TorrentSpy website.[4] Plaintiffs will be unable to obtain this remedy, however, if defendants are permitted to transfer the TorrentSpy assets to another entity outside of defendants' control. Therefore, plaintiffs are entitled to an injunction to maintain the status quo. *See Focus Media*, 387 F.3d at 1085; *Marcos*, 862 F.2d at 1362. Indeed, courts routinely enter injunctions against the transfer of assets related to the dispute in the case, including domain names. *See, e.g., Williams-Sonoma, Inc. v. FriendFinder, Inc.*, No. C 06-6572 JSW (MEJ), 2007 WL 4973848, at *10 (N.D. Cal. Dec. 7, 2007) (temporarily enjoining transfer of all domain names in defendants' possession that had been used to violate plaintiffs' trademarks as ancillary to its power to grant plaintiffs equitable relief); *see also Deckert*, 311 U.S. at 290 (holding injunction restricting transfer of funds to which parties had conflicting claims to be "a reasonable measure to preserve the status quo pending final determination of the questions raised" in the action); *Folz v. U.S. News & World Report*, 760 F.2d 1300, 1309 (D.C. Cir. 1985) (holding that preliminary injunction restraining disbursements from pension fund may be

---

[3] Aside from its inherent power, the Court also has expansive equitable authority under the Copyright Act "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a); *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007) ("The Copyright Act gives courts broad authority to issue injunctive relief.").

[4] The complaint also seeks monetary damages, but "[t]hat money damages are claimed along with equitable relief does not defeat the district court's equitable powers." *Oncology Assocs.*, 198 F.3d at 498.

appropriate in order "to preserve the *status quo* to the extent of keeping alive an otherwise viable, statutorily provided cause of action").

The requested injunction here is narrow and targeted at specific assets that are the vehicle through which defendants conducted their infringing activities. In fact, it is significantly *narrower* than the one affirmed in *Reebok*, which froze *all* of defendants' assets in order to prevent the defendant from undermining the court's ability to conduct an equitable accounting of profits. *See Reebok*, 970 F.2d at 559-60.

Second, as another basis for the injunctive relief requested here, Rule 64 of the Federal Rules of Civil Procedure grants the Court the power to exercise "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. This includes "any state-authorized injunctive relief for freezing assets to aid in satisfying the ultimate judgment in a case." *Oncology Assocs.*, 198 F.3d at 501; *accord FDIC v. Antonio*, 843 F.2d 1311, 1313-14 (10th Cir. 1988); *Lechman v. Ashkenazy Enters., Inc.*, 712 F.2d 327, 330 (7th Cir. 1983).

California law expressly authorizes asset-freezing injunctions in situations such as this one. For example, Cal. Civ. P. Code § 526(a)(3) authorizes issuance of a preliminary injunction:

> [w]hen it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

Cal. Civ. P. Code § 526(a)(3). Similarly, subsection 526(a)(2) authorizes preliminary injunctive relief:

> [w]hen it appears by the complaint or affidavits that the commission or continuance of some act during the litigation

would produce waste, or great or irreparable injury, to a party to the action.

*Id.* § 526(a)(2).

These provisions are also specifically intended to prevent a defendant from divesting itself of assets or otherwise disrupting the status quo to avoid the efficacy of equitable relief. Accordingly, numerous cases hold that courts can enjoin the transfer or disposition of property to preserve the status quo and the possibility of equitable relief. *E.g., Dodge, Warren & Peterson Ins. Serv's, Inc. v. Riley*, 105 Cal. App. 4th 1414, 1419 (Cal. App. 4th Dist. 2003) (court could enjoin destruction or other disposal of electronically-stored files in possession of plaintiff's former employees pending discovery in action against employees for trade secret misappropriation); *Assoc. California Loggers, Inc. v. Kinder*, 79 Cal. App. 3d 34, 45 (Cal. App. 2d Dist. 1978) (court could enjoin state agency from canceling certain service contracts pending determination of the contracts' validity); *Wind v. Herbert*, 186 Cal. App. 2d 286 (Cal. App. 2d Dist. 1960) (court could enjoin all interference with partnership assets by any partner pending a wind up of business).

## CONCLUSION

For these reasons, the court should temporarily enjoin defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, from selling, transferring or otherwise disposing of the torrentspy.com domain, or the technology that comprises the TorrentSpy website, either by acting individually or through any corporation or other entity that they own, control, or operate, until such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief. Further, the Court should issue an Order to Show Cause why this same restraining order should not be entered as a preliminary injunction.

Dated: April 4, 2008

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
  JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
  LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
  15301 Ventura Boulevard, Bldg E
  Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*