|   |   |
|---|---|
| 1 | **Ira P. Rothken (SBN #160029)** |
| 2 | ROTHKEN LAW FIRM LLP |
|   | 3 Hamilton Landing, Suite 280 |
| 3 | Novato, CA 94949 |
| 4 | Telephone: (415) 924-4250 |
|   | Facsimile: (415) 924-2905 |
| 5 |   |
| 6 | **Kirk J. Retz (#170208)** |
| 7 | LAW OFFICES OF KIRK J. RETZ, APC |
|   | 21535 Hawthorne Blvd., #200 |
| 8 | Torrance, CA 90503 |
| 9 | Telephone: (310) 540-9800 |
|   | Facsimile: (310) 540-9881 |
| 10 |   |
| 11 | Attorney for Defendants |
| 12 | Justin Bunnell, Forrest Parker, Wes Parker and Valence Media, Ltd. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| COLUMBIA PICTURES INDUSTRIES, INC., et al. | ) **Case No. 06-01093 FMC (JCx)** |
|---|---|
|         Plaintiffs, | ) **DEFENDANTS' EX PARTE** |
| vs. | ) **APPLICATION FOR LEAVE TO** |
|   | ) **FILE A MEMORANDUM IN** |
|   | ) **CONNECTION WITH DEFAULT** |
|   | ) **HEARING** |
| JUSTIN BUNNELL, et al., | ) |
|         Defendants. | ) Date: April 7, 2008 |
|   | ) Time: Ex Parte |
|   | ) Judge: Florence Marie Cooper |
|   | ) Ctrm: 750 |

-1-
**DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A MEMORANDUM
IN CONNECTION WITH DEFAULT HEARING**
Columbia Pictures et. al. v. Bunnell et. al. U. S. Dist. Ct., Cent. Dist. Cal., No. CV 06-1903 FMC (JCx)

Defendants Justin Bunnell, Forrest Parker, Wes Parker and Valence Media, LLC (hereinafter "defendants") request leave of court to file a memorandum of points and authorities in connection with the default prove-up hearing now set for May 5, 2008; such memorandum would be in the style of a trial brief. Local Rule 55-2 authorizes defendants to file declarations in opposition to a motion for default judgment but is silent as to any memorandum.

Defendants submit that a memorandum is appropriate in this case because of the novelty and complexity of the issues, the need for some quantum of due process, the potential presence of First Amendment issues related to information on the Internet, and because of national policies[1] that may be affected by the judgment and related Orders. Defendants anticipate that this court's default judgment may establish an important precedent in the substantive law of secondary (or tertiary) copyright infringement over the Internet, the nature and impact in carving out a default remedy related to prior findings related to e-discovery issues, the tension between International law[2] and legal obligations in the US, issues related to extraterritoriality, and defendants submit that such a precedent ought not to be established without careful evaluation of the implications.

Defendants also ask for more relaxed scheduling that will allow defendants to meet plaintiffs' evidence and prepare the most cogent possible memorandum.

Plaintiffs' complaint and the current status of the law in this area show why defendants should be allowed to file a memorandum of points and authorities. The complaint seeks to interpret current law so as to apply to a new kind of technology. Involving older technology, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919;

---

[1] National policies: "promote the continued development of the Internet," "preserve [its] vibrant and competitive free market" and "encourage the development of technologies which maximize user control." 47 U.S.C. § 230(b).

[2] Torrentspy.com's servers were and are located in the Netherlands and subject to the law of that nation and the European Union.

125 S. Ct. 2764; 162 L. Ed. 2d 781 (2005) dealt with "one who distributes a device with the object of promoting its use to infringe copyright." Here, defendants did not distribute a "device" but defendants only distributed non-copyrighted "torrent" files and links, nothing but *information* that, defendants submit, is protected by the First Amendment to the United States Constitution.

One of the lessons assumed from Grokster but rarely scrutinized is that the now famous inducement holding, pled by the plaintiffs in the complaint upon which they are seeking a default, applies to search engines and almost any other type of web service. But a closer reading raises the question whether the inducement liability holding in Grokster even applies to Internet search engines or link sites like Google or Torrentspy or other torrent file search engines. As stated in Grokster:

> The question is under what circumstances the distributor of a **product** capable of both lawful and unlawful use is liable for acts of copyright infringement by third parties **using the product**. We hold that one who distributes a **device** with the object of promoting **its use to infringe copyright**, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.

Further down in the opinion Justice Souter further clarifies and states:

> In addition to intent to bring about infringement and distribution of a **device suitable for infringing use**, the inducement theory of course **requires evidence of actual infringement by recipients of the device**, the software in this case.

If one were to read and "scrutinize" the actual issue and holding of Grokster above it would seem to only apply to "products" or "devices" that can be "used" by third parties to commit copyright infringement. The Grokster software "device" handled

the allegedly illegal copying between computers - it was "used" for the copyright infringement.

But that is arguably not the case with Internet search engines or sites that manifest hyperlinks to dot torrent files like Torrenstpy.com. First it is arguable that a search engine is not a device or product (like say the executable software "product" at issue in Grokster) <u>but even if it is</u> - it is hard to understand how a third party can <u>use</u> such a device for the actual commission of copyright infringement.

For example, if one were to query Google for a famous musician's song unauthorized to be on the net and then click on the link to download it from a third party site the Google search engine is not being used to commit copyright infringement as no copying is being done using the Google site or "device" - the copying is being done using the surfer's browser "device" directly connected to a third party site after the connection with Google is lost. In other words search engine result hyperlinks are not a device that can be "used" to commit copyright infringement - that device usually is the user's browser (or like in the Grokster case the thin client software known as Grokster) directly connecting to a third party site or server (the recent case of *Perfect 10 v. Google,* 487 F.3D 701 (9th Cir. 2007) provides support for this view related to the connection between the user and the third party site after a hyperlink is clicked through). Torrentspy is arguably further removed from potential downstream infringements than Google as Torrentspy provided hyperlinks to dot torrent files (text like files) that when clicked on were downloaded to the user's hard drive – after the connection with Torrenstpy was lost the user could if they wanted to then load up their software "device" namely the Bittorrent software, load the torrent file, and then possibly download potential infringing files – thus the notion that Grokster does not apply to web sites that provide mere hyperlinks is even more compelling for Torrentspy. Recipients of the Torrentspy search engine or hyperlink device cannot <u>use</u> such <u>device</u> to <u>commit</u> copyright infringement and therefore defendants would argue and request the

opportunity to argue in a more robust memorandum (after viewing plaintiff's motion) that Grokster and the inducement theory do not apply to Internet search engines.

In addition, given the notion that Torrentspy provided information and it is such information that involves the core of the site and this case, the First Amendment is squarely at issue. Indeed, it is hard to find any cases where a web site did not provide hyperlinks to copyrighted works and did not have copyrighted works passing through its servers or a software device (like in Napster and Grokster) wherein such site was held liable for secondary copyright infringement under any theory – this may be a case of first impression and even in a default scenario should not be decided until the court is satisfied that plaintiffs have a real claim, with defendants this far removed from downstream conduct having real responsibility for potential off site infringements legally recognizable under the law.

In a series of decisions, the United States Supreme Court and lower federal courts have protected speech over the Internet because the Internet provides "the most participatory form of mass speech yet developed,"[3] a statement that especially applies to BitTorrent technology at issue here.

Moreover, the ways that defendants carried out their operations were representative of a large number of similar operations. TorrentSpy's operating services and functions that may be a focus of the court's opinion – such as "robots and spiders" that search the Internet for torrent files, system for uploading of torrent

---

[3] *ACLU v. Reno*, 929 F. Supp. 824 (E.D. Pa. 1996) at 883, upheld in *Reno v. ACLU*, 521 U.S. 844, 870, 138 L. Ed. 2d 874, 117 S. Ct. 2329 (1997). See also *Ashcroft v. ACLU*, 542 U.S. 656, 673, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004) (burden of filtering Internet content for materials harmful to children should be borne by parents rather than by constraining general Internet activity); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445-449 (2nd Cir. 2001). ("Communication does not lose constitutional protection as 'speech' simply because it is expressed in the language of computer code.")

files, search engines, home page reports on and links to popular downloads or dot torrent files, categories or directories, forums, moderators – are all widespread over the Internet. Plaintiffs and others, e.g., developers, investors and entrepreneurs, may read the court's opinion as a judgment on sectors of an industry. Plaintiffs may seek to use the court's order when making demands on other operators and stating to many that the case was decided on the merits and that Defendants are copyright infringers. Defendants submit that the interests of other operators, the First Amendment, due process, and public policy should be considered in connection with the default judgment hearing.

For purposes here, the Court could take supportable factual allegations of the complaint to be true in the default but not "legal conclusions, which [defendants] are not held to have admitted through default." *DirecTV v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). See also *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, (9th Cir. 1988) (defendant "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment."); *Interscope Records v. Rodriguez*, 2007 U.S. Dist. LEXIS 60903, CIV. NO. 06cv2485-B (NLS) (S.D. Cal. 2007) (applies standard of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) to evaluate strength of copyright infringement allegations, motion for default judgment denied.)

According to the complaint, copyrights protecting plaintiffs' movies and television programs are infringed by activities involving "an online computer network known as 'BitTorrent.'" (Complaint, ¶¶ 4-6.) Defendants' former website, TorrentSpy, was part of the BitTorrent Network.[4] BitTorrent is a peer-to-peer network optimized for the copying and distribution of large files. Actual file exchanges, which are the directly infringing acts, take place between users or

---

[4] TorrentSpy ceased providing services to persons connecting through U.S. providers in August, 2007. TorrentSpy shut down completely on March 24, 2008.

"peers," each a person with a BitTorrent "client application" in his or her personal computer. In addition to the class of users, there is a class of indexing websites known as "torrent sites" and a class of computer servers known as BitTorrent "trackers." (*Id*., 7-10.)

Defendants were sued solely as a member of the class of "torrent sites" that provides mere hyperlinks to dot torrent files and related services. Plaintiffs' allegation: "Whether BitTorrent is used for legitimate purposes or copyright infringement is determined by those who operate its websites and its servers," applies to torrent sites. (*Id*., ¶ 7.) It is undisputed that BitTorrent is used to distribute large volumes of non-infringing materials, such as independent video productions, or that software, games and updates are routinely distributed by BitTorrent. Hollywood distributes its own products through controlled BitTorrent sites. Defendants operated a "comprehensive aggregator," gathering material from all available sources, like Google, but specializing as an information node for torrent files and links. There were and are competitors in providing this service to Internet visitors and such aggregators play an essential role in BitTorrent technology. In other words, aggregator torrent sites like the former TorrentSpy provide essential functions in the BitTorrent environment or ecosystem.

Torrent sites like the former TorrentSpy provide "small files known as 'torrents.'" Loaded into the client application under the control of the user and in the user's personal computer, a torrent "instruct[s] a user's computer where to go and how to get the desired file. Torrents interact with specific trackers..." (*Id*., ¶ 12.) Any file exchange occurs after termination of all connections between the visitor and the torrent site.

> "Torrent sites play an integral role in the process of using BitTorrent to download files. Without them, users could not identify, locate or download infringing files. Indeed, the content available on the BitTorrent network is defined entirely by what files the ***operators of***

-7-
**DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A MEMORANDUM IN CONNECTION WITH DEFAULT HEARING**
Columbia Pictures et. al. v. Bunnell et. al. U. S. Dist. Ct., Cent. Dist. Cal., No. CV 06-1903 FMC (JCx)

*torrent sites* – such as Defendants – choose to allow to be indexed and distributed." (*Id*., ¶ 14, emphasis added.)

"The fact is that Defendants easily could prevent infringement of Plaintiffs' copyrighted works by not indexing torrent files corresponding to Plaintiffs' copyrighted works." (*Id*., ¶ 29.)

There is no allegation that defendants themselves engaged in direct copyright infringement. What defendants did was to provide information services and information to visitors who used such information to find partners for file exchanges, infringing or not. As shown by plaintiffs' allegations, there is a class of persons, "operators of torrent sites," who may be affected by a judgment issued by the court. For example, if the court were to find as a matter of fact that an operator of a torrent site "could easily prevent infringement of Plaintiffs' copyrighted works,"[5] such a finding could have serious consequences for other torrent site operators – especially because the proposition is not factually correct. (See *A & M Records, Inc. v. Napster, Inc.*, 2001 U.S. Dist. LEXIS 2186, No. C MDL-00-1369 MHP, 2001 WL 227083 (N.D. Cal. Mar. 5, 2001) (Patel, C.J.), aff'd, 284 F.3d 1091 (9th Cir. 2002) for some of the difficulties to be anticipated in "filtering" files.)

In a default hearing, damages must be actually proved. *TeleVideo Sys. Inc. v. Heidenthal*, 826 F.2d. 915, 917 (9th Cir. 1994). Defendants are unable at this time to understand how plaintiffs can prove damages or how any statutory damages can

---

[5] It is hard to imagine how a site, like Torrentspy, that does not have copyrighted works on its servers or going through them and no software device like in Napster and Grokster can know in advance of hyperlinking to torrent files which torrent files lead to unauthorized infringing works in a given jurisdiction and which ones don't other than via the cooperation of the copyright holders who assist in a filtering process. Also, such an assertion is inconsistent with the expert testimony of plaintiff's expert Professor Horowitz who indicated in summary that some off site infringement must be pragmatically tolerated using a keyword filtering system. Defendants would like the opportunity to bring to the Court's attention in a memorandum plaintiffs' own evidence provided in discovery that casts doubt on the allegations made in the complaint at issue in the default as Plaintiffs should not be allowed to assert facts in a complaint even in a default unsupported by their own evidence or expert witnesses.

pass due process muster.[6] After thorough discovery of the issue, defendants via discovery do not know of any actual infringing downloads made by third parties by means of a torrent file acquired from or link listed at Torrentspy that infringed upon the copyrights identified in Exhibit A to the complaint. Traditionally, an actual download by an unauthorized person is required for proof of secondary liability. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 693, 706 (2d Cir. 1998) (**failure to identify any direct infringer other than plaintiffs' counsel**). It appears that plaintiffs may be seeking to impose some kind of liability based on a novel theory of "availability of torrent files" that should receive careful scrutiny and certainly should be rejected.[7]

Plaintiffs are seeking to adapt legal principles established for older kinds of technology into principles appropriate to a new kind of technology. Adaptations that plaintiffs seek may not be legally proper or may lead to a course of development that is not in the public interest. In the parallel case of *Columbia Pictures Industries, Inc. v. Gary Fung et. al.* (CV-06-05578 SVW (JCx)), with a closely similar Complaint, Plaintiffs' Motion for Summary Judgment as to Liability is pending. On April 3, 2008, Judge Wilson issued a Minute Order (a copy of which is attached hereto) asking for supplemental briefing that includes

> "a further description of the separate components involved in the bit-torrent downloading process used by Defendants' website. From the moving papers and the oral arguments, it is unclear which of the

---

[6] The notion of default should not be elevated to be a "free for all" by the plaintiff to obtain more than a fair remedy and a potential punishment by default – such an approach would violate public policy and due process.

[7] Indeed, it is anticipated that plaintiffs will attempt to use evidence gathered while Torrentspy.com was made unavailable to US users and thus, unless someone tricked the Torrenstpy system to get access, such activity was extraterritorial in nature.

components involved are distributed or provided by Defendants. Supplemental briefing should also include a brief explanation of the interaction between these components and Defendant Fung's website, as well any connection with the copying of actual files and the services Defendants provide."

Judge Wilson also noted that there was a:

"dispute whether there is a 'product' at use in this case, and whether Defendants place any product into commerce for purposes of contributory infringement. The parties should discuss whether the programs and components involved in this case fall within such a definition."

Defendants submit that before the court extends prior law into a new area of technology, the court should critically examine plaintiffs' claim. Based on the allegations of the complaint, and anticipating the nature of plaintiffs' proposed amendments, defendants expect to ask the court to deny the default judgment on the single claim alleged (as in *Hoa Huynh*, surpa). This is not a "device" or "product" case like *Grokster*; hence, the *Grokster* inducement theory does not apply here. More generally, defendants did not place any copying device or product into commerce and the information defendants did put into commerce is speech protected by the First Amendment. In *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007), the court held that a theory of vicarious liability could not be sustained against Google because Google did not have "the legal right to stop or limit the direct infringement of third-party websites," exactly the situation here.

On May 10, 2006, this Court denied defendants' Motion to Dismiss. In its Order Denying the Motion 10:4-5, the Court responded to defendants' concern "that some of the allegations in Plaintiffs' Complaint are conclusory." The court found that

**DEFENDANTS' EX PARTE APPLICATION FOR LEAVE TO FILE A MEMORANDUM IN CONNECTION WITH DEFAULT HEARING**
Columbia Pictures et. al. v. Bunnell et. al. U. S. Dist. Ct., Cent. Dist. Cal., No. CV 06-1903 FMC (JCx)

"those conclusions can reasonably be drawn from the facts because the knowing facilitation of direct infringement can reasonably be inferred from the way Defendants' website is alleged to be organized and operated. [Citation.] Plaintiffs need not present evidence that would persuade a fact finder that this is the correct inference to be drawn at this early stage in the litigation; rather, in order to prevail in a Motion to Dismiss, Defendants would need to demonstrate that Plaintiffs can prove no set of facts in support of the claims that would entitle them to relief. Defendants have not done so here." (*Id*., at 10:5-13.)

Defendants submit that the examination undertaken during the Motion to Dismiss does not satisfy the more detailed scrutiny needed during the default judgment hearing. We are at the final stage of the litigation, not at an "early stage." Defendants further note that the legal standard for sufficiency of the claim has been changed and that the "no set of facts" language of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) has been put into "retirement." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007).

Defendants further submit that important judicial decisions have been filed since the Court's ruling in March of 2006, especially *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, supra.

The foregoing issues are illustrative of the considerations that should be before the Court before rendering the default judgment both in terms of determining whether a legally recognizable claim exists and whether damages, statutory or otherwise can be provided.

On April 4, 2008, defendants gave notice to plaintiffs of defendants' intention to file this application. In response, plaintiffs' counsel asked defendants to advise the Court that plaintiffs oppose the application and that plaintiffs will file a brief in opposition.

For the foregoing reasons, defendants respectfully request that the Court allow

defendants to file a memorandum of points and authorities in connection with the default hearing now set for May 5, 2008. Defendants further respectfully request that the Court re-schedule the hearing and set a briefing schedule. Such relaxation of deadlines will give defendants sufficient time to respond to plaintiffs' evidence and memorandum so as to be able to provide the best possible briefing to the Court.

Dated:   April 7, 2008              Respectfully submitted,
                                    ROTHKEN LAW FIRM

                                    _____
                                    Ira P. Rothken, Esq.,
                                    Attorney for Defendants

EXHIBIT A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-5578 SVW (JCx) | Date | April 3, 2008 |
|---|---|---|---|
| Title | COLUMBIA PICTURES INDUSTRIES, INC., *et al.*, Plaintiffs, v. GARY FUNG, *et al.*, Defendants | | |

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

N/A    N/A

**Proceedings:** IN CHAMBERS ORDER re PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT ON LIABILITY [265]

    The Court currently has under consideration Plaintiffs' Motion for Summary Judgment on Liability. Before the Court issues its order, it would benefit from supplemental briefing regarding certain issues presented in the moving papers and at oral arguments. Specifically, the Court would benefit from a further description of the separate components involved in the bit-torrent downloading process used by Defendants' website. From the moving papers and the oral arguments, it is unclear which of the components involved are distributed or provided by Defendants. Supplemental briefing should also include a brief explanation of the interaction between these components and Defendant Fung's website, as well any connection with the copying of actual files and the services Defendants provide.

    Additionally, it appears from oral arguments that the parties dispute whether there is a "product" at use in this case, and whether Defendants place any product into commerce for purposes of contributory infringement. The parties should discuss whether the programs and components involved in this case fall within such a definition.

    The Court provides the following briefing schedule for the parties along with page limitations:

> Plaintiffs' Supplemental Brief of no longer than twelve (12) pages to be filed by April 18, 2008.
> Defendants' Opposition Supplemental Brief of no longer than twelve (12) pages to be filed by April 25, 2008.
> Plaintiffs' Reply Supplemental Brief of no longer than four (4) pages to be filed by April 29, 2008.

:

Initials of Preparer    PMC