JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br>*Plaintiffs*,<br><br>v.<br><br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,<br>*Defendants*. | Case No. CV-06-1093 FMC (JCx)<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br><br>Date: May 5, 2008<br><br>Time: 10:00 a.m.<br><br>Ctrm: 750<br><br>Judge: Hon. Florence-Marie Cooper |

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Monday, May 5, 2008, or as soon thereafter as counsel may be heard in the Courtroom of the Honorable Florence-Marie Cooper, 255 East Temple Street, Los Angeles, California 90012, the plaintiffs Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Paramount Pictures Corporation, TriStar Pictures, Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLLP, Universal City Studios Productions LLLP, and Warner Bros. Entertainment Inc. ("plaintiffs") in Case No. CV-06-1093 FMC (JCx) will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of default judgment by the Court against defendants Justin Bunnell, Wes Parker, and Valence Media Ltd. ("defendants").[1]

The amount of judgment sought in the Motion is $554,850,000, or the maximum statutory damage amount of $150,000 for each of the 3,699 identified copyrighted works, the rights to which are owned or controlled by plaintiffs as set forth in the declarations submitted herewith, that have been willfully infringed by these defendants. *See* 17 U.S.C. §§ 504(a), (c). The amount sought is warranted for the reasons stated in the accompanying Memorandum, including without limitation because of (i) the intentional and willful nature of defendants' conduct, (ii) defendants' egregious misconduct in this litigation, (iii) the compelling need to deter both defendants and other similar would-be infringers, (iv) the value of the

---

[1] On April 11, 2008, defendant Forrest Parker served notice of an automatic bankruptcy stay based on his April 7, 2008 filing of a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code. The automatic stay does not affect this action or this motion as to any other defendant. *See Cohen v. Stratosphere Corp.*, 115 F.3d 695, 697 (9th Cir. 1997) (applying automatic stay only to bankrupt debtor and not to non-bankrupt codefendants). Plaintiffs reserve all rights to contest Forrest Parker's Voluntary Petition, including without limitation seeking to lift the automatic stay for all or parts of this action.

copyrighted works infringed and the manifest harm to plaintiffs, and (v) the sheer scope and volume of defendants' infringement, where the copyrighted works identified in this Motion undoubtedly represent only a small fraction of plaintiffs' copyrighted motion pictures and television programs that have been infringed by defendants.

The Motion is and will be based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Duane C. Pozza, Alfred Clinton Perry, Albert Cheng, Gary Lim, David Kaplan, Rani Cherkoori, Jane Sunderland, and Steve Kang, submitted herewith, the Court records and files, and upon such other evidence and argument that may be offered at the hearing on the Motion. Default was entered against defendants on December 17, 2007. This Motion is being filed pursuant to the Court's April 11, 2008 Order.

Respectfully submitted,

Dated: April 21, 2008

JENNER & BLOCK LLP

By: ______________________
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
15301 Ventura Boulevard
Building E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 4

I. Plaintiffs Are Entitled to an Entry of Default Judgment and Statutory Damages For Willful Infringement Under the Copyright Act. .......... 4

II. The Court Should Award Statutory Damages In the Amount of $554,850,000. .......... 7

A. Each Title Listed in the Pozza Declaration Represents An Infringed Copyrighted Work For Which Defendants Are Liable. .......... 7

B. Plaintiffs Should Receive the Statutory Maximum For Each Work Infringed. .......... 16

1. The Willful Nature of Defendants' Infringing Conduct (Factor #5) .......... 18

2. Conduct During the Litigation (Factor #6). .......... 20

3. Defendants' Profits (Factor #1). .......... 22

4. Harm to Plaintiffs (Factor #2) and Value of Copyrights (Factor #3). .......... 22

5. The Need to Deter Other Parties (Factor #4) and Defendants (Factor #7). .......... 23

CONCLUSION .......... 24

## TABLE OF AUTHORITIES

### CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)........ 9, 15

*BMG Music v. Gonzales*, 430 F.3d 888 (7th Cir. 2005) ................................ 9

*Columbia Pictures Film Prod. Asia Ltd.. v. Uth*, No. CIV S-06-1054 FCD DAD, 2007 WL. 36283 (E.D. Cal. Jan. 4, 2007)................. 5, 18, 23

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001) .................................................. 6, 20

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)........................................................................................ 12

*Disney Enterprise, Inc. v. Farmer*, 427 F. Supp. 2d 807 (W.D. Tenn. 2006) .............................................................................................. 5

*Elektra Entertainment Group v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL. 783123 (C.D. Cal. 2004) ....................................... 5, 6, 12, 23

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ........................................... 5

*Entral Group Int'l LLC v. Sun Sports Bar, Inc.*, No. 05-CV-4836 (CBA), 2007 WL. 2891419 (E.D.N.Y. Sept. 27, 2007) ................... 17, 20

*F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 73 S. Ct. 222, 97 L. Ed. 276 (1952)................................................................... 24

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir 2002)..................... 4

*Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977)......................... 4

*Hi-Tek Bags, Ltd. v. Bobtron International, Inc.*, 144 F.R.D. 379 (C.D. Cal. 1992).................................................................................... 14

*Hook v. Arizona Department of Corrections*, 107 F.3d 1397 (9th Cir. 1997) ......................................................................................... 13

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir.1997) .......... 15

*Kennedy v. Southern California Edison Co.*, 268 F.3d 763 .......... 7, 12

*Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283 (2d Cir. 1999) .......... 17, 20, 24

*Los Angeles News Serv. v. Reuters Television International, Ltd.*, 149 F.3d 987 (9th Cir. 1998) .......... 6

*Macklin v. Mueck*, No. 00-10492-CIV, 2005 WL. 1529259 (S.D. Fla. Jan. 24, 2005) .......... 17

*Microsoft Corp. v. Nop*, No. 07-1276, 2008 WL. 686584 (E.D. CAl. Mar. 11, 2008) .......... 19, 20

*Motown Record Co. v. DePietro*, No. 04-CV-2246, 2007 WL. 576284 (E. D. Pa. Feb.16, 2007) .......... 15

*National Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458 (S.D.N.Y. 2000) .......... 17, 20

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) .......... 14

*Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007 (9th Cir. 1994) .......... 23-24

*Nintendo of America, Inc. v. NTDEC*, 822 F. Supp. 1462 (D. Ariz. 1993) .......... 17, 18, 20, 22

*Peer International v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990) .......... 5, 16, 17, 22

*Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) .......... 17

*Philip Morris USA, Inc. v. Liu*, 489 F. Supp. 2d 1119 (C.D. Cal. 2007) .......... 17

*RSO Records, Inc. v. Peri*, 596 F. Supp. 849 (S.D.N.Y. 1984)17, 20, 21, 22, 24

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) .......... 13

*Sony Pictures Home Entertainment, Inc. v. Lott*, 471 F. Supp. 2d 716 (N.D. Tex. 2007) .......... 15

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488 (4th Cir. 1996) .......... 17, 22

*Twentieth Century Fox Film Corp. v. Dastar, No. CV98-7189 FMCEX*, 2000 WL. 35503106 (C.D. Cal. Aug. 29, 2000) .......... 17, 18, 19

*Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065 (D. Ariz. 2006) .......... 6, 23

*Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) .......... 23

*Warner Brothers Entertainment v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004) .......... 17, 18, 19

## STATUTES AND RULES

17 U.S.C. § 106(1) .......... 9

17 U.S.C. § 106(3) .......... 9

17 U.S.C. §§ 504(a) .......... 6

17 U.S.C. § 504(a)(2) .......... 6

17 U.S.C. § 504(c)(1) .......... 6

17 U.S.C. § 504(c)(2) .......... 6, 16

17 U.S.C. § 505, Fed. R. Civ. P. 54(d) .......... 4

17 U.S.C. § 504(c) .......... 4, 16

Fed. R. Civ. P. 37(b)(2) .......... 14

Fed. R. Civ. P. 37(b)(2)(A) .......... 14

Fed. R. Civ. P. 54(d) .......... 4

Fed. R. Civ. P. 55(b) .......... 5

C.D. Cal. Local Rule 54-12 .......... 4

## MISCELLANEOUS

Am. Jur. 2d, Evidence § 157 (preponderance of the evidence requires only "that the fact is more likely true than not true") .......... 7

*Moore's Federal Practice* § 37.50[1][c] (3d ed. 2007) .......... 13

## MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants have been found liable for overwhelming and willful infringement of plaintiffs' copyrighted motion pictures and television programs, some of the best known and most valuable entertainment properties in the world. While plaintiffs present evidence and seek a statutory award for infringement of 3,699 separate copyrighted works, defendants' means of infringement has left tens of thousands of plaintiffs' copyrighted works subject to unlimited "viral" distribution over the Internet. And defendants' conduct in this litigation has been so obstreperous and abusive that the Court has imposed terminating sanctions against them. Indeed, defendants have made every effort – including disobeying a Court Order to preserve and produce server log data – to obscure the full extent to which defendants' TorrentSpy users have used defendants' website to infringe plaintiffs' copyrighted works. If any case calls for an award of maximum statutory damages per work infringed, this case must.

It merely states the obvious to say that defendants do not currently have the financial wherewithal to satisfy the judgment to which plaintiffs are entitled. However, such an award is absolutely necessary both to punish these defendants for intentional copyright infringement on a massive scale, and to deter others who would seek to pick up where defendants have left off. These defendants operated one of the largest and most notorious pirate BitTorrent sites on the Internet. Much of the pirate BitTorrent community is looking to this case to see whether the potential consequences if they get caught outweigh the rewards they can reap from copyright infringement.

Pursuant to this Court's April 11, 2008 Order, plaintiffs hereby move for entry of a default judgment against defendants Justin Bunnell, Wes Parker, and Valence Media Ltd. ("defendants") and an award of statutory damages and attorneys' fees.

## BACKGROUND

On December 13, 2007, the Court granted plaintiffs' motion for sanctions and ordered that default be entered against defendants based on their willful destruction of evidence and other misconduct, including false testimony under oath. *See* Dec. 13, 2007 Order Granting Plaintiffs' Motion for Terminating Sanctions (Doc. #325) ("Terminating Sanctions Order"). Default was entered by the clerk on December 17, 2007 (Docket #326). Thus, as properly pled in plaintiffs' complaint, defendants are liable for willful copyright infringement, including the intentional encouragement and promotion of massive infringement of plaintiffs' copyrighted motion pictures and television programs through operation of the TorrentSpy website and system. *See* April 7, 2008 Order on Ex Parte Application (Docket #352) (reaffirming that "Plaintiffs have sufficiently set forth their claim that Defendants are liable on theories of contributory and vicarious copyright infringement" (citation and internal quotation marks omitted)).

It is now established that obtaining infringing content was the "overwhelming" use and purpose of defendants' TorrentSpy website. Compl. ¶ 31. As pled in the complaint, the entirety of defendants' business was predicated on facilitating, inducing and commercially exploiting copyright infringement. *Id.* ¶ 30. "[T]housands of the most popular motion pictures and television shows – from new releases that are still in theaters to blockbuster DVD releases to today's most popular television shows – [were] infringed every day." *Id.* ¶ 6. The website even organized available files into categories for easy browsing by users. Prior to the litigation, defendants "index[ed] torrent files of television programs by *the titles of individual copyrighted television series*, such [as] 'Alias' and 'The Simpsons.'" *Id.* ¶ 28. As for movies, defendants even had a category called "'New - CAM,' which refers to in-theater movies recorded by camcorder, a category that, by definition, contains illegal content." *Id.* Overall, "[n]ot only [did] Defendants profit from the

widespread infringement that they facilitate, but that [was] the essential business model on which their venture [was] premised." *Id.* ¶ 30.

Defendants' conduct in this litigation has been similarly egregious, so much so that the Court ordered terminating sanctions. Specifically, the Court found that defendants willfully destroyed wholesale categories of crucial evidence "to the extent that a rightful decision [on the merits] is not possible." Terminating Sanctions Order at 12. As the Court summarized, defendants "have engaged in widespread and systematic efforts to destroy evidence and have provided false testimony under oath in an effort to hide evidence of such destruction." *Id.* at 15.

Moreover, following the imposition of terminating sanctions and a finding of liability, defendants continued to operate and profit from the TorrentSpy website for over three months. Defendants have only recently shut the website down – and even then have done so, by their own admission, to avoid compliance with the Court's May 29, 2007 Server Log Order (Doc. #176). *See* Declaration of Duane C. Pozza, dated Apr. 21, 2008 ("Pozza Decl."), Ex. 3 ("the Court demanded actions that in our view were inconsistent with our privacy policy, traditional court rules, and International law; therefore, we now feel compelled to provide the ultimate method of privacy protection for our users – permanent shutdown"). That May 29, 2007 Order, which was upheld by this Court following extensive litigation by the parties ("Server Log Order"), required defendants to preserve and produce data about TorrentSpy user requests for dot-torrent files – data that would have shown the full extent of the copyright infringement by defendants' TorrentSpy users. Server Log Order at 3-4, 33-35. Defying that Order, defendants never preserved or produced this data, and now defendants have taken steps to ensure that they never will.

In the Pozza Declaration, plaintiffs present evidence regarding 3,699 of plaintiffs' copyrighted works that have been directly infringed by defendants' TorrentSpy users, and for which defendants are liable. The works described in the

Pozza Declaration constitute but a small subset of the copyrighted works owned by plaintiffs actually infringed through defendants' TorrentSpy website. Indeed, "Defendants' website has at times claimed to provide over 25,000 torrent files for movies, and over 20,000 for television shows." Compl. ¶ 27. As explained below, plaintiffs are entitled for a default judgment and seek an award consisting of:

- Statutory damages under the Copyright Act, 17 U.S.C. § 504(c), in the amount of $150,000 for each of the3,699 copyrighted works infringed, for a total award of $554,850,000.
- A permanent injunction (as set forth in plaintiffs' separately-filed Motion for a Permanent Injunction Against Defendants (Docket #356)).[2]

## ARGUMENT

### I. Plaintiffs Are Entitled to an Entry of Default Judgment and Statutory Damages For Willful Infringement Under the Copyright Act.

Default has been entered against defendants and, thus, defendants' liability has been established. *E.g., Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir 2002) (upon entry of default, the well-pled allegations of the plaintiffs' complaint are taken as true); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam) (defendants' default "establishe[s] their . . . liabilities"). Plaintiffs' complaint properly alleges that defendants are liable for inducement of copyright infringement, contributory copyright infringement, and vicarious copyright infringement, as the Court has already held in denying defendants' motion to dismiss the complaint for failure to state a claim. *See* May 10, 2006 Order Denying Defendants' Motion to Dismiss for Failure to State a Claim (Docket #22), at 6-10; *see also* April 7, 2008 Order (Docket #352). Moreover, defendants'

---

[2] Plaintiffs reserve their right to seek reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505, Fed. R. Civ. P. 54(d), and C.D. Cal. Local Rule 54-12.

copyright infringement was willful – indeed, defendants intentionally fostered copyright infringement on a mind-boggling scale. Compl. ¶¶ 4-6, 26-31, 34-37.[3] Thus, defendants' liability for willful copyright infringement has been established.

Plaintiffs are now entitled to an entry of default judgment pursuant to Fed. R. Civ. P. 55(b). Courts routinely enter default judgments in cases where defendants are found liable for online copyright infringement. *See, e.g., Columbia Pictures Film Prod. Asia Ltd.. v. Uth*, No. CIV S-06-1054 FCD DAD, 2007 WL 36283 (E.D. Cal. Jan. 4, 2007); *Disney Enter., Inc. v. Farmer*, 427 F. Supp. 2d 807 (W.D. Tenn. 2006); *Elektra Entm't Group v. Bryant*, No. CV 03-6381GAF(JTLX), 2004 WL 783123 (C.D. Cal. 2004).

Further, plaintiffs readily meet the applicable factors for default judgment, which include: (1) the possibility of prejudice to the plaintiffs, (2) the merits of plaintiffs' substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake; (5) the possibility of a dispute over material facts; (6) possible excusable neglect; and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Regarding the second and third factors, the Court has already determined that plaintiffs have sufficiently alleged defendants' secondary copyright liability. *See* May 10, 2006 Order; April 7, 2008 Order. Regarding the fifth, sixth and seventh factors, the Court already has determined that defendants' deliberate actions have rendered a fair decision on the

---

[3] Willful infringement means defendants acted "with knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 & n.3 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1404[B] at 14-40.2-3 (1989)). In this case, actual knowledge was not only pled in the Complaint (at ¶¶ 27, 28, 30, 35), but was further demonstrated by defendants' destruction of evidence that would have shown that knowledge. *See, e.g.*, Terminating Sanctions Order at 13-14.

merits impossible, and has already balanced the policy in favor of a decision on the merits and found it to be overcome by the prejudice caused by defendants' destruction of evidence. Terminating Sanction Order at 14-15. And plaintiffs will clearly be prejudiced if they cannot recover damages on default judgment based on defendants' liability, as that will eliminate the possibility of economic relief. *See, e.g. Elektra*, 2004 WL 783123, at *3-4 (plaintiffs prejudiced where they are "without other recourse for recovery," and "amount at stake" factor satisfied where plaintiffs sought statutory damages under Copyright Act for proven infringements); *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (same).

Plaintiffs are entitled to statutory damages on default judgment for each work infringed. Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). Section 504(c)(1) provides, in turn, that: "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). Where the copyright owner proves "that infringement was committed willfully," the court may award statutory damages up to $150,000 per infringement. *Id.* § 504(c)(2).

Further, "a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (internal quotation marks omitted); *see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) ("A plaintiff may elect statutory damages regardless of

the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits" (internal quotations marks omitted)).

As explained below, plaintiffs seek statutory damages for each of the 3,699 works identified on Exhibit 1 to the Pozza Declaration. Plaintiffs own or control the rights to each such work and each has been infringed via defendants' TorrentSpy website.

## II. The Court Should Award Statutory Damages In the Amount of $554,850,000.

### A. Each Title Listed in the Pozza Declaration Represents An Infringed Copyrighted Work For Which Defendants Are Liable.

Because defendants' liability for each direct infringement by a TorrentSpy user has been established by default, all plaintiffs need to show to prove up their damages is the number of direct infringements. Further, plaintiffs' showing need only be made by a preponderance of the evidence. *E.g.*, *Kennedy v. Southern California Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001) (preponderance of the evidence standard requires only that the factfinder "believe that 'the existence of a fact is more probable than its nonexistence'") (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 622 (1993)); Am. Jur. 2d, Evidence § 157 (preponderance of the evidence requires only "that the fact is more likely true than not true"). As set forth on the accompanying Declarations, plaintiffs have identified 3,699 of their copyrighted works that have been directly infringed via defendants' TorrentSpy website and for which defendants are liable (hereafter, each a "Claimed Work").[4]

---

[4] Studio ownership of the copyright or exclusive distribution rights for each Claimed Work is established in the accompanying Declarations of Alfred Clinton Perry, Albert Cheng, Gary Lim, David Kaplan, Rani Cherkoori, Jane Sunderland, and Steve Kang (collectively, the "Studio Declarations").

Dot-torrent files corresponding to each of the Claimed Works were made available by defendants for download through the TorrentSpy website. A non-exhaustive list of such dot-torrent files is included on Exhibit 1 of the attached Pozza Declaration.[5] Each dot-torrent file listed was included on Exhibit 1 because it contains compelling indicia that it corresponds to a Claimed Work. Only dot-torrent files with titles that matched a Claimed Work, and a content file size that indicated that the content file is a motion picture or television program, were included. Pozza Decl. ¶ 5. A large number of the dot-torrent files additionally contain descriptions using terminology that indicates their source, such as "DVDRip" for copies of DVDs, "CAM" for copies made using a handheld camera in a theater, and "TS," "TC" and "Screener" for copies pirated from a theater release. *Id.* The titles or other associated data often contain descriptions of the release date of the motion picture, the names of the individual actors who appear in the Claimed Work, and/or the season and episode for each television show. *Id.* Further, many of the dot-torrent files were organized by defendants into "Movie" sub-categories, indicating that the dot-torrent files did indeed correspond to movies, or have file extensions indicated that they are video files. *Id.* ¶¶ 5, 12.[6] Given that, for the vast majority

---

[5] The dot-torrent files listed are all drawn from one of the three torrent databases produced by defendants that reflect data as of April 2006, January 2007 and May 2007, or from a complete copy of dot-torrent files publicly available on the TorrentSpy website as of August 2007, as captured by plaintiffs and produced to defendants during discovery. Pozza Decl. ¶ 3 As indicated in the Pozza Declaration, the list in Exhibit 1 is both non-exhaustive and conservative – meaning that there was an even higher volume of direct infringement of the Claimed Works – as there are undoubtedly additional dot-torrent files that were made available on TorrentSpy for many of the Claimed Works that simply could not be sufficiently reviewed and analyzed in time to be included in Exhibit 1. *Id.* ¶ 11.

[6] Plaintiffs also examined TorrentSpy user "comments" for a sample of the dot-torrent files. Although comments are not available for every torrent, attached as

*(continue...)*

of the titles listed, defendants' TorrentSpy site made *numerous* dot-torrent files publicly available for *each* Claimed Work, this evidence clearly establishes, by at least a preponderance of the evidence, that each Claimed Work was available through dot-torrent files on defendants' TorrentSpy website.

It is also clear that TorrentSpy users directly infringed each Claimed Work via TorrentSpy, by downloading a dot-torrent file corresponding to the Claimed Work and thereby downloading an infringing copy of the Claimed Work from other BitTorrent users. *E.g.*, 17 U.S.C. §§ 106(1) (exclusive reproduction right) and 106(3)(exclusive distribution right); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (downloading copyrighted works through peer-to-peer system infringes reproduction and distribution rights); *BMG Music v. Gonzales*, 430 F.3d 888, 890-91 (7th Cir. 2005) (same). In fact, it is undeniable that the more popular works were infringed by defendants' TorrentSpy users thousands (or tens of thousands) of times.

Direct infringement is established through the following independent bases:

1. The allegations in the complaint establish that defendants designed the TorrentSpy website so that users would download copyrighted works simply by downloading dot-torrent files corresponding to those works. As a general matter, the process of downloading copyrighted works using dot-torrent files is straightforward and well-established – typically clicking on a dot-torrent file automatically, and without further action by the user, will result in the download of a content file, such as a Claimed Work, to the user's computer. *See* Compl. ¶ 9; *see*

---

*(continued from previous page)*

Exhibit 2 to the Pozza Declaration is a sample of user comments making clear that users reported *actually downloading* the Claimed Work using the dot-torrent file. *Id.* ¶ 14.

*also* May 10, 2006 Order at 3. As this Court recognized in denying defendants' motion to dismiss the complaint, plaintiffs alleged that the *very purpose* of TorrentSpy was to enable location and download of copyrighted works by indexing these dot-torrent files: "Plaintiffs . . . allege that Defendants knowingly facilitate that unauthorized copying – the direct infringement – by their users . . . by making the Protected Works available via their website and indexing them in such a way as to facilitate their users' search for, and download of, unauthorized copies of the Works." May 10, 2006 Order at 8. Indeed, defendants indexed tens of thousands of movies and television shows, and divided them into easily browsable categories, many by title of copyrighted work, for the *express purpose* of drawing users to their website and encouraging them to download the copyrighted works. Compl. ¶¶ 27-28, 30. "[T]he Complaint explains that Defendants' website provides an index that is organized to facilitate users' efforts to locate and download unauthorized copies of the works at issue." May 10, 2006 Order at 9-10.

Those allegations, which are taken as established, are further corroborated by the data presented with the Pozza Declaration. Just a glance at Exhibit 1 to the Pozza Declaration shows that multiple – sometimes dozens – of dot-torrent files were available for *each* Claimed Work. That means that defendants' users could obtain an infringing copy of a particular Claimed Work by clicking on any number of different dot-torrent files on defendants' TorrentSpy site. Moreover, for each of these dot-torrent files, defendants published for their users what defendants called "health" statistics: *i.e.*, the number of "seeders" and "leechers" for each Claimed Work at that specific moment in time. Pozza Decl. ¶ 7. "Seeders" are users who are currently online and offering the *entire* content file for distribution to others; "leechers" are users currently online downloading the content file and offering *pieces* of the content file for distribution to others. As defendants' website explained, the "seeder" and "leecher" statistics published by defendants reflect the "health" of a dot-torrent file because the more "seeders" and "leechers" currently

online and offering the content, the more sources of the content – and thus the faster and more reliably the content file (in this case, the Claimed Work) would be expected to download. Pozza Decl. ¶¶ 7-8. Defendants provided this data to their users to assist them in identifying the best content files to download.

The seeder/leecher "health" statistics published by defendants for the dot-torrent files corresponding to the Claimed Works reveal that countless users were downloading and distributing (*i.e.*, directly infringing) the Claimed Works at any given moment. Pozza Decl. ¶ 8. While not every seeder and leecher in defendants' "health" statistics is a TorrentSpy user (defendants collected such statistics from "tracker" servers that allowed access by other BitTorrent users as well), the sheer volume of online infringers at any given time is startling and eliminates any credible claim that defendants' users did not infringe the Claimed Works. Indeed, for some works, ***at a single moment in time*** there might be thousands of users directly infringing the Claimed Works.[7]

Given the "health" statistics, the fact that dot-torrent files corresponding to the Claimed Works were publicly available from TorrentSpy, that the very purpose

---

[7] It is important for the Court to understand that while users visited defendants' TorrentSpy site to obtain popular entertainment content twenty-four hours a day, seven days a week, the "health" statistics reflect only a snapshot in time, reflecting direct infringers online at a particular moment in time, not cumulative totals. Plaintiffs have data from only four snapshots in time. As a result, the "health" statistics for the dot-torrent files for the Claimed Works drastically undercount – likely by huge multiples – the number of direct infringements of any particular Claimed Work. Pozza Decl. ¶ 9. Since defendants' entire operation of TorrentSpy falls within the three year statute of limitations, defendants are liable for copyright infringement dating back to their launch of TorrentSpy in late 2004. The available "health" statistics represent four single moments out of more than a three year period. The Court obviously can and should infer that the volume of direct infringement has been far greater.

of TorrentSpy was to facilitate and encourage users' downloading of entertainment works, that TorrentSpy was one of the largest sites on the Internet (with millions of users), and that TorrentSpy users, in dot-torrent comments and in the TorrentSpy forums, openly admitted to downloading plaintiffs' popular movies and television programs, plaintiffs respectfully submit that it is unquestionably "more probable than [not]" that each of the Claimed Works was actually downloaded by a TorrentSpy user. *Southern California Edison*, 268 F.3d at 770 (quotation and citation omitted); *see also, e.g.*, *Elektra*, 2004 WL 782123, at *2 ("Plaintiff's burden in 'proving up' damages is relatively lenient. . . . Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled."); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). The evidence, plaintiffs submit, establishes to a moral certainty that each of the Claimed Works was directly infringed by defendants' TorrentSpy users *repeatedly*.

2. Defendants' refusal to preserve and produce server log data – in willful violation of the Server Log Order – has prevented the plaintiffs and the Court from having direct evidence *from defendants' own servers* that each of the Claimed Works was directly infringed by defendants' users, undoubtedly multiple times. Plaintiffs currently have pending before the Magistrate Judge a motion for a report and recommendation that evidentiary sanctions be imposed on defendants for failing to comply with the Server Log Order. *See* Docket #317 ("Server Log Sanctions Motion"), filed October 4, 2007. The only appropriate evidentiary sanction to ameliorate the prejudice from defendants' violation of the Server Log Order is an order deeming direct infringement under the Copyright Act conclusively established for all plaintiffs' copyrighted works that were represented by dot-torrent files made available through defendants' TorrentSpy website.

Defendants should be barred from benefiting from their willful refusal to comply with a Court Order to preserve the very data from defendants' servers that

would conclusively show dot-torrent downloads by defendants' users. Prior to the filing of the motion for evidentiary sanctions, defendants' explanation for withholding this evidence was obtuse, but it was clear that defendants had purposefully taken affirmative steps to modify their TorrentSpy website during the pendency of the Server Log Sanctions Motion (in fact, just days before this Court's Order affirming the Magistrate Judge's Server Log Order) to try to make the Server Log Data unavailable. More recently, by shutting down the website, defendants have made this information *permanently unavailable* without collecting or preserving any of it while the website was still operational. And defendants have, by their own admission, taken this step specifically to avoid compliance with the Server Log Order – supposedly to "protect" their users from discovery of their infringing downloads, but in reality to prevent plaintiffs from obtaining that evidence to use against defendants:

> [T]he Court demanded actions that in our view were inconsistent with our privacy policy, traditional court rules, and International law; therefore, we now feel compelled to provide the ultimate method of privacy protection for our users - permanent shutdown.

Pozza Ex. 3.[8]

---

[8] It is well-established that defendants cannot escape sanctions through their affirmative efforts to make the Server Log Data unavailable. "An 'inability' that is self-imposed will not excuse a failure to comply with a discovery order." *Moore's Federal Practice* § 37.50[1][c] (3d ed. 2007). A party cannot complain that it is unable to comply with a court order when the failure to comply is due to its own actions. *See Hook v. Arizona Dep't of Corrections*, 107 F.3d 1397, 1403 (9th Cir. 1997) (upholding contempt finding where party failed "to demonstrate he took all reasonable steps within his power to insure compliance" (citations and internal quotation marks omitted)). *See also* Server Log Sanctions Motion at 13-16.

Fed. R. Civ. P. 37(b)(2) expressly authorizes sanctions when "a party fails to obey an order to provide or permit discovery," including entry of "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Fed. R. Civ. P. 37(b)(2)(A). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) (quoting *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 639, 49 L. Ed. 2d 747 (1976)); *see also Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.*, 144 F.R.D. 379, 383 (C.D. Cal. 1992) (Rule 37 "provides sanctions to deter abuses and acts of contempt of court").

This Court of course has the authority to decide the evidentiary sanction issue in the context of this motion, and deem that the Server Log Data would have shown that the Claimed Works were actually downloaded by TorrentSpy users. This finding would be "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)). It would more than satisfy the standard of "bear[ing] a reasonable relationship to the subject of discovery that was frustrated by the sanctionable conduct." *Id.* Indeed, plaintiffs sought discovery of server logs for the very purpose of obtaining evidence of direct infringement, as both the Magistrate Judge and this Court recognized. May 29, 2007 Order at 11, 30; August 24, 2007 Order at 13. And defendant Wes Parker in fact testified at the server log hearing that he believed that such logs were "essential" for showing direct infringement. May 29, 2007 Order at 11. Defendants' clear intent has always been to withhold this data. The prejudice to

plaintiffs cannot be fully mitigated in any way other than by finding that plaintiffs' copyrighted works – in this instance, the Claimed Works – were in fact directly infringed by defendants' TorrentSpy users.[9]

3. Finally, users who post dot-torrent files hosted on defendants' TorrentSpy site are affirmatively making those copyrighted works available for infringing distribution to other users. As a matter of established Ninth Circuit precedent, that act of making those Claimed Works publicly available over a peer-to-peer network in and of itself constitutes direct infringement of plaintiffs' exclusive right under the Copyright Act to distribute their copyrighted works. *Napster*, 239 F.3d at 1014 ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights"); *see also Hotaling v. Church of Jesus Christ of Latter-Day Saints,* 118 F.3d 199 (4th Cir.1997) (holding that making available unauthorized work in public library is infringement); *Sony Pictures Home Entm't, Inc. v. Lott*, 471 F. Supp. 2d 716, 721-22 (N.D. Tex. 2007) (making motion pictures available for download on peer-to-peer network violates distribution right); *Motown Record Co., LP v. DePietro,* No. 04-CV-2246, 2007 WL 576284, at *3 n. 38 (E. D. Pa. Feb.16, 2007) (Copyright Act establishes "copyright holder's exclusive right to make the work available"). Thus, the undeniable fact that dot-torrent files corresponding to the Claimed Works were publicly available through TorrentSpy is sufficient as a matter of law to establish direct copyright infringement.

---

[9] Rather than repeating the extensive legal and evidentiary bases already in the record, plaintiffs refer the Court to the Server Log Sanctions Motion, and incorporate that motion herein.

For each of the foregoing independent reasons, plaintiffs have demonstrated that defendants are liable for the infringement of at least 3,699 of plaintiffs' copyrighted works.

### B. Plaintiffs Should Receive the Statutory Maximum For Each Work Infringed.

Defendants have promoted the infringement of thousands upon thousands of plaintiffs' copyrighted works. They have done so by operating a website that allows for millions of users to copy those works, and in a way that subjects those works to ongoing "viral" distribution. Defendants have done so not only with full knowledge of the copyright infringement, but affirmatively intending to facilitate and induce that copyright infringement so that they could build a commercial business exploiting it. In the face of this litigation, they were undeterred. In fact, they defied the judicial process just as they disregarded plaintiffs' copyrights – destroying evidence, repeatedly lying under oath to escape liability, and even trying to get third party witnesses to lie for them. Defendants, moreover, did not even cease infringement after their liability was established by the imposition of terminating sanctions. And, months later, when they did shut TorrentSpy down, they did so to avoid compliance with a Court Order; to make sure plaintiffs and the Court would never get direct evidence from defendants' own servers of the precise volume of infringement through TorrentSpy.

This Court has discretion to award damages pursuant to § 504(c) of the Copyright Act, up to the statutory maximum, according to "what is just in the particular case" in light of the nature of defendants' infringement. *Peer Int'l Corp. v. Pausa Records, Inc.* 909 F.2d 1332, 1336 (9th Cir. 1990) (internal quotation marks omitted). Because defendants acted not just willfully but *intentionally* to promote and profit from copyright infringement, the Court should award the statutory maximum of $150,000 per work infringed pursuant to 17 U.S.C. § 504(c)(2).

Courts in this and other Circuits, including this Court, have routinely held that the need to punish and deter willful misconduct justifies a large award per work infringed, including awards of the statutory maximum. *E.g. Peer Int'l*, 909 F.2d at 1336-37 (maximum award justified by number of defendants' infringements and fact that defendant was in business of selling infringing work); *Twentieth Century Fox Film Corp. v. Dastar*, No. CV98-7189 FMCEX, 2000 WL 35503106, at *10 (C.D. Cal. Aug. 29, 2000) (Cooper, J.) (maximum award justified by defendants' "willful disregard" for whether or not they were violating plaintiff's rights); *Warner Bros. Entm't v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004) (maximum award justified by defendants' willful misconduct); *Nintendo of America, Inc. v. NTDEC*, 822 F. Supp. 1462, 1467 (D. Ariz. 1993) (maximum award justified by willful infringement); *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999) (upholding maximum award for willful infringement); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (same); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 480 (S.D.N.Y. 2000) (awarding maximum for willful infringement); *Entral Group Int'l LLC v. Sun Sports Bar, Inc.*, No. 05-CV-4836 (CBA), 2007 WL 2891419, at *5-*6 (E.D.N.Y. Sept. 27, 2007) (same); *Macklin v. Mueck*, No. 00-10492-CIV, 2005 WL 1529259, at *1 (S.D. Fla. January 24, 2005) (same); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 856 (S.D.N.Y. 1984) (awarding maximum damages); *see also Philip Morris USA, Inc. v. Liu*, 489 F. Supp.2d 1119, 1123-24 (C.D. Cal. 2007) (maximum award under Lanham Act justified by need for deterrence and to punish willful infringement); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003) (same).

The key factors that courts typically consider when determining the level of a statutory damages award under the Copyright Act include: (1) the defendant's "expenses saved and profits reaped" from their infringement; (2) the actual harm to plaintiffs; (3) the value of plaintiffs' copyrights; (4) the "deterrent effect on others

besides the defendant"; (5) the nature of defendant's infringing conduct, including whether it was willful, knowing or innocent; (6) whether the defendant "cooperated in providing particular records from which to assess the value of the infringing materials"; and (7) the need to "discourage the defendant." *Microsoft Corp.* v. *Nop*, No. 07-1276, 2008 WL 686584, at *3 (E.D. CAl. Mar. 11, 2008) (*citing Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); *Uth*, 2007 WL 36283, at *3; *see also Caridi*, 346 F. Supp. 2d at 1074; *Dastar*, 2000 WL 35503106, at *10. Here, each weighs heavily in favor of maximum damages.

### 1. The Willful Nature of Defendants' Infringing Conduct (Factor #5).

The willful nature of an infringer's conduct is a critical factor in determining the amount of statutory damages. *E.g., Caridi*, 346 F. Supp. 2d at 1074; *Dastar*, 2000 WL 35503106, at *10; *NTDEC*, 822 F. Supp at 1464. A maximum award is appropriate where a defendant's conduct is judged "particularly egregious." *Caridi*, 346 F. Supp. 2d at 1074.

Defendants here did more than engage in willful conduct that resulted in copyright infringement – they intentionally set out to foster and facilitate copyright infringement on an enormous scale so that they could commercially exploit the infringement. The egregiousness of defendants' infringing conduct could not be more clear. As the Complaint explains, defendants' business model depended entirely on attracting users through the free availability of the most popular (copyrighted) entertainment content in the world, especially plaintiffs' copyrighted motion pictures and television programs. Compl. ¶ 30. Thus it is unsurprising that, prior to litigation, defendants actively touted the availability of copyrighted content with forum titles such as "Movie Theater" and "TeeVee," with browsable categories of movie torrents such as "New-CAM," consisting of in-theater movies illegally recorded by camcorder, and with categories of television programs organized by the very title of individual infringed shows. Compl. ¶¶ 27-28; *see also* Terminating

Sanctions Order at 5 (noting television show categories and movie categories for Telecine, Telesync, and DVD screeners). Defendants were thus actively promoting the infringement of movies still in their first-run theatrical release. Defendants willfully destroyed this evidence after the litigation in an effort to cover up the evidence of their conduct. *Id.* at 13.

Further, prior to the litigation, defendants' website provided guides (also later deleted) on how to download "CAM/TS/TC/DVDSCR" titles, all of which are by definition unauthorized and therefore infringing. Terminating Sanctions Order at 3-4 & n.2, 13. Other similar evidence of defendants' encouragement and facilitation of infringement was deleted as well. *Id.* at 13. All of these points are established as true due to Defendants' default, *Caridi*, 346 F. Supp. 2d at 1074, or have been found by the Court upon entry of terminating sanctions.

The egregiousness of defendants' conduct equals or exceeds that which courts in this District, including this Court, have held to justify a maximum award. For example, in *Dastar*, this Court held that the maximum award of $150,000 was warranted where defendants initially failed to investigate the possibility that their actions would infringe the plaintiffs' copyright and then later ignored evidence of their infringement. 2000 WL 35503106, at *9-*10. In this case, defendants did not merely ignore the possibility that they were violating plaintiffs' copyrights – they affirmatively intended to encourage infringement as part of their business model, and they continued to encourage widespread infringement after this complaint was filed, and even after default was entered against them.

Likewise, in *Caridi*, the court imposed maximum statutory damages for the unauthorized copying of two motion picture "screeners" provided to the defendant as an Oscar judge. 346 F. Supp.2 d at 1070. The defendants' conduct here was at least as egregious – and in fact was far worse. Here the defendants made available thousands of exactly the same kind of "screener" copies via the TorrentSpy website, and did so in a manner that those copies were available to millions of users. *See*

Pozza Ex. 1 (documenting hundreds of dot-torrent files indicating that they are "screeners"). Indeed, defendants affirmatively set up a directory category on TorrentSpy (the evidence of which they later deleted) where these unlawful "screener" versions could be easily located and downloaded. Terminating Sanctions Motion at 5.

Such evidence of blatant, willful intent to encourage and profit from copyright infringement on a massive scale, without more, compels an award of maximum damages. *See Krypton Broadcasting*, 259 F.3d at 1195 (affirming high statutory award where defendant was "experienced businessman who understood the nature of [the plaintiff's] copyright claims" and continued to infringe after action was filed); *Kepner-Tregoe*, 186 F.3d at 288-89 (defendant's "egregious conduct" justified maximum award); *PrimeTime 24*, 131 F. Supp. 2d at 480 (maximum award justified where defendant continued to infringe after adverse legal decisions); *NTDEC*, 822 F. Supp. at 1465-66 (awarding maximum statutory damages where defendants knowingly and intentionally distributed counterfeit video game cartridges to customers worldwide).

**2. Conduct During the Litigation (Factor #6).**

In setting a statutory damages award, courts heavily weigh actions that a defendant takes in the litigation that may impede the court's ability to determine the extent of the defendant's infringing conduct. *E.g.*, *RSO Records*, 596 F. Supp. at 862-63 (awarding statutory maximum where defendants did not disclose evidence of extent of harm); *Entral Group*, 2007 WL 289 1419, at *6-*7 (awarding statutory maximum where full extent of harm not ascertainable due to defendants' conduct); *Nop*, 2008 WL 686584, at *4 (weighing "defendant's failure to cooperate with plaintiff in its effort to litigate this matter" and awarding maximum non-willful damages).

In this case, defendants' conduct in this litigation has been so egregious and prejudicial that the Court was compelled to impose terminating sanctions. *See*

Terminating Sanctions Order, at 2-8, 15. Moreover, the evidence spoliation and false testimony that was the subject of the Terminating Sanctions Order was far from an isolated episode. It was in fact emblematic of an unbroken pattern of defendants' efforts to delay, stonewall and obstruct discovery and the litigation more generally. *See, e.g.*, May 3, 2007 Order (Doc. #135) at 4 ("The law affords defendants various options if they disagree with an order of this court. Ignoring and disobeying such an order are not among such options."); *id.* at 17 ("**It is incomprehensible to this court, particularly in light of the paltry showing made by defendants in connection with Plaintiffs' Motion, that despite the ample amount of time defendants have had to do so, defendants still have not fully responded to said requests and, as to some of the requests, have violated the February 13 Order directing them to do so**") (emphasis in original); Aug. 8, 2007 Order (Doc. #240) at 4 ("**Defendants are cautioned that the failure to produce documents in compliance with this order by August 16, 2007, or any future failure ... may result in a recommendation ... to impose further monetary sanctions as well as non-monetary sanctions**") (emphasis in original); Pozza Ex. 4 (*Bunnell v. MPAA* May 15, 2007 Hr'g) ("what's disturbing to the Court is both the fact that counsel continued to make inaccurate statements – this is not the first one – and the cavalier fashion in which such statements are made"); J. Stip. Re Plaintiffs' Motion to Admonish Defendants' Counsel (Doc. #79) at 9-19 (cataloging efforts from the outset of the case to delay and stonewall discovery).

Finally, as detailed above, defendants have openly defied Magistrate Judge Chooljian's May 29 Server Log Order (affirmed by this Court) requiring defendants to preserve and produce server log data and have instead actively taken steps to make sure plaintiffs and the Court could never see that data.

Defendants' conduct during the course of this litigation has directly prejudiced plaintiffs' ability to determine the full extent to which its copyrights were infringed. Any resulting uncertainty caused by the defendants' deliberate

behavior weighs heavily against them in factoring damages. *See RSO Records*, 596 F. Supp. at 863. Moreover, defendants' actions, taken together, have unmistakably evidenced defendants' complete disregard and lack of respect for the judicial process. Such conduct warrants a maximum award.

**3. Defendants' Profits (Factor #1).**

Although defendants produced only scant business records, it is established that defendants' entire business model was premised on infringement, and that plaintiffs' copyrighted works were the draw that defendants used to lure users to the website. Compl. ¶ 30. Such flagrant and deliberate profiting from infringement of plaintiffs' works weighs heavily in favor a high award. *See RSO Records*, 596 F. Supp. at 862-63 (imposing maximum award where defendants profited from large-scale infringing activities); *see also Superior Form Builders*, 74 F.3d at 496.

**4. Harm to Plaintiffs (Factor #2) and Value of Copyrights (Factor #3).**

The harm done to plaintiffs here is manifestly extensive given the enormous scale of infringement that defendants promoted and facilitated. *See Peer Int'l*, 909 F.2d at 1337; *NTDEC*, 822 F. Supp. at 1465-67. As noted above, the Claimed Works identified in the Pozza Declaration are just a small subset of the total number of infringing works available on the TorrentSpy website. Pozza Decl. ¶ 11; Compl. ¶ 27 (defendants' website has claimed to provide over 25,000 torrent files for movies and 20,000 titles for television shows). Each of those works was likely infringed thousands or tens of thousands of times. *See* Compl. ¶ 6; *supra* at 9-15, *see RSO Records*, 596 F. Supp. at 863 (awarding statutory maximum where defendants' counterfeiting activities contributed to thousands of infringements and evidence as to total scope of activity was held by defendants but not disclosed).

Each infringing download, moreover, threatens even more infringement by *further dissemination* of that copy. Online peer-to-peer infringement such as that induced and facilitated by defendants results in "viral" losses because the number of

infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file. *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 331 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). As a result, the distribution of copyrighted material via the Internet "is potentially exponential rather than linear, threatening virtually unstoppable infringement." *Streeter*, 438 F. Supp. 2d at 1073 & n.2; *see also Elektra,* 2004 WL 783123, at *6 ("Defendant's means of infringement – an online media distribution system with tens of millions of potential users – has left Plaintiffs' sound recordings vulnerable to massive, repeated, near-instantaneous, and worldwide infringement"). Here, even though defendants have shut down TorrentSpy, millions of defendants' users can and undoubtedly are continuing to unlawfully distribute plaintiffs' works – obtained unlawfully through TorrentSpy – across the Internet.

Finally, the value of plaintiffs' copyrights in this case is apparent. Plaintiffs invest millions of dollars and enormous creative energies to produce their creative copyrighted works. Compl. ¶ 6. The Claimed Works include some of the most popular television programs ever created and some of the biggest blockbuster films of the last few years. Courts have recognized that the value to the copyright holder of the right to exploit these works is high. *See, e.g. Uth*, 2007 WL 36283, at *3 (noting that in general Internet piracy may cost members of the Motion Picture Association of America "millions, and perhaps billions, of dollars per year"). All of these factors weigh heavily in favor of maximum statutory awards.

**5. The Need to Deter Other Parties (Factor #4) and Defendants (Factor #7).**

Weighing very heavily in favor of a maximum award is the need to deter similar conduct, both by other parties and by defendants themselves. The Ninth Circuit has emphasized that the "punitive and deterrent purposes" of statutory damages under the Copyright Act are particularly important in cases of willful

infringement, as in this case. *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994). "The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation of injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232, 73 S. Ct. 222, 97 L.Ed 276 (1952)); *see also Kepner-Tregoe*, 186 F.3d at 288-89 (high award justified for purposes of deterrence where defendants continued infringement after liability finding); *RSO Records*, 596 F. Supp. at 862 (statutory damage awards have "partially punitive character [that] serve the Copyright Act's twofold purpose of compensation and deterrence").

Defendants in this case ran one of the largest sites on the Internet, Compl. ¶ 26, Apr. 3, 2007 Tr. at 102 (Doc. #120) (defendant Wes Parker's testimony that TorrentSpy was one of the top 200 Internet sites in the world by volume of user traffic), and certainly one of the highest profile pirate BitTorrent sites. They flaunted not only plaintiffs' copyrights but the judicial process through manner in which they litigated this case. The pirate community is closely following this case. There are undoubtedly many would-be pirate site operators that would seek to fill the void created by the shut down of TorrentSpy. Indeed, plaintiffs fight a near-constant battle against those who seek to promote and profit from infringement of plaintiffs' motion pictures and television shows. These pirates operate with impunity on the belief that the rewards they reap from infringement outweigh the risk of being sued. Cases such as this one are absolutely necessary to deter this conduct. An award of maximum statutory damages per work infringed is needed here to send a clear message that the conduct of defendants and those that would take their place will not be tolerated and that federal courts in the United States will vindicate the important policies underpinning the Copyright Act.

## CONCLUSION

The Court should grant plaintiffs' Motion for Default Judgment and award the statutory damages as set forth above.

Dated: April 21, 2008

Respectfully submitted,

JENNER & BLOCK LLP

By: ______________________________
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
15301 Ventura Boulevard
Building E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*