JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, Plaintiffs, v. JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10, Defendants. | Case No. CV 06-1093 FMC (JCx)<br>**REPLY IN SUPPORT OF PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION TO PRESERVE ASSETS**<br>**<u>REDACTED SUBJECT TO PROTECTIVE ORDER</u>**<br>Judge: Hon. Florence-Marie Cooper<br>Ctrm: 750<br>Date: April 17, 2008<br>Time: 9:00 a.m. |



Dockets.Justia.com

Defendants' opposition to plaintiffs' application for a preliminary injunction cites no authority suggesting that the proposed injunction is improper, and instead resorts to baseless attacks on plaintiffs' counsel. The temporary restraining order should be converted to a preliminary injunction as to defendants Justin Bunnell, Wes Parker, and Valence Media, Ltd. in order to preserve the status quo pending the entry of a permanent injunction.[1]

1. Regardless of whether defendants exercise control of the TorrentSpy domain name via a shell company called "Sharestream, Inc." or "Sharestream, Ltd.," the injunction against transfer of the domain name is proper. According to defendants' own interrogatory responses, Sharestream, Ltd. is owned by Justin Bunnell, who is the sole officer of the corporation. According to defendants' deposition testimony, [redacted]

---

[1] On April 11, defendant Forrest Parker filed notice of an automatic bankruptcy stay based on his April 7, 2008 filing of a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code. However, later that same day he joined in the Opposition to the motion for preliminary injunction, which is inconsistent with his own position that there is an automatic stay of the action against him. Regardless, the automatic stay as to defendant Forrest Parker does not affect this action or this motion as to any other defendant. *See Cohen v. Stratosphere Corp.*, 115 F.3d 695, 697 (9th Cir. 1997) (applying automatic stay only to bankrupt debtor and not to non-bankrupt codefendants). Moreover, as defendants jointly own the TorrentSpy assets in question, the proposed injunction would still be effective. Plaintiffs therefore seek entry of the preliminary injunction against the remaining defendants and reserve all rights to contest Forrest Parker's Voluntary Petition, including without limitation seeking to lift the automatic stay for all or parts of this action. And to the extent that Forrest Parker intends to contest the application in this Court, plaintiffs request that this Reply be treated as applying to him as well.

[redacted] Declaration of Steven B. Fabrizio, dated April 15, 2008 ("Fabrizio Decl.") ¶ 5, Ex. 1 at 214:15-215:17, 216:13-217:21, 256:5-257:5. It appears that Sharestream was used to register the domain name merely to obscure the defendants' involvement with TorrentSpy. Moreover, it is not clear whether or not Sharestream is currently the owner of the domain name, as defendants have recently indicated to plaintiffs' counsel that there have been transfers of TorrentSpy-related assets among defendants. Fabrizio Decl. ¶ 2.

In any event, the Court can clearly enjoin defendants from disposing of assets via shell companies that they own or control. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362-64 (9th Cir. 1988) (en banc) (upholding preliminary injunction against transfer or secretion of all defendants' assets, including assets held indirectly through various trusts and shell corporations); *United States v. Vitek Supply Corp.*, 151 F.3d 580, 585 (7th Cir. 1998) (defendant cannot escape Rule 65 obligations "by playing a shell game with assets"). Finally, the injunction properly extends to those entities that "are in active concert or participation with" defendants, Fed. R. Civ. P. 65(d)(2)(C), which extends to shell companies that are no more than alter egos of defendants. *See FTC v. Gill*, 183 F. Supp.2d 1171, 1184 (C.D. Cal. 2001) (injunction is binding on a non-party that has actual notice of it and is the alter ego of, or has an identity of interest with, a party) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998)); *Computer Searching Service Corp. v. Ryan*, 439 F.2d 6, 9 (2d Cir. 1971) (where corporate subsidiary is "in active concert or participation" with parent corporation in alleged infringement, plaintiff is

entitled to injunction against both parent and subsidiary). Defendants cite nothing to the contrary – indeed, no caselaw at all.[2]

2. Defendants' suggestion that plaintiffs' counsel attempted to mislead the Court as to the reasons for defendants' shutdown of TorrentSpy is absolutely false. Although the accusation is plainly designed to distract from the merits of plaintiffs' application, plaintiffs respond because the allegation impugns the integrity of counsel. Defendants announced their reasons for the shutdown *on the front page of their TorrentSpy website*. Defendants' words speak for themselves, and plaintiffs merely advised the Court of what defendants have publicly declared. The assertion that defendants told plaintiffs that they were shutting down the TorrentSpy website as part of settlement discussions appears to be deliberately misleading.[3] In truth, defendants shut down TorrentSpy abruptly, without any notice to plaintiffs and without ever discussing it with plaintiffs beforehand. Fabrizio Decl. ¶ 4. The shutdown came at a moment when settlement discussions were breaking down and, in context of the discussions that had occurred, was an act seemingly designed to terminate settlement discussions. *Id.* Only *after* the shutdown, when plaintiffs' counsel spoke with Messrs. Retz and Bunnell, did Mr. Bunnell hesitantly suggest – in a demeanor clearly indicating that his statement was not truthful – that he shut

---

[2] Plaintiffs further point out that the proposed injunction would enjoin the transfer of TorrentSpy assets beyond the domain name, and there is no dispute that these other assets are owned directly by defendants.

[3] Tellingly, defendants assert this point in their opposition brief but not in the sworn declaration, and the brief is signed by an attorney for defendants who has had no direct involvement in any of the settlement communications between plaintiffs and defendants. Fabrizio Decl. ¶ 3. Defendants' counsel who has handled all settlement communications with plaintiffs' counsel is Mr. Kirk Retz, who did not sign the opposition brief. *Id.*

down TorrentSpy to advance settlement discussions. *Id.* Plaintiffs understood that statement to be completely false, consistent with defendants' repeated misrepresentations to the Court and under oath throughout this case. *Id.* It was also completely contradicted by the unequivocal statement by defendants on their TorrentSpy website.

3. Defendants continue to compare their TorrentSpy website to Google in a misguided effort to gain some semblance of legitimacy by claiming association with a household name. However, these defendants have already been found liable for willful copyright infringement. While BitTorrent technology in general may be capable of non-infringing uses, plaintiffs alleged in the complaint that, by design, defendants' TorrentSpy system is used overwhelmingly for purposes of copyright infringement, and that their entire business was predicated on exploiting copyright infringement. *See* Compl. ¶¶ 30, 35; *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (well-pled allegations of complaint deemed true upon default). In doing so, Defendants cultivated a TorrentSpy "brand" – an online destination for copyright infringement – which is why transfer of TorrentSpy's domain name or related assets would inevitably cause irreparable prejudice to plaintiffs. The only possible value of TorrentSpy to a third party would be based on infringement. Thus, a transfer is highly likely to both frustrate the Court's ability to fashion full equitable relief and cause further irreparable harm to plaintiffs.

4. Defendants stretch credibility in arguing that plaintiffs sat on their rights before filing their application. It was defendants' abrupt and unannounced shutdown of TorrentSpy, combined with a sudden breakdown of settlement discussions, that created an immediate risk that defendants might transfer the TorrentSpy assets. While defendants initially told plaintiffs that they had no intention of transferring TorrentSpy (as plaintiffs reported to the Court), plaintiffs could not reasonably accept and rely on an unsworn representation by defendants given that defendants have repeatedly misrepresented facts to the Court and given

false testimony under oath in this litigation. *See, e.g.*, Dec. 13, 2007 Order Granting Plaintiffs' Motion for Terminating Sanctions (Doc. #325), at 6, 10-12, 15. It is also notable that, after telling plaintiffs that they should not be concerned because defendants were not going to transfer the assets, defendants in the Opposition are altogether silent on their current intentions. Indeed, defendants have not submitted any sworn testimony from any defendant disclaiming an intention to sell. This further supports plaintiffs' concern that defendants are planning to take some action to place the TorrentSpy system outside the jurisdiction of the Court.

Accordingly, and for the reasons set forth in the Application for a Temporary Restraining Order, the Court should convert the current Temporary Restraining Order into a preliminary injunction against defendants Justin Bunnell, Wes Parker, and Valence Media, Ltd., effective until the entry of a permanent injunction by the Court.

Respectfully submitted,

Dated: April 15, 2008

JENNER & BLOCK LLP

By: ____________________
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
15301 Ventura Boulevard, Bldg E
Sherman Oaks, CA 91403
*Attorneys for Plaintiffs*