Columbia Pictures Industries Inc v. Bunnell Doc. 382

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br>Plaintiffs,<br>v.<br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,<br>Defendants. | Case No. CV 06-1093 FMC (JCx)<br><br>**DECLARATION OF DUANE C. POZZA IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br><br>**REDACTED SUBJECT TO PROTECTIVE ORDER**<br><br>Date: May 5, 2008<br>Time: 10:00 a.m.<br>Crtrm: 750<br>Judge: Hon. Florence-Marie Cooper |



Dockets.Justia.com

## DECLARATION OF DUANE C. POZZA

I, Duane C. Pozza, declare as follows:

1. I am an associate attorney with the law firm of Jenner & Block LLP, and represent the plaintiff motion picture studios in this action. I submit this declaration in support of Plaintiffs' Motion for Entry of Default Judgment by the Court. The statements made in this declaration are based on my personal knowledge or on information provided to me by colleagues or other personnel working under my supervision on this case. If called to testify as a witness, I would testify as follows:

2. Attached as Exhibit 1 is a non-exhaustive list of dot-torrent files corresponding to each of the copyrighted works for which plaintiffs are claiming infringement and seeking damages (the "Claimed Works"). Each dot-torrent file on Exhibit 1 was indexed and made available to the public for download by defendants on the TorrentSpy website, and each dot-torrent file listed is included on Exhibit 1 because it contains compelling indicia that it corresponds to a Claimed Work. The dot-torrent files on Exhibit 1 were identified through the process described below.

3. Persons acting at my direction searched for titles of plaintiffs' copyrighted motion pictures and television programs in four databases of dot-torrent files that had been indexed and made available to the public for download on the TorrentSpy website (the "Searched Databases"). The Searched Databases were gathered at four different points in time, each within the three year statute of limitations period. Three of the Searched Databases were torrent databases produced by defendants in discovery: (i) bates labeled TORRENTSPY 1000003-1000005, with data current as of April 2006, (ii) a non-bates numbered hard drive replacing corrupt files produced as TORRENTSPY 10000010-10000014, with data current as of May 2007, and (iii) bates labeled TORRENTSPY10000021-1000022, with data current as of January 2007. The fourth Searched Database consisted of a

complete copy of all dot-torrent files publicly available on the TorrentSpy website as of August 2007, as captured at plaintiffs' direction and produced to defendants during discovery at bates number Waterman 000001.

4. In addition to the file name of the dot-torrent file, each of the Searched Databases contains a wealth of information (often referred to as "metadata") about each dot-torrent file, including the torrent title, the file size of the corresponding content file, and numbers of "seeders" and "leechers" (explained below) associated with the content file at or near the time of the database capture. Persons acting at my direction and under my immediate supervision reviewed the torrent information to identify those dot-torrent files containing compelling indicia that they corresponded to a Claimed Work.

5. Each dot-torrent file listed on Exhibit 1 has a title that matches a Claimed Work and a content file size that indicates that the content file is a motion picture or television program, and also contains other metadata indicating that the content file is a video file or otherwise corresponds to the Claimed Work. Indeed, a large number of the dot-torrent file titles contain descriptions using terminology that indicates their source, such as "DVDRip" for copies of DVDs, "CAM" for copies made using a handheld camera in a theater, "TS" (Telesync) and "TC" (Telecine) for copies from a theater release, and "SCR" (Screener) for advance copies of films distributed for critic review purposes. Also, where available, the titles contain file extensions for commonly recognized video file formats such as "xvid," "avi," and "mp4." Titles for single episodes of television programs also often contain season and episode information such as "s1" corresponding to season 1, and "e01" corresponding to episode 1 in a season. And torrent titles or other metadata also often contain information such as a motion picture release date or the names of the individual actors who appear in the Claimed Work.

6. On Exhibit 1, the titles of the Claimed Works are numbered in the left-hand column. Beneath each title is the true and correct copyright registration number and registration date for each Claimed Work, all of which have been gathered at my direction from plaintiffs' representatives and/or from publicly available sources such as the United States Copyright Office website at www.copyright.gov. The plaintiffs' ownership of the copyright or exclusive distribution rights of each of the Claimed Works is attested to in the Studio declarations submitted concurrently with this declaration and the allegations of the Complaint.

7. Also contained in the left hand column is a "Seeder-Leecher Sum." Defendants gathered and published on their website statistics for the number of "seeders" and "leechers" for each dot-torrent file. "Seeders" are those users offering an *entire* content file for others to download, and "leechers" are those who are in the process of downloading a content file and thus do not have the content file, but rather *pieces* of the content file for distribution to others. Defendants gathered and published the seeder/leecher statistics for their own business purposes, and the TorrentSpy website explained to users that the seeder/leecher numbers generally reflected what was called the "health" of the dot-torrent file. Generally, the more seeders and leechers that are online and distributing all or pieces of the content file associated with the dot-torrent file – *i.e.*, the more "sources" that are online offering to distribute the content file – the faster and more reliably the content file would be expected to download.

8. Thus, the seeder/leecher statistics represent a snapshot at a given moment in time of users currently online and offering to distribute all or part of the content file. The seeder/leecher numbers would vary, perhaps considerably, over time. For example, a brand new popular movie or television show might have thousands of seeder/leechers when it first became available through

defendants' TorrentSpy system, reflecting that the movie/TV show was very popular and being downloaded or offered for distribution by thousands of users at any given moment. Over time, there might be fewer users downloading or offering the movie/TV show for distribution at any given moment. Defendants' website encouraged users to look to the seeder/leecher statistics to find dot-torrent files corresponding to content files currently being offered for distribution by many users, as those would download fastest and most reliably, making for the best user experience. The seeder/leecher "health" statistics published by defendants for the dot-torrent files corresponding to the Claimed Works reveal that *countless* users were downloading and distributing the Claimed Works at any given moment in time. On Exhibit 1, the Seeder-Leecher Sum is the sum of all the seeders and leechers for all dot-torrent files listed for each Claimed Work, as published by defendants, at the four snapshots in time represented in the Searched Databases.

9. It is important to note that while users visited defendants' TorrentSpy website continuously, the seeder/leecher statistics reflect only those statistics *at certain snapshots in time*, showing those distributing a Claimed Work at a particular moment in the life of the dot-torrent file. As a result, the "health" statistics for the dot-torrent files for the Claimed Works drastically undercount the number of users who unlawfully distributed any particular Claimed Work over the course of the availability of the work through defendants' TorrentSpy system. Thus, as evidence of the volume of infringement, the seeder/leecher statistics unquestionably understate infringement by a very substantial multiple.

10. By way of clarification, the Searched Databases captured at later points in time may also have included the dot-torrent files that were available on TorrentSpy and captured on an earlier Searched Database. To avoid any potential double-counting of dot-torrent files, plaintiffs removed duplicate dot-torrent files. Thus, if "dot-torrent file 123" existed on TorrentSpy at the time the

Searched Databases dated April 2006, February 2007, May 2007 and August 2007 were captured, then the same "dot-torrent file 123" was likely in each of those four databases. By eliminating duplicate dot-torrent files, plaintiffs ensured that, for example, "dot-torrent file 123" would be counted only once.

11. To the right of the title, copyright registration information, and Seeder-Leecher Sum information are the names of the dot-torrent files corresponding to the Claimed Work. For most, if not all, of the Claimed Works, the list of dot-torrent files for each Claimed Work is non-exhaustive; given the time constraints of putting Exhibit 1 together, plaintiffs were unable to search for *every* dot-torrent file on TorrentSpy corresponding to every Claimed Work. Thus, there are likely additional dot-torrent files on TorrentSpy for many of the Claimed Works that are not listed in Exhibit 1.

12. The next column to the right is the file size in megabytes (MB) of the content file corresponding to each dot-torrent file. Typically, motion pictures have file sizes over 500 MB, and television programs have file sizes over 150MB, though file sizes may be lower in some cases – for example, in the case of video files for portable handheld devices such as iPods. File sizes may vary depending on the format used and the quality of the encoding. Each of the files sizes on Exhibit 1 indicates that the content file is of a size to be a movie or television program.

13. Finally, the next two columns to the right are the main categories and sub-categories into which the dot-torrent files were sorted on TorrentSpy – for example, a category of "Videos," and a sub-category of "Sci-Fi Movie." Thus, these represent categories by TorrentSpy to organize dot-torrent files.

14. Additionally, persons under my direction examined a sample of TorrentSpy user comments to determine if there were additional indications that a dot-torrent file corresponded to a Claimed Work. User comments are contained in databases produced by defendants, and correlate to specific dot-torrent files. Many

of the TorrentSpy user comments corroborated that the dot-torrent files in fact corresponded to the Claimed Work and were actually downloaded by TorrentSpy users. Attached as Exhibit 2 to the Pozza Declaration are true and correct excerpts of TorrentSpy user comments from torrent databases provided by defendants. If the comments reviewed in any way suggested that the dot-torrent file was not what it purported to be, plaintiffs simply excluded it from Exhibit 1.

15. Defendants appear to have recently shut down the TorrentSpy website. The following appeared on the home page of the TorrentSpy website:

> [T]he Court demanded actions that in our view were inconsistent with our privacy policy, traditional court rules, and International law; therefore, we now feel compelled to provide the ultimate method of privacy protection for our users - permanent shutdown.

A true and correct copy of a printout from the home page of the website www.torrentspy.com is attached hereto as Exhibit 3.

16. Attached as Exhibit 4 is a true and correct copy of excerpts of a May 15, 2007 hearing before the Magistrate Judge in the *Bunnell v. MPAA* case, No. 06-cv-3206 FMC (JCx).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 21, 2008, in Washington, DC.

[signature]

Duane C. Pozza