JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>*Plaintiffs*,<br>v.<br><br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,<br><br>*Defendants*. | Case No. CV 06-1093 FMC (JCx)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION AGAINST DEFENDANTS**<br><br>Judge: Hon. Florence-Marie Cooper<br>Ctrm: 750<br>Date: May 5, 2008<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

Defendants' Objection #1. ........ 1

Defendants' Objection #2. ........ 7

Defendants' Objection #3. ........ 9

Defendants' Objection #4. ........ 11

Defendants' Objection #5. ........ 15

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

### CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)......4, 5, 6

*A&M Records, Inc. v. Napster, Inc.*, No. 99-05183, 2000 WL 573136 (N.D. Cal. May 12, 2000)......4

*Anderson v. Air West, Inc.*, 542 F.2d 1090 (9th Cir. 1976)......6, 14

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005)......6

*Bell Atlantic v. Twombley*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......2

*California Satellite Systems v. Seimon*, 767 F.2d 1364 (9th Cir. 1985)......14

*Columbia Pictures Film Prod. Asia Ltd. v. Uth*, No. CIV S-06-1054 FCD DAD, 2007 WL. 36283 (E.D. Cal. Jan. 4, 2007)......7, 12

*DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847 (9th Cir. 2007)......1, 2

*Disney Enters., Inc. v. Farmer*, 427 F. Supp. 2d 807 (E.D. Tenn. 2006)......7

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992)......16

*Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003)......5

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004)......12

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000)......11, 12

*Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973)......15

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)......6

*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) ................................12, 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ..................................... 2-3, 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1227 (C.D. Cal. 2007) ..................................................................3

*Modtech, Inc. v. Design Facilities Const.*, No. CV 98-2871 CBM (MCX), 1999 WL 33245492, at *1 (C.D. Cal. 1999)..........................7, 13

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) ...............................................................................5

*Nintendo of America, Inc. v. NTDEC*, 822 F. Supp. 1462 (D. Ariz. 1993)...............................................................................7, 12

*Peregrine Myanmar v. Segal*, 89 F.3d 41 (2d Cir. 1996)............................13

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).....4, 5, 9

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007).....................3

*Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006) ................9

*Perfect 10 v. Visa International Serv. Association*, 494 F.3d 788 (9th Cir. 2007), *petition for cert. filed*, No. 07-1026, 76 USLW 3443 (Feb. 6, 2008) ...............................................................................3

*Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681 (9th Cir. 1988) ..................................................................12

*Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096 (9th Cir. 1989)...............................................................................14

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 65 S. Ct. 478, 89 L. Ed. 661 (1945) ......................................................................... 15-16

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)........16

*Smith & Nephew v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978 (W.D. Tenn. 2006) ........ 7, 12-13

*TeleVideo System, Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ........ 6

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir. 1985) ........ 7, 13

*Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995) ........ 12

*Union Pac. R.R. v. Mower*, 219 F.3d 1069 (9th Cir. 2000) ........ 13

*United States v. International Brotherhood of Teamsters*, 970 F.2d 1132 (2d Cir. 1992) ........ 16

*United States v. Ockenfels*, No. 05-00067, 2006 WL. 5267972 (N.D. Cal. Nov. 9, 2006) ........ 11

**STATUTES AND RULES**

Fed. R. Civ. P. 65(d)(1)(C) ........ 11

Fed. R. Evid. 701 ........ 11

Fed. R. Evid. 702 ........ 11

Defendants' objections to the proposed permanent injunction are unfounded. Fundamentally, defendants continue to ignore the fact that they have been found liable for willful copyright infringement in this action, including by *intentionally* encouraging and promoting massive infringement of plaintiffs' copyrighted motion pictures and television programs. Given the Court's liability finding and the defendants' well-documented history of egregious misconduct in this litigation, the proposed permanent injunction is narrowly tailored, and necessary, to enjoin defendants' future infringement. This is especially so as it relates to online piracy. To be clear, under the injunction defendants argue for, the day after the injunction issues, defendants could (and likely would) be back in business under a different name or with different technology that accomplishes the same infringing end. The injunction proposed by plaintiffs, under the circumstances of this case, is (a) appropriate in scope; (b) sufficiently clear on what conduct is enjoined; and (c) properly obligates defendants to ensure that assigns of the underlying TorrentSpy-related assets (a "brand" now unmistakably associated with piracy) must also agree to comply with the terms of the injunction.

**Defendants' Objection #1.**

Defendants spend almost half their over-sized brief arguing that plaintiffs failed to state a claim for secondary copyright infringement – an argument that the Court has already addressed and rejected *twice*. Indeed, defendants just recently moved *ex parte* for leave to file a brief rearguing the liability issues, and the Court denied the motion, reaffirming that "Plaintiffs have sufficiently set forth their claim that Defendants are liable on theories of contributory and vicarious copyright infringement." April 7, 2008 Order on Ex Parte Application (Docket #352) (citation and internal quotation marks omitted). Moreover, the Court specifically addressed the decision cited by defendants in an attempt to reopen the merits, *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847 (9th Cir. 2007), and found it inapposite, noting that "the Court here has already considered, and Defendants have had opportunity to attack,

the sufficiency of Plaintiffs' claims." *Id.* Defendants also repeat the argument made unsuccessfully in their *ex parte* application that *Bell Atlantic v. Twombley*, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), has somehow altered the motion to dismiss standard. In fact, that case did nothing more than reaffirm the long-standing principle that a well-pled complaint must state sufficient factual allegations to show an entitlement to relief and that "wholly conclusory" statements are not sufficient. *Id.* at 1968. That is the same analysis the Court applied in denying defendants' motion to dismiss. *See* May 18, 2006 Order at 6, 8, 10.[1]

As the Court has already indicated that briefing on the sufficiency of plaintiffs' claims "is neither necessary nor appropriate at this time," *id.*, plaintiffs will not respond in detail to defendants' liability arguments. Rather, plaintiffs will only briefly address defendants' misstatement of case law in case the Court views those authorities as relevant to entry of final injunctive relief.

- *First*, defendants turn the Supreme Court's *Grokster* decision on its head in arguing that the inducement of copyright infringement standard applies only when a defendant infringes through provision of a product, but not to defendants that induce infringement through the provision of services. Obj. 10-14. Over the entire history of contributory copyright infringement jurisprudence – of which inducement is a part, *see, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 162

---

[1] Compounding defendants' disobedience of the Court's April 7 Order denying their request to reargue liability, defendants' brief violates the Local Rule's 25-page limit. Defendants' professed confusion as to the applicable page limit (after more than two years of litigating in this Court) falls short of credible. Likewise, defendants' argument that they should be given an opportunity to seek leave, if the Court will not simply overlook their violation of the Rules, ignores that defendants already sought *ex parte* leave, and that leave was denied.

L. Ed. 2d 781 (2005) (*Grokster III*) ("one infringes contributorily by intentionally inducing or encouraging direct infringement"); *Perfect 10 v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007), *petition for cert. filed*, No. 07-1026, 76 USLW 3443 (Feb. 6, 2008) ("One contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1227 (C.D. Cal. 2007) (*Grokster V*) ("material contribution and inducement are the two doctrinal subsets of the contributory infringement theory of liability") – courts have routinely found infringers liable for the provision of services. More importantly, defendants' argument is foreclosed by recent Ninth Circuit precedent, which not only applied the *Grokster* inducement standard to a website operator, but also made clear that the inducement standard applies to infringers providing services: "the standard for inducement liability is providing a ***service*** 'with the object of promoting its use to infringe copyright.'" *Visa*, 494 F.3d at 801 (quoting *Grokster III.*, 545 U.S. at 937) (emphasis added)); *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1114 (9th Cir. 2007) (applying *Grokster* to websites' password-hacking services). Defendants are liable for copyright infringement because of their *conduct* – establishing and operating a website intentionally designed to facilitate and promote copyright infringement. As explained below, because defendants' actions rather than their specific means of infringement are at issue here, it is reasonable to enjoin defendants' infringing actions broadly.

- *Second*, defendants are simply wrong in claiming that they are somehow different from Napster because TorrentSpy "did not have copyrighted works passing through its servers or a software device (like in Napster . . . )." Obj. 15. In fact, Napster provided a central index; and, as the district court expressly found, the copyrighted works *did not* pass through Napster's system

at all. *A&M Records, Inc. v. Napster, Inc.*, No. 99-05183, 2000 WL 573136, at *8 (N.D. Cal. May 12, 2000) ("Napster enables or facilitates the initiation of connections, but these connections do not pass through the system . . . ."); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (finding direct infringement based on Napster users' "upload[ing] *file names* to [Napster's] search index") (emphasis added).

- *Third*, defendants seriously misinterpret *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), in arguing that it precludes liability for vicarious copyright infringement. Obj. 17. In that case, the Court's vicarious infringement analysis was expressly predicated on (and limited by) the finding that, because no evidence was presented, Google's *users* could *not* be considered direct infringers – that the only direct infringers were the third party websites to which Google provided links. *Id.* at 1169-70 ("agree[ing] with the district court's conclusion that Perfect 10 failed to provide sufficient evidence to support [its] claim" that "individual users of Google's search engine directly infringed Perfect 10's copyrights" and "assess[ing] Perfect 10's arguments that Google is secondarily liable in light of the direct infringement [by third-party websites]"). The Court emphasized that Google was not liable for vicarious infringement because, based on the evidence presented, Google could not exercise relevant control over the third party websites. *Id.* at 1173. In direct contrast, in this case, the TorrentSpy *users* are the direct infringers – and it is established as fact that defendants can control their users' direct infringement. Compl. ¶ 29 ("Defendants exercise control over the infringing activity on their torrent site. . . . Defendants easily could prevent infringement of Plaintiffs' copyrighted works by not indexing torrent files corresponding to Plaintiffs' copyrighted works. Defendants also have the ability to decide which users can access their torrent site, including the right and ability to exclude or ban specific users . . . ."); *Id.* ¶ 36 ("Defendants

have the right and ability to supervise and control the infringing activities that occur through the use of their torrent site . . . ."). Notably, the Ninth Circuit in *Amazon* expressly held that Google could be contributorily liable for copyright infringement. *Amazon*, 508 F.3d at 1172.[2]

- *Fourth*, defendants' continued insistence that they cannot be enjoined without violating the First Amendment (Obj. 12) disregards well-established precedent holding that the First Amendment does not apply to injunctions against copyright infringement. *See, e.g.*, *Napster*, 239 F.3d at 1028 (rejecting First Amendment objection to injunction based on defendant's "right to publish a 'directory'" or the rights of its users to "exchange information" as "[u]ses of copyrighted material that are not fair uses are rightfully enjoined"); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 74 (2d Cir. 1999) ("We have repeatedly rejected First Amendment challenges to injunctions from copyright infringement on the ground that First Amendment concerns are protected by and coextensive with the fair use doctrine"); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) ("First Amendment concerns in copyright cases are

---

[2] Although irrelevant, defendants misstate the facts when asserting that TorrentSpy only *linked* to dot-torrent files on third party sites. Obj. 9, 14-15. In fact, until defendants changed their website late in the litigation to avoid compliance with the Server Log Order, defendants physically *hosted* the dot-torrent files *on their own servers*. May 29, 2007 Order at 5-10. Moreover, defendants' repeated assertions that users download dot-torrent files, then leave the website, and then decide whether to download copyrighted works is contrary to the established facts in this case. Defendants' website is designed to enable "one-click" downloading of copyrighted works. Compl. ¶¶ 9, 12, 13, 26 (describing how the content file download process is essentially automatic upon a user's clicking a dot-torrent file on defendants' TorrentSpy website).

subsumed within the fair use inquiry. In other words, if the use of the alleged infringer is not fair use, there are no First Amendment prohibitions against granting a preliminary injunction."); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-560, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985). These defendants cannot assert or prove a fair use defense (as would be their burden) because they waived any defenses through their misconduct that led to entry of default against them. *See Anderson v. Air West, Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976) (default due to discovery misconduct forfeited defendant's right to litigate the merits of plaintiffs' claims, including defendant's affirmative defenses). In any event, it is well established in this Circuit and elsewhere that the unauthorized uploading and downloading of copyrighted works is copyright infringement, and not fair use. *See, e.g.*, *Napster*, 239 F.3d at 1019 ("plaintiffs will likely succeed in establishing that Napster users do not have a fair use defense"); *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005) ("downloading full copies of copyrighted material without compensation to authors cannot be deemed 'fair use'").[3]

In short, even if defendants were entitled to raise liability issues – which they are not – the legal issues that defendants attempt to raise anew in their Objections do not cast doubt on defendants' liability for copyright infringement.

---

[3] Finally, defendants' suggestion that a fact-finding hearing is necessary is misplaced. Obj. 4-5, n.3. Here, the facts have been established. The cases defendants cite involve situations in which the court found (unlike here) that no claim had been stated or where the "[t]he district court *exceeded the requirements of* [Rule 55]" in conducting an evidentiary hearing on the allegations in the complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987) (emphasis added).

**Defendants' Objection #2.**

Defendants object to a few portions of the proposed permanent injunction that they claim have no basis in the allegations of the complaint or the evidence. This primarily relates to the provisions enjoining defendants from committing *direct* infringement of plaintiffs' works. However, it is well-established that the Court may issue an injunction to broadly prevent infringement even beyond that specifically alleged. An injunction may be framed to bar any "future violations that are likely to occur," *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir. 1985) (citation omitted), and it is well-settled that this Court has "broad discretion … to grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *Modtech, Inc. v. Design Facilities Const.*, No. CV 98-2871 CBM (MCX), 1999 WL 33245492, at *1 (C.D. Cal. 1999) (citation omitted).

It is commonplace for courts to grant permanent injunctions against both direct *and* contributory infringement going beyond a defendant's specific conduct that gave rise to the underlying action. *See, e.g.*, *Columbia Pictures Film Prod. Asia Ltd. v. Uth*, No. CIV S-06-1054 FCD DAD, 2007 WL 36283, at *3 (E.D. Cal. Jan. 4, 2007) (defendant permanently enjoined from "directly or indirectly infringing plaintiff's rights under federal or state law"); *Disney Enters., Inc. v. Farmer*, 427 F. Supp.2d 807, 818-19 (E.D. Tenn. 2006) (same); *Smith & Nephew v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 985, 988-89 (W.D. Tenn. 2006) (enjoining defendant from acts constituting direct, indirect or contributory infringement); *Nintendo of Am., Inc. v. NTDEC*, 822 F. Supp. 1462, 1468 (D. Ariz. 1993) (defendant permanently enjoined from "[p]assing off, inducing or enabling others to sell or pass off any product or item as a product or item produced by [plaintiff]" or "[o]therwise infringing [plaintiff's] trademarks or copyrights … in any manner"). In each of these cases, the court fashioned an injunction that went beyond the specific behavior giving rise to the underlying action.

Moreover, and independently dispositive of defendants' arguments, defendants ignore the point, made in plaintiffs' Motion (at 10), that defendants may well have also been direct infringers but deliberately destroyed any evidence of it. In particular, defendants willfully destroyed evidence of the user IP addresses that may well have revealed that defendants themselves were direct infringers (and defendants then gave false testimony under oath to cover up their spoliation, and even tried to persuade third parties to give false testimony). Dec. 13, 2007 Order at 6-7, 11. In fact, Wes Parker's public postings strongly raise the inference that he personally uploaded a dot-torrent file for the copyrighted show "The Family Guy" at least once. *See* Reply Declaration of Steven B. Fabrizio, dated Apr. 28, 2008 ("Fabrizio Reply Decl.") Exs. 1, 2. However, defendants' "widespread and systematic efforts to destroy evidence and . . . provide[] false testimony under oath," Dec. 13 Order at 15, have made it impossible to ascertain the full extent of defendants' infringing activities. Defendants' actions to cover up these activities are themselves sufficient for the Court to infer that defendants were likely primary infringers as well, and to enjoin direct infringement on that basis alone.

Similarly, the proposed language enjoining defendants from "link[ing] to" plaintiffs' copyrighted works is properly included in order to protect plaintiffs' copyrighted works from continued infringement. *See* Obj. 18-19. In addition to their history of intentionally promoting widespread copyright infringement, defendants have a history of changing the way their website functions in an effort to circumvent Court orders. *See, e.g.*, May 29, 2007 Order at 8-10 (detailing defendants' change in routing of data just before the hearing on plaintiffs' server log motion); Fabrizio Reply Decl. Ex. 3 (Horowitz Dep. 24:15-25:19) (defendants subsequently changed website again to avoid hosting of dot-torrent files). The defendants should be not be able to escape the restrictions of any injunction entered here by merely changing the way their website operates to infringe plaintiffs' copyrighted works in a slightly different – but equally injurious – way. And the

defendants' argument that linking to an unauthorized work cannot be the basis of an infringement action is simply inaccurate. Defendants rely on the *overruled* district court decision in *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006). The Ninth Circuit's decision in that case makes clear that a party can be found liable for materially contributing to infringement by linking to third-party content. *Amazon*, 508 F.3d 1146. An injunction against linking to plaintiffs' Copyrighted Works is plainly appropriate.[4]

**Defendants' Objection #3.**

Defendants also object to the provisions of paragraph 1(a) of the proposed injunction that would enjoin defendants from operating the TorrentSpy system "until such time as Defendants have satisfied the Court that the TorrentSpy System can and will be operated in a manner that does not result in the infringement of the Copyrighted Works." Defendants object to this language as "devoid of content" and "an attempt to insert an implied factual finding into the terms of the Permanent Injunction." Obj. 22. This objection is baseless. Given that the TorrentSpy website is currently shut down, this provision provides clear provisions for the conditions that defendants must meet to resume its operation.

---

[4] Contrary to defendants' offhand assertions, Obj. 6, n.5, the need for an injunction is not mooted by their voluntary cessation of infringing activity. Plaintiffs addressed this in detail in their Motion; defendants simply ignore those compelling authorities. Motion at 3-5. Moreover, any suggestion that defendants ever cut off access to United States users before recently shutting down the site is unsupported – and defendants themselves now hedge this point and claim only that they "ceased providing services to persons *connecting through* U.S. providers in August, 2007." Obj. 6, n.5 (emphasis added). The simple fact is that United States users still accessed the TorrentSpy website from the United States even after August 2007, and defendants refused to obey the Court's Server Log Order, which would have conclusively proven that fact.

Although it is difficult to discern defendants' precise objection, their argument appears to be that defendants do not know, in advance, whether and how they could resume operation of TorrentSpy and still meet this provision. Obj. 28-29. At this stage of the litigation, however, that concern is wholly speculative, because the TorrentSpy website is not currently operational. To debate *now* what exactly would be needed to satisfy the Court at some unknown point in the future – based on an unknown structure of defendants' possible future site and unknown state of future infringement-prevention technology – would be a pointless, and inevitably ineffective, exercise. The Court does not currently need to specify the details of the technological conditions that may be appropriate if and when defendants seek to re-launch TorrentSpy. Moreover, defendants' excessive quotation of Professor Horowitz offers no support to their argument – his testimony only confirms that there are *many* actions that defendants could have taken *under the structure of the TorrentSpy system then in place* to prevent copyright infringement. Obj. 22-26. Others will undoubtedly emerge as technology advances, and others may become feasible depending upon the structure of any new TorrentSpy. Litigating the issue in the abstract, with TorrentSpy shut down, makes no sense. In fact, any injunction so crafted likely would be criticized as unduly vague.

Plaintiffs' proposed injunction strikes the right balance for enjoining the operation of the TorrentSpy system for the time being. It does not seek to permanently enjoin defendants from ever operating TorrentSpy (as plaintiffs rightly could on this record), and it does not seek a standard that would require defendants to satisfy plaintiffs. Defendants must satisfy the Court. At the same time, the proposed injunction avoids defendants' unreasonable suggestion that the Court

should sanction *in advance* a system that allows for some undetermined level of infringement of plaintiffs' works.[5]

At bottom, defendants' objection to the language of provision 1(a) simply makes no sense: the provision is not "devoid of content," Obj. 22, but, rather, is crystal clear. Defendants cannot operate TorrentSpy *until* they satisfy the Court that the site "will be operated in a manner that does not result in the infringement" of plaintiffs' copyrights. There is, therefore, no risk that defendants would somehow inadvertently violate the injunction.

**Defendants' Objection #4.**

Defendants' argument that paragraph 1(b) of the Proposed Injunction is vague and overbroad must also be rejected. Paragraph 1(b) sets forth the enjoined conduct in terms that are reasonable in light of defendants' conduct both as alleged in the Complaint and throughout the litigation.

Rule 65(d)'s specificity requirement ensures that parties have notice of the type of conduct that is prohibited by an injunction so that they do not unwittingly find themselves in contempt. *See* Fed. R. Civ. P. 65(d)(1)(C); *GoTo.com, Inc. v.*

---

[5] Defendants' argument on acceptable levels of copyright infringement is apparently pieced together from selective and out-of-context quotations from Professor Horowitz's deposition. Professor Horowitz is a prominent expert in computer science; however, any legal and/or policy opinions that defendants' counsel insisted that Professor Horowitz render in his deposition are far outside that expertise and inadmissible, *see* Fed. R. Evid. 701, 702; *United States v. Ockenfels*, No. 05-00067, 2006 WL 5267972, at *1 (N.D. Cal. Nov. 9, 2006) (excluding testimony of computer expert about employment records as "those documents [were] outside the scope of her expertise"); indeed, those questions were objected to during the deposition for just that reason. As Professor Horowitz himself made clear, he approached the issue of filtering "from a technical perspective," Obj. 28:2-3, and was in no position to offer competent opinions about its legal adequacy.

*Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (injunction need not "catalog the entire universe" of possible violations to be "sufficiently clear" and provide "adequate notice"); *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 685 (9th Cir. 1988) (holding that where "[t]he terms of the injunction place the enjoined parties on fair notice of the actions that are prohibited in language that is reasonably understandable[, g]reater particularity . . . is not required under Rule 65(d)"). However, Rule 65 does not require that the "district court . . . also elucidate *how* to enforce the injunction." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004); *see also GoTo.com,* 202 F.3d at 1211 ("the plaintiff should not be held to answer the infringer's subjective assertion that it cannot understand how best to comply with an injunction"); *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995) (holding, in copyright infringement action, that placing burden on defendant to determine how to comply with injunction was "appropriate because [the defendant was] the infringer").

Indeed, there is no prohibition against describing the conduct in broad terms so long as the injunction is tailored to the protected legal interest and the limits on a party's behavior are clear based on the facts of the case. *See, e.g., GoTo.com,* 202 F.3d at 1203, 1211 (upholding broad injunction against using confusingly similar trademark as necessary to protect trademark owner's interest); *LaDuke v. Nelson*, 762 F.2d 1318, 1331 (9th Cir. 1985) (upholding injunction against warrantless searches of certain individuals "unless based on probable cause" as "sufficiently clear"). Indeed, in copyright and trademark suits it is routine for defendants to be broadly enjoined from directly or indirectly infringing works or marks owned by the plaintiff. *See, e.g., Uth*, 2007 WL 36283, at *3 (defendant prohibited from "directly or indirectly infringing on plaintiff's rights under federal or state law"); *NTDEC*, 822 F. Supp. at 1467 (defendant prohibited from "infringing [plaintiff's] trademarks or copyrights … in any manner"); *see also Smith & Nephew*, 466 F. Supp. 2d at 985,

988 (broadly enjoining defendant from actions constituting direct, induced or contributory infringement). The proposed injunction here is no more expansive than those at issue in other infringement cases.[6]

A broad injunction is well-justified based on the magnitude of defendants' infringing conduct and their continued disregard for the judicial process in an effort to escape liability. The risk in this case is that the defendants will be enjoined from too little, not too much. *See Transgo,* 768 F.2d at 1022 (injunction may be framed to bar any "future violations that are likely to occur"); *Modtech,* 1999 WL 33245492, at *1 (Court has "broad discretion ... to grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright'"). The injunction defendants propose would provide effectively meaningless relief. Defendants could (and likely would) just start a new site under a different name or with different technology that accomplishes the same infringing end. Having spent more than two years and enormous amounts of resources litigating this case, plaintiffs should not be in a position of having to start over with new enforcement against the same defendants for comparable conduct dressed up slightly differently.

In arguing against the proposed injunction, defendants resort to concocting far-fetched scenarios that distort the injunction's obvious meaning. Obj. 32. However, it is the plain language of an injunction that controls, and it is on the basis

---

[6] In contrast, the cases cited by defendants, Obj. 31, do not concern injunctions against copyright infringement and involve case-specific facts where certain terms were found broad or ambiguous. *E.g.*, *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (injunction against disclosure of "information or communication of a confidential nature" ambiguous where there was no guidance to determine whether information was confidential); *Peregrine Myanmar v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) (impossible to tell which lawsuits were "spurious").

of the plain language that courts must assess whether or not an injunction meets Rule 65(d)'s specificity requirement. *See, e.g., LaDuke*, 762 F.2d at 1331 (challenged injunction sufficiently clear based on plain language). Defendants' assertion here that the proposed injunction would "prohibit Defendants from engaging in any communication whatsoever with anyone 'involved in any peer-to-peer file-trading network,'" Obj. 30-31, is hardly based on the plain language, or any realistic interpretation, of the proposed injunction.

Finally, defendants rely on *Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096 (9th Cir. 1989), for the principle that members of the general public may not be enjoined "from using modern technology that has multiple substantial uses just because one of those uses would be ... unlawful." *Id.* at 1101. But in *Premier* there was ample evidence of such legitimate uses in the record. *Id.* Where the record contains no such evidence, *Premier* makes clear that a court "need not speculate on possible other uses." *Id.* at 1100-01 (citing *California Satellite Systems v. Seimon*, 767 F.2d 1364, 1368 (9th Cir. 1985)); *see also California Satellite*, 767 F.2d at 1368.

In this case, it is established as fact that the TorrentSpy website was used overwhelmingly for copyright infringement and that defendants' entire business was premised on copyright infringement. Compl. ¶¶ 30, 31, 34. Defendants, moreover, by their misconduct leading to entry of default – and additionally by their refusal to comply with the Server Log Order – waived any defense of substantial non-infringing uses. *See Air West*, 542 F.2d at 1093 (default due to discovery misconduct forfeited defendant's right to litigate defenses). This case is thus very different than *Grokster V*, where the court found that the system at issue was capable of substantial noninfringing uses. 518 F. Supp. 2d at 1232-33. The proposed injunction provisions are tailored to the egregious circumstances in this case.

**Defendants' Objection #5.**

The defendants' final objection is to the proposed injunction provision that would obligate defendants to require any transferee of TorrentSpy-Related Assets to submit to the Court's jurisdiction and be bound by the terms of the permanent injunction. Defendants' objection that this provision is "punitive" and unrelated to copyright infringement simply ignores the facts of this case.

"Defendants operate[d] one of the largest and most active torrent sites on the Internet." Compl. ¶ 26. At one time, it was one of the top 200 websites by user traffic *in the world*. Fabrizio Reply Decl. Ex. 4 (Apr. 3, 2007 Tr. 102:17-21). The website was used effectively for nothing but infringement and was the very vehicle through which defendants conducted their infringing activities. *See* Compl. ¶¶ 26-28. Because of that, the "TorrentSpy" brand is now synonymous with copyright infringement; its value lies in its name recognition as a destination to obtain copyrighted (and infringing) entertainment works, and that is the prime reason it might be of value to a third party. Absent such an asset-transfer provision, defendants could readily frustrate any permanent injunction, for example, by "transferring" the TorrentSpy site to a third party in exchange for a substantial portion of the revenues from its operation. Thus, having violated the copyright laws to build a brand for infringement, defendants would continue to earn substantial revenue from continued copyright infringement through TorrentSpy. Such actions would completely frustrate any effective relief, particularly if the third-party transferee is outside of this country or otherwise undiscoverable.

The Court clearly has the authority to require defendants to impose conditions on the transfer of TorrentSpy-Related Assets in aid of its authority to enjoin copyright infringement via TorrentSpy. A court can, for example, enter an injunction that *directly binds* successors and assigns to prevent the ready circumvention of an injunction. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 177-80, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973); *Regal Knitwear Co. v. NLRB*,

324 U.S. 9, 14-16, 65 S. Ct. 478, 89 L. Ed. 661 (1945); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1298 (9th Cir. 1992). Indeed, virtually identical asset-transfer provisions have been entered by numerous courts. *See, e.g.*, Fabrizio Reply Decl. Ex. 5, ¶ 6 (Stip. & Consent Judgment, *Arista Records LLC v. Metamachine, Inc.*, No. 06-6991 (S.D.N.Y. filed Sept. 15, 2006)); Ex. 6, ¶ 6 (Stip. & Judgment & Perm. Injunction, *Capitol Records, Inc. v. Free Peers, Inc.*, No. 06-3378 (S.D.N.Y. filed May 5, 2006)); Ex. 7, ¶ 7 (Consent Judgment & Perm. Injunction, *Columbia Pictures Indus., Inc. v. Webber*, No. 04-2642 (N.D. Tex. filed Feb. 1, 2005)). Although these judgments were by consent, the courts nonetheless obviously concluded that they had the authority to enter them. *See United States v. Int'l Bhd. of Teamsters*, 970 F.2d 1132, 1137 (2d Cir. 1992) ("A court must scrutinize a proposed settlement before giving it a judicial imprimatur" (citations and internal quotation marks omitted)).

Moreover, Paragraph 3 of the injunction does not seek to bind non-parties to the suit, but rather applies *in personam* to defendants to restrict a transfer that would likely result in continuing copyright infringement through TorrentSpy. Because defendants, directly or indirectly, would need to be a party to any transfer of TorrentSpy-Related Assets, the Court can clearly require that defendants impose restrictions on any such transfer. *See, e.g.*, *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) ("the injunction operates *in personam,* not *in rem*").

Finally, the Proposed Injunction is *not* an injunction restricting the dissemination of BitTorrent technology generally. Defendants did not create, nor do they own, any core BitTorrent technology – that technology is freely available as open-source software. Fabrizio Reply Decl. Exs. 8, 9. The Proposed Injunction reaches and restricts *only* the assets and technology that make up defendants' TorrentSpy site. What defendants own, directly or indirectly, is the domain name and the technology to replicate the TorrentSpy website such that a successor pirate

operator could easily set up and run TorrentSpy anew – profiting from the very popularity that was built on massive infringement of plaintiffs' works. A restriction on the transfer of those assets is manifestly warranted on these facts.

## CONCLUSION

For the foregoing reasons, and those stated in plaintiffs' opening memorandum, the Court should grant the Motion for Permanent Injunction Against Defendants and enter an injunction in the form of the [Proposed] Permanent Injunction.

Respectfully submitted,

Dated: April 28, 2008

JENNER & BLOCK LLP

By: ______________________
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
15301 Ventura Boulevard, Bldg. E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

I, Vicki S. Henderson, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause. My business address is 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067-4120.

On April 28, 2008 I served a true copy of the **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION AGAINST DEFENDANTS** on the parties in this cause as follows:

[X] (VIA OVERNIGHT DELIVERY) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then causing said envelope to be deposited for collection and overnight delivery via Federal Express in accordance with Loeb & Loeb LLP's ordinary business practices.

Ira P. Rothken
ROTHKEN LAW FIRM
3 Hamilton Landing
Suite 224
Novato, CA 94949

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service. That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2008, at Los Angeles, California.

Vicki S. Henderson

LA1551200.1
203351-10010

# PROOF OF SERVICE

I, ______________________ the undersigned, declare that:

I am an employee or independent contractor of Nationwide Legal, Inc., a registered California process service (Registration Number 5484 ), having its principal place of business in the County of Los Angeles, State of California, and whose telephone number is (213) 625-9100. I am over the age of 18 and not a party to the within action; my business address is 316 West 2nd Street, Suite 705, Los Angeles, CA 90012.

On April 28, 2008, I served a true copy of the **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION AGAINST DEFENDANTS** by delivering to the office of the addressee(s) in a sealed envelope:

Kirk J. Retz, Esq.
Law Offices of Kirk J. Retz
21535 Hawthorne Boulevard, Suite 200
Torrance, CA 90503

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 28, 2008, at Los Angeles, California.

______________________________
Signature