**Ira P. Rothken (SBN #160029)**
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone: (415) 924-4250
Facsimile: (415) 924-2905

**Kirk J. Retz (#170208)**
LAW OFFICES OF KIRK J. RETZ, APC
21535 Hawthorne Blvd., #200
Torrance, CA 90503
Telephone: (310) 540-9800
Facsimile: (310) 540-9881

Attorney for Defendants
Justin Bunnell, Forrest Parker, Wes
Parker and Valence Media, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, et al.,<br><br>Defendants. | **Case No. 06-01093 FMC (JCx)**<br><br>**DECLARATION OF JARED R. SMITH IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br><br>Date: May 5, 2008<br>Time: 10:00 a.m.<br>Judge: Florence Marie Cooper<br>Ctrm: 750 |



Dockets.Justia.com

I, Jared R. Smith, declare:

1. I am an attorney at law licensed to practice before this court and associated with the Rothken Law Firm LLP, counsel for defendants in this action and make this declaration in support of DEFENDANTS' OBJECTIONS TO PROPOSED PERMANENT INJUNCTION. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I could competently testify as to the facts herein stated.

2. Attached hereto as Exhibit A is a true and correct copy of relevant pages of the Deposition of Professor Ellis Horowitz taken on November 28, 2007 in this action, containing the references quoted below, which support defendants' good faith operation of a website providing a search service and are not willful copyright infringers:

a. **According to Professor Horowitz Google provides search results that link to dot torrent files** (Horowitz Deposition at 23:25 –24:2):

> My question is this then: One could do a file type Torrent search on Google and find dot-torrent files; correct?
> Yes, you could do that.

**b. According to plaintiffs' expert Professor Horowitz Torrentspy provided (at the time of his deposition) search results that link to dot-torrent files found on third party sites** (see Excerpts of Deposition of Professor Ellis Horowitz taken November 28, 2007, attached as Exhibit A to Declaration of Jared R. Smith (hereafter referred to as "Horowitz Deposition" at 24:15-20):

> To the best of your knowledge currently Torrentspy provides search results that link to dot-torrent files found elsewhere; correct?
> Yes. To the best of my knowledge at this point the links that are provided link to third-party sites.

**c. Professor Horowitz makes clear that the Torrentspy.com servers are not involved with any content hosted on third party sites once the user controlled BitTorrent client application takes over** (Horowitz Deposition at 30:4-10):

> TorrentSpy.com, their servers are not involved once the client application BitTorrent takes over; correct?
> MR. SERVODIDIO: Vague and ambiguous.
> THE WITNESS: Yes. That's correct. Once the dot-torrent file has been

downloaded, TorrentSpy machines are not involved.

**d. Indeed according to Professor Horowitz Defendants provided robust systems to remove dot torrent files that copyright owners found offending given the constraints of a search engine like Torrentspy.com that did not "touch" or download copyrighted content (thus making viewing or reviewing such content located on third party servers impractical):**

**e. Professor Horowitz testified in essence that Defendants can and do ban Torrentspy users either by user name or IP addresses for various infractions and Defendants can and do ban trackers for various reasons and will not index dot torrent files from banned trackers** (Horowitz Deposition at 39:5-16)

Q. The defendants in this case can and do ban TorrentSpy users either by user names or IP addresses for various infractions; true?
A. Yes. Apparently they do.
Q. Defendants can and do ban trackers for various reasons; correct?
A. Yes, that's correct.
Q. TorrentSpy.com will not index incoming dot-torrent files from trackers that are banned; correct?
A. That's correct. They will not index dot-Torrent files from banned trackers.

**f. Professor Horowitz testified in essence that Defendants provided an interface for Torrentspy site administrators to ban trackers** (Horowitz Deposition at 39:17-19):

Q. Defendants provide interface for TorrentSpy site administrators to ban trackers; correct?
A. Yes, they do. That's correct.

**g. Professor Horowitz testified in essence that Defendants block and delete dot torrent files through their software** (Horowitz Deposition at 39:20-24):

Q. Defendants can and do block and delete dot-torrent files through their software; correct?
A. They have the facility to block and delete dot-torrent files, and my understanding is they have done that.

**h. Professor Horowitz testified in essence that Torrentspy blocks dot torrent files which are then flagged as such in Torrentspy's index and the files with the same info hash will not be reindexed** (Horowitz Deposition at 39:25 – 40:4):

Q. And blocked dot-torrent files are flagged as such in TorrentSpy's index and will not be reindexed on TorrentSpy; correct?

A. That's correct. The specific file with that info hash will not be reindexed.

**i. Professor Horowitz testified in essence that Site administrators can block any dot torrent file on Torrentspy and have a mass blocking functionality through the administrator interface** (Horowitz Deposition at 40:5-9)

Q. Site administrators can block any dot-torrent file on TorrentSpy and can block several files at once using the mass block functionality; correct?

A. Yes, that's correct. It is provided through the interface.

**j. Professor Horowitz testified in essence that Defendants have allowed several companies access to their site in such a manner that these companies after identifying a specific torrent file could have that torrent blocked** (Horowitz Deposition at 40:10-16):

Q. Defendants have given DMCA members functionality to block dot-torrent files; true?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: Defendants have allowed several companies access to their site in such a manner that these companies after identifying a specific torrent could have that torrent blocked.

k. **Professor Horowitz testified in essence that Torrentspy.com filters or blocks DMCA noticed Torrent files by hash value regardless of the file name and such files with the same hash value will not be reindexed** (Horowitz Deposition at 43:22-46:11):

Q. And it's your understanding that one of those mechanisms is to block dot-torrent files that result from DMCA notifications; correct?

A. Yes. They apparently have some mechanism in place for blocking such files.

Q. That's done by hash value; correct?

A. No. It seemed to be done by a link to the content. I believe the DMCA notice requires the copyright owner to provide such a link, and then TorrentSpy staff members who have been assigned to the process then follow through and attempt to block the corresponding content.

Q. The filtering that goes on by TorrentSpy.com for DMCA noticed Torrent files is to block the Torrent files by hash value; correct?

MR. SERVODIDIO: Objection. Asked and answered.

THE WITNESS: Well, there is a specific file that's being blocked and hence yes, it would be -- would correspond to a specific hash value.

BY MR. ROTHKEN:

Q. So regardless of what the Torrent file name is, any Torrent file that had the hash value that was blocked would be blocked; correct?

A. Yes. I believe that is the case. They do check via the hash value.

Q. And so if someone provided a DMCA notice for a specific dot-torrent file that had a particular hash value, then -- and that was blocked by TorrentSpy.com, then every other dot-torrent file on its system that had the same hash value would be blocked; correct?

A. Yes. There should not be multiple entries having the same hash value. So I don't think there's anything to be gained here with your question. Once they've blocked the entry with a corresponding hash, it's blocked. There shouldn't be any additional occurrences with that file with the same hash.

Q. Unless somebody named the Torrent file differently that had the same hash value; correct?

A. Well, I thought you were saying that they might have renamed the file. So the entry would still be there, only have a different name value, same hash

value.

Q. I'll start over with the hypothetical. I just want to make sure that it's accurate.

Under the technology that's used by TorrentSpy.com for blocking Torrent files obtained through DMCA notices, if TorrentSpy.com were to block a specific dot-torrent file that had a specific hash value, all other dot-torrent files regardless of their name that had the same hash value would be blocked too; true?

MR. SERVODIDIO: Object as vague and ambiguous.

THE WITNESS: I would say it this way. That is, if they encountered at a later time a Torrent file that had the same hash, it would not be downloaded and reindexed. So that once a file with the specific hash value is blocked, it is continually blocked going forward.

BY MR. ROTHKEN:

Q. In other words, the dot-torrent file that's blocked would not appear in its search results regardless of a file name?

A. Yes. That's correct.

**l. Professor Horowitz testified in essence that The cooperation of the copyright owners would be helpful for keyword filtering** (Horowitz Deposition at 50:3-9):

Q. So therefore you're agreeing that the cooperation of the copyright owners to properly label things and to cooperate is crucial in order for keyword filtering to be accurate and successful?

MR. SERVODIDIO: Misstates the witness's testimony, argumentative.

THE WITNESS: It would certainly be helpful.

**m. Professor Horowitz does not know how many words in the dictionary would be taken up if one were to analyze for keywords to use in theoretical keyword filters all the copyrighted movies, videos, and songs in the United States** (Horowitz Deposition at 50:14-23):

Q. How many words, if you know -- and tell me if you don't know. How many words in the dictionary would be taken up if one were to analyze all the copyrighted movies, videos and songs in the United States?

MR. SERVODIDIO: Vague and ambiguous, calls for speculation.

THE WITNESS: First of all, your assumption that all of the copyrighted songs and movies would have to be somehow kept track of I think is unrealistic, and of course I don't know what that number is.

n. **Professor Horowitz is of the view that providing keywords for filtering or keeping track of and filtering "all" copyrighted songs and movies is somewhat unrealistic** (Horowitz Deposition at 50:14-23):

Q. How many words, if you know -- and tell me if you don't know. How many words in the dictionary would be taken up if one were to analyze all the copyrighted movies, videos and songs in the United States?

MR. SERVODIDIO: Vague and ambiguous, calls for speculation.

THE WITNESS: First of all, your assumption that all of the copyrighted songs and movies would have to be somehow kept track of I think is unrealistic, and of course I don't know what that number is.

o. **Professor Horowitz does not think it is necessary to block all copyrighted content using keyword filters on dot torrent search engines especially content that ever appeared over the last 20 to 50 years because he thinks the sites that are offering recent content is where copyright infringement seems to be taking hold** (Horowitz Deposition at 50:25-51:8):

Q. Why would it be unrealistic?

A. Well, I don't think it's necessary to block all -- all copyrighted content that's ever appeared over the last -- I don't know -- 20 or 50 years.

Q. Why is that?

A. Well, because I think largely the sites are offering recent content, new movies, new music. That's where the copyright infringement seems to be taking hold.

**p. Professor Horowitz is of the opinion that in using a keyword filtering technique from a technical perspective on dot torrent sites that some downstream copyright infringement that occurs on third party sites should be tolerable** (Horowitz Deposition at 51:9-21):

Q. Okay. So you're saying then that in a keyword
filtering technique, that some downstream copyright
infringement should be tolerable?
MR. SERVODIDIO: Objection. Misstates the
witness's testimony, calls for a legal conclusion,
beyond the scope.
THE WITNESS: Yeah. I'm just viewing it as
from a technical perspective, and from a technical
perspective I think the issue is you would want to keep
the database or block list size sufficiently small, and
there's no reason that it couldn't be kept reasonably
small because not all of the copyrighted material need
to be included.

**q. Professor Horowitz does not want to be committed to a view on whose copyrighted content should be left out of the keyword filter and he believes that one could do a study and come up with a reasonable set based upon current trends and he has not done such a study** (Horowitz Deposition at 51:23-52:8):

Q. Okay. So whose unauthorized copyrighted
content gets to be left out?
MR. SERVODIDIO: Objection. Calls for
speculation, beyond the scope, calls for a legal
conclusion.
THE WITNESS: Well, again, I haven't sat down
and tried to work out all the details. I don't want to
be committed to something. But I think -- I don't think
there's any particular vendor of copyrighted material
that I would necessarily cut out. I don't think that's
the way to view it.

3. Attached hereto as Exhibit B is a true and correct copy of relevant pages of the Deposition of Albert Cheng taken on August 2, 2007 in this action.

4. Attached hereto as Exhibit C is a true and correct copy of relevant pages of the Deposition of Rani Cherkoori taken on August 8, 2007 in this action

5. Attached hereto as Exhibit D is a true and correct copy of relevant pages of the Deposition of Steve Kang taken on August 1, 2007 in this action

6. Attached hereto as Exhibit E is a true and correct copy of relevant pages of the Deposition of David Kaplan taken on August 2, 2007 in this action

7. Attached hereto as Exhibit F is a true and correct copy of relevant pages of the Deposition of Alfred Perry taken on August 1, 2007 in this action

8. Attached hereto as Exhibit G is a true and correct copy of relevant pages of the Deposition of Jane Sunderland taken on August 2, 2007 in this action

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true and correct. Dated: April 28, 2008.

Jared R. Smith

EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 06-01093 FMC |
| JUSTIN BUNNELL, et al., | ) | |
| Defendants. | ) | |

DEPOSITION OF

ELLIS HOROWITZ

LOS ANGELES, CALIFORNIA

NOVEMBER 28, 2007

ATKINSON-BAKER, INC.
COURT REPORTERS
www.depo.com
800-288-3376

File No.: A109E99

Reported By: Deborah Morin, CSR No. 11558

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., et al., )
)
Plaintiffs, )
)
vs. ) Case No. 06-01093 FMC
)
JUSTIN BUNNELL, et al., )
)
Defendants. )
_______________________________)

DEPOSITION OF ELLIS HOROWITZ, taken on behalf of the Defendants, at 515 South Flower Street, 36th Floor, Los Angeles, California, commencing at 10:06 A.M., Wednesday, November 28, 2007, before Deborah Morin, CSR No. 11558.

A P P E A R A N C E S

For the Plaintiffs:

JENNER & BLOCK
BY: GIANNI P. SERVODIDIO, ESQ.
919 Third Avenue
37th Floor
New York, New York 10022
(212) 891-1600

JENNER & BLOCK
BY: MICHELLE A. GROMAN, ESQ.
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
(202) 639-6000

For the Defendants:

LAW OFFICES OF KIRK J. RETZ
BY: LAUREN Y. HWANG, ESQ.
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
(310) 540-9800

(APPEARING VIA VIDEOCONFERENCE)

ROTHKEN LAW FIRM LLP
BY: IRA P. ROTHKEN, ESQ.
JARED SMITH, ESQ.
3 Hamilton Landing
Suite 280
Novato, California 94949
(415) 924-4250

# I N D E X

WITNESS: ELLIS HOROWITZ


| EXAMINATION | PAGE |
|---|---|
| BY MR. ROTHKEN | 6 |

EXHIBITS

| NUMBER | DEFENDANTS' DESCRIPTION | PAGE |
|---|---|---|
| 1 | - Notice of Subpoena and Deposition of Plaintiff's Expert Professor Ellis Horowitz | 10 |
| 2 | - Report by Professor Ellis Horowitz | 12 |


QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

(NONE)

INFORMATION TO BE SUPPLIED:

(NONE)

MR. SERVODIDIO: When he says that, be careful.
MR. ROTHKEN: But I have to still make a record. So I hope you understand.
THE WITNESS: Sure. I'm happy to take your questions and answer them.
BY MR. ROTHKEN:
Q. Now, the BitTorrent peer technology involves a software application that users install on their computers known as a client application; is that correct?
A. Yes, that's correct.
Q. What is a client application?
A. It's a piece of software that has built within it knowledge of the BitTorrent protocol, and it's able to take dot-torrent files and cause the corresponding content to be downloaded to the user's machine.
Q. And can you give us an example of any such client applications?
A. Sure. The one that I favor is the one from BitTorrent, which is called BitTorrent.
Q. And that BitTorrent client application software is the software that's involved in the file transfer and copying process?
A. It is the software that implements the

BitTorrent protocol, and it is involved in the transfer of the content.

Q. And copying the content to, say, a user's hard drive; correct?

A. Yes. I guess I would say yes to that.

Q. All right. Just for the record, you're not guessing. You know that; correct?

A. Yes, I'm sorry. I didn't mean to use the word "guess."

Q. I know. I know you weren't guessing on that. All right.

Now, one could find Torrent files by using a major search engine like Google; correct?

A. In theory it's possible, but it's not very likely.

Q. Oh, somebody could do a search, say with the filter type Torrent and find Torrent files using Google; correct?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: Though it is possible to confine Google search results to dot-torrent files, most people would probably be unfamiliar with that option.

BY MR. ROTHKEN:

Q. My question is this then: One could do a file type Torrent search on Google and find dot-torrent

files; correct?
A. Yes, you could do that.
Q. All right. What is a Tracker?
A. A Tracker is a piece of software that has knowledge of peers who have either all or part of the content, a certain piece of content, and they would essentially control the process whereby these peers would exchange copies of the content that they have.
Q. A Tracker is a server that's running Tracker software on the BitTorrent protocol; correct?
A. Yes, that's correct.
Q. The defendants in this case do not run a Tracker; correct?
A. That's correct. They do not run a Tracker.
Q. To the best of your knowledge currently TorrentSpy provides search results that link to dot-torrent files found elsewhere; correct?
A. Yes. To the best of my knowledge at this point the links that are provided link to third-party sites.
Q. And by the way, did you go ahead and evaluate the TorrentSpy site to support what you just testified to?
A. Yes. I noticed over the period of time that I've been investigating, there has been a shift so that

MR. SERVODIDIO: Objection. Beyond the scope of the expert report.

THE WITNESS: No, I have not made such a study.

BY MR. ROTHKEN:

Q. Dot-torrent files do not contain actual copies of a content item; correct?

A. That's correct.

Q. Torrent files contain data that provides an address where content may possibly be found; correct?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: No. That's not accurate. Torrent files contain an address, one or more addresses of trackers who in turn have knowledge of where the content can be found.

BY MR. ROTHKEN:

Q. Okay. Thank you for that clarification.

TorrentSpy.com did not provide content files; correct?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: That's correct. They do not provide the content file.

BY MR. ROTHKEN:

Q. In order to use a Torrent file, one needs to have installed on their computer a client application

BY MR. ROTHKEN:

Q. So you would agree with my point?

A. I would agree with your point.

Q. TorrentSpy.com, their servers are not involved once the client application BitTorrent takes over; correct?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: Yes. That's correct. Once the dot-torrent file has been downloaded, TorrentSpy machines are not involved.

BY MR. ROTHKEN:

Q. How many dot-torrent files have you ever downloaded using TorrentSpy.com?

A. I believe I've downloaded around less than a half dozen.

Q. For those of us in the audience who don't know what a dozen is, that would be less than six; correct?

A. That's correct.

Q. When did you download those Torrent files?

A. In the sort of May, June time period and then one more recently in early November.

Q. What did you do to download Torrent files in the May, June time period from TorrentSpy.com?

A. I clicked on one of their download links.

Q. Which one? Well, strike that.

BY MR. ROTHKEN:

Q. Okay. But there could be large files with the name "Hair Spray" in them that's not the movie; correct?

A. There could be.

Q. The defendants in this case can and do ban TorrentSpy users either by user names or IP addresses for various infractions; true?

A. Yes. Apparently they do.

Q. Defendants can and do ban trackers for various reasons; correct?

A. Yes, that's correct.

Q. TorrentSpy.com will not index incoming dot-torrent files from trackers that are banned; correct?

A. That's correct. They will not index dot-Torrent files from banned trackers.

Q. Defendants provide interface for TorrentSpy site administrators to ban trackers; correct?

A. Yes, they do. That's correct.

Q. Defendants can and do block and delete dot-torrent files through their software; correct?

A. They have the facility to block and delete dot-torrent files, and my understanding is they have done that.

Q. And blocked dot-torrent files are flagged as

such in TorrentSpy's index and will not be reindexed on TorrentSpy; correct?

A. That's correct. The specific file with that info hash will not be reindexed.

Q. Site administrators can block any dot-torrent file on TorrentSpy and can block several files at once using the mass block functionality; correct?

A. Yes, that's correct. It is provided through the interface.

Q. Defendants have given DMCA members functionality to block dot-torrent files; true?

MR. SERVODIDIO: Vague and ambiguous.

THE WITNESS: Defendants have allowed several companies access to their site in such a manner that these companies after identifying a specific torrent could have that torrent blocked.

BY MR. ROTHKEN:

Q. And those DMCA members could actually block multiple Torrent at a time; correct?

A. Not to my recollection. I don't believe they offered the block, the mass block feature.

Q. All right. Do you know one way or another?

A. I believe they did not offer it to the DMCA, so-called DMCA members.

Q. Now, using -- now, if a DMCA member were to go

irrelevant.

THE WITNESS: As I understand it, it is user-generated content, yes.

BY MR. ROTHKEN:

Q. So the uploading of a Torrent file would be user-generated content; correct?

MR. SERVODIDIO: Objection. Asked and answered. Same objections.

THE WITNESS: Again, I haven't heard the phrase applied in this context of uploading dot-torrent files.

BY MR. ROTHKEN:

Q. So you're not going to accept it or reject it then. Is that fair?

A. Yes. I'll leave it as an open issue.

Q. You agree that defendants currently employ different mechanisms to keep their sites free of dot-torrent files that defendants appear to find undesirable?

A. Yes. They have several mechanisms that they use.

Q. And it's your understanding that one of those mechanisms is to block dot-torrent files that result from DMCA notifications; correct?

A. Yes. They apparently have some mechanism in

place for blocking such files.

Q. That's done by hash value; correct?

A. No. It seemed to be done by a link to the content. I believe the DMCA notice requires the copyright owner to provide such a link, and then TorrentSpy staff members who have been assigned to the process then follow through and attempt to block the corresponding content.

Q. The filtering that goes on by TorrentSpy.com for DMCA noticed Torrent files is to block the Torrent files by hash value; correct?

MR. SERVODIDIO: Objection. Asked and answered.

THE WITNESS: Well, there is a specific file that's being blocked and hence yes, it would be -- would correspond to a specific hash value.

BY MR. ROTHKEN:

Q. So regardless of what the Torrent file name is, any Torrent file that had the hash value that was blocked would be blocked; correct?

A. Yes. I believe that is the case. They do check via the hash value.

Q. And so if someone provided a DMCA notice for a specific dot-torrent file that had a particular hash value, then -- and that was blocked by TorrentSpy.com,

then every other dot-torrent file on its system that had the same hash value would be blocked; correct?

A. Yes. There should not be multiple entries having the same hash value. So I don't think there's anything to be gained here with your question. Once they've blocked the entry with a corresponding hash, it's blocked. There shouldn't be any additional occurrences with that file with the same hash.

Q. Unless somebody named the Torrent file differently that had the same hash value; correct?

A. Well, I thought you were saying that they might have renamed the file. So the entry would still be there, only have a different name value, same hash value.

Q. I'll start over with the hypothetical. I just want to make sure that it's accurate.

Under the technology that's used by TorrentSpy.com for blocking Torrent files obtained through DMCA notices, if TorrentSpy.com were to block a specific dot-torrent file that had a specific hash value, all other dot-torrent files regardless of their name that had the same hash value would be blocked too; true?

MR. SERVODIDIO: Object as vague and ambiguous.

THE WITNESS: I would say it this way. That is, if they encountered at a later time a Torrent file that had the same hash, it would not be downloaded and reindexed. So that once a file with the specific hash value is blocked, it is continually blocked going forward.

BY MR. ROTHKEN:

Q. In other words, the dot-torrent file that's blocked would not appear in its search results regardless of a file name?

A. Yes. That's correct.

Q. All right. Now, you seem to opine -- I sound like the O'Reilley factor, but you seem to opine that you're in favor of keyword filtering techniques. Is that fair?

A. Yes. I'd say that's fair.

Q. Have you done any research into the accuracy of keyword filtering techniques before giving this opinion?

A. I haven't done a formal study, but at the same time keyword filtering is a very old and traditional technique in computer science.

Q. All right. Have you done any analysis to determine what the level of accuracy would be for keyword filtering regarding underbreadth or overbreadth

put out the content indicating that this was a copy that was try-and-buy.

Q. So therefore you're agreeing that the cooperation of the copyright owners to properly label things and to cooperate is crucial in order for keyword filtering to be accurate and successful?

MR. SERVODIDIO: Misstates the witness's testimony, argumentative.

THE WITNESS: It would certainly be helpful.

BY MR. ROTHKEN:

Q. Have you ever analyzed in any way the names of all copyrighted movies, videos and songs?

A. No, I haven't.

Q. How many words, if you know -- and tell me if you don't know. How many words in the dictionary would be taken up if one were to analyze all the copyrighted movies, videos and songs in the United States?

MR. SERVODIDIO: Vague and ambiguous, calls for speculation.

THE WITNESS: First of all, your assumption that all of the copyrighted songs and movies would have to be somehow kept track of I think is unrealistic, and of course I don't know what that number is.

BY MR. ROTHKEN:

Q. Why would it be unrealistic?

A. Well, I don't think it's necessary to block all -- all copyrighted content that's ever appeared over the last -- I don't know -- 20 or 50 years.

Q. Why is that?

A. Well, because I think largely the sites are offering recent content, new movies, new music. That's where the copyright infringement seems to be taking hold.

Q. Okay. So you're saying then that in a keyword filtering technique, that some downstream copyright infringement should be tolerable?

MR. SERVODIDIO: Objection. Misstates the witness's testimony, calls for a legal conclusion, beyond the scope.

THE WITNESS: Yeah. I'm just viewing it as from a technical perspective, and from a technical perspective I think the issue is you would want to keep the database or block list size sufficiently small, and there's no reason that it couldn't be kept reasonably small because not all of the copyrighted material need to be included.

BY MR. ROTHKEN:

Q. Okay. So whose unauthorized copyrighted content gets to be left out?

MR. SERVODIDIO: Objection. Calls for

speculation, beyond the scope, calls for a legal conclusion.

THE WITNESS: Well, again, I haven't sat down and tried to work out all the details. I don't want to be committed to something. But I think -- I don't think there's any particular vendor of copyrighted material that I would necessarily cut out. I don't think that's the way to view it.

BY MR. ROTHKEN:

Q. So who would be in this small list?

MR. SERVODIDIO: Objection. Asked and answered, beyond the scope, calls for a legal analysis and conclusion.

THE WITNESS: I think one could do a study and come up with some reasonable set based upon current trends.

BY MR. ROTHKEN:

Q. Have you done that study?

A. No, I haven't.

Q. Are you aware of any such studies?

A. No.

MR. ROTHKEN: All right. Let's take a ten-minute break and then we'll come back and hopefully conclude this deposition.

MR. SERVODIDIO: Great.

STATE OF ____________________)
)
COUNTY OF ___________________)

I, the undersigned, declare under penalty of perjury that I have read the foregoing transcript, and I have made any corrections, additions or deletions that I was desirous of making; that the foregoing is a true and correct transcript of my testimony contained therein.

EXECUTED this ___ day of _________________, 2007, at ____________________, _____________________.
(City) (State)

______________________________________

ELLIS HOROWITZ

# REPORTER'S CERTIFICATE

I, DEBORAH MORIN, CSR No. 11558, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed.

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action or the outcome thereof.

IN WITNESS WHEREOF, I have subscribed my name this 10th day of December, 2007.

____________________________________
DEBORAH MORIN, CSR No. 11558

EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., et al.,

Plaintiffs,

VS.

No. 06-01093 FMC

JUSTIN BUNNELL, et al.,

Defendants.

DEPOSITION OF ALBERT CHENG

TAKEN ON

THURSDAY, AUGUST 2, 2007

Reported by: NIKKI ROY

CSR No. 3052

Deposition of Albert Cheng, taken on behalf of the Defendants, at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, on Thursday, August 2, 2007, at 1:20 p.m., before NIKKI ROY, CSR No. 3052.

APPEARANCES:

FOR THE PLAINTIFFS:

JENNER & BLOCK LLP
BY: KATHERINE A. FALLOW, Attorney at Law
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
202.639.6000

--and--

MOTION PICTURE ASSOCIATION OF AMERICA
BY: LAUREN NGUYEN, Attorney at Law
15503 Ventura Boulevard
Encino, California 91436
818.995.6600

APPEARANCES OF COUNSEL (Continued):

FOR THE DEFENDANTS:

ROTHKEN LAW FIRM LLP
BY: IRA P. ROTHKEN, Attorney at Law
3 Hamilton Landing
Suite 280
Novato, California 94949
415.924.4250

--and--

RETZ & HOPKINS, LLP
BY: KIRK J. RETZ, Attorney at Law
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
310.540.9800

ALSO PRESENT:

BENJAMIN SHEFFNER

# I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| ALBERT CHENG | BY MR. ROTHKEN | 6 |

## E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 1 | 29 | Complaint for Copyright Infringement, 14 pages |
| 2 | 57 | Notice of Taking Oral Deposition, 23 pages |
| 3 | 61 | Documents Disney produced Bates-stamped Disney 1 through Disney 42, 42 pages |
| 4 | 98 | Agreement, 3 pages |
| 5 | 100 | Press release, 3 pages |
| 6 | 101 | Pages from torrentspy.com, 5 pages |

I N D E X (CONTINUED):

QUESTIONS INSTRUCTED NOT TO ANSWER


| Page: | Line: | Page: | Line: |
|---|---|---|---|
| 21 | 5 | 88 | 17 |
| 24 | 4 | 88 | 24 |
| 38 | 9 | 89 | 7 |
| 40 | 15 | 89 | 15 |
| 45 | 6 | 90 | 25 |
| 47 | 15 | 91 | 12 |
| 48 | 2 | 94 | 19 |
| 69 | 18 | 96 | 5 |
| 75 | 23 | 96 | 11 |
| 76 | 4 | 97 | 1 |
| 77 | 23 | 97 | 13 |
| 78 | 9 | 98 | 24 |
| 78 | 21 | 103 | 1 |
| 84 | 15 | | |

TORRANCE, CALIFORNIA, THURSDAY, AUGUST 2, 2007

1:20 P.M.

ALBERT CHENG,

called as a deponent and sworn in by

the deposition officer, was examined

and testified as follows:

EXAMINATION

BY MR. ROTHKEN:

Q    Good afternoon.  Would you be kind enough to spell your name for the record.

A    Albert Cheng, A-l-b-e-r-t, c-h-e-n-g.

Q    Mr. Cheng, did you ever have your deposition taken before?

A    Yes.

Q    How many times?

A    Once.

Q    What was the case?

A    EchoStar.

Q    Where was your deposition taken in that case?

A    I don't remember.

Q    In what city?

A    LA.

Q    There you go.  What year?

to find out whether Disney ever did any deal involving Bittorent.com.

Q Just answer that yes or no. If it's no, I'll move on.

MS. FALLOW: As to the distribution of the content?

MR. ROTHKEN: No. In any way, shape or form, then we'll find out.

MS. FALLOW: Objection; asked and answered.

BY MR. ROTHKEN:

Q You can answer it.

A No, the company has not distributed anything on BitTorrent in an unrestricted manner.

Q Has the company ever done any deals at all with Bittorent.com, yes or no?

MS. FALLOW: Objection; asked and answered.

BY MR. ROTHKEN:

Q You can answer it.

A No.

Q Is your company aware of any specific person or entity that's ever downloaded Grey's Anatomy 2112 arising out of a Torrent file obtained from torrentspy.com?

A I don't know.

Q Who would be the person most knowledgeable in your company on that?

A The anti-piracy group.
Q And who in the anti-piracy group?
A I don't know specifically.
Q Is your company aware of any specific individual or entity that has ever downloaded any unauthorized copyrighted work arising out of a Torrent file downloaded from torrentspy.com?
MS. FALLOW: Objection; vague and ambiguous to the extent you're not talking about the evidence that we've produced in this case of the downloading of that episode.
BY MR. ROTHKEN:
Q Go ahead and answer the question.
A I don't know.
Q Who would be the person most knowledgeable in your company on that?
A Anti-piracy group.
Q Who in the anti-piracy group?
A I don't know.
Q Has your company ever communicated in writing with any of the defendants in this case?
A I don't know.
Q Has your company ever sent any cease and desist letter to any of the defendants in this case?
A The company has not.

Q Who in legal affairs?
A Janna Winograde I think.
Q And what office is she in?
A Actually, correct that. I don't think it's Janna Winograde. It would probably be -- it would be hard to find. Sorry. I'm getting lawyers mixed up. Howard Davine.
MS. FALLOW: D-i-v-i-n-e?
THE WITNESS: D-a-v-i-n-e.
BY MR. ROTHKEN:
Q What's his job title?
A He's the head of business affairs for Touch Tone.
Q Who is Tad Scroggins?
A I don't know.
Q Is your company aware of any person who's ever downloaded Grey's Anatomy, It's the End of the World, using torrentspy.com?
MS. FALLOW: Objection; asked and answered on multiple occasions.
BY MR. ROTHKEN:
Q You can answer it.
A I don't know.
Q Was ever there a work made-for-hire agreement for the development of Grey's Anatomy, It's the End of

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

WITNESS'S DECLARATION

I, certify under penalty of perjury that the foregoing is true and correct.

Executed at ______________________, on ______________, 2007, at ______________________, California.

___________________________
ALBERT CHENG

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I, NIKKI ROY, Certified Shorthand Reporter, certificate number 3052, for the State of California, hereby certify:

The foregoing proceedings were taken before me at the time and place therein set forth, at which time the deponent was placed under oath by me;

The testimony of the deponent and all objections at the time of the examination were recorded stenographically by me and were thereafter transcribed;

The foregoing transcript is a true and correct transcript of my shorthand notes so taken;

I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

In witness whereof I have hereunto subscribed my name this 7th day of August 2007.

________________________________

EXHIBIT C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., et al.,

Plaintiffs,

VS.

JUSTIN BUNNELL, et al.,

Defendants.

No. 06-01093 FMC

DEPOSITION OF RANI CHERKOORI

TAKEN ON

WEDNESDAY, AUGUST 8, 2007

Reported by: NIKKI ROY

CSR No. 3052

Deposition of RANI CHERKOORI, taken on behalf of the Defendants, at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, on Wednesday, August 8, 2007, at 10:07 a.m., before NIKKI ROY, CSR No. 3052.

APPEARANCES:

FOR THE PLAINTIFFS:

JENNER & BLOCK LLP
BY: KATHERINE A. FALLOW, Attorney at Law
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
202.639.6000

APPEARANCES OF COUNSEL (Continued):

FOR THE DEFENDANTS:

ROTHKEN LAW FIRM LLP
BY: IRA P. ROTHKEN, Attorney at Law
3 Hamilton Landing
Suite 280
Novato, California 94949
415.924.4250

--and--

RETZ & HOPKINS, LLP
BY: KATHRYN C. MARSHALL, Attorney at Law
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
310.540.9800

ALSO PRESENT:

MAGGIE HEIM

# I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| RANI CHERKOORI | BY MR. ROTHKEN | 6 |

# E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 1 | 25 | Complaint for Copyright Infringement, 14 pages |
| 2 | 31 | Documents produced, Bates No. COL 000026 through COL 000062, 37 pages |
| 3 | 31 | Documents produced, Bates No. TRI 000003 through TRI 000010, 8 pages |
| 4 | 50 | Press release, 3 pages |
| 5 | 57 | Agreement, 3 pages |
| 6 | 59 | Documents produced, Bates No. COL 000001 through COL 000025, 25 pages |
| 7 | 61 | Notice of Taking Oral Deposition of Plaintiff and Notice to Produce Documents at Deposition, 23 pages |

I N D E X (CONTINUED):

QUESTIONS INSTRUCTED NOT TO ANSWER


| Page: | Line: | Page: | Line: |
|---|---|---|---|
| 45 | 13 | 63 | 11 |
| 46 | 1 | 63 | 17 |
| 49 | 12 | 64 | 6 |
| 49 | 19 | 64 | 13 |
| 49 | 25 | 66 | 19 |
| 53 | 9 | 68 | 6 |
| 53 | 18 | 69 | 2 |
| 54 | 16 | 70 | 11 |
| 58 | 23 | 72 | 16 |
| 62 | 12 | | |

TORRANCE, CALIFORNIA, WEDNESDAY, AUGUST 8, 2007

10:16 A.M.

RANI CHERKOORI,

called as a deponent and sworn in by the deposition officer, was examined and testified as follows:

EXAMINATION

BY MR. ROTHKEN:

Q Good morning. Would you be kind enough to state and spell your name for the record.

A It's Rani, R-a-n-i. Last name is C-h-e-r-k-o-o-r-i.

Q You made me cry or are I got Coca-Cola on my glasses, one or the other. Probably the Coke on my glasses.

All right. Ms. Cherkoori, have you ever had your deposition taken before?

A Yes, I have.

Q How many times?

A Just once.

Q What was the case?

A It was of a personal nature.

Q Was it a personal injury case?

Q Have you ever been involved in sending out DMCA notices to Internet sites?
A I have.
Q Do you have any estimate of how many such notices you've been involved with sending out to Internet sites?
A No, I do not.
Q More or less than a thousand?
A Less than a thousand.
Q Okay. Do you know whether or not -- well, strike that.
Has your company ever sent a DMCA notice to any of the defendants in this case?
MS. FALLOW: Objection; calls for a legal conclusion as to "DMCA notice."
BY MR. ROTHKEN:
Q You can answer.
A To my knowledge, I'm not aware of any.
Q Has your company ever sent out any written communication at all to any of the defendants in this case?
A To my knowledge, I'm not aware of any.
Q Can you please tell me if there are any technical reasons why your company has not sent out any DMCA notices to the defendants.

exclusive distribution rights were licensed to TriStar Pictures Inc. by Sony Pictures Entertainment Inc. by way of this notice.

Q Is your company aware of any specific persons or entities that ever downloaded any audiovisual files using torrents found on torrentspy.com which audiovisual files are those indicated as being controlled by your company in Exhibit A?

MS. FALLOW: Objection; vague and ambiguous.

You can answer --

BY MR. ROTHKEN:

Q You can answer.

MS. FALLOW: -- if you understand it.

THE WITNESS: You're asking me whether my company is aware of files that have been downloaded off torrentspy.com?

BY MR. ROTHKEN:

Q All right. Let's start with that. Is your company aware of any files that specific persons or entities that have ever been downloaded from torrentspy.com?

A Yes.

Q Tell me all such.

A I don't think I can reveal that without disclosing attorney-client communications or work-product

I think -- I do need to confer further with my company.

Q All right. Go ahead and confer.

Let the record reflect that they're walking out while the question is pending to confer on this issue.

MS. FALLOW: We're conferring on privilege.

(Recess was held from 11:00 to 11:02)

BY MR. ROTHKEN:

Q All right. We're still on the record.

You understand that you're still under oath?

A I do.

Q All right. Do you have an answer to the pending question?

A My company is aware of the downloading of the material through the investigation that was conducted by the Motion Picture Association.

Q Anything else?

A Personally, no.

Q Okay. Is your company aware of anyone who downloaded movie files of movies listed in Exhibit A using torrents downloaded from torrentspy.com?

A My understanding is, yes, through the investigative -- through the investigation conducted through the Motion Picture Association.

Q All right. Tell me all such.

MS. FALLOW: All right. Vague and ambiguous,

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

WITNESS'S DECLARATION

I, certify under penalty of perjury that the foregoing is true and correct.

Executed at ______________________, on ______________, 2007, at ______________________, California.

______________________________
RANI CHERKOORI

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I, NIKKI ROY, Certified Shorthand Reporter, certificate number 3052, for the State of California, hereby certify:

The foregoing proceedings were taken before me at the time and place therein set forth, at which time the deponent was placed under oath by me;

The testimony of the deponent and all objections at the time of the examination were recorded stenographically by me and were thereafter transcribed;

The foregoing transcript is a true and correct transcript of my shorthand notes so taken;

I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

In witness whereof I have hereunto subscribed my name this 22nd day of August 2007.

________________________________

EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, )
INC., ET AL., )
Plaintiffs, ) Case No.
vs. ) 06-01093 FMC
JUSTIN BUNNELL, ET AL., ) Volume I
Defendants. ) Pages 1 - 158
___________________________________)

DEPOSITION OF:
STEVE THOMAS KANG, ESQ.
WEDNESDAY, AUGUST 1, 2007
1:00 P.M.

Reported by:
CHRISTINE A. MERRY
C.S.R. No. 7128

Deposition of STEVE THOMAS KANG, ESQ., the witness, taken on behalf of the defendants, on WEDNESDAY, AUGUST 1, 2007, 1:00 P.M., at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, before CHRISTINE A. MERRY, C.S.R. No. 7128.

APPEARANCES OF COUNSEL

FOR PLAINTIFFS:

JENNER & BLOCK
BY: KATHERINE A. FALLOW, ESQ.
601 Thirteenth Street, NW
Suite 1200 South
Washington, D.C. 20005
((202) 637-6329

FOR THE MPAA:

LAUREN T. NGUYEN
ATTORNEY AT LAW
15503 Ventura Boulevard
Encino, California 91436
(818) 995-6600

APPEARANCES OF COUNSEL (Continued)

FOR DEFENDANTS:

IRA P. ROTHKEN
ROTHKEN LAW FIRM, LLP
3 Hamilton Landing
Suite 280
Novato, California 94949
(415) 924-4250

- and -

RETZ AND HOPKINS
BY: KIRK J. RETZ
ATTORNEY AT LAW
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
(310) 540-9800

# I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| STEVE THOMAS KANG, ESQ. | | |
| | By MR. ROTHKEN | 8 |

## INFORMATION REQUESTED

| PAGE | LINE |
|---|---|
| (NONE) | |

## QUESTIONS INSTRUCTED BY COUNSEL NOT TO ANSWER

| PAGE | LINE |
|---|---|
| 22 | 3 |
| 22 | 11 |
| 31 | 7 |
| 33 | 12 |
| 35 | 21 |
| 37 | 25 |
| 41 | 22 |
| 45 | 6 |
| 46 | 1 |
| 46 | 24 |
| 48 | 16 |
| 49 | 2 |
| 50 | 7 |

| | |
|---|---|
| 50 | 12 |
| 51 | 6 |
| 51 | 21 |
| 55 | 23 |
| 57 | 11 |
| 61 | 17 |
| 63 | 4 |
| 63 | 24 |
| 64 | 6 |
| 64 | 14 |
| 65 | 4 |
| 65 | 12 |
| 65 | 22 |
| 66 | 44 |
| 68 | 7 |
| 76 | 18 |
| 90 | 16 |
| 97 | 3 |
| 102 | 9 |
| 103 | 21 |
| 104 | 25 |
| 105 | 24 |
| 108 | 6 |
| 112 | 9 |
| 117 | 5 |

| | |
|---|---|
| 126 | 20 |
| 128 | 17 |
| 129 | 10 |
| 132 | 3 |
| 132 | 9 |
| 133 | 14 |
| 133 | 24 |
| 134 | 18 |
| 135 | 10 |
| 135 | 22 |
| 136 | 13 |
| 136 | 22 |
| 142 | 4 |
| 143 | 18 |
| 144 | 16 |
| 152 | 11 |

# E X H I B I T S

| No. | Page | DESCRIPTION |
|---|---|---|
| 1 | 13 | Press release dated February 23, 2006 |
| 2 | 16 | Complaint for Copyright Infringement |
| 3 | 93 | Certificate of Registration for movie Daylight |
| 4 | 93 | Agreement dated July 13, 2007 |
| 5 | 140 | Request for Investigation and Complaint for Injunctive and Other Relief |
| 6 | 152 | TorrentSpy website front page |

TORRANCE, CALIFORNIA; WEDNESDAY, AUGUST 1, 2007;
1:00 P.M.

STEVE THOMAS KANG, ESQ.,
having been first duly sworn, was
examined and testified as follows:

EXAMINATION

MS. FALLOW: I would like to make a representation for the record, and the following representation will apply to this deposition and to the other four depositions today and tomorrow. The 30B6 depositions of five of the six studio plaintiffs.

Representation is pursuant to the magistrate judge's July 27 order. Plaintiffs make the following affirmative representation.

For purposes of summary judgment, and pursuant to the district court's amended scheduling order in the upcoming summary judgment motions, plaintiffs do not intend to offer evidence that defendants are liable for secondary copyright infringement, for direct infringement, of any works other than those works listed on Exhibit A to the complaint.

Plaintiffs expressly reserve all rights

unauthorized copies of Daylight.

Q Wouldn't your copyright information for any of the torrent files that lead to unauthorized copyrighted works owned by the plaintiffs no longer show up in the search results in TorrentSpy.com?

A I think that is why we are suing you.

Q The answer is yes?

A Yes.

Q Then why is it that you wouldn't, without hesitation just go ahead and get immediate take down from TorrentSpy by providing DMCA notices?

MS. FALLOW: I instruct the witness not to answer on attorney-client privilege grounds.

BY MR. ROTHKEN:

Q Why wait?

MS. FALLOW: Is that another question?

MR. ROTHKEN: Yes.

MS. FALLOW: The witness is not to answer on attorney-client privilege grounds.

BY MR. ROTHKEN:

Q Are you aware or is your company aware of anyone who has ever used TorrentSpy.com whose downloaded a copy of the motion picture Daylight?

A Yes.

Q Tell me all such instances.

A My understanding is that someone working at the direction of Jenner and Block, specifically downloaded Daylight from TorrentSpy.

Q Any others?

A I'm not aware of any specific instances. No.

Q Who was the person who downloaded Daylight that you are aware of?

A I believe the person was Bruce Ward.

Q Was Bruce Ward authorized by your company to download Daylight?

A From TorrentSpy?

Q Yes.

A Yes.

Q Okay. He was not committing copyright infringement when he did that?

MS. FALLOW: Objection. Calls for a legal conclusion.

THE WITNESS: Bruce Ward would not have been an infringer.

BY MR. ROTHKEN:

Q So he downloaded a torrent from TorrentSpy.com that he then used to download Daylight?

MS. FALLOW: Objection. Lack of

foundation.

BY MR. ROTHKEN:

Q If you have to guess, tell me.

A That is my understanding.

Q Ignorance is testimony, too.

A That is my understanding.

Q What's the basis for the understanding?

A I mean again this is something where I can't point to any conversation. It is my understanding, working on the case.

Q Do you know how bit TorrentSpy works?

A Now you will put me in an unfair position. Yes. I have a rough understanding. I have -- I have a general understanding. I would not say I have a detailed understanding.

Q So you understood that after Mr. Ward downloaded a torrent from TorrentSpy.com, he had to start up specialized business torrent software to get the Daylight movie work?

MS. FALLOW: Objection. Lack of foundation.

BY MR. ROTHKEN:

Q You can answer.

A Again, I don't know the specifics of how Mr. Ward did his work on this case. But that is

consistent with my understanding of how it works.
Q Have you ever used a bit torrent client?
A Yes.
Q how many bit torrent clients did you use?
A I'm not sure.
Q But the way it worked was that you would double click and start the bit torrent client?
MS. FALLOW: Lack of foundation.
BY MR. ROTHKEN:
Q You can answer.
A Yes. You would start the bit torrent client.
Q You would load up a torrent file?
A Yes.
MS. FALLOW: Objection.
BY MR. ROTHKEN:
Q Then download an audio work or audio visual work?
MS. FALLOW: Objection. Lack of foundation.
BY MR. ROTHKEN:
Q You can answer.
A Yes.
Q You are setting a record for objections. I have to tell you.

MS. FALLOW: You are setting a record for improper questions.
MR. ROTHKEN: I don't agree with that. He is not two years old. He used the software.
Q Did you ever use it as it relates to torrents you used from TorrentSpy.com?
A I don't recall.
Q Did you register to become a user of TorrentSpy.com?
A I don't recall.
Q You don't recall?
A It's possible I did.
Q When would be the date for that?
A I have no idea.
Q Was it before or after litigation commenced?
A I don't know.
Q Did anyone in your company besides you ever register to become a user in TorrentSpy.com?
A I don't know.
Q Did you make any inquiry before coming here today to determine that?
A Yes.
Q What was the result of the inquiry?
A I don't recall. The inquiries were made

around the time of the document production. It was a while ago.

Q What was the result of the inquiry?

A I don't recall.

Q Did you or your did your company ever upload any torrents of TorrentSpy.com?

MS. FALLOW: I instructed the witness not to answer the question last time you asked it.

BY MR. ROTHKEN:

Q Did your company ever upload any torrents that have the word Daylight in them to TorrentSpy.com?

MS. FALLOW: I object. Don't answer. It is precluded by the July 27 order.

BY MR. ROTHKEN:

Q Now, to the best of your knowledge, besides Mr. Ward, is your company aware of any person anywhere in the world that has used a TorrentSpy file found on TorrentSpy.com to download copyrighted works as mentioned in Exhibit A named Daylight?

A We believe a number of people would have used TorrentSpy to download Daylight.

Q Tell me all persons.

A I don't have their names.

Q What's the basis for that belief?

A The basis would be the work of -- of the person acting at direction of counsel, Mr. Ward.

The -- just the popularity of TorrentSpy and the -- the presence of Daylight on TorrentSpy.

You know when we get further documentation from your clients regarding the use of the servers, if we were to look at those, that would supplement our understanding.

Q Now, you would agree that you are not aware of Daylight as manifested in Exhibit A ever actually appearing on the TorrentSpy.com site?

MS. FALLOW: Objection. Vague and ambiguous.

BY MR. ROTHKEN:

Q You are not aware of the copyrighted work Daylight actually being posted by TorrentSpy.com?

A Being what?

Q Posted.

MS. FALLOW: Objection. Vague and ambiguous.

BY MR. ROTHKEN:

Q You can answer.

A No.

Q And you don't know which of any of the search results that you got today actually led to your

company's copyrighted work Daylight; true?

A True.

Q In order to know that, you would have to have had downloaded torrent files from those search results and loaded them up into your bit torrent client and viewed the resulting works; correct?

MS. FALLOW: I will object. Vague and ambiguous about how Bit Torrent works.

BY MR. ROTHKEN:

Q You can answer.

A Yes. That would be a way to do it.

Q Are you knowledgeable of other ways to do it?

A You don't have to -- you don't have to download the whole thing to view some of it.

So if you are trying to verify, for example, that particular TorrentSpy was or was not Daylight, you wouldn't have to download the whole thing.

Q You have to download the resulting audio visual work to see whether or not it's at least similar to what the copyrighted work is in the registration; correct?

A You would download enough of it. If you want to make a human eyeball verification of the work,

A Can you reread the question.

(Record read.)

THE WITNESS: I disagree with the characterization speculation. But setting that aside, sitting here today, no.

BY MR. ROTHKEN:

Q So just to clarify the record, you are not aware factually, you don't have any factual knowledge, that any of the defendants in this case ever downloaded audio or audio visual work arising out of any torrent file downloaded from TorrentSpy?

A That is correct.

Q It's correct the answer is you have no idea?

A I don't have specific knowledge of them doing so.

Q Okay. Let's take a five-minute break. Then we will come back and hopefully finish.

(Discussion held off the record.)

(Record read.)

BY MR. ROTHKEN:

Q Back on the record.

Mr. Kang, you understand you are still under oath?

A I do.

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I, STEVE THOMAS KANG, ESQ. hereby certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this day of , 2007, at , California.

STEVE THOMAS KANG, ESQ.

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I, CHRISTINE A. MERRY, Certified Shorthand Reporter, number 7128, for the State of California, do hereby certify;

That prior to being examined,

STEVE THOMAS KANG, ESQ.

the witness named in the foregoing deposition, was by me duly sworn to testify the truth, the whole truth and nothing but the truth;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me;

That the foregoing transcript is a true record of the testimony and all objections made at the time of the examination.

I hereby certify that I am not interested in the event of the action.

IN WITNESS WHEREOF, I have subscribed my name this 3rd day of August, 2007.

________________________________

Certified Shorthand Reporter for
the State of California

EXHIBIT E

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., et al.,

Plaintiffs,

VS.

JUSTIN BUNNELL, et al.,

Defendants.

No. 06-01093 FMC

DEPOSITION OF DAVID KAPLAN

TAKEN ON

THURSDAY, AUGUST 2, 2007

Reported by: NIKKI ROY

CSR No. 3052

Deposition of DAVID KAPLAN, taken on behalf of the Defendants, at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, on Thursday, August 2, 2007, at 4:03 p.m., before NIKKI ROY, CSR No. 3052.

APPEARANCES:

FOR THE PLAINTIFFS:

JENNER & BLOCK LLP
BY: KATHERINE A. FALLOW, Attorney at Law
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
202.639.6000

--and--

MOTION PICTURE ASSOCIATION OF AMERICA
BY: LAUREN NGUYEN, Attorney at Law
15503 Ventura Boulevard
Encino, California 91436
818.995.6600

APPEARANCES OF COUNSEL (Continued):

FOR THE DEFENDANTS:

ROTHKEN LAW FIRM LLP
BY: IRA P. ROTHKEN, Attorney at Law
3 Hamilton Landing
Suite 280
Novato, California 94949
415.924.4250

--and--

RETZ & HOPKINS, LLP
BY: KIRK J. RETZ, Attorney at Law
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
310.540.9800

ALSO PRESENT:

BENJAMIN SHEFFNER

INDEX


| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| DAVID KAPLAN | BY MR. ROTHKEN | 6 |

(Pages marked Highly Confidential - 14, 20, 23 through 26, 31 and 32, 40 )

EXHIBITS

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 1 | 9 | Documents produced by Warner Bros., Bates WB 000001 through WB 000190, 190 pages |
| 2 | 10 | Complaint for Copyright Infringement, 14 pages |
| 3 | 48 | Notice of Taking of Oral Deposition of Plaintiff, 23 pages |
| 4 | 59 | Pages from torrentspy.com, 5 pages |
| 5 | 61 | Press release, 3 pages |

I N D E X (CONTINUED):

QUESTIONS INSTRUCTED NOT TO ANSWER



| Page: | Line: | Page: | Line: |
|---|---|---|---|
| 44 | 18 | 60 | 18 |
| 51 | 2 | 65 | 2 |
| 52 | 6 | 65 | 10 |
| 52 | 15 | 65 | 15 |
| 53 | 2 | 65 | 21 |
| 53 | 15 | 67 | 23 |
| 55 | 23 | 68 | 25 |
| 56 | 16 | 73 | 2 |
| 57 | 1 | 73 | 12 |
| 57 | 24 | 74 | 2 |
| 58 | 8 | 74 | 10 |
| 59 | 22 | | |

TORRANCE, CALIFORNIA, THURSDAY, AUGUST 2, 2007

4:05 P.M.

DAVID KAPLAN,

having been first duly sworn, was

examined and testified as follows:

EXAMINATION

BY MR. ROTHKEN:

Q Would you be kind enough to state and spell your name for the record.

A David Kaplan, D-a-v-i-d. Kaplan is K-a-p-l-a-n.

Q Mr. Kaplan, have you ever had your deposition taken before?

A Yes.

Q How many times?

A Three.

Q You understand the oath you took here today is the same as the oath that you'd take in a court of law?

A Yes.

Q You understand there are serious consequences of not being truthful today?

A I do.

Q Is there any reason why you cannot testify truthfully today?

BY MR. ROTHKEN:
Q Okay. Taking a look at Exhibit A --
A To the complaint?
Q -- yes -- is your company aware of any specific individuals or entities that have ever downloaded copies of the four titles included in Exhibit A that are -- we'll just use the word -- owned or controlled by Warner Bros., using torrents downloaded by torrentspy.com?
A I don't know.
Q Okay. Are you the person most knowledgeable in your company on that issue?
MS. FALLOW: Object to the extent there's a suggestion the term "person most knowledgeable" has a legal significance.
BY MR. ROTHKEN:
Q You can answer.
A I don't know.
Q Do you know who in your company would know?
A I don't know, no.
Q All right. Something to be said about honesty.
Is your company aware of any specific individuals or entities that have ever downloaded any unauthorized copyrighted works using torrent files from torrentspy.com?
MS. FALLOW: Objection to the extent you're

asking other than the work-product that we have produced in this case for the Exhibit A works.

Are you asking beyond?

MR. ROTHKEN: It includes any copyrighted work.

Q Go ahead and answer the question.

A I am not aware of any other than the work-product generated by counsel in this case.

Q Okay. So are you aware -- is your company aware of any specific individuals or entities that have downloaded any unauthorized copyrighted works using torrent files obtained from torrentspy.com?

MS. FALLOW: I'll make the same objection as to the last question which I believe was asked and answered.

THE WITNESS: Can you read back the question.

(The record was read as follows:

Q Okay. So are you aware -- is your company aware of any specific individuals or entities that have downloaded any unauthorized copyrighted works using torrent files obtained from torrentspy.com?)

THE WITNESS: Same answer. Other than what counsel has done in this case, no.

BY MR. ROTHKEN:

Q And so in your last answer you're not saying

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

WITNESS'S DECLARATION

I, certify under penalty of perjury that the foregoing is true and correct.

Executed at ______________________, on ______________, 2007, at ______________________, California.

______________________________
DAVID KAPLAN

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I, NIKKI ROY, Certified Shorthand Reporter, certificate number 3052, for the State of California, hereby certify:

The foregoing proceedings were taken before me at the time and place therein set forth, at which time the deponent was placed under oath by me;

The testimony of the deponent and all objections at the time of the examination were recorded stenographically by me and were thereafter transcribed;

The foregoing transcript is a true and correct transcript of my shorthand notes so taken;

I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

In witness whereof I have hereunto subscribed my name this 7th day of August 2007.

________________________________

EXHIBIT F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, )
INC., ET AL., )
Plaintiffs, ) Case No.
vs. ) 06-01093 FMC
JUSTIN BUNNELL, ET AL., ) Volume I
Defendants. ) Pages 1 - 84
__________________________________)

DEPOSITION OF:
ALFRED CLINTON PERRY, ESQ.
WEDNESDAY, AUGUST 1, 2007
6:10 P.M.

Reported by:
CHRISTINE A. MERRY
C.S.R. No. 7128

Deposition of ALFRED CLINTON PERRY, ESQ., the witness, taken on behalf of the defendants, on WEDNESDAY, AUGUST 1, 2007, 6:10 P.M., at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, before CHRISTINE A. MERRY, C.S.R. No. 7128.

APPEARANCES OF COUNSEL

FOR PLAINTIFFS:

JENNER & BLOCK
BY:  KATHERINE A. FALLOW, ESQ.
601 Thirteenth Street, NW
Suite 1200 South
Washington, D.C. 20005
((202) 637-6329

FOR THE MPAA:

LAUREN T. NGUYEN
ATTORNEY AT LAW
15503 Ventura Boulevard
Encino, California 91436
(818) 995-6600

APPEARANCES OF COUNSEL (Continued)

FOR DEFENDANTS:

IRA P. ROTHKEN
ROTHKEN LAW FIRM, LLP
3 Hamilton Landing
Suite 280
Novato, California 94949
(415) 924-4250

- and -

RETZ AND HOPKINS
BY: KIRK J. RETZ
ATTORNEY AT LAW
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
(310) 540-9800

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| ALFRED CLINTON PERRY, ESQ. | | |
| | By MR. ROTHKEN | 7 |

INFORMATION REQUESTED

| PAGE | LINE |
|---|---|
| (NONE) | |

QUESTIONS INSTRUCTED BY COUNSEL NOT TO ANSWER

| PAGE | LINE |
|---|---|
| 25 | 9 |
| 33 | 24 |
| 34 | 10 |
| 35 | 21 |
| 36 | 1 |
| 36 | 6 |
| 36 | 10 |
| 36 | 15 |
| 40 | 23 |
| 53 | 19 |
| 59 | 16 |
| 60 | 3 |
| 64 | 10 |

QUESTIONS INSTRUCTED BY COUNSEL NOT TO ANSWER

| PAGE | LINE |
|---|---|
| 64 | 76 |
| 64 | 22 |
| 65 | 4 |
| 66 | 6 |
| 68 | 22 |
| 73 | 8 |
| 74 | 8 |
| 75 | 1 |

# E X H I B I T S

| No. | Page | DESCRIPTION |
|---|---|---|
| 1 | 13 | Certificates of Registration for The Italian Job and Lara Croft Tomb Raider: The Cradle of Life |
| | 51 | Complaint for Copyright Infringement |
| 3 | 51 | Agreement dated July 13, 2007 |
| 4 | 55 | Press release dated February 23, 2006 |
| 5 | 61 | TorrentSpy website front page |
| 6 | 75 | TorrentSpy website front page |

TORRANCE, CALIFORNIA; WEDNESDAY, AUGUST 1, 2007;
6:10 P.M.

ALFRED CLINTON PERRY, ESQ.,
having been first duly sworn, was
examined and testified as follows:

EXAMINATION

BY MR. ROTHKEN:
Q Would you be kind enough to state and spell your name for the record.
A Alfred. A-l-f-r-e-d. Clinton. C-l-i-n-t-o-n. Perry. P-e-r-r-y.
Q Mr. Perry, are you an attorney?
A Yes.
Q Are you a member the State Bar of California?
A No.
Q Which bars are you members of?
A New York.
Q Have you ever, as an attorney, been involved in litigating cases yourself?
A No.
Q Have you ever had your deposition taken before?

Has your company ever downloaded audio or audio visual works arising out of torrents from TorrentSpy.com?

MS. FALLOW: You should not answer. If there is any, if there is a factual answer, you may give it.

THE WITNESS: It would be work product. If someone had done that, then it would have been something that should be work product.

BY MR. ROTHKEN:

Q You are not aware of anyone doing it?

A Right.

Q Is your company aware of any entity or person, not a party to this case, who has ever downloaded any of your company's copyrighted works arising out of a torrent they downloaded from TorrentSpy.com?

A My company has a general awareness that as set out in the complaint that there is widespread uploading and downloading of our works on sites such as TorrentSpy.

Q That was not my question. I am move to strike. I may get to that question.

My question is: Is your company aware of any specific individual or individuals or entities that

have downloaded your company's copyrighted works by using a Torrent file they obtained from TorrentSpy.com?

A I don't think that was the question from before.

Q Fair enough.

A People other than those under the direction of counsel who investigated with respect to this, a specific individual, no.

Q Are you aware of any persons or entities who have downloaded your company's copyrighted works using Torrent files obtained from TorrentSpy.com?

MS. FALLOW: Are you asking about downloading works other than Exhibit A, the work listed in Exhibit A?

BY MR. ROTHKEN:

Q You can answer the question "yes" or "no" to the question.

A My company has a general awareness of persons, numerous persons uploading and downloading motion pictures on sites such as TorrentSpy.

Q How about specific persons or entities? Is your company aware of any they could name?

A I am not aware of that specific information.

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I, ALFRED CLINTON PERRY, ESQ. hereby certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this day of , 2007, at , California.

ALFRED CLINTON PERRY, ESQ.

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I, CHRISTINE A. MERRY, Certified Shorthand Reporter, number 7128, for the State of California, do hereby certify;

That prior to being examined,

ALFRED CLINTON PERRY, ESQ.

the witness named in the foregoing deposition, was by me duly sworn to testify the truth, the whole truth and nothing but the truth;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me;

That the foregoing transcript is a true record of the testimony and all objections made at the time of the examination.

I hereby certify that I am not interested in the event of the action.

IN WITNESS WHEREOF, I have subscribed my name this 3rd day of August, 2007.

______________________________

Certified Shorthand Reporter for
the State of California

EXHIBIT G

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., et al.,

Plaintiffs,

VS.

JUSTIN BUNNELL, et al.,

Defendants.

No. 06-01093 FMC

DEPOSITION OF JANE SUNDERLAND

TAKEN ON

THURSDAY, AUGUST 2, 2007

Reported by: NIKKI ROY

CSR No. 3052

Deposition of JANE SUNDERLAND, taken on behalf of the Defendants, at 21535 Hawthorne Boulevard, Suite 200, Torrance, California, on Thursday, August 2, 2007, at 10:07 a.m., before NIKKI ROY, CSR No. 3052.

APPEARANCES:

FOR THE PLAINTIFFS:

JENNER & BLOCK LLP
BY: KATHERINE A. FALLOW, Attorney at Law
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005
202.639.6000

--and--

MOTION PICTURE ASSOCIATION OF AMERICA
BY: LAUREN NGUYEN, Attorney at Law
15503 Ventura Boulevard
Encino, California 91436
818.995.6600

APPEARANCES OF COUNSEL (Continued):

FOR THE DEFENDANTS:

ROTHKEN LAW FIRM LLP
BY: IRA P. ROTHKEN, Attorney at Law
3 Hamilton Landing
Suite 280
Novato, California 94949
415.924.4250

--and--

LAW OFFICES OF RETZ & HOPKINS, LLP
BY: KIRK J. RETZ, Attorney at Law
21535 Hawthorne Boulevard
Suite 200
Torrance, California 90503
310.540.9800

ALSO PRESENT:

BENJAMIN SHEFFNER

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| JANE SUNDERLAND | BY MR. ROTHKEN | 6 |

E X H I B I T S

| NO. | PAGE | DESCRIPTION |
|---|---|---|
| 1 | 29 | Documents identified as Bates No. Fox 1 through Fox 49, 49 pages |
| 2 | 45 | Complaint for Copyright Infringement, 14 pages |
| 3 | 55 | Agreement, 3 pages |
| 4 | 57 | Document from torrentspy.com web site, 1 page |
| 5 | 74 | Press Release, 3 pages |

# I N D E X (CONTINUED):

QUESTIONS INSTRUCTED NOT TO ANSWER

| Page: | Line: | Page: | Line: |
|---|---|---|---|
| 15 | 16 | 61 | 20 |
| 17 | 5 | 62 | 2 |
| 17 | 16 | 62 | 8 |
| 17 | 23 | 63 | 15 |
| 19 | 18 | 64 | 23 |
| 20 | 3 | 65 | 21 |
| 20 | 10 | 67 | 19 |
| 21 | 23 | 68 | 13 |
| 28 | 14 | 68 | 18 |
| 33 | 17 | 68 | 23 |
| 35 | 7 | 69 | 4 |
| 38 | 1 | 69 | 10 |
| 42 | 24 | 69 | 22 |
| 44 | 25 | 70 | 5 |
| 49 | 20 | 70 | 9 |
| 50 | 23 | 72 | 13 |
| 54 | 8 | 79 | 23 |
| 58 | 18 | 81 | 25 |
| 59 | 6 | 82 | 13 |
| 60 | 6 | 83 | 19 |

Q Can you please tell me which if any of the copyrighted works in Exhibit A are owned by your company, Fox.

A The Simpsons See Homer Run.

Q Okay. Now, any others?

A That's the only one on this list.

Q That was an easy one.

All right. What is your understanding of what "pending" means that's manifested in Exhibit A next to the -- next to the entry for the Simpsons?

A It's my understanding that at the time that the complaint was filed that the certificate had not been issued by the copyright office or had not been returned by the copyright office.

Q Uh-huh. To the best of your knowledge, has -- to the best of your company's knowledge, obviously, has anyone ever used a torrent file from torrentspy.com to download the Simpsons See Homer Run?

A I'm sorry. Could you repeat -- can you reread that back for me?

(The record was read as follows:

Q To the best of your knowledge, has -- to the best of your company's knowledge, obviously, has anyone ever used a torrent file from torrentspy.com

to download the Simpsons See Homer
Run?)
THE WITNESS: Well, we are aware that evidence was gathered for this case.
BY MR. ROTHKEN:
Q Is that it?
A And there's additional evidence that was collected at that time relating to this particular title.
Q Anything else?
A And then we're relying on counsel and investigators for that evidence.
Q So is the answer no?
MS. FALLOW: Objection; that mischaracterizes her testimony.
THE WITNESS: Fox doesn't have any specific evidence.
BY MR. ROTHKEN:
Q Okay. Is Fox aware of the names of any persons who used torrent files gathered from torrentspy.com to download the Simpsons See Homer Run episode?
MS. FALLOW: Objection. Other than what she's just testified?
BY MR. ROTHKEN:
Q You can answer the question.
A Fox does not have that evidence.

Q Okay. Is Fox aware of any person or entity that used a torrent file obtained from torrentspy.com to, in an unauthorized manner, download the Simpsons See Homer Run episode?
MS. FALLOW: Objection; vague and ambiguous, calls for speculation.
Did you say unauthorized or authorized?
MR. ROTHKEN: I said unauthorized.
Q You can answer it.
A It would call for speculation.
Q Okay. Has any -- well, let's go back for a second.
You work for a number of Fox affiliated companies, correct?
A Work on behalf of, yes.
Q Okay. Have any of them ever put out any video games based upon the Simpsons?
A We license the Simpsons content for video games, yes.
Q Okay. And, to the best of your knowledge, have any of the video game licensees that have made Simpsons games ever put out authorized demos for distribution over the BitTorrent network?
MS. FALLOW: Objection. You have to confine your question to this specific episode listed in

MS. FALLOW: Objection calls for a legal conclusion, calls for speculation.

BY MR. ROTHKEN:

Q You can answer.

A I would have to speculate.

Q Are you aware of any specific individuals -- when I say "you" I mean your company -- strike that. I'll start over again.

Is your company aware of any specific individuals who ever downloaded copyright infringing works arising out of torrent files downloaded from torrentspy.com?

MS. FALLOW: Objection; asked and answered.

BY MR. ROTHKEN:

Q You can answer it.

A We are aware of the evidence collected for this case, and I don't have -- Fox does not have specific evidence outside of that.

Q Okay. Does Fox have any specific knowledge or understanding of any individuals or entities that downloaded any copyright infringing works arising out of torrent files downloaded from torrentspy.com, yes or no?

MS. FALLOW: I'm objecting to this line of questioning to the extent it's going beyond the Exhibit A works which is what this deposition is limited to.

BY MR. ROTHKEN:
Q You can answer the question.
A Regarding the Exhibit A work, we don't have the specific evidence. Fox does not have those records.
Q Okay. I'm going beyond specific A works. I'm asking for any and all copyright infringement.
MS. FALLOW: Then I'm instructing the witness not to answer. The court has already made a ruling on this.
This is actually a good time for me to state for the record that the representation that I made at the commencement of the Universal deposition yesterday which I said would apply to all of these 30(b)(6) depositions I'm incorporating by reference here.
MR. ROTHKEN: Okay. Well, you didn't do that before. You didn't do until now.
MS. FALLOW: Well, no, I did because when I stated at the Universal deposition that it was applying to all the 30(b)(6) depositions, I made that representation.
MR. ROTHKEN: Well, I think you need to make it on each record so we have a clear record in and of itself.
MS. FALLOW: Well, I just made that record clear, didn't I?

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

WITNESS'S DECLARATION

I, certify under penalty of perjury that the foregoing is true and correct.

Executed at ______________________, on ______________, 2007, at ______________________, California.

______________________________
JANE SUNDERLAND

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I, NIKKI ROY, Certified Shorthand Reporter, certificate number 3052, for the State of California, hereby certify:

The foregoing proceedings were taken before me at the time and place therein set forth, at which time the deponent was placed under oath by me;

The testimony of the deponent and all objections at the time of the examination were recorded stenographically by me and were thereafter transcribed;

The foregoing transcript is a true and correct transcript of my shorthand notes so taken;

I further certify that I am neither counsel for nor related to any party to said action nor in any way interested in the outcome thereof.

In witness whereof I have hereunto subscribed my name this 4th day of August 2007.

________________________________