**Ira P. Rothken (SBN #160029)**
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949
Telephone: (415) 924-4250
Facsimile: (415) 924-2905

**Kirk J. Retz (#170208)**
LAW OFFICES OF KIRK J. RETZ, APC
21535 Hawthorne Blvd., #200
Torrance, CA 90503
Telephone: (310) 540-9800
Facsimile: (310) 540-9881

Attorney for Defendants
Justin Bunnell, Wes Parker
and Valence Media, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 06-01093 FMC (JCx)**<br><br>**DEFENDANTS' OBJECTIONS TO DECLARATION OF DUANE C. POZZA IN RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS**<br><br>DATE: May 5, 2008<br>TIME: 10:00 a.m.<br>Judge: Florence Marie Cooper<br>Ctrm: 750 |



Dockets.Justia.com

Defendant[1] Valence Media, LLC (hereinafter "defendants") hereby submit their Objections to the Declaration of Duane C. Pozza in Support of Plaintiffs' Motion for Entry of Default Judgment by the Court (hereinafter "the Pozza declaration") as follows:

Defendants object to the declaration of Duane C. Pozza In Response to Defendants' Evidentiary Objections in its entirety, and all exhibits attached thereto, in particular to the declaration of Bruce Ward attached as Exhibit 9 to the Declaration of Duane Pozza, on the grounds set forth in defendants original objections to evidence. Defendants further object on the grounds that the declarations contain and constitute, and the opinions contained therein are based on, inadmissible hearsay, Fed.R.Evid. 801, 802; lack of qualifications of the witness to testify as an expert regarding statistical analysis and other matters testified to, Fed.R.Evid. 702; lack of foundation as to sufficient scientific and/or technical knowledge and methodology used to form an opinion, Fed.R.Evid. 702, Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), Fed.R.Evid. 901; improper and inadmissible expert testimony amounting to "junk science," Fed.R.Evid. 702, Daubert v. Merell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); improper bases and methodologies were used for forming the opinions and conclusions contained therein, Fed.R.Evid. 702, 703; Daubert v. Merell Dow Pharm., Inc., 509 U.S. 579 (1993); improper and inadmissible lay opinion

[1] The action against defendants Forrest Parker, Wes Parker and Justin Bunnell has been stayed pursuant to 15 U.S.C. § 362(a) (bankruptcy petition triggers stay of continuation of proceedings against the debtor). In addition, defendants' counsel has been advised and has provided notice to the Court that a petition for bankruptcy was submitted in the Wycombe District Court in England on May 1, 2008 on behalf of English creditors to whom Valence Media, Ltd. is substantially indebted. Defendants request the Court stay further action in this matter pending briefing and determination of whether a stay as to Valence Media, Ltd is also appropriate as a matter of comity.

testimony, Fed.R.Evid. 701; lack of foundation, Fed.R.Evid. 901; lack of relevance, Fed.R.Evid. 401, 402; relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the trier of fact, Fed.R.Evid. 403; testimony constitutes and is based on a legal opinion regarding an ultimate legal issue in the case, and is not helpful to the trier of fact, Fed.R.Evid. 403; the declarant is biased, and his testimony is not credible or reliable.

Defendants further object to the evidence on the grounds that imposition of statutory damages in this action based on the insufficient evidence presented by plaintiffs would be in violation of defendants' First Amendment privilege of free speech and in violation of defendants' due process rights as plaintiffs have presented no evidence of direct infringement of plaintiff's content, have presented evidence of data from August 2007 without identifying whether data relates to before or after defendants blocked access to the United States (see Declaration Of Wes Parker Re Compliance With Court Order Of May 29, 2007 Re Server Log Data, attached hereto as Exhibit A) and defendants have been prohibited from conducting any discovery in this litigation after the date of plaintiff's complaint filing, February 23, 2006, related to alleged copyrights (see Court Order of February 13, 2008 denying defendants' motion to compel, limiting discovery to the period of October 1, 2002 to February 23, 2006, attached hereto as Exhibit B.)

Respectfully submitted,

Dated: May 5, 2008

ROTHKEN LAW FIRM LLP

By: Jared R. Smith, Esq.
Attorneys for Defendants

EXHIBIT A

IRA P. ROTHKEN, ESQ. (#160029)
JARED R. SMITH, ESQ. (#130343)
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, #280
Novato, CA 94949
Tel: (415) 924-4250
Fax: (415) 924-2905

KIRK J. RETZ, ESQ. (#170208)
RETZ & HOPKINS, LLP
21535 Hawthorne Blvd., #200
Torrance, CA 90503
Tel: (310) 540-9800
Fax: (310) 540-9881

Attorney for Defendants
Justin Bunnell, Forrest Parker, Wes Parker and Valence Media, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., et al.<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 06-01093 FMC**<br><br>DISCOVERY MATTER<br><br>DECLARATION OF WES PARKER RE COMPLIANCE WITH COURT ORDER OF MAY 29, 2007 RE SERVER LOG DATA |

I, Wes Parker, declare:

1. I am a defendant and Chief Operating Officer of defendant Valence

Media, Ltd. and defendants' websites and I am personally and ultimately responsible for the website server and related operations in this action and make this declaration regarding Defendants' compliance with the Court's May 29, 2007 order regarding server log data. All statements made herein are on personal knowledge unless otherwise stated. If called as a witness, I could competently testify as to the facts herein stated.

2. Defendants have a reliable and verifiable means to identify the country from which requests for dot-torrent files originate. The method of distinguishing international traffic from U.S. traffic is discussed below.

3. Defendants have taken action to exclude all traffic originating from the United States and now only receive non-US traffic. When a user in the USA performs a search on TorrentSpy they are shown a message that says they cannot perform the search and that searches from the USA have been blocked. Attached hereto as Exhibit A is a true and correct copy of the web page received by U.S. visitors.

4. In order to determine the country of origin for a user's IP Address, Defendants use the industry standard product called "MaxMind GeoIP" described at the company's website at http://www.maxmind.com/app/country, a true and correct copy of which website's main page and Frequently Asked Questions is attached hereto as Exhibit B. MaxMind GeoIP provides a centralized database of IP addresses associated by country code that are publicly available on the Regional Internet Registries that maintain IP allocation blocks to Internet Service Providers around the world. The MaxMind GeoIP product has one of the industry's highest accuracy rating at over 99%. It currently is used by industry leaders such as Yahoo, Ebay and About.com as described at http://www.maxmind.com/app/about, a true and correct copy of which website's about page is attached hereto as Exhibit C.

5. This system is able to correlate an IP Address with the country to which

that IP Address has been assigned. This correlation is accomplished by pulling the IP address from the HTTP Headers of the request hitting the webpage and performing a lookup in the MaxMind GeoIP database. The resulting lookup provides the website with a country code corresponding to the origin request.

6. Defendants have shut off access to U.S. traffic by identifying the country of origin where the http request was made to the website. Website visitors from the United States and Territories will receive a blocked message as attached hereto as Exhibit A. The blocking takes place on all searching and related features of the site including the latest page, rss feeds and the directory.

7. Perhaps more importantly, the server data that can currently be logged by Defendants would not include any "Server Log Data" as defined by the Court's May 29, 2007 Order as "(1) IP addresses of users of defendants' website who request dot-torrent files; (2) the requests for dot-torrent files; and (3) the dates and times of such requests." Since well before Judge Cooper's Order of August 24, 2007 denying Defendants' motion for review of the May 29, 2007 Order, Defendants' website has exclusively linked to dot-torrent files found on third party websites and does not offer direct downloading of any dot-torrent files. Accordingly, as it relates to the "Server Log Data" categories as defined by the Court in the Order the defendants have no such responsive data in their possession, custody, or control.

I declare under penalty of perjury of the laws of the State of California that the foregoing statements are true and correct. I make this declaration on September 5, 2007.

WES PARKER

PROOF OF SERVICE

I am over the age of 18 years, employed in the county of Marin, and not a party to the within action; my business address is 3 Hamilton Landing, Suite 280, Novato, CA 94949.

On September 11, 2007, I served the within:

DECLARATION OF WES PARKER RE COMPLIANCE WITH COURT ORDER OF MAY 29, 2007 RE SERVER LOG DATA

By EMAIL and FEDEX by depositing a copy in an envelope, postage prepaid in a FEDEX BOX addressed as follows:

| | |
|---|---|
| **Karen B. Thorland**<br>Loeb and Loeb<br>10100 Santa Monica Blvd, Ste 2200<br>Los Angeles, CA 90067-4164<br>310-282-2000<br>Email: kthorland@loeb.com | **Steven B Fabrizio**<br>**Katherine A Fallow**<br>**Duane Charles Pozza**<br>Jenner and Block<br>601 Thirteenth Street NW, Suite 1200<br>South<br>Washington, DC 20005<br>202-639-6000<br>Email: sfabrizio@jenner.com<br>Email: kfallow@jenner.com<br>Email: dpozza@jenner.com |
| **Gregory Paul Goeckner**<br>**Lauren T Nguyen**<br>Motion Picture Association of America<br>15503 Ventura Blvd<br>Encino, CA 91436<br>818-995-6600 | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 11, 2007.

EXHIBIT A

Home | Blog | My Profile | Submit Torrent | Help | Forum | Contact



Search

Torrent | Web

Advanced Search | Directory | Preferences

The armor of the internet is here. See for yourself!

Latest Torrents | RSS Feed | Get Firefox Plugin




# Torrentspy Acts to Protect Privacy

Sorry, but because you are located in the USA you cannot use the search features of the Torrentspy.com website.Torrentspy's decision to stop accepting US visitors was NOT compelled by any Court but rather an uncertain legal climate in the US regarding user privacy and an apparent tension between US and European Union privacy laws.

We hope you understand and will take the opportunity to visit one of these other fine websites:

**Daily Suture**
**Heavy News**
**Heavy Music**
**Massive Mating Game**
**WackyVids.com**
**Linkbucks.com**
**Hollywire.com**
**SearchAgent.com**
**Teenist.com (ADULT)**
**61Brand.com**

## Torrent Stats

| | |
|---|---|
| Torrents Today | 1,785 |
| Torrents Indexed | 1,093,701 |

## Login / Register

Username:

Password:

GO

Forgot Password
Register

© Copyright 2005 torrentspy.com, all rights reserved.

EXHIBIT B

# MaxMind GeoIP Country® Database

**Last Updated:** August 28th, 2007

**Product Summary:** Determine the Internet visitor's country based on the IP address. The downloadable database is available to established businesses only, please see the availability section below for details.

Try Our Online Demo >>

Try out our free GeoLite Country.

View Product Features >>

| Purchase Site License [?] | With Updates |
|---|---|
| **Downloadable Database:** $50/site license, includes first month of updates.<br>Purchase<br>**Web Service:** $20 per 200,000 queries. No software or databases to install. More Information<br>Purchase | $50 site license fee and $12 per month of updates.<br>First month update fee included in one time fee. You may cancel your subscription at any time.<br>Subscribe |

**Product Features** - MaxMind GeoIP Country Database

- Updated weekly
- Includes unlimited e-mail support
- Site license (all machines within organization)
- Includes the following fields:
  - Start IP Address
  - End IP Address
  - Start IP Number
  - End IP Number
  - Country Code
  - Country Name
- Over 99% accurate on a country level
- Approximately 85,000 records.
- Open Source binary API available for the following languages:
  - C
  - Perl (XS)
  - Perl (Pure)
  - PHP (Pure)
  - Apache
  - Java
  - Python
  - C#
  - Ruby
  - MS COM
  - Pascal
  - Need another API? Let us know!
- Automated updates for binary API database using geoipupdate on Linux/Unix, included in C API
- Binary API database is highly optimized and supports over 400,000 queries per second with the C API

### Availability

Once your order has been processed you will be able to download the data in any one of the following formats:

- Comma-separated values (Sample data)
- Optimized binary file for usage in APIs. We recommend using the binary files with APIs instead of importing the CSV files into SQL because the binary format is more efficient and is easy to set up and use. We have APIs for both Linux/Unix and Windows.
- Please allow 1-3 hours to process your order during US business hours, or up to 12 hours outside of US business hours. If we require additional information to verify the order is coming from an established company, the processing make take longer. In order to speed processing of your order, please use the e-mail address associated with your company. For licensing purposes, we reserve the right to limit orders to companies with established websites. We may ask for information on how the GeoIP database will be used, to verify the usage will be allowed under the license agreement. For non-established businesses, please contact sales@maxmind.com or use our free GeoLite Country database.

### Product Requirements

- Uncompressed Disk Space:
  - Comma-separated values - 6 MB
  - Optimized binary file for usage in APIs. We recommend using the binary files with APIs instead of importing the CSV files into SQL because the binary format is more efficient and is easy to set up and use. We have APIs for both Linux/Unix and Windows. - 1 MB
- For CSV Files format - WinZip or another similar PKzip archive extraction utility
- Binary/API Format - gunzip/tar archive extraction utility

### Database Fields

| Field | Data Type | Field Description |
|---|---|---|
| Start IP Address | varchar(15) | First IP in netblock |
| End IP Address | varchar(15) | Last IP in netblock |
| Start IP Number | unsigned int | First IP in netblock, numeric representation. |
| End IP Number | unsigned int | Last IP in netblock, numeric representation. |
| Country Code | char(2) | ISO 3166 Country Code, with the addition of<br>• A1 for Anonymous Proxies. Does **not** include Open Proxy detection. Open proxy detection is only available through the minFraud or proxy detection web service.<br>• A2 for Satellite Providers |
| Country Name | varchar(50) | The name of the country |

MaxMind, GeoIP and related marks are registered trademarks of MaxMind LLC.
Copyright © 2007 MaxMind LLC. All Rights Reserved. Terms of use.

# Frequently Asked Questions

### MaxMind GeoIP Databases

· What is the site license?

· How accurate are your GeoIP databases?

· What about AOL IP Addresses?

· How much of the IP Address space do you cover?

· How many IP addresses are in your database? How many countries are included?

· What is the difference between the GeoIP ISP and Organization databases?

· How many lookups can your client APIs support per second for GeoIP Country?

· What are the "A1" Anonymous Proxy entries?

· What are the "A2" Satellite Provider entries?

· What are the "EU" Europe and "AP" Asia-Pacific entries?

· How do you keep the database size so small?

### GeoIP Upgrades/Updates

· Can I upgrade from GeoIP Region to GeoIP City?

· How often is the database updated?

· Are updates provided as self-contained databases or do you just provide the updated differences?

· How often do I have to purchase updates?

· How are updates provided? Can I automate updates?

### GeoIP Implementation

· How can I block access from specific countries to my website?

· How can I redirect traffic to my website to country-specific pages? How will this influence search engine rankings?

· How do I determine the IP address behind a proxy?

· Where can I get a conversion chart of region codes to names?

· I would like to plot the Geographical locations of my visitors on a world map. How can I do this?

· How can I determine the timezone of a website visitor?

· How can I determine the preferred language of the website visitor?

· When do you recommend using the Memory Caching mode, GEOIP_MEMORY_CACHE?

· How can I find the Postal Code of an IP address?

· How can I find nearby postal codes?

### MaxMind Web Services

· Do I get a warning if I am running out of queries?

### GeoIP License

· I would like to use GeoIP on xyz.com, xyz.ca, xyz.biz. Do I need more than one site license?

· We are a hosting provider and have a license to one of your GeoIP databases, can we install it on the different servers that we provide to our hosting clients?

· I would like to use the GeoIP data to power a web log/analytics tool that I provide to my clients. Is this allowed with just one site license?

· I would like to setup a website where my clients can enter a IP address and get the GeoIP information back. From reading the license agreement, it seems that this would not be allowed. However, I have seen other sites do this. How can I do this too?

### MaxMind minFraud Service

· How effective is MaxMind in preventing different types of chargebacks?

· What happens when I use up all of the queries allowed under my subscription plan?

· Can I customize the formula used to generate the fraud score returned by the minFraud service?

· What does the proxy score tell me?

· Can I mix the standard and premium queries in a single account?

· What is the difference between the standard and premium minFraud? Which one should I use?

· What kind of coverage does minFraud have? Can it screen international orders?

· I run multiple sites. Can make API calls to the same minFraud account from the different sites?

· What is a minFraud Alert? What should I do with it?

· I have not never received minFraud Alerts. Is something wrong?

· Is the minFraud service PCI compliant?

· Can the subscription be changed in case we need to increase the amount of queries at a later date?

· Do unused queries carry over or do they expire at the end of the monthly cycle?

# Answers

## MaxMind GeoIP Databases

### What is the site license?

A site license is needed in order to use the GeoIP databases. Please see our site license page for terms of use of a site license.

### How accurate are your GeoIP databases?

Our GeoIP databases are over 99% accurate on a country level, 85% accurate on a state level, and 80% accurate for the US within a 25 mile radius. For more details on our city coverage, see GeoIP City Coverage and Accuracy

We arrive at the accuracy figure by checking known IP address and location pairs against our database. We obtain the known IP location pairs from sites that ask the web visitor to provide their geographic location. The geographic location along with the web visitor's IP Address is forwarded to us.

### What about AOL IP Addresses?

We break down AOL addresses on a country level between United States, Great Britain, France, Germany, Japan, Australia and Brazil. Some French AOL users appear to come from Great Britain or Germany due to the way that AOL routes their traffic through proxy servers. Canadian AOL users will appear to come from the United States. It is not possible to target AOL users on a state level, due to the way that AOL routes traffic from multiple states through the same IP address.

### How much of the IP Address space do you cover?

We cover all of the IPv4 space, including all publicly available IP addresses.

### How many IP addresses are in your database? How many countries are included?

Please see our Technical Details page.

### What is the difference between the GeoIP ISP and Organization databases?

The ISP database generally contains the ISP, however when we are not able to obtain the ISP, we include the name of the organization the IP address block was assigned to. For example, the ISP database often contains the names of universities, instead of the universities' ISP.

When only the ISP or organization name is available, both the GeoIP ISP and Organization databases return the same value. When both the ISP and organization names are available, the GeoIP ISP and Organization databases return the ISP, and organization, respectively.

### How many lookups can your client APIs support per second for GeoIP Country?

The C Client API can support up to 1,000,000 queries per second on a 1.7 GHz machine when using the memory cached mode. For more performance details, see our benchmark page.

### What are the "A1" Anonymous Proxy entries?

These are IP addresses that belong to anonymous proxy services such as Anonymizer. These are often used by users to hide their IP address or to make it appear that they are coming from a different geographical location. For more comprehensive proxy checking, see Anonymous and Open Proxies

### What are the "A2" Satellite Provider entries?

These reflect ISPs that offer Internet access to many countries through satellites, and it is difficult to ascertain the country that the end user originates from. Since we don't know, it is better to mark them as such, rather than to give false positives. Since Satellite Providers serve high risk countries such as Nigeria and Ghana, these IP addresses should be flagged for review.

### What are the "EU" Europe and "AP" Asia-Pacific entries?

"EU" and "AP" codes are used in the country code field when there are no clear indications as to where the end users are located. For example, we may mark a corporate proxy located in London, GB as "EU" if we can see that the ultimate end users are connecting from various parts of Europe. Marking that IP as coming from London would not correctly represent where end users are coming from.

Please note "EU" and "AP" codes do not include all IPs covered under those respective regions. Blocking "EU" will only block IPs with the conditions described above and will not affect all the European countries with specific country codes. To block "EU", you need to list the specific countries individually.

### How do you keep the database size so small?

We store the IP address -> country associations by Network block, which allows us compress the data a lot without losing any data. So for example, if we know that 3.0.0.0/8 is all in one country, then we can just store that, instead of storing each IP address in that network block. The net result is much faster and takes up much less space.

## GeoIP Upgrades/Updates

### Can I upgrade from GeoIP Region to GeoIP City?

Yes you can upgrade for the difference in cost ($220) within one month of a GeoIP Region purchase or update. After one month the upgrade price is $256. For more details, see our purchasing page.

### How often is the database updated?

GeoIP Country and the binary formats of GeoIP Region and City are updated weekly. All other databases are updated monthly. About 1-2% of the GeoIP database changes each month.

### Are updates provided as self-contained databases or do you just provide the updated differences?

Each update is provided as a self-contained full database.

### How often do I have to purchase updates?

You can purchase updates how ever often you like, for the same update price, given that you have purchased the database or an update in the previous six months. For example, you could purchase an update for the GeoIP City database for $90 every three months, and only have to pay the $90 every three months instead of every month. This is available by clicking "Add one-time update" on your account page.

For each additional month past 6 months, there will be a additional fee that is equal to 10% of original update price added to the total update price. This new policy is effective for site licenses granted after May 10th, 2005.

*For example: Months since purchase or last update for GeoIP Country:*
*5th = $12*

*7th = $12 + $1.20 = $13.20*
*9th = $12 + $1.20 + $1.20 + $1.20 = $15.60*

#### How are updates provided? Can I automate updates?

Updates are provided electronically and can be downloaded from within your account page.

We offer automated updates for GeoIP Country, Region, City, Area Code, ISP, Organization, Netspeed, and Domain Name databases in binary format, using our geoipupdate program. The geoipupdate program works best on Unix or Linux, however, we do have a HTTP interface for downloading the GeoIP Country database in binary format.

We do not have support for automatic updates for the CSV databases at this time, nor do we support automatic updates for the GeoIP City subset databases for individual countries.

### GeoIP Implementation

#### How can I block access from specific countries to my website?

If you are using the Apache web server, you can block access for your entire website from specified countries by using our mod_geoip API.

For other web servers, you can block access to dynamically scripted pages by using any one of our APIs. You would need to create a script on your website to determine the country of the IP address by calling the GeoIP Country database with one of our APIs, then have the script only display content based on the country returned by GeoIP.

Another option is to block traffic on a firewall level before it reaches your web server. iptables/netfilter's geoip match incorporates GeoIP into Linux's firewall software.

#### How can I redirect traffic to my website to country-specific pages? How will this influence search engine rankings?

If you are using the Apache web server, you can redirect traffic based on the visitor's country by using our mod_geoip API.

More generally, you can redirect dynamically scripted pages by using any one of our APIs. You would need to create a script on your website to determine the country of the IP address by calling the GeoIP Country database with one of our APIs, then have the script redirect to another URL based on the country returned by GeoIP.

Many search engine spiders originate from the United States, so they will see your website as presented to US visitors. To have the search engine spiders index the entire site, you may want to include links to your other country specific pages on your website.

#### How do I determine the IP address behind a proxy?

Transparent proxy servers send HTTP headers including X-Forwarded-For and Client-IP. Note that not all proxy servers use these headers.

#### Where can I get a conversion chart of region codes to names?

We maintain a lookup table of region codes to names for US and Canada and all other countries

#### I would like to plot the Geographical locations of my visitors on a world map. How can I do this?

There is an open source Perl module, Image::WorldMap, that creates graphical world maps of longitude/latitude data.

### How can I determine the timezone of a website visitor?

It is possible to get the actual timezone of the website visitor's computer by using JavaScript. A Google search reveals some useful code samples of how to determine the timezone using Javascript.

Alternatively, you can use the output of the GeoIP database to estimate the timezone of the user. We provide a text file as well as PHP code for mapping countries, US states, and Canadian provinces to timezones in zoneinfo format (e.g. America/New_York).

### How can I determine the preferred language of the website visitor?

The easiest, recommended way is to use the Accept-Language HTTP header to get the user's language preferences. Alternatively, you can use GeoIP Country to first determine the country, then select the language based on the country returned by GeoIP.

### When do you recommend using the Memory Caching mode, GEOIP_MEMORY_CACHE?

Where memory usage (on the order of 1MB for GeoIP Country) is not important, and when there are repeated queries using the same object. The standard mode (GEOIP_STANDARD) can support 400,000 queries per second using the C API, so for many purposes it is fast enough.

### How can I find the Postal Code of an IP address?

About 25% of GeoIP City records in the United States have postal codes. In many cases we are able to identify the city, but the city has multiple postal codes, so we don't identify the postal code in that case unless we are confident that the IP address is in that postal code and not one of the others in the city.

Not being able to determine the postal code in many cases is a general limitation of geolocation services. Typically an ISP will have its users connect to a central office and assign their client an IP address from a block of IP address. The block of IP addresses will be given out to clients spanning several zip codes. For instance, if you connect to a dial-up ISP in New York City, your provider will typically have a 212 access number number that is used from any postal code in the city.

With a postal code database such as CivicSpace's free US Zip Codes [download] you could lookup a postal code using the city returned by the GeoIP City database. Worldwide postal code databases can be found Event Me's free postal code sources and downloads.

### How can I find nearby postal codes?

There are open source postal code distance calculators that can find postal codes within x miles of another postal code. Geo::PostalCode is a Perl module available on CPAN, and Zipdy is available in C, PHP and Perl.

## MaxMind Web Services

### Do I get a warning if I am running out of queries?

A warning email will be sent out when the number of queries for the GeoIP Country or City web services falls below 10,000.

## GeoIP License

### I would like to use GeoIP on xyz.com, xyz.ca, xyz.biz. Do I need more than one site license?

As long as you own, operate, and have sole access to those websites, you only need one site license.

### We are a hosting provider and have a license to one of your GeoIP databases, can we install it on the different servers that we provide to our hosting clients?

No, while you can install the databases on multiple servers, it can only be for internal use. Any company that has access to the data/databases must have their own license.

#### I would like to use the GeoIP data to power a web log/analytics tool that I provide to my clients. Is this allowed with just one site license?

Only one site license is needed if the the following two conditions are met: 1) The client must not have any direct or indirect access to the data. For example, the IP addresses of the client's visitors should be captured through something like Javascript. If the IPs are obtained via log files, the clients must not have the ability to modify the log files. 2) GeoIP data is provided in aggregate, where the IP address is not presented with the associated GeoIP data. Please see the sample log report examples below:

a) 3 visits from 24.24.24.24 Ithaca, New York, US (Not allowed)
2 visits from 24.24.23.23 Chitengo, New York, US (Not allowed)

b) 3 visits from Ithaca, New York, US (Allowed)
2 visits from Chitengo, New York, US (Allowed)

#### I would like to setup a website where my clients can enter a IP address and get the GeoIP information back. From reading the license agreement, it seems that this would not be allowed. However, I have seen other sites do this. How can I do this too?

No. You may not use the GeoIP database in this manner because it would give your visitors direct access to the data. You can use something like Javascript to automatically capture the visitor's IP and present them with GeoIP data for their IP address but a free lookup tool is not allowed. However, you can use the GeoIP Web Service to offer the free lookup. We recommend you implement some type of query control (e.g. number of queries per IP per day) as automated spiders can quickly deplete your account.

### MaxMind minFraud Service

#### How effective is MaxMind in preventing different types of chargebacks?

MaxMind's minFraud service is effective in flagging online purchases made with stolen card numbers. MaxMind's service does not protect against "friendly" chargebacks where the cardholder placed the order, but later denies having placed the order and issues a chargeback. To help prevent "friendly" chargebacks, have the customer fill out a fax authorization with signature form.

#### What happens when I use up all of the queries allowed under my subscription plan?

You will continue up to receive 500 free queries/day of the Basic minFraud service to allow time to upgrade to a higher volume plan. You can email support@maxmind.com to request that more queries be added to your plan.

#### Can I customize the formula used to generate the fraud score returned by the minFraud service?

You can write your own code to customize the fraud scoring algorithm, since MaxMind returns the inputs into the formula used to calculate the fraud score. To customize how the fraud score is calculated, modify the formula we use to calculate the fraud score, using the output results returned by the minFraud service as inputs into your modified formula.

#### What does the proxy score tell me?

The proxy score is another metric for determining the likelihood that a transaction is fraudulent. See our statistical analysis of proxy scores from transaction and chargeback logs.

#### Can I mix the standard and premium queries in a single account?

You can mix standard and premium minFraud queries if you subscribe to both services. To specify whether you would like to call the standard or premium service, use the requested_type input parameter.

### What is the difference between the standard and premium minFraud? Which one should I use?

The services are similar, the only difference being that the premium outputs the credit card's issuing bank's country, name and phone number. If you typically call the bank to manually verify the cardholder's details, then the premium service would provide the phone number of the bank. On the other hand, if you don't need to call the bank, or if the transactions are automatically screened and processed, the standard service should be sufficient.

For more details, see our minFraud Feature Comparison page.

### What kind of coverage does minFraud have? Can it screen international orders?

The minFraud service can be used to screen orders for any merchant and from any customer from around the world. This is because minFraud is a 3rd party IP address centric fraud detection service and not dependent on the infrastructure of the payment industry. As a result, it is not affected by the typical geographical limitations that affect checks such as AVS, 3D-secure, or other authentication tools.

### I run multiple sites. Can make API calls to the same minFraud account from the different sites?

Yes, you can use the same minFraud account to screen orders from multiple sites.

### What is a minFraud Alert? What should I do with it?

The minFraud Alerts are generated as part of our post-query analysis feature. minFraud Alerts are manually reviewed before they are sent out.

After the initial scoring, we store each transaction and continue to monitor and analyze the transaction for another 2-4 weeks. We cross-reference and cross-check the transaction more rigorously against new and historic data sets and other fraud related data derived from the overall minFraud system. If the post-query analysis system uncovers any suspicious transactions that were not flagged initially, the transactions are reviewed manually and minFraud Alerts are sent out if appropriate.

We recommend that all orders that were flagged by minFraud Alerts be flagged and shipment delayed. For digital goods, the associated accounts should be frozen or closed to mitigate further losses.

### I have not never received minFraud Alerts. Is something wrong?

minFraud Alerts are only generated for high risk transactions that were not flagged by the system during the initial query. As a result, not every client will receive them. The frequency of minFraud Alerts has a lot to do with the kind of fraudsters that a site attracts. In general, minFraud Alerts flag transactions from more sophisticated fraudsters who are good at simulating legitimate transactions.

Alternatively, be sure to be able to receive (or whitelist) e-mails from support@maxmind.com. minFraud Alert e-mails are sent from the e-mail address to the e-mail listed as the technical contact. If you prefer to not receive the alerts via e-mail, you can have them automatically posted to a URL of your choice: Setup minFraud Alert URL (login required).

### Is the minFraud service PCI compliant?

Since the minFraud service does not receive any personal data such as the complete 16-digit credit card number, the complete billing address, or social security number, we were told by Visa and Mastercard that it was unnecessary to be PCI compliant. While we are not bound be PCI regulations, we still take data security very seriously.

### Can the subscription be changed in case we need to increase the amount of queries at a later date?

Yes. To upgrade to a new subscription plan, please e-mail support@maxmind.com and say which subscription level you would like to upgrade/downgrade to.

### Do unused queries carry over or do they expire at the end of the monthly cycle?

It depends on what kind of plan you are currently using. Under the subscription plan, unused queries expire at the end monthly cycle. If you purchased the service under an one-time bulk purchase or the customized auto-renewal plan, the queries do not expire at the end of the monthly cycle.

MaxMind, GeoIP and related marks are registered trademarks of MaxMind LLC.
Copyright © 2007 MaxMind LLC. All Rights Reserved. Terms of use.

EXHIBIT C

## About MaxMind



Founded in 2002, MaxMind is an industry-leading provider of geolocation and online fraud detection tools.

MaxMind provides its geolocation technology through the GeoIP brand. By accurately pinpointing the location of Internet customers and visitors by country, geographic region, down to the granular detail of city in real-time, MaxMind enables online businesses to have a valuable marketing tool as well as the ability to customize their websites to better serve clients. There are currently more than 2,000 clients using GeoIP.

MaxMind's industry-leading minFraud service is aimed at helping merchants prevent fraud from online card not present transactions. Through its comprehensive fraud screening system, merchants can accurately detect and automatically flag attempted fraud from card not present transactions. Currently, more than 6,000 e-commerce businesses benefit from the minFraud service through our client and partner networks.

MaxMind's clients include About.com, AT&T, Dupont, Earthlink, eBay, IBM, Lexis Nexis, Lycos, Match.com, Morgan Stanley, Orbitz, Red Hat, Reed Elsevier, Sony, Walgreens, Wal-Mart, Warner Brothers, WebEx and Yahoo!.

MaxMind is privately held and based in Boston, Massachusetts.

MaxMind, GeoIP and related marks are registered trademarks of MaxMind LLC.
Copyright © 2007 MaxMind LLC. All Rights Reserved. Terms of use.

EXHIBIT B

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date | February 13, 2007 |
| Title | Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al. | | |

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Nancy Hackney | none | none |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Steven B. Fabrizio<br>Gregory P. Goeckner | Ira P. Rothken |

**Proceedings:** **ORDER: (1) GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET 2; (2) DENYING DEFENDANTS' REQUEST FOR SANCTIONS; (3) GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER; AND (4) DENYING PLAINTIFFS' REQUEST TO DELAY RULING ON MOTIONS**

On February 23, 2006, plaintiffs filed a complaint against defendants for copyright infringement. Plaintiffs allege, inter alia, that defendants knowingly enable, encourage, induce, and profit from massive online piracy of plaintiffs' copyrighted works through the operation of their internet website. Defendants filed an Answer on May 24, 2006.

On January 18, 2007, plaintiffs filed a "Joint Stipulation Re Plaintiffs' Motion for Protective Order on Defendants' Second Set of Document Requests" ("Plaintiffs' Motion"), a supplemental declaration of Duane C. Pozza, and accompanying exhibits. On January 23, 2007, plaintiffs' filed another supplemental declaration of Duane C. Pozza regarding Plaintiffs' Motion. On January 30, 2007, plaintiffs filed a supplemental memorandum in support of Plaintiffs' Motion. Plaintiffs' Motion requests that the Court issue a protective order granting relief from responding to and striking defendants' second set of document request nos. 24, 26, 27, 28, 38, 39 and 40.

On January 23, 2007, defendants filed a "Joint Stipulation Re Defendants' Motion to Compel Further Responses to Defendants' Request for Production of Documents, Set 2 And Re Defendants' Request for Sanctions Pursuant to F.R.Civ.Pro. 37(a)(4)" ("Defendants' Motion"). On January 24, 2007, defendants filed a supplemental declaration of Ira P. Rothken in support of Defendants' Motion and accompanying exhibits. On January 30, 2007, plaintiffs filed a supplemental memorandum in opposition to Defendants' Motion. On January 31, 2007, defendants filed a supplemental memorandum in support of Defendants' Motion. Defendants' Motion seeks to compel plaintiffs to produce documents responsive to defendant Valence Media, Ltd.'s Request for Production of Documents, Set 2 ("defendants' second document requests"), specifically, request nos. 22-24, 26-30, 32-33, 36-37, and 39-40. Defendants' Motion also seek sanctions pursuant to F.R. Civ. P. 37(a)(4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date February 13, 2007

Title Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al.

As Plaintiffs' Motion and Defendants' Motion both relate to defendants' second document requests and involve many of the same requests and issues, the Court addresses both motions together.

**A. Request Nos. 22-23, 29-30, 32-33, and 36-37**

Defendants' Motion seeks to compel further responses to these requests which ask defendants to produce certain documents regarding files downloaded or attempted to be downloaded using Torrentspy.com or torrent files downloaded from Torrentspy.com (nos. 22-23), cease and desist letters or Digital Millennium Copyright Act notices sent to defendants (no. 29), communications involving plaintiffs or plaintiffs' copyrighted works to or from defendants (no. 30), alleged primary copyright infringers and infringements of plaintiffs' copyrighted works for which defendants are allegedly secondarily liable (no. 32), defendants' alleged inducement of copyright infringement of plaintiffs' copyrighted works (no. 33), and the basis of statutory and monetary damages (no. 36-37).

Plaintiffs have represented that all non-privileged documents responsive to such requests have already been produced and that there are no additional non-privileged responsive documents to produce.

1. Defendants' Motion is therefore denied as moot to the extent it seeks to compel documents responsive to these requests. Plaintiffs are directed to supply defendants with a privilege log regarding the allegedly privileged and unproduced documents responsive to such requests **by February 23, 2007**, to the extent such documents are not already referenced on a previously produced privilege log. Such privilege log must describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable plaintiffs to assess the applicability of the asserted privilege. See F.R. Civ. P. 26(b)(5).[1] **Plaintiffs are cautioned that the failure timely to produce an adequate privilege log may be deemed a waiver of the privilege.**

**B. Request No. 24**

Defendants' Motion seeks to compel a further response to this request which seeks documents related to or referencing internet based web sites, servers, services, and entities across the world that have authorization to host or make available via the internet all or part of plaintiffs' copyrighted works alleged in the Complaint or listed in the attachment to the Complaint (and any others for which plaintiffs are claiming defendants infringed) since the inception of such copyrighted work(s).

Plaintiffs' Motion requests that the Court relieve them from responding to this request in its entirety. Plaintiffs object that this request: (1) seeks a category of documents known to defendants

[1]Model Form 11:A set forth in The Rutter Group Practice Guide, Federal Civil Procedure Before Trial correctly and adequately lists all the information that should be set forth on the privilege log, including the title or position of the author and recipient of the document. See In Re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992); Dole v. Milonas, 889 F.2d 885, 888 n.3 (9th Cir. 1989).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**



when they served the initial set of requests for production of documents and has been interposed in the second set of requests to burden plaintiffs; (2) is overbroad, unduly burdensome and harassing;[2] (3) seeks information that is not relevant to any claims or defenses in this action, nor likely to lead to discovery of relevant admissible evidence; (4) is vague and ambiguous; (5) seeks the disclosure of privileged information or communications with, facts known by, or opinions held by non-testifying experts; and (6) is duplicative of previous requests to which plaintiffs are responding separately (namely initial requests for production nos. 1-3).[3] Plaintiffs also incorporate the objections made to Request for Production Nos. 1-3 and Defendants' Interrogatory No. 1.[4]

2. Defendants' Motion with respect to such request is granted in part and denied in part. The Court finds that the request, in its current form is overbroad. The Court narrows the request to non-privileged documents reflecting whether plaintiffs have authorized general or unrestricted distribution or availability over the internet of those of plaintiffs' copyrighted works or parts thereof alleged in the Complaint or listed in the attachment to the Complaint (and any other works or parts of works for which plaintiffs are claiming defendants infringed) from October 1, 2002 through the commencement of litigation, i.e., February 23, 2006. The Court finds this request as narrowed is not overbroad and calls for documents which are relevant or are reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs are directed to produce all non-privileged documents responsive to this request, as narrowed, by **February 23, 2007**. Plaintiffs are directed to supply defendant with a privilege log regarding any allegedly privileged and unproduced documents responsive to such request by **February 23, 2007**. Plaintiffs' remaining objections to this request are overruled.

3. Plaintiffs' Motion is denied to the extent it asks the Court to strike request no. 24.

---

[2]Plaintiffs' Motion also argues that this request's "overbreadth and lack of relevance" would cause undue prejudice because of the commercially sensitive nature of plaintiffs' online licensing arrangements.

[3]The parties have not provided the Court with copies of Defendants' First Set of Requests for Production of Documents or Plaintiffs' Responses to Defendants' First Set of Requests for Production of Documents.

[4]See supra note 3. The parties also have not provided the Court with a copy of Plaintiffs' Responses to Defendants' First Set of Interrogatories, though the substance of some such responses appear to have been set forth in the "Joint Stipulation Re Defendants' Motion to Compel Further Responses to Defendants' First Set of Interrogatories and Re Defendants' Request for Sanctions Pursuant to F.R. Civ. Pro. 37(a)(4)" filed on January 24, 2007.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date February 13, 2007

Title Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al.

**C. Request No. 26**

Defendants' Motion seeks to compel a further response to this request which seeks documents related to or referencing agreements involving BitTorrent, Inc.

Plaintiffs' Motion requests that the Court relieve them from responding to this request in its entirety. Plaintiffs object that this request: (1) seeks a category of documents known to defendants when they served the initial set of requests for production of documents and has been interposed in the second set of requests to burden plaintiffs; (2) is overbroad, unduly burdensome and harassing; (3) seeks information that is not relevant to any claims or defenses in this action, nor likely to lead to discovery of relevant admissible evidence; and (4) seeks the disclosure of privileged information or communications with, facts known by, or opinions held by non-testifying experts.

4. Defendants' Motion with respect to such request is granted in part and denied in part. The Court finds that the request, in its current form is overbroad. The Court narrows the request to documents reflecting whether plaintiffs have authorized BitTorrent, Inc. to distribute or to make available on a general or unrestricted basis those of plaintiffs' copyrighted works or parts thereof alleged in the Complaint or listed in the attachment to the Complaint (and any other works or parts of works for which plaintiffs are claiming defendants infringed) from October 1, 2002 through the commencement of litigation, i.e., February 23, 2006. The Court finds this request as narrowed is not overbroad and calls for documents which are relevant or are reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs are directed to produce all non-privileged documents responsive to this request, as narrowed, by **February 23, 2007**. Plaintiffs are directed to supply defendant with a privilege log regarding any allegedly privileged and unproduced documents responsive to such request by **February 23, 2007**. Plaintiffs' remaining objections to this request are overruled.

5. Plaintiffs' Motion is denied to the extent it asks the Court to strike request no. 26.

**D. Request Nos. 27-28 and 39-40**

Defendants' Motion seeks to compel further responses to these requests which seek documents relating to BitTorrent (no. 27), torrent technology (no. 28), Google and hyperlinks to unauthorized files containing plaintiffs' copyrighted works (no. 39), as well as Google and torrent files (no. 40).

Plaintiffs' Motion requests that the Court relieve them from responding to these requests in their entirety. Plaintiffs object on the grounds that the requests: (1) seeks a category of documents known to defendants when they served their initial set of requests for production of documents and have been interposed in the second set of requests to burden plaintiffs; (2) are overbroad, unduly burdensome and harassing; (3) seek information that is not relevant to any claims or defenses in this action, nor likely to lead to discovery of relevant admissible evidence; (4) are vague and ambiguous; and (5) seek privileged information or disclosure of communication with, facts known by, or opinions held by non-testifying experts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date | February 13, 2007 |
| Title | Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al. | | |

6. Defendants' Motion with respect to these requests is denied. Plaintiffs' relevance and overbreadth objections are sustained. Plaintiffs' remaining objections are overruled as moot. The Court is not persuaded that the documents sought by these requests are relevant, i.e., that, pursuant to F.R.Evid. 401, they have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or that such documents are reasonably calculated to lead to the discovery of admissible evidence.

7. Plaintiffs' Motion with respect to these requests is granted.

**E. Request No. 38**

Plaintiffs' Motion requests that the Court strike this request which seeks documents relating to litigation or settlement agreements, other than this case, involving any of plaintiffs' copyrighted works and torrent technology or torrent files. Plaintiffs argue that this request is overbroad, burdensome, and calls for documents which are not relevant. Although Defendants' Motion does not seek to compel a response to this request, defendants' oppose Plaintiffs' Motion apparently on the ground that access to settlement agreements with others will assist the Court in crafting an appropriate injunction should plaintiffs prevail in this action.

8. Plaintiffs' Motion with respect to this request is granted. The Court is not persuaded that the documents sought by this request are relevant or reasonably calculated to lead to the discovery of admissible evidence.

**F. Sanctions Request**

Defendants' request for sanctions pursuant to F.R. Civ. P. 37(a)(4) is denied.

**G. Plaintiffs' Request to Delay Ruling**

Plaintiffs' request that the Court delay ruling on Defendants' Motion and Plaintiffs' Motion and consider them at the time the Court considers another motion submitted by plaintiffs is denied.

IT IS SO ORDERED.

Initials of Deputy Clerk nhac