JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>*Plaintiffs*,<br>v.<br><br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,<br><br>*Defendants*. | Case No. CV 06-1093 FMC (JCx)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS**<br><br>**REDACTED PURSUANT TO PROTECTIVE ORDER**<br><br>Judge: Hon. Florence-Marie Cooper<br>Ctrm: 750<br>Date: May 5, 2008<br>Time: 10:00 a.m. |



Dockets.Justia.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

Objection 1. ........ 2

Objection 2. ........ 3

Objection 3. ........ 6

Objection 4. ........ 12

Objection 5. ........ 15

Objection 6. ........ 16

Objection 7. ........ 17

Objection 8. ........ 18

Objection 9. ........ 18

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

## CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001).................... 15

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518 (7th Cir. 1989) ................ 4, 9

*Automatic Radio Manufacturing Co. v. Hazeltine Research Inc.*, 339 U.S. 827 (1950) .................................................................................................. 4

*Daily Herald Co. v. Munro*, 758 F.2d 350 (9th Cir. 1984) ................................ 3, 5

*Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005).................................................................................................... 10

*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir 2002)......................... 2, 5

*Fong v. United States*, 300 F.2d 400 (9th Cir. 1962)........................................... 10

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985)...................................................................................................... 7

*Growth Properties Inc. v. Klingbeil Holding Co.*, 419 F. Supp. 212 (D. Md. 1976).................................................................................................... 10

*Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974)................................................... 9

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992).......................................... 7

*L.A. Times Communications LLC v. Department of the Army*, 442 F. Supp. 2d 880 (C.D. Cal. 2006)........................................................................... 4

*Lorraine v. Markel America Insurance Co.*, 241 F.R.D. 534 (D. Md. 2007).......... 8

*Maljack Products, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) ........................................................................................... 6

*Markel Am. Ins. Co. v. Woolard*, No. 07-017, 2007 WL 4662143, at *1 (C.D. Cal. Sept. 26, 2007) ............................................................................... 6

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) ........ 6, 7

*Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007) ........ 7

*United States v. Catabran*, 836 F.2d 453 (9th Cir. 1988) ........ 5

*United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) ........ 3

*United States v. Scales*, 594 F.2d 558 (6th Cir. 1979) ........ 3

*United States v. Sutton*, 795 F.2d 1040 (Temp. Emer. Ct. App. 1986)) ........ 3

*United States v. Tank*, 200 F.3d 627 (9th Cir. 2000) ........ 4

## RULES AND STATUTES

Fed. R. Civ. P. 54(c) ........ 7

Fed. R. Evid. 901(a) ........ 6

Defendants do not make any substantive objections to the evidence submitted in support of plaintiffs' request for Judgment. The testimony in and exhibits to the April 21, 2008 Declaration of Duane C. Pozza ("Pozza Decl.") are uncontroversial. Tellingly, nowhere in defendants' Objections do they contend that any of the evidence is inaccurate in any way. In making foundation and authentication objections, defendants simply ignore the fact (well-known to defendants) that the evidence submitted by plaintiffs in Exhibits 1 and 2 consists almost entirely of evidence *produced and authenticated by defendants themselves* or otherwise available publicly on defendants' website. Plaintiffs presented an appropriate foundation, and properly authenticated, all evidence.

Likewise, defendants' foundational objections to the descriptions in the Pozza Declaration of the workings of BitTorrent are misguided. First, the descriptions of information publicly displayed on the TorrentSpy website are not only based on common knowledge well-known to any user of BitTorrent, but are also supported by extensive record evidence of this case (much of which consists of the testimony of defendants and their agents). More importantly, all of the information presented is completely uncontroversial background information. Defendants cannot and do not dispute the accuracy of any of it. Plaintiffs had tried to avoid burdening the Court with the compendium of record evidence on such undisputed points but, in light of defendants' objections, have attached the relevant evidence forming the basis of the declarant's testimony to the Declaration of Duane C. Pozza in Response to Defendants' Evidentiary Objections, dated May 1, 2008 ("Pozza Response Decl."), submitted herewith. Defendants' Objections are unfounded; plaintiffs' declarations and exhibits should be admitted in full.

Defendants' practice of asserting objections to essentially all evidence – often indiscriminately on numerous overlapping and duplicative bases which are often vaguely explained – makes the task of responding particularly cumbersome. Below

plaintiffs attempt to respond to defendants' Objections in the general order in which defendants have asserted them.

**Objection 1.**

Defendants object to Declaration of Rani Cherkoori as an "impermissible 'joint'" declaration, Obj. 1, and argue that judgment should be entered for defendants as against Columbia Pictures Industries, Inc. ("Columbia") and TriStar Pictures, Inc. ("TriStar") on that basis. But defendants' precise objection is unclear. The fact that defendants are liable for infringing at least one of each of Columbia and TriStar's copyrighted works is established by the allegations of the Complaint, which are deemed true. *See* Compl. ¶¶ 33-36, Ex. A (separately listing Columbia and TriStar titles); *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir 2002). On default judgment, the question remaining is *how many* of the plaintiffs' copyrighted works were infringed via TorrentSpy, in addition to the illustrative works attached to Exhibit A. *See* Compl. ¶¶ 33-36. Rani Cherkoori is employed by Sony Pictures Entertainment Inc., which is the common corporate parent of both Columbia and TriStar, [redacted]. Cherkoori Decl. ¶ 2. Pozza Response Decl. Ex. 20 (Cherkoori dep.) at 10:18-13:10, 16:9-22. Ms. Cherkoori was the Rule 30(b)(6) corporate representative for both Columbia and TriStar for depositions in this case, *id.* at 10:18-22 – and, with defendants' agreement, the Columbia and TriStar Rule 30(b)(6) depositions on these issues were consolidated and taken together as a "joint" deposition. The Cherkoori Declaration establishes that the copyright or exclusive online distribution rights to the works listed in Exhibit 1 are owned by either Columbia or TriStar. Defendants do not challenge this or suggest otherwise. No more is needed. The Columbia and TriStar plaintiffs have submitted appropriate ownership information. Both entities are plaintiffs here and may recover damages for infringements, regardless of which entity owns the rights in any specific work. Therefore, defendants' objection is unfounded.

**Objection 2.**

The preparation of Exhibits 1 and 2 to the Pozza Declaration required the participation of a technology consultant and numerous lawyers and legal assistants. Each of these individuals worked at the direction and under the supervision of plaintiffs' counsel Duane Pozza, the declarant. Pozza Response Decl. ¶ 2. Mr. Pozza himself extensively participated directly in the preparation of Exhibits 1 and 2, including in the review and analysis of the TorrentSpy data that makes up Exhibits 1 and 2. *Id.* Defendants attempt to turn the care with which these exhibits were prepared into a ground for rejecting the declaration and exhibits wholesale based on lack of "personal knowledge." That objection is meritless.

To be clear, as explained in the Pozza Declaration, all of the dot-torrent file data included in Exhibit 1 and all of the user comments in Exhibit 2 come from defendants themselves. Almost all the data was produced by defendants in discovery, and a subset of the dot-torrent data was copied from defendants' publicly available website (and produced to defendants long ago in discovery). Pozza Decl. ¶ 3. In preparing Exhibits 1 and 2, plaintiffs' counsel have merely engaged in the mechanical processes of identifying a subset of data, and in the case of Exhibit 1, sorting the dot-torrent title data by the title of each Claimed Work. Defendants do not, and could not, argue that any of the data (which they also possess) is inaccurate or lacking in authenticity.

The "personal knowledge" objection to the Pozza Declaration and exhibits is an attempt to manufacture an objection where none is proper. Paragraphs 3, 4 and 14 of the Pozza Declaration explain in detail the processes for reviewing and culling through data produced by defendants. The declarant's personal knowledge is based on his statements that he directly participated in and supervised the review and preparation of the data, which is a well-recognized basis for obtaining personal knowledge. *See Daily Herald Co. v. Munro*, 758 F.2d 350, 355 n.6 (9th Cir. 1984) ("personal knowledge may be inferred to one in a responsible, supervisory position,

where that person is required to be familiar with the practices of those he supervises"); *United States v. Sutton*, 795 F.2d 1040, 1057 (Temp. Emer. Ct. App. 1986) (testimony admitted of audit witness summarizing the work of 20 other auditors whose work he supervised); *see also United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (holding that individual who supervised compilation and organization of chart was proper witness to introduce it). Indeed, it is well-settled that "knowledge acquired through others may still be knowledge within the meaning of Fed. R. Evid. 602." *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989); *see also L.A. Times Commc'ns LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. 2006) ("Although first-hand observation is the most common form of personal knowledge, first-hand observation is not the only basis for personal knowledge"). In this case, the declarant's extensive direct participation in and supervision of the preparation of Exhibits 1 and 2 clearly establishes personal knowledge of the contents of the Exhibits.[1]

As explained in the Pozza Declaration, the sources of the dot-torrent data in Exhibit 1 are three databases that defendants produced in discovery ([redacted], *see* Pozza Response Decl. Ex. 1 (W. Parker dep.) at 22:8-26:4; Ex. 8), and one database of dot-torrent

---

[1] The cases cited by defendants, Obj. 3-4, are inapposite. *See Automatic Radio Mfg. Co. v. Hazeltine Research Inc.* 339 U.S. 827, 831 (1950) (attorney testified solely "upon information and belief"); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) (attorney's affidavit based entirely on unauthenticated hearsay exhibits); *L.A. Times Commc'ns,* 442 F. Supp. 2d at 886 (sustaining objections to certain portions of attorney declaration because *no* basis for knowledge was stated, but also holding that other "declarants established that their testimony is based on personal knowledge acquired through their positions and performance of their job duties").

files from defendants' TorrentSpy website, which was produced to defendants by plaintiffs and properly authenticated. *See* Pozza Decl. ¶ 3; *see also* Pozza Response Decl. Ex. 9 (Decl. of Bruce Ward dated April 30, 2008 ("Ward Decl.") ¶ 2). Plaintiffs' counsel directed a technology consultant, Bruce Ward, to run automated searches in the four databases for the titles of certain of plaintiffs' copyrighted works. Mr. Ward did so and provided plaintiffs' counsel with separate database files containing the results. Pozza Decl. ¶ 3; Pozza Response Decl. ¶ 3, Ex. 9 (Ward Decl.) ¶ 4. Those database files were merely a subset (organized by plaintiffs' works) of the four previously described TorrentSpy dot-torrent files. Pozza Response Decl. ¶ 3, Ex. 9 (Ward Decl.) ¶ 4. Lawyers and legal assistants working under Mr. Pozza's direct supervision, and at his direction, then *manually* reviewed *each* dot-torrent file corresponding to one of the Claimed Works. Those persons ensured that each dot-torrent file contained compelling indicia that it corresponded to the identified Claimed Work, and they excluded any dot-torrent file that did not contain the compelling indicia. Pozza Decl. ¶¶ 4-5; Pozza Response Decl. ¶ 4. Mr. Pozza and other plaintiffs' lawyers then again manually reviewed each dot-torrent file, verifying and double-checking whether it should be included on Exhibit 1. Pozza Response Decl. ¶ 4. The result was printed out in Exhibit 1 and fully described in the Pozza Declaration. Pozza Decl. ¶ 5.

To authenticate and lay a proper foundation for Exhibit 1, plaintiffs' counsel is not required to submit a dozen declarations from each lawyer or legal assistant that plaintiffs' counsel Mr. Pozza supervised in this process – a process that Mr. Pozza directly and extensively participated in. *Daily Herald Co.*, 758 F.2d at 355; *Sutton*, 795 F.2d at 1057. The Pozza Declaration and exhibits are properly admitted.

*See also infra* Objection 3 (discussing authentication and foundation of Exhibit 1). Defendants were free to – but could not – challenge the substance of the evidence.[2]

**Objection 3.**

Defendants object generally to Exhibit 1 on a number of indiscriminate grounds, all of which are meritless.

*First*, defendants inexplicably claim that the "sources of information" for Exhibit 1 are not provided, citing Federal Rule of Evidence 1006. This objection is baseless. Paragraphs 3 through 5 of the Pozza Declaration clearly state that the source of every dot-torrent file listed on Exhibit 1 is one of the Searched Databases (as defined in paragraph 3). Three of the four Searched Databases, identified by bates label in the Pozza Declaration, were produced [redacted] by defendants during discovery in this case. *See* [redacted]; [redacted]; *see also Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (discovery documents deemed authentic when offered by party-opponent); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) (exhibits of website postings properly authenticated where provided to the plaintiff by the defendant during discovery). The fourth Searched Database – produced to defendants months ago in discovery – contains

---

[2] Although it is certainly not necessary to establish the particular steps of persons acting at the declarant's direction, attached to the Pozza Response Declaration as Exhibit 9 is a Declaration of Bruce Ward dated April 30, 2008, stating (a) that he received three of the databases from defendants' document production, and personally collected the dot-torrent file data in the fourth database, and (b) that he personally extracted certain data from the databases at the request of plaintiffs' counsel and provided plaintiffs' counsel with that data, in accordance with the processes described in the Pozza Declaration. Pozza Response Decl. Ex. 9 (Ward Decl.) ¶¶ 2-4.

dot-torrent file data publicly available directly from the TorrentSpy website, which bears the same identifying indicia (e.g., title, file size, seeder and leecher numbers) as the data from the defendant-produced databases also containing dot-torrent file data displayed on the TorrentSpy website, and which was properly authenticated by the Pozza Declaration, and again in the Ward Declaration. *See* Pozza Decl. ¶ 3; Pozza Response Decl. ¶ 5, Ex. 9 (Ward Decl.) ¶¶ 2, 4; *Cybernet*, 213 F. Supp. 2d at 1154; *United States v. Tank*, 200 F.3d 627, 629-31 (9th Cir. 2000).

Moreover, contrary to defendants' suggestion, Exhibit 1 is not a "summary" of data within the meaning of Rule 1006 – it is a compilation of *original data* offered as evidence. *See Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) (Rule 1006 "by its terms applies when a party is not attempting to have real evidence received, but instead is attempting to introduce a summary of that evidence"). But even to the extent that it is deemed a "summary," it is admissible because the underlying evidence is admissible. *See United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988) ("The chart is admissible as a summary under Rule 1006 if the underlying documents are admissible and available to the opponent for inspection"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir. 1985) ("Rule 1006 does not contemplate that summaries must be prepared by someone independent of the party offering the summary").

Further, defendants' extended recitation of portions of plaintiffs' Rule 30(b)(6) depositions discussing whether certain specific works were actually downloaded, Obj. 6-19, is entirely beside the point. Plaintiffs repeatedly told defendants that the evidence of direct infringement would come from defendants' website and the server log data. Defendants nonetheless insisted on asking plaintiffs' corporate representatives about specific evidence of downloading of specific named works, which under the circumstances those individual witnesses clearly could not have known. The fact that the witnesses could not answer the questions – because they had not had access to defendants' data that makes up

Exhibit 1 to the Pozza Declaration – is hardly surprising and does not begin to rebut the undeniable evidence of infringement contained in the Pozza Declaration.

*Second*, defendants' argument that Exhibit 1 is not properly authenticated because the declarant did not provide sufficient detail as to whether it was created by a person or "automated programs" is baseless. Obj. 19-21. As explained above, there are no authentication issues with the data in Exhibit 1, because the original data has either been produced and authenticated by defendants themselves or is similar data taken directly from defendants' website (and properly authenticated). Moreover, to be clear, *every dot-torrent file included in Exhibit 1* has been reviewed manually by an attorney for plaintiffs to confirm that the file contains compelling indicia that it corresponds to a Claimed Work, regardless of any automated processes used to initially extract the data from the Search Databases. Pozza Decl. ¶¶ 4-5. Thus, plaintiffs have easily provided "evidence sufficient" to find that the underlying data "is what its proponent claims." Fed. R. Evid. 901(a). The defendants' citation to *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 545-46 (D. Md. 2007), Obj. 30, is not to the contrary, as that excerpt discusses authentication of records with which the authenticating declarant is unfamiliar, which is not the case here. Again, defendants do not claim that the dot-torrent information on Exhibit 1 is in some way *inaccurate* – in fact, defendants possess all of the data on Exhibit 1 and can determine as readily as plaintiffs that the data is indeed accurate.

*Third*, defendants' argument that Exhibit 1 is based on hearsay evidence is meritless. Defendants do not assert that the Pozza Declaration or Exhibit 1 are per se hearsay because they are submitted by declaration (and they could not, *see* C.D. Cal. Loc. R. 55-2; *Markel Am. Ins. Co. v. Woolard*, No. 07-017, 2007 WL 4662143, at *1 (C.D. Cal. Sept. 26, 2007) ("The Court may base its [default judgment] determination upon the affidavits and declarations [plaintiff] has submitted")). Rather, defendants claim that the participation of other individuals in the analysis somehow makes the testimony hearsay. That is simply wrong. Regardless of the

declarant's communications with others during the processes used to prepare Exhibit 1, the declarant has personal knowledge of what that data is and the process for compiling the data in Exhibit 1. *See supra* Response to Objection 2. As explained above, a declarant is entitled to rely on interactions with persons acting at his direction to gain personal knowledge without creating any hearsay issues. *Agfa-Gevaert*, 879 F.2d at 1523 ("Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is the repetition of a statement made by someone else – a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness").

*Fourth*, defendants' argument that the damages sought for the Exhibit 1 Claimed Works is "not based on the Complaint" is simply wrong. The Complaint clearly alleges that defendants are liable for "the unauthorized reproduction and distribution of copyrighted motion pictures and television programs, *including* those listed on Exhibit A hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States." Compl. ¶¶ 34-36 (emphasis added). Further, plaintiffs alleged that "[a]s a direct result of Defendants' conduct, *thousands* of the most popular motion pictures and television shows . . . are infringed every day." *Id.* ¶ 6 (emphasis added); *see also id.* ¶ 16 ("Each of these Plaintiffs . . . owns the copyrights and/or exclusive reproduction and distribution rights to many popular motion pictures and television programs, including those listed on Exhibit A"). And the request for relief seeks "all damages to which Plaintiffs may be entitled" and "statutory damages in the maximum amount allowed by law." *Id.*, Prayer for Relief, at 11-12. The Complaint expressly is not limited to only the Exhibit A works and, thus, the judgment would not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see, e.g.*, *Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) (upholding default judgment in amount exceeding sum prayed for in complaint where "plaintiff prayed for additional damages for

breach of contract, the amount of which was to be proved at trial"); *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005) (concluding that request for damages "for each infringement" placed defendant "on notice that there [were] numerous works for which the Plaintiffs were seeking damages").[3]

*Fifth*, defendants' argument that Exhibit 1 is "not relevant," Obj. 21, defies logic. Defendants use the pretext of a relevance objection to argue whether the dot-torrent files included on Exhibit 1 support an inference that the Claimed Works were downloaded by a TorrentSpy user. In their Request for Judgment, plaintiffs addressed the argument that the submitted evidence more than adequately supports the conclusion that it is more likely than not that each of the Claimed Works was infringed by a TorrentSpy user, Request at 9-12, and defendants do not address those arguments in their Objections. Nor do defendants address the argument that proof of direct infringement should be deemed established based on their willful violation of a Court Order in intentionally failing to preserve and produce the Server Log Data. Request at 12-15. Defendants continue to maintain that a dot-torrent download does not conclusively prove that the content item was downloaded, but the established facts based on the allegations in the Complaint make clear that the TorrentSpy website was effectively designed for "one-click" downloading by users. Compl. ¶¶ 9, 12, 13, 26 (describing how the content file download process is

---

[3] The cases cited by defendants involve the failure to plead a certain *type* of monetary relief altogether, Obj. 21, and are inapposite. *See Fong v. United States*, 300 F.2d 400, 413-14 (9th Cir. 1962) (actual damages not awarded where not prayed for in complaint); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (pre-judgment interest not awarded where not requested in complaint); *Growth Properties Inc. v. Klingbeil Holding Co.*, 419 F. Supp. 212 (D. Md. 1976) ("interest" payments not awarded where not demanded in complaint).

essentially automatic upon a user's clicking a dot-torrent file on defendants' TorrentSpy website). Indeed, apart from the properly pled allegations in the Complaint, [redacted]. Pozza Reply Decl. Ex. 2 (Shipley dep.) 250:14-251:10.[4]

As a corollary to their argument, defendants suggest – without any foundation – that certain of the dot-torrent files listed on Exhibit 1 may be "spoof" files, files distributed for anti-piracy purposes that appear to be dot-torrent files for actual content but are not.[5] Plaintiffs, however, have taken multiple affirmative steps to exclude any "spoof" or "fake" files from Exhibit 1. First, the plaintiffs excluded files [redacted] categorized as "fake" and put in a sub-category called "x_fake." Pozza Response Decl. ¶ 6. This step is important, [redacted]. Pozza Response Decl. Ex. 4 (Atkinson dep.) at 63:2-19, 78:3-16, 80:19-

---

[4] To the extent that the infringement must have been shown to occur in the United States, see Obj. 22, the same inference can be drawn that the infringement was domestic, given that TorrentSpy was fully accessible to United States users at the time that the data in each of the Searched Databases was gathered. [redacted]. Pozza Reply Decl. Ex. 11; Ex. 3 (Bunnell dep.) at 162:2-163:5.

[5] Defendants misleadingly attempt to put words in the mouth of plaintiffs' counsel. Obj. 24. In truth, plaintiffs' counsel was not asserting the point defendants attribute to him. To the contrary, plaintiffs' counsel was stating his understanding of the argument *defendants' counsel* was making, which plaintiffs refuted and which was ultimately rejected. Defendants excised the words, "I understand Mr. Rothken to be saying," which appears in the transcript (Ex. A to Objections, at 56:18) immediately before the passage defendants quote and inaccurately attribute to plaintiffs' counsel.

23); Exs. 12-13; Ex. 2 (Shipley dep.) at 256:6-25; Ex. 14; Ex. 5 (Clymer dep.) at 94:10-22. Second, plaintiffs searched all available user comments for any mention of the words "spoof" or "fake" and removed *any* dot-torrent file that would have otherwise appeared on Exhibit 1 if a user comment mentioned either word. Pozza Response Decl. ¶ 6. Finally, plaintiffs manually reviewed a sample of user comments and excluded any dot-torrent file where the comments indicated that the title of the dot-torrent file might not be what it purported to be for any reason. Pozza Decl. ¶ 14. The "spoof" issue is a red herring. It does not diminish the weight of the evidence showing that it was more likely than not that a TorrentSpy user infringed each of the Claimed Works.

*Sixth* and finally, defendants object to the seeder-leecher numbers and the categories indicated in Exhibit 1. These objections are repetitive and addressed in plaintiffs' responses to Objections 4 and 7, respectively.[6]

**Objection 4.**

As indicated in the Pozza Declaration, for each Claimed Work, plaintiffs have summed the seeder and leecher data for each dot-torrent file (data published by defendants themselves on TorrentSpy) to produce the "Seeder-Leecher Sum." Pozza Decl. ¶¶ 7, 8; *see also* Pozza Response Decl. ¶ 7; Ex. 9 (Ward Decl.) ¶ 5 (documenting mechanical mathematical process of adding seeder and leecher numbers). Defendants argue that these sums lack foundation or authentication. As explained above regarding Objection 2, these objections are meritless, as the seeder-

---

[6] Defendants inexplicably include an argument based on purported immunity under the Communications Decency Act, Obj. 23, even though that defense (which would have been waived by default in any event) was affirmatively *withdrawn* by defendants' own stipulation. Pozza Response Decl. Ex. 10 (withdrawing this defense as affirmative defense 5).

leecher data is contained in the same dot-torrent data drawn from the Searched Databases for which a proper foundation has been laid.

Defendants' primary claim appears to be that the procedure for computing Seeder-Leecher Sums is *ambiguous*, though defendants do not explain how that claimed ambiguity has any bearing on the reliability of the data itself. In particular, defendants question whether data from one Searched Database was preferred over another. As noted in the Pozza Declaration, duplicate dot-torrent files from multiple databases were removed from Exhibit 1, to ensure that each dot-torrent file was counted only once. Pozza Decl. ¶ 10. For *every* dot-torrent file that was a duplicate, the dot-torrent file in the most recent defendant-produced database was given priority (and dot-torrent files in the defendant-produced databases were given priority over the August 2007 plaintiff-produced database). Pozza Response Decl. ¶ 8; Ex. 9 (Ward Decl. ¶ 4). Thus again, by including seeder-leecher data from only one occurrence of a dot-torrent file (and making this determination independent of the actual seeder-leecher data), plaintiffs have considerably *undercounted* the number of unique seeders and leechers available even from the data that they have. Pozza Response Decl. ¶ 8.[7] Defendants have no substantive criticism of this method.[8]

---

[7] Because the seeder-leecher data displayed is not cumulative, but rather represents data as of a snapshot in time, plaintiffs could have fairly aggregated the seeder-leecher data for a dot-torrent file from all databases. However, to be conservative, plaintiffs did not do so. If the same dot-torrent file was in more than one database, plaintiffs eliminated duplicates *and* ignored the seeder-leecher data for those eliminated duplicate dot-torrent files.

[8] Defendants also question the description of the seeder-leecher data as being "associated with the content file at or near the time of the database capture." Obj. 27. But as defendants surely know, all that statement means is that the dynamic

*(continue…)*

Defendants also attack the portion of the Pozza Declaration explaining the general background of seeders and leechers – again, not because they believe it to be inaccurate, but only on procedural grounds. In fact, the statements about seeders and leechers do not require expert opinion testimony. They are uncontroversial propositions that are familiar to any BitTorrent user. Plaintiffs summarized them for purposes of brevity in the Pozza Declaration, [redacted]. *See, e.g.*, Pozza Response Decl. Ex. 1 (W. Parker dep.) at 391:4-393:5 ([redacted]); *id.* at 395:21-398:1 ([redacted]); Ex. 2 (Shipley dep.) at 352:20-353:19 ([redacted]); Ex. 15 ([redacted]); Ex. 2 (Shipley dep.) at 351:25-352:6.

---

*(continued from previous page)*

seeder and leecher data that *defendants themselves collected and displayed* on their website may actually been collected by defendants at a moment in time shortly before the actual database capture, rather than at the same instant of the database capture. Since defendants produced three of the four Searched Databases they surely known that the data is approximately contemporaneous.

Defendants are fully aware of what the seeder and leecher numbers show about the actual files being downloaded. Their objection should be overruled.

**Objection 5.**

Defendants object to the portion of the Pozza Declaration at 3:12-26 regarding the contents of the dot-torrent files listed on Exhibit 1, arguing that it is opinion evidence that must be admitted under Federal Rule of Evidence 702. But this portion merely provides convenient *illustrations* of what the dot-torrent data in Exhibit 1 expressly states: that the dot-torrent files listed therein contain source descriptions such as "DVDRip," file descriptions such as "avi," season and episode information, and other metadata such as a motion picture release date. All of this is observable from the Exhibit 1 itself. The only arguably substantive testimony is not expert testimony. It is, again, uncontroversial public knowledge, and contained in the record in any event. The definitions of "CAM," "TS," "TC," and "SCR" can be found in this Court's Dec. 13, 2007 Order and testimony cites therein. *See* Dec. 13, 2007 Order at 3-5. And common video files extensions are not only public knowledge but were explained in official postings on defendants' TorrentSpy website. Pozza Response Decl. Ex. 16 at 2-3 (TorrentSpy "Video FAQ"); [redacted]; Ex. 7 (Stevens dep.) 59:1-8; Ex. 17 (TorrentSpy FAQ entitled "Video Format Types: SVCD, DivX, DVDr, etc? What's the difference?"), [redacted]; [redacted]; [redacted].

Defendants also object to these descriptions in the Pozza Declaration as inadmissible hearsay. However, as explained, the statements identified by defendants are merely illustrative descriptions of the data in Exhibit 1, and defendants do not object to the Exhibit 1 data itself on hearsay grounds. The Court may rely on the Exhibit 1 data to show direct infringement; it is not necessary to rely on the declarant's statement highlighting certain key phrases to do so. *See also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001) (for

defendant's system "to function effectively, . . . file names must reasonably or roughly correspond to the material contained in the files, otherwise no user could ever locate any desired [content]")

**Objection 6.**

Defendants object to portions of paragraphs 11 and 12 of the Pozza Declaration at 6:7-12 and 6:14-19, explaining that the lists of dot-torrent files for each Claimed Work being non-exhaustive, and the relative file sizes of motion pictures and television programs, respectively. Each of these portions is relevant and admissible.

The cited portions of Paragraph 11 simply state a fact and an inference. The fact is that plaintiffs did not review every dot-torrent file that may have possibly been a match for a Claimed Work, based on time constraints. Pozza Decl. ¶ 11. The inference, based on the enormous volume of dot-torrent files for the 3,699 Claimed Works that the plaintiffs did discover, is that plaintiffs would have found more if they had time for further review. This is straightforward logic, not expert testimony.

As for the testimony regarding file size, defendants are again raising questions about knowledge common to BitTorrent users that is available on defendants' own website. TorrentSpy's own "Video FAQ" outlined the typical file sizes for video content. Pozza Response Decl. Ex. 16 at 2-3; [redacted]; Ex. 7 (Stevens dep.) at 59:1-8; *see also* [redacted]; [redacted]. As that FAQ makes clear, file sizes for the same movie or television program may vary based on the type of video file created. *E.g.*, Pozza Response Decl. Ex. 16 at 3 (explaining that ".rm" or ".rmvb" files are "[g]enerally about half the size of an AVI file"). Defendants know full well that differing file sizes for the same work, depending on the file format used, are common. But defendants' own official FAQ's confirm that the file sizes reflected in Exhibit 1 correspond to full-length motion pictures and television

shows. *See, e.g.*, Pozza Response Decl. [redacted]; Ex. 16 at 2-3; [redacted]; [redacted]; Ex. 7 (Stevens dep.) at 59:1-8.

**Objection 7.**

Defendants' objection to the descriptions of the categories and sub-categories for each dot-torrent file listed on Exhibit 1 is truly baseless. These categories and sub-categories were created by defendants and come from defendants' own data. The personal knowledge, foundation, and authentication objections merely repeat those made in Objections 2 and 3, and are answered above. Moreover, the relative priority of the Searched Databases was explained above in plaintiffs' response to Objection 4, and again, is immaterial to the admissibility or persuasiveness of the final data.

Amazingly, defendants appear to be arguing that (a) defendants deleted their incriminating categories and sub-categories, as the Court found in its Dec. 13, 2007 Order on terminating sanctions, and therefore (b) the categories and sub-categories in Exhibit 1 must have "determinations" that plaintiffs made. Obj. 33. This is disingenuous to say the least. Defendants intentionally deleted *particularly incriminating* categories and sub-categories in March 2006 – *before* providing any of the databases to plaintiffs. Dec. 13, 2007 Order at 5. Defendants, however, did not delete the actual dot-torrent files from the deleted categories; rather defendants moved the dot-torrent files to other categories with less incriminating names. *Id.* After that, defendants produced the databases to plaintiffs. The categories in Exhibit 1 are the product of defendants' spoliation. Thus, absent the defendants' destruction of evidence, Exhibit 1 would likely show that an episode of "The Simpsons" was actually in a television sub-category titled "The Simpsons." Instead, most episodes of "The Simpsons" now simply appear in a "Videos" category. This should come as no surprise to defendants, [redacted]. Pozza

Response Decl. Exs. 18-19; Ex. 1 (W. Parker dep.) 308:25-309:16, 310:17-19, 312:8-313:1.

**Objection 8.**

Defendants' objections to the Declaration's explanation of the review of user comments is meritless. Defendants merely repeat the arguments made in Objections 2, 3 and 4, and plaintiffs incorporate their responses here. The user comments were all extracted from authenticated databases produced by defendants, and each was reviewed by the declarant before being attached to the Pozza Declaration.

**Objection 9.**

Finally, defendants' objections to Exhibit 2 itself as lacking proper foundation or as not properly authenticated are baseless. Defendants repeat their foundation and authentication arguments made in Objection 3, and plaintiffs incorporate their responses here. Again, the user comments were all extracted from fully authenticated databases produced by defendants, and each was reviewed by the declarant before being attached to the Pozza Declaration, and are exactly what they are described as being.

**CONCLUSION**

For the foregoing reasons, defendants' Objections should be overruled.

Respectfully submitted,

Dated: May 1, 2008

JENNER & BLOCK LLP

By: ______________________
Steven B. Fabrizio

STEVEN B. FABRIZIO
KATHERINE A. FALLOW
DUANE C. POZZA
JENNER & BLOCK LLP

KAREN R. THORLAND
W. ALLAN EDMISTON
LOEB & LOEB LLP

GREGORY P. GOECKNER
LAUREN T. NGUYEN
15301 Ventura Boulevard, Bldg. E
Sherman Oaks, CA 91403

*Attorneys for Plaintiffs*