**Form 6. Civil Appeals Docketing Statement**

**USCA DOCKET # (IF KNOWN)**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
# CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

**TITLE IN FULL:**

COLUMBIA PICTURES INDUSTRIES, INC., et al.
Plaintiffs,

vs.

JUSTIN BUNNELL, et al,
Defendants.
[see Attachment for Full Title]

**DISTRICT:** CENTRAL **JUDGE:** FLORENCE MARIE COOPER

**DISTRICT COURT NUMBER:** 2:06-cv-01093-FMC-JC

**DATE NOTICE OF APPEAL FILED:** JUNE 3, 2008

**IS THIS A CROSS-APPEAL?** ☐ YES

**IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):**

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**

Plaintiff motion picture companies sued defendants for vicarious and contributory copyright infringement
[see Attachment for Description]

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

[see Attachment for Principal Issues]

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):**

Bankruptcy proceedings pending in US Bankruptcy Court, Central District of California as to Justin Bunnell, Case No. 2:08-bk-15938-BR, Wes Parker, Case No. 2:08-bk-15854-BR and Forrest Parker, Case No. 2:08-bk-14538-BR. Insolvency proceedings of an undetermined nature in the United Kingdom as to Valence Media, LTD. Motions for relief from stay in US bankruptcy cases may result in further related appeals as to individual defendants.

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ **Possibility of settlement**

☐ **Likelihood that intervening precedent will control outcome of appeal**

☐ **Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (specify)**

☐ **Any other information relevant to the inclusion of this case in the Mediation Program**

☐ **Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges.**



Dockets.Justia.com

## LOWER COURT INFORMATION



| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT / ORDER APPEALED | RELIEF |
| ☒ FEDERAL QUESTION<br><br>☐ DIVERSITY<br><br>☐ OTHER (SPECIFY) | ☒ FINAL DECISION OF DISTRICT COURT<br><br>☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT<br><br>☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):<br><br>☐ OTHER (SPECIFY): | ☒ DEFAULT JUDGMENT<br>☐ DISMISSAL / JURISDICTION<br>☐ DISMISSAL / MERITS<br>☐ SUMMARY JUDGMENT<br>☐ JUDGMENT / COURT DECISION<br>☐ JUDGMENT / JURY VERDICT<br>☐ DECLARATORY JUDGMENT<br>☐ JUDGMENT AS A MATTER OF LAW<br>☒ OTHER (SPECIFY):<br>Other orders including, but not limited to, order for terminating sanctions, the entry of default judgment and permanent injunction, discovery orders and order denying motion to dismiss. | ☒ DAMAGES:<br>SOUGHT $ According to proof<br>AWARDED $ $110,970,000<br>☒ INJUNCTIONS:<br>☒ PRELIMINARY<br>☒ PERMANENT<br>☒ GRANTED<br>☐ DENIED<br><br>☒ ATTORNEY FEES:<br>SOUGHT $ pending<br>AWARDED $ pending<br>☒ PENDING<br><br>☒ COSTS: $ pending |

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER / JUDGMENT APPEALED FROM ARE ATTACHED.
2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED ( SEE 9TH CIR. RULE 3-2
3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.
4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

Signature

6/3/2008

Date

## COUNSEL WHO COMPLETED THIS FORM

NAME: Ira P. Rothken

FIRM: Rothken Law Firm LLP

ADDRESS: 3 Hamilton Landing, Suite 280
Novato, CA 94949

E-MAIL: ira@techfirm.com

TELEPHONE: 415-924-4250

FAX: 415-924-2905

*** THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL***
*** IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS***

ATTACHMENT TO
CIVIL APPEALS DOCKETING STATEMENT

**TITLE IN FULL:**

COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC. PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT, INC., Delaware Corporation, UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP, Delaware limited liability partnerships,

Plaintiffs,

vs.

JUSTIN BUNNELL, FORREST PARKER, WES PARKER, individuals, VALENCE MEDIA, LLC, a limited liability company, and DOES 1-10,

Defendants.

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**

Plaintiff motion picture companies sued defendants for vicarious and contributory copyright infringement for operation of a search engine for dot-torrent files allegedly associated with plaintiffs' copyrighted content. The Court granted terminating discovery sanctions and awarded statutory damages of $30,000 per infringement pursuant to 17 U.S.C. § 504(c), for 3,699 infringements allegedly shown, for a judgment of $110,970,000 and imposed a permanent injunction.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

The principal issues to be raised on appeal include, but are not limited to, the following:

1. Whether the court erred in assessing damages in excess of pleadings (See, e.g. Fong v. United States, 300 F.2d 400 (9th Cir. 1962); Silge v.

Merz, 510 F.3d 157 (2d Cir. 2007); Growth Properties, Inc. v. Klingbeil Holding Co., 419 F. Supp. 212 (D. Md. 1976).);

2. Whether the court erred as to extraterritoriality issues (e.g. plaintiffs were not required to establish that any direct infringements were not extraterritorial and occurred in the United States so that there is subject matter jurisdiction regarding such infringements. (see, Subafilms, Ltd. v. MGM-PatheCommunications Co., 24 F.3d 1088 (9th Cir.) (enbanc), cert. denied, 513 U.S. 1001 (1994.))
3. Whether the court erred as to secondary copyright infringement liability (e.g. plaintiffs were not required to establish that there has been direct infringement by third parties. (See, Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); Matthew Bender & Co. v. West Publishing Co., 158 F.3d 693, 706 (2d Cir. 1998) (failure to identify any direct infringer other than plaintiffs' counsel.)).
4. Whether the court erred related to privacy rights and balancing the protections afforded to the parties and third parties;
5. Whether the preliminary and permanent injunctions were overbroad;
6. Whether the court erred in rulings on novel e-discovery issues;
7. Whether the court erred in rulings demonstrating a persistent discovery bias that impermissibly enlarged Appellees' discovery powers while preventing appellant from obtaining discovery needed to defend;
8. Whether the court’s rulings impermissibly meted out excessive sanctions;
9. Whether the court erred in issuing terminating sanctions premised on improper discovery;
10. Whether the court erred in granting unjustified and unjustifiable default judgment and permanent injunction;
11. Whether the court’s rulings allowed due process violations to occur;
12. Whether the court’s rulings impermissibly enlarged powers of corporate intellectual property owners at the expense of individuals and entrepreneurs and creating is a serious negative impact on Internet development;
13. Whether the court’s rulings impermissibly impaired Internet privacy and free speech rights on the Internet.

PROOF OF SERVICE

I am over the age of 18 years, employed in the county of Marin, and not a party to the within action; my business address is 3 Hamilton Landing, Suite 280, Novato, CA 94949.

On June 3, 2008, I served the within:

**CIVIL APPEALS DOCKETING STATEMENT**

By EMAIL and FEDEX on the person(s) or entities in that manner and address as follows:

**VIA EMAIL AND FEDEX**
**Steven B Fabrizio**
**Katherine A Fallow**
**Duane Charles Pozza**
Jenner and Block
1099 New York Avenue, N.W. Suite 900,
Washington, DC 20001-4412
Telephone: 202-639-6000
Facsimile: 202-639-6066
Email: sfabrizio@jenner.com
Email: kfallow@jenner.com
Email: dpozza@jenner.com

COUNSEL FOR PLAINTIFFS

**VIA FEDEX**
**Gregory Paul Goeckner**
**Lauren T Nguyen**
Motion Picture Association of America
15503 Ventura Blvd
Encino, CA 91436
818-995-6600

COUNSEL FOR PLAINTIFFS

**VIA EMAIL AND FEDEX**
**Karen B. Thorland**
Loeb and Loeb
10100 Santa Monica Blvd, Ste 2200
Los Angeles, CA 90067-4164
310-282-2000
Email: kthorland@loeb.com

COUNSEL FOR PLAINTIFFS

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 3, 2008.

## Index of Judgment and Orders

| DOCKET DATE | DOCKET NO. | DESCRIPTION |
|---|---|---|
| 05/27/2008 | 416 | ORDER, by Judge Florence-Marie Cooper, GRANTING PLAINTIFFS' EX PARTE APPLICATION TO CERTIFY JUDGMENT UNDER RULE 54(b) |
| 05/07/2008 | 410 | AMENDED JUDGMENT AND PERMANENT INJUNCTION ("Final Judgment") |
| 05/05/2008 | 409 | JUDGMENT AND PERMANENT INJUNCTION by Judge Florence-Marie Cooper, in favor of Plaintiffs, which was amended by Docket No. 410 above. |
| 04/11/2008 | 352 | ORDER, by Judge Florence-Marie Cooper, DENYING EX PARTE APPLICATION FOR LEAVE TO FILE A MEMORANDUM IN CONNECTION WITH DEFAULT HEARING, Docket No. 348. |
| 04/04/2008 | 346 | TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION TO PRESERVE ASSETS by Judge Florence-Marie Cooper. |
| 12/13/2007 | 325 | ORDER, by Judge Florence-Marie Cooper, GRANTING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. |
| 10/31/2007 | 321 | ORDER, by Judge Florence-Marie Cooper, DENYING MOTION FOR REVIEW OF AUGUST 8, 2007 ORDER FOR SANCTIONS, Docket No. 240. |
| 08/27/2007 | 255 | ORDER, by Judge Florence-Marie Cooper, DENYING EX PARTE APPLICATION FOR STAY OF AUGUST 8, 2007 ORDER FOR SANCTIONS, Docket No. 240. |
| 08/24/2007 | 254 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS MOTION FOR REVIEW OF ORDER REGARDING SERVER LOG DATA, Docket No. 177. |
| 08/20/2007 | 247 | ORDER, by Magistrate Judge Jacqueline Chooljian, DENYING DEFENDANTS' EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF AUGUST 8, 2007 ORDER, Docket No. 240, PENDING REVIEW. |
| 08/08/2007 | 240 | ORDER, by Magistrate Judge Jacqueline Chooljian, (1) GRANTING PLAINTIFFS' EX PARTE APPLICATION; (2) GRANTING PLAINTIFFS' REQUEST FOR |

| | | |
|---|---|---|
| | | SANCTIONS, ATTORNEYS' FEES AND COSTS; (3) DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS; AND (4) CAUTIONING DEFENDANTS REGARDING POTENTIAL NON-MONETARY CONSEQUENCES OF FURTHER VIOLATIONS OF DISCOVERY OBLIGATIONS AND ORDERS. |
| 07/27/2007 | 226 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR PROTECTIVE ORDER. |
| 07/19/2007 | 222 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART MPAA'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENA FOR DEPOSITION OF THE MPAA, AND FOR ATTORNEY'S FEES AND COSTS. |
| 06/22/2007 | 179 | ORDER, by Judge Florence-Marie Cooper, AMENDING COURT'S ORDER FILED JUNE 21, 2007 (Docket No. 178). The Court hereby amends its ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (Docket No. 178) AS FOLLOWS ON THE FIRST PAGE: This matter is before the Court on Defendants' Motion for Review and Reconsideration of Certain Rulings of the Magistrate Judge on Defendants' Motion to Compel Production of Documents Pursuant to Subpoena to the Motion Picture Association of America (MPAA), filed on April 10, 2007 May 30, 2007 (Docket No. 132, Docket No. 173). AND ON PAGE 7: For the foregoing reasons, the Court hereby DENIES Defendants' Motion For Review and Reconsideration (Docket No. 132 Docket No. 173).In all other aspects and particulars, the order is unchanged. ***MINUTE ORDER NOT AVAILABLE ON PACER**** |
| 06/21/2007 | 178 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS MOTION FOR REVIEW AND RECONSIDERATION, Docket No. 132. |
| 05/29/2007 | 177 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART PLAINTIFFS MOTION TO REQUIRE DEFENDANTS |

| | | |
|---|---|---|
| | | TO PRESERVE AND PRODUCE SERVER LOG DATA AND FOR EVIDENTIARY SANCTIONS; AND DENYING DEFENDANTS REQUEST FOR ATTORNEYS FEES AND COSTS. |
| 05/15/2007 | 156 | ORDER, by Magistrate Judge Jacqueline Chooljian, DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION. |
| 05/03/2007 | 135 | ORDER, by Magistrate Judge Jacqueline Chooljian, (1) GRANTING PLAINTIFFS' MOTION TO COMPEL DOCUMENTS; (2) GRANTING PLAINTIFFS' REQUEST FOR DEFENDANTS' REVIEW AND RE-DESIGNATION OF HIGHLY CONFIDENTIAL DOCUMENTS; (3) TENTATIVELY GRANTING PLAINTIFFS' REQUEST FOR REASONABLE EXPENSES AND ATTORNEYS' FEES AND SETTING DATE FOR DEFENDANTS TO BE HEARD RE SAME; (4) DENYING DEFENDANTS' REQUEST FOR REASONABLE EXPENSES AND ATTORNEYS' FEES; AND (5) RE POTENTIAL NON-COMPLIANCE WITH ORDER. |
| 04/16/2007 | 118 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS' MOTION FOR REVIEW AND RECONSIDERATION OF ORDER DENYING MOTION TO COMPEL, Docket No. 85. |
| 02/13/2007 | 85 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET 2 AND DENYING DEFENDANTS' REQUEST FOR SANCTIONS, Docket No. 69; GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, Docket No. 52; AND DENYING PLAINTIFFS' REQUEST TO DELAY RULING ON MOTIONS. |
| 05/10/2006 | 22 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. |

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, *Plaintiffs*, v. JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10, *Defendants*. | Case No. **2:06-cv-01093-FMC-JCx**<br><br>The Hon. Florence-Marie Cooper<br><br>**[~~PROPOSED]~~ ORDER REGARDING PLAINTIFFS' EX PARTE APPLICATION TO CERTIFY JUDGMENT UNDER RULE 54(b)** |

Plaintiffs' Ex Parte Application to Certify Judgment Under Rule 54(b), having come before the Court, the Court has considered the Application and the accompanying Declaration of Steven B. Fabrizio dated May 21, 2008 and exhibits thereto. Based on the pleadings before it, and all matters of record in this action, and having found good cause shown, IT IS HEREBY ORDERED that the Application is granted.

It is FURTHER ORDERED THAT the Amended Judgment and Permanent Injunction dated May 7, 2008 is hereby modified to include therein an additional paragraph stating: "Pursuant to Federal Rule of Civil Procedure 54(b), this Court determines that there is no just reason for delay in entering final judgment against defendant Valence Media."

IT IS SO ORDERED.

Dated: May 27, 2008



HON. FLORENCE-MARIE COOPER
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORP., WARNER BROS. ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS LLLP and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA LLC,<br><br>Defendants. | 2:06-cv-01093-FMC-JCx<br><br>AMENDED JUDGMENT AND PERMANENT INJUNCTION |

The Court, having terminated this case as a sanction for Defendants' misconduct and having entered default, now renders final judgment as to all claims of Plaintiffs against Defendant Valence Media LLC. It is therefore

ORDERED, ADJUDGED and DECREED that: Judgment shall be entered against Valence Media LLC (Defendant) for willful inducement of copyright

infringement, contributory copyright infringement, and vicarious copyright infringement, pursuant to 17 U.S.C. §§ 501, *et seq*. It is further

ORDERED, ADJUDGED and DECREED that: Plaintiffs are awarded statutory damages of $30,000 per infringement pursuant to 17 U.S.C. § 504(c), for each of the 3,699 infringements shown, for a total judgment in the amount of $110,970,000, and judgment shall be entered against Defendant in that amount. Plaintiffs are awarded their costs of court. It is further

ORDERED, ADJUDGED and DECREED that:

1. For the purposes of this Permanent Injunction, the “TorrentSpy System” refers to the software, websites, electronic data, forums, guides, and frequently asked questions (“FAQs”) that make up or support www.torrentspy.com. “Copyrighted Works” shall mean copyrighted works, or portions thereof, whether now in existence or later created, in which any Plaintiff (or parent, subsidiary or affiliate of any Plaintiff) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*

2. Defendant, and its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Defendant who receive actual notice of this Permanent Injunction shall immediately and permanently be enjoined from directly, indirectly, contributorily, or vicariously infringing in any manner any Copyrighted Works, including without limitation by engaging in any of the following activities:

(a) encouraging, promoting, soliciting, or inducing, or knowingly materially contributing to, enabling, facilitating, or assisting, any person or entity, via any computer server, computer program,

website, or online system, network or service, including without limitation any peer-to-peer or file-trading network, (i) to reproduce, download, distribute, upload, or publicly perform or display any Copyrighted Work, or (ii) to make any Copyrighted Work available for reproduction, download, distribution, upload, or public performance or display, or

(b) reproducing, downloading, distributing, uploading, or publicly performing or displaying any Copyrighted Work.

3. The terms of paragraph 2 of this injunction shall not apply to any Copyrighted Work for which Defendant has obtained express written authorization or license for the use being made of such Copyrighted Work from each Plaintiff that owns or controls the rights to such Copyrighted Work, to the extent such license remains in force and valid.

4. Prior to Defendant entering into any agreement or transaction whatsoever to sell, lease, license, assign, convey, give away, distribute, loan, barter, hypothecate, encumber, pledge or otherwise transfer, whether or not for consideration or compensation, any part of the software, source code, data files, other technology, domain names, trademarks, or brands used in connection with the TorrentSpy System (a "Transfer of TorrentSpy-Related Assets"), Defendant shall require, as a condition of any such transaction, that the transferee:

(a) submit to the Court's jurisdiction and venue,

(b) agree to be bound by the terms herein, and

(c) apply to the Court for an order adding it as a party to this Permanent Injunction.

Defendant shall not permit any Transfer of TorrentSpy-Related Assets to close until the Court has entered such an order. Defendant further shall not engaged in a Transfer of TorrentSpy-Related Assets with or to any person whom Defendant knows to be engaged in conduct that would violate the terms of Paragraph 2 above.

5. The Defendant shall give notice of this Permanent Injunction to each of its respective officers, agents, servants, employees, attorneys, principals, and direct and indirect shareholders.

6. Nothing in this Permanent Injunction shall limit the right of Plaintiffs to seek to recover damages under 17 U.S.C. § 504, or costs, including attorneys' fees, under 17 U.S.C. § 505.

7. Violation of this Permanent Injunction shall expose the Defendant to all applicable penalties, including for contempt of Court.

8. The Court shall maintain jurisdiction over this action for the purposes of enforcing this Permanent Injunction.

It is SO ORDERED.

Dated: May 7, 2008



FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORP., TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORP., WARNER BROS. ENTERTAINMENT, INC., UNIVERSAL CITY STUDIOS LLLP and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA LLC,<br><br>Defendants. | 2:06-cv-01093-FMC-JCx<br><br>JUDGMENT AND PERMANENT INJUNCTION |

The Court, having terminated this case as a sanction for Defendants' misconduct and having entered default, now renders final judgment as to all claims of Plaintiffs against Defendant Valence Media LLC. It is therefore

ORDERED, ADJUDGED and DECREED that: Judgment shall be entered against Valence Media LLC (Defendant) for willful inducement of copyright

infringement, contributory copyright infringement, and vicarious copyright infringement, pursuant to 17 U.S.C. §§ 501, *et seq*. It is further

ORDERED, ADJUDGED and DECREED that: Plaintiffs are awarded statutory damages of $30,00 per infringement pursuant to 17 U.S.C. § 504(c), for each of the 3,699 infringements shown, for a total judgment in the amount of $110,970,000, and judgment shall be entered against Defendant in that amount. Plaintiffs are awarded their costs of court. It is further

ORDERED, ADJUDGED and DECREED that:

1. For the purposes of this Permanent Injunction, the “TorrentSpy System” refers to the software, websites, electronic data, forums, guides, and frequently asked questions (“FAQs”) that make up or support www.torrentspy.com. “Copyrighted Works” shall mean copyrighted works, or portions thereof, whether now in existence or later created, in which any Plaintiff (or parent, subsidiary or affiliate of any Plaintiff) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq*.

2. Defendant, and its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Defendant who receive actual notice of this Permanent Injunction shall immediately and permanently be enjoined from directly, indirectly, contributorily, or vicariously infringing in any manner any Copyrighted Works, including without limitation by engaging in any of the following activities:

(a) encouraging, promoting, soliciting, or inducing, or knowingly materially contributing to, enabling, facilitating, or assisting, any person or entity, via any computer server, computer program,

website, or online system, network or service, including without limitation any peer-to-peer or file-trading network, (i) to reproduce, download, distribute, upload, or publicly perform or display any Copyrighted Work, or (ii) to make any Copyrighted Work available for reproduction, download, distribution, upload, or public performance or display, or

(b) reproducing, downloading, distributing, uploading, or publicly performing or displaying any Copyrighted Work.

3. The terms of paragraph 2 of this injunction shall not apply to any Copyrighted Work for which Defendant has obtained express written authorization or license for the use being made of such Copyrighted Work from each Plaintiff that owns or controls the rights to such Copyrighted Work, to the extent such license remains in force and valid.

4. Prior to Defendant entering into any agreement or transaction whatsoever to sell, lease, license, assign, convey, give away, distribute, loan, barter, hypothecate, encumber, pledge or otherwise transfer, whether or not for consideration or compensation, any part of the software, source code, data files, other technology, domain names, trademarks, or brands used in connection with the TorrentSpy System (a "Transfer of TorrentSpy-Related Assets"), Defendant shall require, as a condition of any such transaction, that the transferee:

(a) submit to the Court's jurisdiction and venue,

(b) agree to be bound by the terms herein, and

(c) apply to the Court for an order adding it as a party to this Permanent Injunction.

Defendant shall not permit any Transfer of TorrentSpy-Related Assets to close until the Court has entered such an order. Defendant further shall not engaged in a Transfer of TorrentSpy-Related Assets with or to any person whom Defendant knows to be engaged in conduct that would violate the terms of Paragraph 1 above.

5. The Defendant shall give notice of this Permanent Injunction to each of its respective officers, agents, servants, employees, attorneys, principals, and direct and indirect shareholders.

6. Nothing in this Permanent Injunction shall limit the right of Plaintiffs to seek to recover damages under 17 U.S.C. § 504, or costs, including attorneys' fees, under 17 U.S.C. § 505.

7. Violation of this Permanent Injunction shall expose the Defendant to all applicable penalties, including for contempt of Court.

8. The Court shall maintain jurisdiction over this action for the purposes of enforcing this Permanent Injunction.

It is SO ORDERED.

Dated: May 5, 2008

FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:06-cv-01093-FMC-JCx | Date | April 7, 2008 |
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | |

| | |
|---|---|
| Present: The Honorable | FLORENCE-MARIE COOPER |

| | | |
|---|---|---|
| Alicia Mamer | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** ORDER ON EX PARTE APPLICATION (In Chambers)

The Court has read and considered Defendants' Ex Parte Application for Leave to File a Memorandum in Connection with Default Hearing (docket no. 348), filed April 7, 2008, and Plaintiffs' Opposition thereto. Unlike DirecTV, Inc. v. Huynh, 503 F.3d 847 (9th Cir. 2007), in which default judgment was entered after the defendants failed to appear, the Court here has already considered, and Defendants have had opportunity to attack, the sufficiency of Plaintiffs' claims. In denying Defendants' Motion to Dismiss, the Court concluded that "Plaintiffs have sufficiently set forth their claim that Defendants are liable on theories of contributory and vicarious copyright infringement." (May 10, 2006 Order Den. Defs.' Mot. to Dismiss for Failure to State a Claim (docket no. 22) at 8.) Accordingly, briefing on the sufficiency of Plaintiffs' claims in light of the factual allegations in the Complaint is neither necessary nor appropriate at this time. Defendants' request to file a memorandum of points and authorities is DENIED.

Plaintiffs shall submit their declarations in support of damages no later than April 21, 2008. Defendants shall submit any declarations in opposition to damages by April 28, 2008.

: N/A

Initials of Preparer AM

JENNER & BLOCK LLP
STEVEN B. FABRIZIO (*pro hac vice*)
sfabrizio@jenner.com
KATHERINE A. FALLOW (*pro hac vice*)
kfallow@jenner.com
DUANE C. POZZA (State Bar No. 225933)
dpozza@jenner.com
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
Telephone: 202-639-6000
Facsimile: 202-639-6066

*Attorneys for Plaintiffs*

NOTE: CHANGES MADE BY THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
Plaintiffs,
v.
JUSTIN BUNNELL, FORREST PARKER, WES PARKER, VALENCE MEDIA, LLC, and DOES 1-10,
Defendants.

Case No. 2:06-cv-01093-FMC-JCx

**~~[PROPOSED]~~ TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION TO PRESERVE ASSETS**

Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction to Preserve Assets, having come before the Court, the Court has considered the Application and the accompanying Memorandum of Points and Authorities, Declaration of Steven B. Fabrizio dated April 4, 2008, and exhibits thereto. Based on the pleadings before it, and all matters of record in this action, and having found that this is a proper case for granting a temporary restraining order and an order to show cause why a preliminary injuction should not issue, and that plaintiffs will suffer irreparable harm unless the requested temporary restraining order is granted:

IT IS HEREBY ORDERED that the Application is granted, and defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, are hereby restrained and enjoined from selling, transferring or otherwise disposing of the torrentspy.com domain, or the technology that comprises the TorrentSpy website, either by acting individually or through any corporation or other entity that they own, control or operate, until ~~such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief.~~ **the hearing date of April 17, 2008.**

IT IS HEREBY FURTHER ORDERED that defendants show cause at 9:00 a.m. on April 17, 2008, or as soon thereafter as counsel may be heard in the courtroom of the Honorable Florence-Marie Cooper, Los Angeles, California, why defendants, and any of their officers, agents, servants, employees, or persons in active concert or participation with any of them, should not be preliminarily enjoined from selling, transferring or otherwise disposing of the torrentspy.com domain, or the technology that comprises the TorrentSpy website, either by acting individually or through any corporation or other entity that they own, control or operate, until such time as the Court has considered and ruled on plaintiffs' proposed final injunctive relief.

A copy of this Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction to Preserve Assets, together with all accompanying legal memoranda, declarations, and exhibits, shall be served upon defendants on or before April 7, 2008. Defendants' opposition papers shall be filed and served by email on plaintiffs' counsel on or before April 11, 2008. Plaintiffs'reply papers shall be filed and served by email on or before April 15, 2008.

Plaintiff shall ~~not~~ be required to post ~~upon the issuance~~ **bond prior to the effectiveness** of this Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction to Preserve Assets, **in the amount of $100,000**.

IT IS SO ORDERED.

Dated: April 4, 2008

HON. FLORENCE-MARIE COOPER
U.S. DISTRICT COURT JUDGE

FILED
CLERK, U.S. DISTRICT COURT
DEC 13 2007
CENTRAL DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, et al.,<br><br>Defendants. | 2:06-cv-01093 FMC-JCx<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS** |

This matter came on for hearing on December 10, 2007 on Plaintiffs' Motion for Terminating Sanctions Based on Defendants' Willful Spoliation of Key Evidence (docket no. 280), filed August 30, 2007. The parties were in possession of the Court's tentative decision to deny the motion. Following oral argument, the matter was taken under submission.

Having considered the issues raised in oral argument, and reviewed the evidence cited there and in the parties' papers, and for the reasons and in the manner set forth below, the Court hereby GRANTS the Motion.

//

//

//

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous films and television programs. Defendants operate a website, www.torrentspy.com, that enables users to locate and download dot-torrent files. Using dot-torrent files and an independent computer software program, a "BitTorrent" client, users join a peer-to-peer network that facilitates the copying and distribution of the files that were the subject of the users' search. Defendants' website thereby allegedly permits Internet users to locate and download, view, store, and distribute unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows. In this way, Plaintiffs allege Defendants knowingly enable, encourage, induce, and profit from the online piracy of Plaintiffs' copyrighted works.

On February 23, 2006, Plaintiffs filed a Complaint for copyright infringement. Numerous discovery disputes have arisen between the parties. Plaintiffs now claim that Defendants willfully despoiled evidence in four ways:

1. <u>Deletion and Modification of Torrentspy User Forums Postings</u>

Plaintiffs claim that Defendants responded to the filing of this lawsuit with a plan to delete and modify "hundreds or thousands" of postings on Torrentspy forums whose content included references to copyright infringement. (Mot. at 4-8.) In a private forum posting, "Xanthus"[1] informs its volunteer moderators:

---

[1]"Xanthus" is Defendant Wes Parker. (Parker Am. Decl. ¶ 12.) Parker/Xanthus was the only person in Torrentspy's "senior management" who engaged with the forum's volunteer moderators, including MaggiePixel/Ayn Shipley. (*Id.* at ¶¶ 11-12.)

> We need to make sure that these forums stay clear of anything related to piracy. If people talk about piracy or ask for pirated works, then it can be used against us in court. Please make sure to be on the watch for these kinds of things and remove them promptly. I'd even recommend using the search engine to find past threads that may hurt us.

(March 2, 2006 posting by "Xanthus," Fabrizio Decl. Ex. 8.) Xanthus's post yielded a number of responses and proposals from moderators. On March 6, 2006, moderator "MaggiePixel" (whose real name is Ayn Shipley) suggested that each moderator review forum threads "for content, and clos[e] threads if possible." (Posting by MaggiePixel, Fabrizio Decl. Ex. 8 at 262.) She proposed the creation of a hidden forum called "Archived Threads" and concluded, "From a legal point of view, we need Xanthus's input on whether hiding the threads is sufficient, or whether he feels the need to have the archivable threads physically removed." (*Id.* at 262-263.) Xanthus posted: "MaggiePixel, this proposal is perfect for our needs. Let's go ahead with this plan." (*Id.* at 264.)

Forum postings were modified to replace the names of copyrighted works with, for example, "[some movie 1]" and "[some movie 2]." (Dec. 15, 2005 posting by "Flareup," edited by MaggiePixel on March 5, 2006, Fabrizio Decl. Ex. 9 at 291-92; Dec. 4, 2005 posting by "Mikeb353," edited by MaggiePixel on March 4, 2006, Fabrizio Decl. Ex. 10 at 295; Shipley Depo. 74: 10-24, 75: 14-25.) Two forum threads were deleted entirely: a thread on how to "crack" or bypass the copyright security on electronic games and a glossary of terms like CAM, TS, DVDSCR, and Telecine.[2] (Shipley Depo. 59: 13-25, 60: 1-25, 65: 4-

---

[2]These terms refer to various means of copying existing programs: "CAM" refers to copies of films made by using a hand-held camera in a movie theater. Stephen Bates, *Coming Soon to a P.C. Near You: The Past, Present, and Future of Movie Copyright Infringement on the Internet*, 5 VA. SPORTS & ENT. L.J.

8.) This process was implemented to "clean up" the site in response to the lawsuit, with an eye to avoiding future complaints of copyright infringement. (Parker Am. Decl. at ¶ 18.) Torrentspy claims that it assumed Plaintiffs would have already seen the existing forum postings. (*Id.*) Thus, its intention was not to destroy evidence but to "steer clear of anything related to piracy." (*Id.* at ¶ 19.) This contention is simply not believable. The destruction of evidence clearly relevant on the issue of copyright infringement cannot be justified by the assumption that it's already been viewed by the plaintiffs.

Most piracy-related threads were closed and removed from public view, leaving their content intact, rather than modified. (*Id.* at 21.) In total, MaggiePixel estimates that she reviewed 2,792 forum threads. (Shipley Depo. 65: 6-7.)

Vbulletin, the software Torrentspy uses to operate the forums,"does not save material which has been edited from a forum post." (Parker Am. Decl. ¶ 5.) Parker claims the forums are tangential to Torrentspy's main operation (the exchange of data over a peer-to-peer network). Torrentspy considered the forums as another way to garner advertising revenue and left the content

---

97,110 (2005); Shipley Depo. 61: 7-13. "TS" stands for "Telesync," and refers to copies of films made by setting up a camera in the projection booth during the playing of a film. Shipley Depo. 61: 15-23, 62: 5-8. "TC" refers to Telecine, a method of copying film to video (which has a legitimate use in film preservation). *See* NATIONAL FILM PRESERVATION FOUNDATION, THE FILM PRESERVATION GUIDE: THE BASICS FOR ARCHIVES, LIBRARIES, AND MUSEUMS 48 (2004), *available at* www.filmpreservation.org/preservation/fpg.pdf. "DVDSCR" refers to DVD Screeners, copies of films distributed for limited purposes, like advance criticism or consideration for awards, and not meant to be distributed further. *See* Bates at 110 n.120; Shipley Depo. 63: 24-25, 64: 1-15.

unmonitored.[3] This benign neglect ended upon the institution of this suit. (*Id.* at ¶¶ 6-9.)

2. Deletion of Directory Headings Referencing Copyrighted Works

TorrentSpy maintained a directory of torrents available for download, which included entries for major television shows. The telelvision directory contained hundreds of entries, in alphabetical order, *e.g.*, *According to Jim, Adventures of Superman, ALF, All in the Family, American Idol.* (Fabrizio Decl. Ex. 12; Shipley Depo. 83: 9-15.) Defendants have deleted these directory headings. (*See* Fabrizio Decl. Exs. 12-15; Shipley Depo. 83: 16-18; 91: 2-8.) The torrents filed under these headings were not deleted from the web site, but moved to headings like "TV-Unsorted." (Shipley Depo. 91: 2-8, 13-22.)

Prior to March 2006, the Torrentspy website had categories for CAM, Telecine, Telesync, and DVD screeners, which were eliminated as part of the "cleanup" of the site. (Shipley Depo. 82: 16-25, 83: 1-2.) For example, on March 15, 2006 MaggiePixel posted the following:

"CAM/TS/TC/DVDSCR sub-categories in the Movie category are being merged into the Movie-unsorted area. New submissions can be placed there, so that site mods/admins are not liable for the creation/management of them." (Fabrizio Decl. Ex. 8 at 283; Shipley Depo. 93: 23-25, 94: 1-2.) Wes Parker made this change himself. (Shipley Depo. 31: 13-21.) No dot-torrent files in these categories were deleted from the site, but instead moved to the "Unsorted" category. (*Id.* at 92: 6-10.)

---

[3]The forums addressed many topics, including exchanges on user-generated content; debates on the importance of copyright protection; reviews and critiques of popular culture; and discussions and trouble-shooting advice for the main site. (Parker Am. Decl. ¶ 10.) Defendants admit some users discussed how to use Torrentspy's services for exchanging pirated works. (*Id.* at 9.)

Plaintiffs contend that, to date, Defendants have not produced previously existing, unaltered versions of their directories, contrary to Defendants' representations to the Court. (Parker Am. Decl. ¶ 22; Fallow Decl. ¶ 5.) The previous directory headings may be available to Plaintiffs as cached on web sites such as Google. (Parker Am. Decl. ¶ 22.)

3. April 2007 Destruction of User IP Addresses

Plaintiffs contend that Defendants have prevented them from determining the extent of infringement fostered by the Torrentspy site and whether Defendants themselves directly infringe on Plaintiffs' copyrights by uploading files. Defendants have claimed not to have full IP addresses[4] and have produced lists of IP addresses with the fourth octet missing. Wes Parker testified under oath that Torrenspy has never recorded full IP addresses. (Fabrizio Decl. Ex. 4 at 175-76) In fact, the record reflects forum conversations between moderators indicating that records of full IP addresses do exist. In a March 1-3, 2006 forum thread between moderators MaggiePixel and Cabana Bob,[5] MaggiePixel asks for four IP addresses to be banned. (Fabrizio Decl. Ex. 30.) She provides the full IP addresses (*e.g.*, "165.228.130.11."). (*Id.*) Other postings describe the process for banning users by username and IP address. (Forum Thread, February 28-March 2, 2006, Fabrizio Decl. Ex. 32; *see also* Fabrizio Decl. Ex. 33.) In these posts, the moderators refer to and occasionally provide lists of, the complete IP addresses of banned users. (*Id.*; *see also* Forum Thread, July 7, 2006, Fabrizio Decl. Ex. 35; Ex. 36.)

---

[4]An IP address "consists of four numbers separated by a dot. Each of those numbers is called an octet, and that number can range in value from 0 to 255." (Depo. Robert Clymer 43: 21-25, Fabrizio Decl. Ex. 2)

[5]Cabana Bob's real name is Robert Clymer. (Parker Am. Decl. ¶ 36.)

E-mail exchanges between Xanthus (*i.e.*, Wes Parker), "support@torrentspy.com," and "justin@baventures.com" (Justin Bunnell), that discuss reinstating banned IP addresses include complete IP addresses. (Fabrizio Decl. Ex. 37.) Torrentspy moderators recall that Torrentspy recorded full IP addresses (all four octets) until about April 2007. (Shipley Depo. 36: 15-25, 89: 15-21; Fabrizio Decl. Ex. 1 at 17; Clymer Depo. 44: 12-16, 51: 9-18, Fabrizio Decl. Ex. 2 at 131; Dennis Decl. ¶ 37.) Defendants were ordered by Magistrate Judge Chooljian to produce these IP addresses as part of server logs on February 13, 2007.

4. Identities and Addresses of Site Moderators

Defendants stated, under oath, in responses to interrogatories that the true names and addresses of Torrentspy's volunteer forum moderators were unknown, and that they were known to defendants only by their nicknames or "handles"and email addresses. (Fabrizio Decl. Ex. 48 at 18) Defendants retort that most of their interactions with the volunteer moderators took place over Instant Messenger, using Internet "handles" rather than legal names (e.g., "MaggiePixel" for Ayn Shipley). (Parker Am. Decl. ¶ 36.) To the extent Torrentspy has records of moderators' legal names and addresses, this information is "scattered like a needle in a haystack of other communications." (*Id.*)

Ayn Shipley's deposition testimony contradicts Defendants' explanation. Shipley states that she sometimes used her real name in communications with Defendant Wes Parker. (Shipley Depo. 19: 10-17, Fabrizio Decl. Ex. 1 at 19.) In addition, she sent the names and addresses of moderators to Parker so that he could send them Torrentspy T-shirts. (*Id.* at 10: 18-25, 11: 19-22, 12: 14-20.) Wes Parker testified that he took two or three of the forum moderators to Las Vegas as a thank-you gift. (Fabrizio Ex. 4 at 178-180.)

The evidence also demonstrates that Defendants Parker and Bunnell improperly attempted to influence the testimony of site moderators. This apparently was done by implying in instant messages and in telephone conversations that TorrentSpy would pay moderators' legal fees only if the moderators agreed to testify to certain things or to withhold requested evidence, such as their personal computer hard drives. (Shipley Depo. 32: 9-11, 20-25, 33: 1-2, 24-25, 34: 1-6; Clymer Depo. 9: 17-25, 10: 1-5, 8-18, 25, 11: 1-6.) Shipley testified that she was told she should delay responding to requests that she turn over her hard drive until the "magic date" of August 2, 2007 (*Id.* at 34: 7-11), which happened to be the discovery cut-off date in this case. Robert Clymer described Defendant Bunnell, during a conversation about Torrentspy paying for Clymer's legal fees, as pressing him to answer the question, "'Well, let me just ask you how you would answer–you never actually banned user by IP address, right?'" (Clymer Depo. 10: 6-18.)

Defendants adamantly deny this characterization of their conversations with moderators. (Bunnell Decl. ¶ 6; Parker Am. Decl. ¶ 39; *see also* Shipley Depo. 35: 21-25.) Bunell states that "magic date" is a phrase not found in his vocabulary. (Bunnell Decl. ¶ 4.) Rather, Bunnell and Parker believe Shipley may have heard the date August 2 in reference to the commencement of Parker's annual vacation, not to the date of discovery cut-off in this case. (*Id.*; Parker Am. Decl. ¶ 38.) Paying for moderators' legal fees was "an obvious topic for discussion" once they were served with subpoenas, especially since many moderators are students without the means to hire counsel. (Parker Am. Decl. ¶¶ 37, 40.)

* * *

On August 30, 2007, Plaintiffs filed the instant Motion for Terminating Sanctions Based on Defendants' Willful Spoliation of Key Evidence.

## STANDARD OF LAW

Spoliation occurs when a party destroys evidence after receiving some notice that the evidence was potentially relevant to litigation, thereby impairing the non-spoiling party's "ability to go to trial or threaten[ing] to interfere with the rightful decision of the case." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988). A court may sanction spoliation by: imposing monetary sanctions; instructing the jury to draw an adverse inference against the despoiling party; excluding testimony based on despoiled evidence proffered by the despoiling party; or, if willfulness is found, entering default judgment against the despoiling party. *UMG Recordings, Inc. v. Hummer Winblad Venture Partners et al.*, 462 F. Supp. 2d 1060, 1066 (2006).

The Court's authority to sanction a party for despoiling evidence derives from two sources: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)). Entry of default judgment is an appropriate sanction only where spoliation is "due to willfulness, bad faith, or fault," resulting in unfair prejudice to the opposing party that no lesser sanction can remedy. *In re Exxon Valdez*, 102 F.3d 429, 432-33 (9th Cir. 1996); *United States ex rel. Wiltec Guam, Inc.*, 857 F.2d at 603. In deciding whether to enter default judgment as a sanction, the Court must weigh a number of factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d

337, 348 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)); *see also Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (1988).

## DISCUSSION

Plaintiffs have convinced the Court that their ability to prove their case has been inalterably prejudiced by Defendants' willful spoliation of evidence, making terminating sanctions the only effective recourse. The Court has concluded that Defendants' conduct constitutes spoliation and second, that termination of the case in favor of Plaintiffs is the proper sanction, applying each of the above factors in turn.

### A. <u>Willful or Bad Faith Spoliation of Evidence</u>

The deleted (or modified) evidence includes directory headings naming copyrighted works and forum posts explaining how to locate and download specific copyrighted works. Upon being served with Plaintiffs' suit for copyright infringement, Defendants were on notice that this information would be of importance in the case. In particular, the postings and directory headings are significant in demonstrating whether Defendants knowingly contributed to copyright infringement. This evidence was not deleted or modified negligently, but intentionally in direct response to the institution of this suit. Therefore, Defendants' conduct constitutes willful spoliation.

Defendants maintain that they assumed Plaintiffs must have copied their forum postings and directory headings by the time of filing suit, thereby making any alteration or deletion by Defendants entirely innocent. To the extent that forum threads were closed or hidden, and then made available to Plaintiffs in discovery, this explanation may be sufficient. Given the sheer volume of forum postings on the Torrentspy site, however, Defendants' assertion that they assumed Plaintiffs would have already copied every post demonstrating

inducement or enticement of infringement is disingenuous. Nor is a plaintiff obligated to duplicate all publicly available information prior to filing suit, in anticipation that a defendant will thereafter destroy it. *See Leon*, 464 F.3d at 960. Rather, the forum postings and directory headings could have and should have been preserved, notwithstanding Defendants' professed desire to avoid future liability for infringement. (Parker Am. Decl. ¶ 18.) Defendants could have reached that goal simply by taking down from the web site the offending posts, while preserving them and producing them in discovery.[6] By Defendants' own admission, the edited postings now cannot be recovered in their original form. (Parker Am. Decl. ¶ 5.)

The timing of the change in IP address collection belies Defendants' explanations of their failure to produce the full IP addresses called for in discovery. Until April 2007, full IP addresses were available, as evidenced by communications of the forums' moderators. After April 2007, the fourth octet of these IP addresses disappeared. Defendants produced IP addresses with only three octets. User IP addresses, in the context of server logs and dot-torrent file upload records, were a contested subject of discovery well before April 2007. The Court concludes that Defendants were well aware of their obligation to preserve those addresses in their entirety. Their deletion of the fourth octet of these addresses was willful.

With regard to the withholding of the full names and addresses of Torrentspy's forum moderators, the evidence establishes that this information was, in some instances known to Defendants and, in other instances, readily

---

[6]Defendants state that they have produced unaltered, closed forum threads. Parker Am. Decl. ¶ 21. The irreversible editing of some posts, however, creates doubt as to whether all forum posts have been produced; *i.e.*, now that Defendants have altered some posts, it is difficult to determine how many posts have been edited or, perhaps, have disappeared altogether.

available to them. The Court finds that Defendants' failure to fully disclose the identities and contact information of moderators was willful.

**B. Factors**

1. Expeditious Resolution of Litigation and Managing the Court's Docket

The first two factors the Court must consider in determining whether default is an appropriate sanction for Defendants' willful spoliation are the public's interest in the expeditious resolution of litigation and the Court's need to manage its docket. Here, Defendants' discovery conduct has unnecessarily drawn out the discovery period in this case.[7] Multiple discovery disputes have consumed a considerable amount of time both here and before the Magistrate Judge. Thus, these factors weigh strongly in favor of terminating the case in favor of Plaintiffs.

2. Risk of Prejudice to Plaintiffs

For the Court to impose the sanction of default, it must find that there is a nexus between the Defendants' misconduct and the merits of the case, such that the misconduct "interfere[s] with the rightful decision of the case." *Halaco Eng'g Co.*, 843 F.2d at 381-82. The Court finds that Plaintiffs have suffered prejudice, to the extent that a rightful decision is not possible.

---

[7]*See, e.g.,* May 3, 2007 Order (Judge Chooljian) ("The court notes that the documents requests in issue were propounded in August 2006. It is incomprehensible to this court, particularly in light of the paltry showing made by defendants in connection with Plaintiffs' Motion, that despite the ample amount of time defendants have had to do so, defendants have still not fully responded to said requests and . . . have violated the February 13 Order directing them to do so.")

Plaintiffs' main contention in this litigation is that the Torrentspy website entices, promotes, and contributes to copyright infringement by its users. *See* 17 U.S.C. § 106. The Supreme Court recently explained, "One infringes contributorily by intentionally inducing or encouraging direct infringement, *see Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it, *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also* NIMMER ON COPYRIGHT §§ 12.04[A][2], [A][3] (Matthew Bender 2007). Thus, the alteration or deletion of forum posts specifically referencing copyrighted works, or providing guides on how to download "CAM/TS/TC/DVDSCR"s, has prejudiced Plaintiffs' ability to demonstrate Defendants' alleged inducement or encouragement of infringement, necessary to prove contributory infringement. This altered or deleted evidence also would have been relevant to proving Defendants' failure to exercise its right to stop or limit infringement, necessary to prove vicarious infringement.

The deletion of the directory headings is similarly prejudicial, and only slightly mitigated to the extent that archived versions of the directory headings may be available elsewhere. Defendants' failure to produce the full contact information of its forum moderators is prejudicial given that the moderators are well-placed to discuss the extent of Torrentspy's ability to supervise its users' infringing activities. The likelihood that other forum moderators would have provided testimony helpful to the plaintiff and damaging to the defendant is demonstrated by the evidence gleaned from the two moderators plaintiffs were successful in locating.

In a case such as this, where a substantial number of items of evidence have been destroyed, a plaintiff's burden would be particularly onerous if he were required to prove the relevance of all the destroyed items. "The relevance

of ...[destroyed] documents cannot be clearly ascertained because the documents no longer exist." Therefore, a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon v. IDX Sys. Corp.*, 464 F.3d. at 959.

The Court finds that Plaintiffs have suffered prejudice as a result of Defendants' willful spoliation of evidence. Defendants' misconduct is connected to the merits of the case because the despoiled evidence bears on Plaintiffs' theories of contributory and vicarious liability. Although this prejudice has been mitigated somewhat by Plaintiffs' success in locating some relevant evidence despite Defendants' misconduct, this factor nonetheless weighs strongly in favor of terminating sanctions.

3. Public Policy in Favor of Deciding Cases on Their Merits

The fourth factor is the public policy in favor of deciding cases on their merits. This case raises questions of copyright infringement and privacy that are of considerable public importance beyond the narrow interests of the parties here. The filing of an *amicus curiae* brief in connection with a previous motion is evidence of this. Therefore, this factor weighs against the imposition of terminating sanctions against Defendants.

4. Availability of Lesser Sanctions

Recognizing that terminating sanctions are an extreme measure, only to be imposed if no lesser sanctions would serve, the Court issued a tentative decision to deny terminating sanctions and invited counsel to address the question of what lesser sanctions would be appropriate. At oral argument, Plaintiffs maintained their position that no alternate sanction could possibly alleviate the harm to Plaintiffs in this case. Defendant offered no alternative sanctions in response.

Defendants have already been subjected to lesser sanctions in this case. Monetary sanctions of $30,000 were imposed for violations of discovery orders, and as an additional sanction, Defendants were deemed to have waived certain privilege arguments. Further, Defendants were warned by the Magistrate Judge that more severe sanctions would be imposed if they continued to ignore her orders.

After oral argument, and further examination of the history of this case, the Court concludes that no lesser sanctions would be appropriate or effective. A rule excluding evidence would be futile, since the issue here is not the efforts by Defendants to introduce evidence which could be excluded, but rather Defendants' destruction or concealment of evidence, forcing Plaintiffs to go to trial with "incomplete and spotty evidence" at trial. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d. 337, 348 (9th Cir. 1995) As the Court found in *Leon,* fashioning a jury instruction which creates a presumption in favor of Plaintiffs would leave Plaintiffs equally helpless to rebut any material that Defendants might use to overcome the presumption. *Leon,* 464 F.3d. at 960. Monetary sanctions have previously been imposed and have been ineffective.

**C. Summary**

Defendants' conduct during discovery in this case has been obstreperous. They have engaged in widespread and systematic efforts to destroy evidence and have provided false testimony under oath in an effort to hide evidence of such destruction. Indeed, Defendants' lateness and incomplete responses to discovery requests have led the Magistrate Judge to warn or sanction them on more than one

occasion.[8] Although termination of a case is a harsh sanction appropriate only in "extraordinary circumstances," *Halaco Eng'g Co. v. Costle*, 843 F.2d at 380, the circumstances in this case are sufficiently extraordinary to merit such a sanction. Lesser sanctions would not be adequate to punish the defendants for the wrongful conduct and ameliorate the prejudice and harm to the plaintiffs.

## Conclusion

Plaintiffs' Motion for Terminating Sanctions is GRANTED. The Clerk is directed to enter the Default of the defendants in this case.

**IT IS SO ORDERED.**

Dated: December 13, 2007

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

[8] *See* May 3, 2007 Order (Judge Chooljian); August 8, 2007 Order (Judge Chooljian) (imposing $30,000 in discovery sanctions and warning Defendants of the possibility of additional sanctions for noncompliance with discovery orders).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:06-cv-01093-FMC-JCx | Date | October 31, 2007 |
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | |

| | |
|---|---|
| Present: The Honorable | FLORENCE-MARIE COOPER |

| | | |
|---|---|---|
| Alicia Mamer | Not present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not present | Not present |

**Proceedings:** ORDER DENYING MOTION FOR REVIEW (In Chambers)

The Court is in receipt of the Motion for Review of Order Re: August 8, 2007 Order (docket no. 262), filed by Defendants on August 22, 2007. Defendants' Motion asks the Court to review the Magistrate Judge's August 8, 2007 Order, which responded to Plaintiffs' Ex Parte Application to enforce the Magistrate Judge's May 3, 2007 Order. The Court has reviewed the moving, opposition, and reply documents submitted in connection with this motion and deems it appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

A district court will not modify or set aside a magistrate judge's order unless it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). To the extent that Defendants' Motion objects to the substance of the May 3, 2007 Order, it is untimely. Local Rule 72-2.1. Moreover, the supplemental privilege log submitted on May 24, 2007 was untimely, in violation of the Magistrate Judge's May 3, 2007 Order. Defendants had been warned that failure to timely submit a privilege log would lead to the sanction of waiver; they nonetheless submitted the privilege log ten days late. The Court strongly cautions Defendants that deadlines imposed by the Court must be strictly adhered to; late filings are impermissible except with leave of the Court. Defendants ought not to feign surprise when the Court imposes sanctions about which parties have been warned.
Accordingly, Defendants' Motion is DENIED.

: N/A

Initials of Preparer AM

#321

P Send

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:06-cv-01093-FMC-JCx | Date | August 27, 2007 |
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | |

Present: The Honorable FLORENCE-MARIE COOPER

| Alicia Mamer | Not present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not present | Not present |

**Proceedings:** ORDER ON EX PARTE APPLICATION (In Chambers)

The Court has read and considered Defendants' Ex Parte Application for Stay of Enforcement of August 8, 2007, Order Pending Review, and Plaintiff's Opposition thereto. The Application is DENIED, for all of the reasons recited in Plaintiff's Opposition.

: N/A

Initials of Preparer AM

DOCKETED ON CM
AUG 27 2007
BY 154

# 255

P Send

DOCKETED ON CM
AUG 2 4 2007
BY 085

FILED
CLERK, U.S. DISTRICT COURT
AUG 2 4 2007
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

COLUMBIA PICTURES, INC., et al.,

Plaintiffs,

vs.

JUSTIN BUNNELL, et al.,

Defendants.

2: 06-cv-01093 FMC-JCx

**ORDER DENYING DEFENDANTS' MOTION FOR REVIEW**

#254

This matter is before the Court on Defendants' Objections to and Motion for Review of Order Regarding Server Log Data (docket no. 194), filed June 12, 2007. The Court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. The matter was heard on August 20, 2007, at which time the parties were in receipt of the Court's Tentative Order. For the reasons and in the manner set forth below, the Court hereby **DENIES** Defendants' Motion.

//

//

//

//

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous movies and television programs. Defendants operate a website that serves as a search engine that enables users to locate and download dot-torrent files. Using dot-torrent files and an independent computer software program, a "BitTorrent" client, users join a peer-to-peer network that facilitates the copying and distribution of the files that were the subject of the users' search. Defendants' website thereby allegedly permits Internet users to locate and download, view, store, and distribute unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows. In this way, Plaintiffs allege Defendants knowingly enable, encourage, induce, and profit from the online piracy of Plaintiffs' copyrighted works.

On February 23, 2006, Plaintiffs filed a Complaint asserting a claim for copyright infringement. Numerous discovery disputes have arisen between the parties, and Defendants have repeatedly moved this Court to review and reconsider the rulings of Magistrate Judge Chooljian. On June 12, 2007, Defendants filed their latest challenge, against the Magistrate Judge's May 29, 2007, Order (1) Granting in Part and Denying in Part Plaintiffs' Motion to Require Defendants to Preserve and Produce Server Log Data and for Evidentiary Sanctions and (2) Denying Defendants' Request for Attorneys' Fees and Costs (the May 29 Order), on June 12, 2007.

## STANDARD OF LAW

A district court will not modify or set aside a magistrate judge's order unless it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).[1] The clearly erroneous standard applies to the magistrate judge's factual

---

[1] In addition, the Local Rules require that a party objecting to a Magistrate

findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo. *See Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999); *see also Center for Biological Diversity v. Federal Highway Admin.*, 290 F. Supp. 2d 1175, 1199-1200 (S.D. Cal. 2003) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997), for the proposition that "discretionary orders and will be overturned 'only if the district court is left with the definite and firm conviction that a mistake has been made'").

When reviewing discovery disputes, however, "the Magistrate is afforded broad discretion, which will be overruled only if abused." *Wright v. FBI*, 385 F. Supp. 2d 1038, 1041 (C.D. Cal. 2005); *Geophysical Sys. Corp. v. Raytheon Co., Inc.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987) (Tashima, J.) (questions of relevance in discovery context are reviewed under "the clearly implicit standard of abuse of discretion.").

## DISCUSSION

### I. The Scope of Federal Rule of Civil Procedure 34

At the heart of Defendants' Motion for Review is the following question of first impression: is the information held in a computer's random access memory (RAM) "electronically stored information" under Federal Rule of Civil Procedure 34?

Defendants and *amici* seek to engraft on the definition of "stored" an additional requirement, that the information be not just stored, but stored "for later retrieval." They argue that "electronically stored information" cannot

---

Judge's ruling on a nondispositive matter must "designat[e] the specific portions of the ruling objected to and stat[e] the grounds for the objection." Local Rule 72-2.1.

include information held in RAM because the period of storage, which may be as much as six hours, is too temporary. The Court finds this interpretation of "stored" unsupported by the text of the Rule, the accompanying commentary of its drafters, or Ninth Circuit precedent involving RAM. The Court holds that data stored in RAM, however temporarily, is electronically stored information subject to discovery under the circumstances of the instant case.

First, even the definition *amici* supplied fails to support their argument that information written to and held in random access memory is not "stored." As *amici* explain, according to the Merriam-Webster Collegiate Dictionary, to store means "to lay away, to accumulate or to place or leave in a location (as a warehouse, library, or *computer memory*) for preservation *or later use or disposal*." *Merriam-Webster's Collegiate Dictionary* (Frederick C. Mish et al. eds., 10th ed. 1993) (emphasis added). It is undisputed that RAM is computer memory and that information held in RAM is held there for later use by the computer (e.g., to be used in tasks performed by software or written to a hard drive, flash drive, DVD, or other more permanent medium) or disposal (e.g., to be erased when the computer is turned off or when the data is overwritten with new information as part of the regular computing process).

The definition of "to store" from the Random House Dictionary of the English Language specific to the context of computers further undermines Defendants' argument that RAM does not store data: "13. *Computers*. to put *or* retain (data) in a memory unit." Random House dictionary of the English Language (Stuart B. Flexner et al. eds., 2d ed. 1987) (emphasis added). Under this definition, the information need not even be subsequently accessed or used; simply placing the data in the RAM module is sufficient for it to constitute electronically stored information.

In addition, RAM itself is *defined* as a storage unit, and, due to its speed relative to hard disk drives, is typically used as the computer's primary storage:

"Random Access Memory (RAM): A read/write, nonsequential-access memory used for the *storage* of instructions and data. Note 1: RAM access time is essentially the same for all storage locations. Note 2: RAM is characterized by a shorter access time than disk or tape storage." National Communications System, *Federal Standard 1037C: Telecommunications: Glossary of Telecommunication Terms* (Gen. Servs. Admin., 4th ed. 1996) (emphasis added). Accordingly, information held in RAM is "stored" under the plain meaning of the unambiguous language of Rule 34.

Second, the Notes of the Advisory Committee to the 2006 Amendments to Rule 34, which amended the Rule to make explicit that it authorized discovery of information stored electronically,[2] indicate that the definition was intended to be read expansively to include all current and future electronic storage mediums:

> The wide variety of computer systems currently in use, and the rapidity of technological change, counsel against a limiting or precise definition of electronically stored information. Rule 34(a)(1) is *expansive* and includes *any type of information that is stored electronically*. A common example often sought in discovery is electronic communications, such as e-mail. The rule covers--either as documents or as electronically stored information--information "stored in any medium," to encompass future developments in computer technology. Rule 34(a)(1) is intended to be *broad enough to cover all current types of computer-based information*, and flexible enough to encompass future changes and developments.

Fed. R. Civ. P. 34(a)(1) (2006 amendments) advisory committee's note. Such

---

[2] Rule 34(a) states, in part, that "[a]ny party may serve on any other party a request . . . to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect, copy, test, or sample *any* designated documents or *electronically stored information*--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored *in any medium from which information can be obtained*--translated, if necessary, by the respondent into reasonably usable form, or to inspect, copy, test, or sample any designated tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a) (emphasis added).

clear evidence that Rule 34(a)'s scope was intended to be as broad as possible, and cover data stored "in any medium from which information can be obtained," leaves no room to interpret the Rule to categorically exclude information written in a particular medium simply because that medium stores information only temporarily. Information in the RAM of Defendants' computers "can be obtained" by Defendant. It is undisputed that the Server Log Data[3] Plaintiffs seek can be copied from RAM in Defendants' computers and produced to Plaintiffs. Rule 34 requires no greater degree of permanency from a medium than that which makes obtaining the data possible. As information can be obtained from RAM, it is within the scope of Rule 34 and subject to discovery under the appropriate circumstances.

Finally, as discussed in the Magistrate Judge's May 29 Order, *amici* and Defendants' argument that data in RAM is too ephemeral to satisfy Rule 34's storage requirement is foreclosed by the Ninth Circuit's decision in *Mai Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993). To determine if the plaintiff could prevail on a claim of copyright infringement, the court in *Mai Systems Corp.* confronted the question of whether a program in RAM was "fixed in a tangible medium of expression," which the applicable statute defined as "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* at 517-518; 17 U.S.C. § 101. Despite the Copyright Act's explicit requirement that the medium store information with a degree of permanence and for "more than transitory duration," the court held that a computer's copying of software into

---

[3] Server Log Data, as defined in the May 29 Order, includes (1) the anonymous (masked or encrypted) Internet Protocol (IP) address of users of Defendants' website who request dot-torrent files, (2) the identity of the dot-torrent files requested, and (3) the dates and times of such requests. (May 29 Order, 3:16-4:1.)

RAM was sufficient to meet the statutory prerequisites for liability and affirmed the district court's grant of summary judgment and issuance of a permanent injunction. *Id.* at 519.

SCANNED

In light of the Ninth Circuit's holding that RAM is a tangible medium, sufficiently permanent to permit reproduction, *amici* and Defendants' argument that RAM holds data for such a short duration that it is not stored subject to later access and retrieval simply has no merit. Defendants have therefore failed to establish that the Magistrate Judge's legal conclusion that data held in the RAM of computers under Defendants' control is within the scope of discoverable information under Federal Rule of Civil Procedure 34 was contrary to law.

In response to *amici*'s concerns over the potentially devastating impact of this decision on the record-keeping obligations of businesses and individuals, the Court notes that this decision does not impose an additional burden on any website operator or party outside of this case. It simply requires that the defendants in this case, as part of this litigation, *after* the issuance of a court order, and following a careful evaluation of the burden to these defendants of preserving and producing the specific information requested in light of its relevance and the lack of other available means to obtain it, begin preserving and subsequently produce a particular subset of the data in RAM under Defendants' control.

## II. The Magistrate Judge's Authority to Order the Requested Discovery

In an attempt to resist complying with the Magistrate Judge's May 29 Order, Defendants have raised a number of creative legal challenges, the first of which is that the Magistrate Judge exceeded her authority by issuing an injunction and disposing of ultimate issues in the case. The Federal Magistrates Act provides that a magistrate judge may "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief," and seven other enumerated motions. 28 U.S.C. § 636(b)(1)(A). The Ninth Circuit has held that

the list of excluded motions is not exhaustive, and courts must "look to the effect of the motion, in order to determine whether it is properly characterized as dispositive or non-dispositive of a claim or defense of a party." *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004). If it is a final order, dispositive of a claim or defense, it is outside of the magistrate's statutorily granted jurisdiction. *Id.* at 1069.

Plaintiffs' Motion to Require Defendants to Preserve and Produce Server Log Data and for Evidentiary Sanctions was neither a motion for injunctive relief nor its functional equivalent, and the May 29 Order granting the motion did not dispose of any of Defendants' claims or defenses. The May 29 Order is a quotidian discovery order, resolving disputes over relevance, burden, and the proper scope of discovery, that is well within the Magistrate Judge's authority and substantial specialized expertise. Magistrate judges regularly compel production of documents and, although courts in other jurisdictions have interpreted orders to preserve evidence as injunctions, the Ninth Circuit has held that all parties are under a duty not to intentionally dispose of evidence they know is relevant. *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 720 (9th Cir. 2005); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) (holding that "a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery.") (citing *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994); *cf. Madden v. Wyeth*, No. 3-03-CV-0167-R, 2003 U.S. Dist. LEXIS 6427, at *1 (N.D. Tex. Apr. 16, 2003) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted.").

Moreover, contrary to Defendants' contentions, the May 29 Order does not dispose of any of Defendants' potential First Amendment or other defenses to Plaintiffs' claim for copyright infringement. The May 29 Order addresses only

Defendants' arguments in opposition to the requested discovery, not whether the First Amendment or the Electronic Communications Privacy Act (ECPA) might factor into a final, permanent injunction prohibiting Defendants from engaging in any form of copyright infringement. That the creation of a server log might be a predicate step in fashioning effective hypothetical final relief does not alter the fact that such final disposition of any of the parties' claims or defenses remains a future event. As the May 29 Order is not dispositive of any claims or defenses, it was within the Magistrate Judge's jurisdiction, and the Court overrules Defendants' objection.

**III. The Fifth Amendment**

Defendants argue that the Magistrate Judge violated their Fifth Amendment due process rights by (1) finding that they voluntarily consented to the disclosure of the Server Log Data and (2) ruling against Defendants based on their failure to demonstrate that there are alternative means of acquiring the requested information after denying Defendants' discovery requests that would have led to the production of data Defendants could use to demonstrate such means. Defendants have not provided any authority for the proposition that a magistrate's order could violate a defendants' Fifth Amendment rights or that a motion for review would be the proper venue for obtaining relief for such a hypothetical constitutional injury. Nevertheless, the Court will briefly address Defendants' arguments, construing them as arguments that the Magistrate Judge's factual findings were clearly erroneous and that her legal conclusions were contrary to law, the applicable legal standard.

Defendants contend that production of their Server Log Data would violate the Stored Communications Act (SCA), the Wiretap Act, and the Pen Register Statute. The SCA prohibits unlawful access to stored communications, which is defined as either "(1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or (2)

intentionally exceed[ing] an authorization to access that facility; and thereby obtain[ing] . . . authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ." The May 29 Order, however, contemplates no *unauthorized* access. Defendants are not ordered to access the facility of a third party and obtain stored communications, such as e-mails stored on a remote server. Defendants are also not custodians of private communications, as an Internet Service Provider would be of e-mails sent through its servers (where neither the sender nor the recipient would be parties to the litigation), ordered to disclose the contents of those communications. *Cf. Theofel v. Farey-Jones*, 341 F.3d 978, 985 (9th Cir. 2003). Rather, Defendants are the intended recipients of the information contained in the Server Log Data. When users access Defendants' website and request information (such as dot-torrent files), they voluntarily supply their IP addresses and a packet of information containing their request. That information is received and processed in Defendants' RAM on their servers, for their use (which, in addition to the contemporaneous fulfillment of the request, the record reveals has thus far consisted primarily of disclosure to advertisers to generate revenue). (May 29 Order 22:1-3; Reporter's Transcript of the April 3, 2007, Discovery Hearing (RT) 90-97).) Defendants' access to Defendants' information on servers under Defendants' control does not constitute unauthorized access to a "facility through which an electronic communication service is provided" or "to a wire or electronic communication while it is in electronic storage in such system." Production of the Server Log Data would therefore not violate the SCA.

The Wiretap Act makes it an offense to "intentionally intercept[] . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Wiretap Act and the SCA are both part of the ECPA, and play complementary roles in Congress's regulatory scheme. Under the ECPA, an electronic communication may either be intercepted and actionable under the Wiretap Act or acquired while

in electronic storage and actionable under the SCA, but not both. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir.2002). As such, an electronic communication may not simultaneously be actionable under both the Wiretap Act and the SCA. *Id.* The Ninth Circuit has held that the Wiretap Act applies only to "acquisition contemporaneous with transmission," and that "Congress did not intend for 'intercept' to apply to electronic communications when those communications are in 'electronic storage.'" *Theofel,* 359 F.3d at 1077-78, quoting *Konop.* 302 F.3d at 877. Communications are in "electronic storage" under the SCA, and outside the scope of the Wiretap Act, even where the storage is transitory and lasts for only a few seconds. *Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1135-36 (C.D. Cal. 2006) (citing *Konop*, 302 F.3d at 878 n.6). As discussed above, the Server Log Data exists in electronic storage. The Wiretap Act is therefore inapplicable and does not pose any barrier to Defendants' compliance with the May 29 Order.

The Pen Register Statute is similarly inapplicable to the ordered discovery, as Defendants' own Motion makes clear. After discussing why the exemption the to the Pen Register Statute's prohibitions on use of pen registers and tap and trace devices that the Magistrate Judge relied upon does not apply in these circumstances, Defendants argued that the Court could not authorize production of the Server Log Data under the Pen Register Statute because the Server Log Data contains "contents" of communications, such as the identity of the dot-torrent files requested. As Defendants note, pen registers and trap and trace devices, by definition, do not record "the contents of any communication." 18 U.S.C. § 3127(3)–(4); *see also In re United States for an Order Authorizing the Use of a Pen Register & Trap*, 396 F. Supp. 2d 45, 50 (D. Mass. 2005) (interpreting "contents of communications" to include "application commands, search queries, requested file names, and file paths"). Because the May 29 Order requires the production of the contents of communications, Defendants have not

been ordered to install a pen register or trap and trace device, and the Pen Register Statute does not bar the ordered discovery. Accordingly, the Magistrate Judge's decision that production of the Server Log Data would not violate the SCA, the Wiretap Act, or the Pen Register Statute was not contrary to law.[4]

Defendants argue that the Magistrate Judge improperly based a number of key rulings on their failure to "prove facts where they could not obtain the needed evidence" because of the Magistrate Judge's prior rulings, and the orders of this Court, which concluded that the discovery Defendants were requesting would not lead to relevant or admissible evidence.

For example, Defendants note that the Magistrate Judge concluded that "preservation and production of the Server Log Data is appropriate in light of the conclusory and speculative nature of the evidence presented regarding the loss of good will and business, the key relevance and unique nature of the Server Log Data in this action, the lack of a reasonable alternative means to obtain such data, and the limitation imposed by the court regarding the masking of IP addresses." Defendants argue they were not able to present evidence of "alternative means to obtain such data" because "the evidence needed for such proof has been concealed by Plaintiffs in an institutional citadel of privilege." (Mot. 41:1-2.)

First, contrary to Defendants' arguments that "the Magistrate Judge's Order implicitly casts the burden of proof onto Defendants," in each instance Defendants cite, the decision is based on the Magistrate Judge's factual findings after a review of the full record that there were no "reasonable alternative means to obtain such data," not on Defendants' "failure to prove" the availability of any alternative means. Second, with respect to two of three challenged findings (the Magistrate Judge's determination that the requested production would not be

---

[4] As the Court's holding rests on independent legal grounds, it is unnecessary to review the Magistrate Judge's determination that Defendants' website constitutes an "electronic communications service."

unduly burdensome and that international law did not prohibit the requested discovery), the burden *was* properly on Defendants to demonstrate why they should be relieved from producing relevant information.

Finally, as discussed in this Court's prior orders, the information that was the subject of Defendants' denied discovery requests was irrelevant. Even if Defendants were able to show, as they allege, that Plaintiffs operate "honeypots" and participate in BitTorrent "swarms," thereby acquiring the IP addresses of individual copyright infringers, such evidence would not help them to demonstrate that "reasonable alternative means to obtain" the Server Log Data were available. Although Plaintiffs may have other means of discovering the IP addresses of individual direct infringers, in order to prevail in this action, Plaintiffs will need to establish that *Defendants* were in some way responsible for the direct infringement of others. The Server Log Data will show that individuals access Defendants' website and request and download dot-torrent files, which can be used to obtain Plaintiffs' copyrighted works without permission. This link in the causal chain is essential to proving Defendants' responsibility for copyright infringement under theories of contributory infringement, vicarious infringement, and inducement. Accordingly, the Magistrate Judge's finding of a "lack of a reasonable alternative means to obtain" the Server Log Data was not clearly erroneous or contrary to law.

## IV. The First Amendment

Defendants argue that the Magistrate Judge's rejection of Defendants' First Amendment objections to the requested discovery was contrary to law because Plaintiffs failed to demonstrate a need for the Server Log Data and because the Magistrate Judge failed to perform a proper balancing test. The Court has already discussed why the Magistrate Judge's finding that Plaintiffs had a need for the Server Log Data was not clearly erroneous or contrary to law. The Court also agrees with the Magistrate Judge that "the preservation and disclosure of the

Server Log Data does not encroach or substantially encroach" upon the limited First Amendment protection to which the users of Defendants' website are entitled, "particularly in light of the fact that such data does not identify the users of Defendants' website and that the IP addresses of such users have been ordered to be masked." (May 29 Order 23:3-7.)

Defendants argue that, under *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983), the Magistrate Judge was required to employ a formal three-part balancing test in determining whether to order the requested discovery. *Adolph Coors Co.*, in addition to not constituting binding precedent, proposed only that "any tribunal confronted with facts and arguments similar to those presented here undertake a sensitive evaluation in three steps." *Id.* In *Adolph Coors Co.*, the defendant Solidarity was a political organization comprised exclusively of gay men and lesbian women who sought to exert pressure on the plaintiff brewing company through a boycott in an effort to modify the plaintiff's political positions. *Id.* at 204. The plaintiff requested a list of the names of Solidarity's members and its sources of financial support. *Id.* Solidarity argued that revealing the group's members and donors would chill its associational privacy and freedom of political expression. *Id.*

In the instant case, Plaintiffs have sought data that would demonstrate that anonymous individuals accessed Defendants' website and requested dot-torrent files. Plaintiffs are not requesting the names or other identifying information, as the plaintiff sought in *Adolph Coors Co.*, and the May 29 Order ensures that such identifying information will not be disclosed. In addition, in contrast to the strong First Amendment protections for the freedom of association and right to engage in political speech, the privacy interests of Defendants' users are, at best, limited. To the extent the users are engaged in copyright infringement, the First Amendment affords them no protection whatsoever. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 559, 105 S. Ct. 2218; 85 L. Ed. 2d 588

(1985) ("The essential thrust of the First Amendment is to prohibit improper restraints on the *voluntary* public expression of ideas; it shields the man who wants to speak or publish when others wish him to be quiet. There is necessarily, and within suitably defined areas, a concomitant freedom *not* to speak publicly, one which serves the same ultimate end as freedom of speech in its affirmative aspect.") (emphasis in original) (internal quotations omitted)); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First Amendment does not protect use of a peer-to-peer file sharing network that constitutes copyright infringement). Even if the users are engaged in *legal* file sharing, they have little to no expectation of privacy because they are broadcasting their identifying information to everyone in the BitTorrent "swarm" as they download the file. *See, e.g., In re Verizon Internet Servs.*, 257 F. Supp. 2d 244, 267 (D.D.C. 2003) (finding that "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world."). Similarly, because users openly disclose their IP addresses as part of the BitTorrent file transfer process, the Court is not persuaded by Defendants' argument that the retention of the IP addresses of users who obtain dot-torrent files from Defendants' website will "chill" their speech. Accordingly, the Court is satisfied that the Magistrate Judge properly weighed Defendants' First Amendment concerns against the need for the requested discovery, and that her resolution of the matter was not contrary to law.

**V. Impact of International Law**

Defendants insist that the Magistrate Judge erred in rejecting their argument that the law of the Netherlands, where Defendants have placed their servers, prohibits the courts of the United States from ordering the requested discovery in this action. First, the Magistrate Judge properly found that

Defendants had failed to meet their burden in establishing that Netherlands law would prohibit retention of the Server Log Data or production of an encrypted, anonymous version of that data to Plaintiffs. *See United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the burden of showing that such law bars production."). Defendants argue the Magistrate Judge erred, citing a recent opinion of the Amsterdam District Court that held as follows:

> A service provider may, in certain circumstances, be obliged to provide rights holders (or their representatives) with the information asked for. For this, the Court must first of all be satisfied that there have been (unlawful) infringement activities by the subscribers concerned and, secondly, that it is beyond reasonable doubt that those whose identifying information is made available are also actually those who have been guilty of the relevant activities.

*BREIN Foundation v. UPC Nederland B.V.*, Fabrizio Decl. Ex. 28. As the quoted text makes evident, however, *BREIN Foundation* does not support Defendants' argument. It places restrictions only on the production of "identifying information." As the Server Log Data Defendants must produce is anonymous, *BREIN Foundation*, even if it were the applicable legal standard, would not prohibit its production.

Second, as the Supreme Court has stated, "[i]t is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.29, 107 S. Ct. 2542, 96 L. Ed 2d 461 (1987); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474 (9th Cir. 1992); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1287 (9th Cir. 1981); May 29 Order 29:14-17. Assuming, *arguendo*, that Netherlands law would prohibit the discovery ordered, the Magistrate Judge analyzed the issue under the applicable legal standard, considered the relevant, non-exhaustive list of factors enumerated in *Richmark Corp.*, and determined that the factors

weighed in favor of permitting the ordered discovery. Although Defendants disagree with the Magistrate Judge's ultimate decision, they have failed to establish that her factual findings were clearly erroneous or that her legal conclusions were contrary to law.

SCANNED

## VI. Defendants' Control of the Routing of Server Log Data

Defendants' final objection is a cryptic argument that the Magistrate Judge's factual finding that "Defendants have the ability to manipulate at will how the Server Log Data is routed" is clearly erroneous because it was based on insufficient evidence. In support of this contention, Defendants state that "Panther," the third-party service Defendants recently began using that prevents requests being received in the RAM of Defendants' servers, "never logged." However, as Defendants' representative testified during the Magistrate Judge's evidentiary hearing, Defendants "could disengage and resume the functions currently performed by Panther if directed to log the Server Log Data in issue." (May 29 Order 10:27-28 (citing RT 72, 103-04).)

The Magistrate Judge's factual findings were based on a full day of testimony, including testimony by expert witnesses called by both parties, as well as hundreds of pages of briefing, technical declarations, and even multiple rounds of supplemental briefing. Her finding that the "data in issue which is currently routed to a third party entity under contract to defendants and received in said entity's RAM . . . is within defendants' possession, custody or control by virtue of defendants' ability to manipulate at will how the data in issue is routed" was founded on her "consideration of the extensive arguments and evidence presented" and "the court's assessment of the credibility of the declarants and witnesses." (May 29 Order 1:25-2:8.) Moreover, the Magistrate Judge's decision with respect to Defendants' ability to route the Server Log Data to themselves or through Panther at will was also based on "the change in the method of operation" from routing the data to Defendants' servers to employing Panther

"and the timing thereof," as Defendants engaged Panthers' services just one month prior to the Magistrate Judge's evidentiary hearing. (*Id.* at 8:24-10:28.) As the record reflects that Defendants have the ability to reroute the Server Log Data through their own servers, should it prove impracticable for Defendants to acquire the information from Panther, the Court finds that the Magistrate Judge's finding that Defendants' control the routing of the Server Log Data was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion for Review (docket no. 194).

**IT IS SO ORDERED.**

Dated: August 24, 2007

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date August 20, 2007

Title Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al.

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Nancy Hackney | none | none |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| none | none |

**Proceedings:** (IN CHAMBERS)

**ORDER DENYING EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF AUGUST 8, 2007 ORDER**

Defendants' Ex Parte Application for Stay of Enforcement of August 8, 2007 Order Pending Review is **DENIED**. The Ex Parte Application does not meet the requisite standards for issuance of a stay and is untimely in that it was filed after defendants were required to comply with the August 8, 2007 Order.

IT IS SO ORDERED.

Initials of Deputy Clerk nhac

DOCKETED ON CM
AUG 2 1 2007
BY 057

247

DOCKETED ON CM
AUG 10 2007
BY 110

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No CV 06-1093 FMC(JCx) Date August 8, 2007

Title Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al.

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| None | None |

**Proceedings:** **(In Chambers)**

**ORDER (1) GRANTING PLAINTIFFS' EX PARTE APPLICATION; (2) GRANTING PLAINTIFFS' REQUEST FOR SANCTIONS, ATTORNEYS' FEES AND COSTS; (3) DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS; AND (4) CAUTIONING DEFENDANTS REGARDING POTENTIAL NON-MONETARY CONSEQUENCES OF FURTHER VIOLATIONS OF DISCOVERY OBLIGATIONS AND ORDERS**

Pending before the court is Plaintiffs' Ex Parte Application to Enforce Compliance with Court's May 3 Order, and For Attorneys' Fees and Costs ("Ex Parte Application")[1]

The Ex Parte Application seeks to enforce compliance with this court's May 3, 2007 order granting plaintiffs' April 10, 2007 motion to compel the production of documents and for expenses, including attorneys' fees ("May 3 Order")[2] The May 3 Order directed defendants to (i) produce, by no later than May 14, 2007, all documents responsive to request nos 2, 6, 9, 10,[3] 11, 14, 16, 20, 22, 26, 27,

---

[1]The court has received, reviewed, and considered the Ex Parte Application, the supporting declaration of Katherine A. Fallow with attached exhibits, defendants' opposition to the Ex Parte Application, defendants' supporting declaration of defendant Justin Bunnell, plaintiffs' reply, the second declaration of Katherine A. Fallow with attached exhibits, and plaintiffs' supplemental reply

[2]The May 3 Order was preceded by a February 13, 2007 Order (""February Order") granting plaintiffs' initial motion to compel the production of documents. The February Order directed, inter alia, that defendants, by no later than February 23, 2007: (i) produce any unproduced non-privileged existing documents responsive to certain of plaintiff's document requests, including request nos 6, 10, 14 and 42; and (ii) produce any privilege log as to the requests in issue in said motion (request nos 2, 6, 9, 10, 11, 14, 16, 20, 22, 26, 27, 40, 41 and 42) The February Order further cautioned defendants (in boldface print) that the failure timely to produce an adequate privilege log may be deemed a waiver of the privilege

[3]As to request no. 10, the May 3 Order did not encompass "server log data" which was then the subject of another motion pending before this court, and is currently pending before the assigned District Judge on review.



240

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date August 8, 2007

Title Columbia Pictures Industries, Inc., et al v. Justin Bunnell, et al.

40, 41, and 42 except privileged documents identified on a privilege log produced no later than February 23, 2007 (and which existed prior to, or as of that date); (ii) produce all documents responsive to such requests which existed on or before February 23, 2007 and were not included on a privilege log produced by that date; and (iii) produce, by no later than May 14, 2007, a supplemental privilege log with respect to those documents responsive to such requests that came into existence after February 23, 2007 and had been withheld based on a privilege claim. The May 3 Order cautioned defendants (in boldface print) that the failure timely to produce the supplemental privilege log may be deemed a waiver of the privilege. The May 3 Order further directed defendants to pay plaintiffs $500 per day for each day beyond May 14, 2007 that defendants failed to comply with the May 3 Order.

The Ex Parte Application specifically requests that the court: (1) order the immediate production of certain outstanding categories of documents responsive to plaintiffs' document requests, namely (a) financial and corporate documents (request nos. 2, 6, 26, 27, 40 and 41); (b) email accounts (request nos. 20, 22); (c) Google Analytics Reports (request no. 20); (d) forum software,[4] and (e) an unredacted user registration table (request no. 22); (2) expressly warn defendants that their failure fully to comply will result in the court making a report and recommendation for non-monetary sanctions, including evidentiary sanctions and, as appropriate, terminating sanctions; (3) deem defendants' privilege waived as to any claimed privileged documents not identified on a privilege log timely produced to plaintiffs by May 14, 2007 as set forth in the May 3 Order; (4) order payment of sanctions of $500 a day for non-compliance since May 14, 2007, as set forth in the May 3 Order; and (5) order defendants to pay plaintiffs' attorneys fees and costs incurred in making this motion, pursuant to Fed. R. Civ. P. 37(b). Defendants also request attorneys' fees and costs incurred in opposing the Ex Parte Application.

Based on the court's consideration of the arguments and evidence presented in conjunction with the Ex Parte Application, IT IS HEREBY ORDERED:

1. The Ex Parte Application is granted. Defendants are **forthwith** to produce documents/ items as set forth below.

2. Defendants shall produce to the extent not already produced, all financial and corporate documents responsive to request nos. 2, 6, 26, 27, 40 and 41 in their possession, custody and control. This encompasses an obligation to make reasonable inquiry of third parties (such as financial institutions, attorneys in Nevis, etc ) who are defendants' agents or over whom defendants have control These documents further specifically include, to the extent not already produced, bank/corporate records which are available to defendants upon request, such as Valence Media account records at Bank of America, account records for the three accounts referenced in paragraph 6 of the Declaration of Katherine A Fallow filed June 26, 2007, financial books and tax records for Valence Media and Zerobit Studios, LLC, and records reflecting income received by defendants in relation to TorrentSpy from Valence Media, Zerobit Studios, LLC, Vernon Equities, and other entities.

[4]Plaintiffs alternatively request that defendants be directed to provide plaintiffs with all of their configurations, graphics, and other modifications to the forum software so that plaintiffs may purchase the generic software and configure it to be identical to defendants' versions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No CV 06-1093 FMC(JCx) Date August 8, 2007

Title Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al.

3 Defendants shall produce to the extent not already produced, all email communications responsive to request nos. 20 and 22 in their possession, custody and control, including (i) emails to/from the email accounts of Wes Parker and Forrest Parker; (ii) emails from Justin Bunnell's e-mail accounts, including justin@valencemedia com, (iii) emails from the staff@torrentspy com account; (iv) emails from the Torrentspy "admin" account; (v) emails from the Torrentspy "feedback" account; (vi) e-mails from the Torrentspy "sales" account, if any; and (vii) e-mails from the forums@torrentspy com account and feedback@torrenspy.com, if any

4. Defendants shall produce to the extent not already produced all Google Analytics Reports in their possession, custody or control (including those available upon reasonable inquiry to appropriate third parties) concerning the number of TorrentSpy users on a daily and monthly basis

5. With respect to the "forum software" in issue, plaintiffs' alternative request is granted. Defendants are directed to provide plaintiffs with all of their configurations, graphics, and other modifications to the forum software in issue so that plaintiffs may purchase the generic software and configure it to be identical to defendants' versions.

6. Defendants are directed to produce an unredacted version of the user registration table Defendants previously had an opportunity to litigate this issue and failed to prevail. The court will not revisit its prior ruling at this juncture.

7. Defendants are directed to produce all allegedly privileged documents responsive to request nos. 2, 6, 9, 10, 11, 14, 16, 20, 22, 26, 27, 40, 41, and 42 which (a) existed on or before February 23, 2007 and were not included in the February 23 privilege log – these documents appear to include documents listed as nos. 57-77 on the supplemental privilege log belatedly provided to plaintiffs on February 25, 2007; and (b) came into existence between February 24, 2007 and May 14, 2007 and were not included in a privilege log produced by May 14, 2007 Defendants are deemed to have waived any privilege with respect to such documents

8. As defendants have failed or failed timely to comply with the May 3, 2007 Order, defendants are directed to pay to plaintiffs $30,000 which represents the sum of $500 per day for each day beyond May 14, 2007 that defendants failed to comply with the May 3 Order up to and including July 13, 2007 – the date on which plaintiffs represent that responsive documents were still outstanding. The pleadings before the court demonstrate that the defendants have failed or failed timely to comply with the May 3 Order – not the first order with which defendants have failed to comply Among other conduct, defendants belatedly produced on July 10, 2007 – the night before the deposition of Wes Parker and two days before the deposition of Forrest Parker – a significant volume of emails from the accounts of Wes Parker and Forrest Parker. Moreover, while defendants have represented in their opposition to the Ex Parte Application that they would produce the "sent mail" folders from the admin@torrentspy.com and feedback@torrentspy.com email accounts because they inadvertently failed to include such documents in their prior production, plaintiffs represent in their supplemental reply, that defendants still had not produced such documents as of July 13, 2007.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No | CV 06-1093 FMC(JCx) | Date | August 8, 2007 |
| Title | Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al. | | |

9 Plaintiffs' request for attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(b)(2) is granted to the extent the attorneys' fees and costs exceed the sum awarded above, as defendants have not demonstrated that noncompliance with the May 3 Order was substantially justified or an award is otherwise unjust. Indeed, the record reflects that defendants failed to make a reasonable inquiry in an effort to locate the documents requested For example, defendant Bunnell conceded that he failed to inquire with Bank of America as to whether he could obtain financial records older than six months from his online bank account that were responsive to plaintiffs' document requests. Moreover, defendants appear to have destroyed relevant financial records referenced in plaintiffs' reply at page 4, lines 20-21, after the litigation commenced. Plaintiffs are directed to file a declaration setting forth the exact hours worked by counsel in connection with defendants' failure to comply with the May 3 Order, the usual hourly fees of such counsel, and proof of any costs incurred by August 23, 2007. (If the amount in issue does not exceed the sum awarded above, plaintiffs may instead file a document notifying the court of that fact). Defendants may file an opposition challenging the reasonableness of the hours or hourly rates and costs by September 6, 2007. The matter of the amount of fees and costs to be ordered will then be deemed submitted, and pursuant to Local Rule 7-15, decided without further oral argument

10. Defendants' request for attorneys' fees and costs is denied.

**11. Defendants are cautioned that the failure to produce documents in compliance with this order by August 16, 2007, or any future failure to comply with defendants' discovery obligations or other discovery orders may result in a recommendation to the assigned District Judge to impose further monetary sanctions as well as non-monetary sanctions in a form authorized by Fed. R. Civ. P. 37(b)(2) and/or other applicable law, including but not limited to evidentiary sanctions, an adverse jury instruction, and/or terminating sanctions.**

IT IS SO ORDERED.

Initials of Deputy Clerk kc

Priority ✓
Send ✓
Enter —
Closed —
JS-5/JS-6 —
JS-2/JS-3 —
Scan Only —

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date July 27, 2007

Title Columbia Pictures Industries, Inc. v. Justin Bunnell, et al.

DOCKETED ON CM
JUL 31 2007
BY 110

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER**

On July 23, 2007, plaintiffs filed an "Ex Parte Application for a Protective Order Regarding Defendants' Notice of Taking Oral Deposition of Plaintiffs and for Attorneys' Fees and Costs" ("Ex Parte Application") and a supporting declaration of Katherine A Fallow ("Fallow Decl ") with attached exhibits ("Fallow Exhibit (or Ex )"). On July 25, 2007, defendants filed an Opposition to the Ex Parte Application and supporting declarations of Kirk J Retz ("Retz Decl.") and Jared R. Smith ("Smith Decl.), the latter of which has exhibits attached ("Smith Exhibit (or Ex )")

On or about July 2, 2007, defendants served a notice of subpoena for deposition of plaintiffs most knowledgeable on 98 topics identified in an exhibit attached thereto ("deposition topics"). (Fallow Decl. ¶ 2; Fallow Ex. 1, Retz Decl. ¶ 2, Smith Decl. ¶ 2, Smith Ex. A). The depositions are currently scheduled for August 1-2, 2007. (Retz Decl. ¶ 2). The Ex Parte Application primarily requests that the court limit the deposition topics and the scope of such depositions to those topics listed in Fallow Exhibit 11 ("plaintiffs' proposed deposition topics").[1] Defendants urge the court to deny the Ex Parte Application, and to require the deponents to testify regarding the deposition topics or, alternatively, the topics proposed in Smith Exhibit E ("defendants' alternative proposed deposition topics").

As a threshold matter the court addresses the parties' opposing contentions regarding the impact of the court's prior July 19, 2007 order regarding the scope of the MPAA deposition on the instant dispute ("July 19 Order") The court's consideration of the instant Ex Parte Application is not constrained by the July 19 Order as the July 19 Order (i) was issued in an expedited fashion because it related to a deposition scheduled for the next day, (ii) was issued without benefit of consideration of defendants' opposition brief (which was filed after the court ruled), and (iii) was expressly without prejudice to the right of the parties to move for an order allowing or limiting examination on additional categories subject to the scheduling order in this case.

[1] As plaintiffs appear to have no objections to the following deposition topics in their original form, the court will not address such topics and imposes no limitations relative thereto. 11, 36, 39, 46, 57, 60, 70, 73, 75, 76, 78, 92, and 93. As the Ex Parte Application does not specifically articulate any objections as to the following deposition topics, the court likewise will not address such topics and imposes no limitations relative thereto: 1-4, 17, 20, 62, 63, 77, 90, 95, and 98.

226

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No CV 06-1093 FMC(JCx) Date July 27, 2007

Title Columbia Pictures Industries, Inc. v. Justin Bunnell, et al.

Based upon the court's consideration of the above-described pleadings, IT IS HEREBY ORDERED:

1. The Ex Parte Application is granted in part and denied in part as set forth below, and denied to the extent it seeks sanctions.

2. As to topics 5-7, 10, 12-14, 21, 29, 30, 32-35, 37, 38, 40-43, 45, 47, 54-56, 58, 66, 67, 69, 91 and 97 for which plaintiffs have asserted attorney-client/work product privilege objections, the Ex Parte Application is denied without prejudice to the extent it seeks to preclude inquiry on such topics based upon such privileges[2] In the event defendants inquire about matters which call for responses covered by the attorney-client or attorney work-product privileges, Fed. R. Civ. P. 30(d)(1) affords to plaintiffs the right to instruct the deponents not to answer The court in this instance, declines to authorize in advance, a refusal to answer questions predicated on such privileges without benefit of having before it, among other things, the precise questions in issue.

3. As to topics 7-9, 44, and 89: Absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of works other than those listed on Exhibit A to the Complaint to demonstrate **liability**, defendants are permitted to inquire about the works listed on Exhibit A to the Complaint and works currently alleged to have been infringed by defendants which plaintiffs currently plan to include in a summary judgment motion ("Additional Works"), and no other works If plaintiffs/plaintiffs' counsel affirmatively make such representation, defendants may inquire only about works listed on Exhibit A to the Complaint

4. As to topics 15, 16, 26, and 53: (a) defendants may inquire about general or unrestricted distribution of works or parts of works listed in Exhibit A to the Complaint from October 1, 2002 to February 23, 2006, (b) absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of works reflected on Exhibit A beyond February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works beyond such date; (c) absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of the Additional Works from October 1, 2002 to February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works up to such date; and (d) absent an affirmative representation on the record at the deposition by plaintiffs/ plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of the Additional Works beyond February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works beyond such date. Defendants may not otherwise make inquiry regarding these topics.

---

[2]The court notes that even though plaintiffs argue that topic 7 calls for privileged information, such topic, albeit in a narrowed form, is included in plaintiffs' proposed deposition topics.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date July 27, 2007

Title Columbia Pictures Industries, Inc. v. Justin Bunnell, et al.

5 As to topics 27, 49, 74 and 96, the Ex Parte Application is granted

6. As to topics 18, 19, 22-25, 30, 31, 48, 50-52, 59, 61, 71, 72 and 94, the Ex Parte Application is granted.

7. As to topics 28, 64, 65, 68, and 79-88, the Ex Parte Application is granted. Defendants are precluded from inquiring about damages/injunctive relief as contemplated by such topics at this stage of the proceedings.

8. To the extent the court has granted the Ex Parte Application, plaintiffs' counsel shall have the right to instruct the deponents not to answer questions as to such topics.

9 Nothing in this order shall be construed to reopen discovery in the related case of Bunnell v MPAA, No. 06-3206 FMC(JCx)

IT IS SO ORDERED

Initials of Deputy Clerk kc

DOCKETED ON CM
JUL 19 2007
BY 197

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. CV 06-1093 FMC(JCx) Date July 19, 2007

Title Columbia Pictures Industries, Inc. v. Justin Bunnell, et al.

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| None | None |

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

**Proceedings:** **(In Chambers) ORDER GRANTING IN PART AND DENYING IN PART MPAA'S EX PARTE APPLICATION**

On July 18, 2007, the Motion Picture Association of America ("MPAA") filed an "Ex Parte Application for a Protective Order Regarding Defendants' Subpoena for Deposition of the MPAA, and for Attorneys' Fees and Costs" ("Ex Parte Application") and a supporting declaration of Katherine A. Fallow ("Fallow Declaration") with attached exhibits ("Fallow Exhibit __"). The Ex Parte Application primarily requests that the court limit the scope of questioning at a deposition scheduled for July 20, 2007, to those topics listed in paragraph 3 of Fallow Exhibit 12. Although defendants have not filed an opposition thereto, the Ex Parte Application reflects that defendants disagree with the MPAA's position as reflected in the Ex Parte Application. The Ex Parte Application also requests sanctions against defendants

IT IS HEREBY ORDERED:

1. The Ex Parte Application is granted in part as set forth below, and denied without prejudice to the extent it seeks sanctions.

2. The scope of the questioning at the July 20, 2007 deposition of the MPAA representative is limited to those topics listed in paragraph 3 of Fallow Exhibit 12, subject to any applicable privilege or any protection afforded by the work product doctrine. Counsel for MPAA and plaintiffs shall have the right to instruct the deponent not to answer questions that seek to go beyond the aforementioned topics

3. This order is without prejudice to the right of any party to move the court for an order allowing or limiting examination on additional categories subject to the Amended Scheduling Order filed April 12, 2007.

4. Nothing in this order shall be construed to reopen discovery in the related case of Bunnell v. MPAA, No. 06-3206 FMC(JCx)

IT IS SO ORDERED.

Initials of Deputy Clerk kc



222