Form 6. Civil Appeals Docketing Statement | **USCA DOCKET # (IF KNOWN)**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
# CIVIL APPEALS DOCKETING STATEMENT

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| | |
|---|---|
| **TITLE IN FULL:** | **DISTRICT:** CENTRAL   **JUDGE:** FLORENCE MARIE COOPER |
| COLUMBIA PICTURES INDUSTRIES, INC., et al.<br>    Plaintiffs,<br><br>vs.<br><br>JUSTIN BUNNELL, et al,<br>    Defendants.<br>[see Attachment for Full Title] | **DISTRICT COURT NUMBER:** 2:06-cv-01093-FMC-JC |
| | **DATE NOTICE OF APPEAL<br>FILED:** AUGUST 28, 2008   **IS THIS A CROSS-APPEAL?**   ☐ **YES** |
| | **IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY,<br>PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY):**<br> Co-Defendant Appeals, Docket Nos. 08-55940, 08-56299 and 08-56300 |

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**

 Plaintiff motion picture companies sued defendants for vicarious and contributory copyright infringement
 [see Attachment for Description]

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

 [see Attachment for Principal Issues]

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):**

 Bankruptcy proceedings pending in US Bankruptcy Court, Central District of California as to Justin Bunnell, Case No. 2:08-bk-15938-BR, Wes Parker, Case No. 2:08-bk-15854-BR and Forrest Parker, Case No. 2:08-bk-14538-BR. Valence Media, LTD.'s appeal pending as Docket Number 08-55940. Justin Bunnell's appeal is pending as Appeal Docket No. 08-56299. Wes Parker's appeal is pending as Appeal Docket No. 08-56300. Matter on appeal, Bunnell v. MPAA, Docket Number 07-56640.

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ **Possibility of settlement**

☐ **Likelihood that intervening precedent will control outcome of appeal**

☒ **Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (specify)**

 Likely motion to consolidate appeals as to all four defendants in underlying case, which may delay briefing schedule on appeal.

☒ **Any other information relevant to the inclusion of this case in the Mediation Program**

 The three individual defendants, Justin Bunnell, Wes Parker and Forrest Parker are in bankruptcy so that any mediation will need to involve bankruptcy counsel and possibly representative from the bankruptcy trustees. Mediation should also include issues in the matter on appeal, Bunnell v. MPAA, Docket Number 07-56640.

☐ **Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges.**

Dockets.Justia.com

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT / ORDER APPEALED | RELIEF |

**FEDERAL**
- ☒ FEDERAL QUESTION
- ☐ DIVERSITY
- ☐ OTHER (SPECIFY)

**APPELLATE**
- ☒ FINAL DECISION OF DISTRICT COURT
- ☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT
- ☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):
- ☐ OTHER (SPECIFY):

**TYPE OF JUDGMENT / ORDER APPEALED**
- ☒ DEFAULT JUDGMENT
- ☐ DISMISSAL / JURISDICTION
- ☐ DISMISSAL / MERITS
- ☐ SUMMARY JUDGMENT
- ☐ JUDGMENT / COURT DECISION
- ☐ JUDGMENT / JURY VERDICT
- ☐ DECLARATORY JUDGMENT
- ☐ JUDGMENT AS A MATTER OF LAW
- ☒ OTHER (SPECIFY):

Other orders including, but not limited to, order for terminating sanctions, the entry of default judgment and permanent injunction, discovery orders and order denying motion to dismiss.

**RELIEF**
- ☒ DAMAGES: SOUGHT $ According to proof AWARDED $ $110,970,000
- ☒ INJUNCTIONS:
  - ☒ PRELIMINARY
  - ☒ PERMANENT
  - ☒ GRANTED
  - ☐ DENIED
- ☒ ATTORNEY FEES: SOUGHT $ pending AWARDED $ pending
  - ☒ PENDING
- ☒ COSTS: $ pending

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**
1. COPIES OF ORDER / JUDGMENT APPEALED FROM ARE ATTACHED.
2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED ( SEE 9TH CIR. RULE 3-2
3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.
4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS, INCLUDING DISMISSAL OF THIS APPEAL.

| | |
|---|---|
| _[signature]_ | 8/28/2008 |
| Signature | Date |

## COUNSEL WHO COMPLETED THIS FORM

NAME: Ira P. Rothken ⊞

FIRM: Rothken Law Firm LLP ⊞

ADDRESS: 3 Hamilton Landing, Suite 280
Novato, CA 94949

E-MAIL: ira@techfirm.com ⊞

TELEPHONE: 415-924-4250 ⊞

FAX: 415-924-2905 ⊞

**\* THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL\***
**\* IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS\***

**TITLE IN FULL:**

COLUMBIA PICTURES INDUSTRIES, INC., DISNEY ENTERPRISES, INC. PARAMOUNT PICTURES CORPORATION, TRISTAR PICTURES, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WARNER BROS. ENTERTAINMENT, INC., Delaware Corporation, UNIVERSAL CITY STUDIOS LLLP, and UNIVERSAL CITY STUDIOS PRODUCTIONS, LLLP, Delaware limited liability partnerships,

Plaintiffs,

    vs.

JUSTIN BUNNELL, FORREST PARKER, WES PARKER, individuals, VALENCE MEDIA, LLC, a limited liability company, and DOES 1-10,

Defendants.

**BRIEF DESCRIPTION OF ACTION AND RESULT BELOW:**

Plaintiff motion picture companies sued defendants for vicarious and contributory copyright infringement for operation of a search engine for dot-torrent files allegedly associated with plaintiffs' copyrighted content. The Court granted terminating discovery sanctions and awarded statutory damages of $30,000 per infringement pursuant to 17 U.S.C. § 504(c), for 3,699 infringements allegedly shown, for a judgment of $110,970,000 and imposed a permanent injunction.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

The principal issues to be raised on appeal include, but are not limited to, the following:
1. Whether the court erred in assessing damages in excess of pleadings (See, e.g. Fong v. United States, 300 F.2d 400 (9th Cir. 1962); Silge v.

Merz, 510 F.3d 157 (2d Cir. 2007); Growth Properties, Inc. v. Klingbeil Holding Co., 419 F. Supp. 212 (D. Md. 1976).);

2.  Whether the court erred as to extraterritoriality issues (e.g. plaintiffs were not required to establish that any direct infringements were not extraterritorial and occurred in the United States so that there is subject matter jurisdiction regarding such infringements. (see, Subafilms, Ltd. v. MGM-PatheCommunications Co., 24 F.3d 1088 (9th Cir.) (enbanc), cert. denied, 513 U.S. 1001 (1994.))

3.  Whether the court erred as to secondary copyright infringement liability (e.g. plaintiffs were not required to establish that there has been direct infringement by third parties. (See, Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1169 (9th Cir. 2007); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); Matthew Bender & Co. v. West Publishing Co., 158 F.3d 693, 706 (2d Cir. 1998) (failure to identify any direct infringer other than plaintiffs' counsel.)).

4.  Whether the court erred related to privacy rights and balancing the protections afforded to the parties and third parties;

5.  Whether the preliminary and permanent injunctions were overbroad;

6.  Whether the court erred in rulings on novel e-discovery issues;

7.  Whether the court erred in rulings demonstrating a persistent discovery bias that impermissibly enlarged Appellees' discovery powers while preventing appellant from obtaining discovery needed to defend;

8.  Whether the court's rulings impermissibly meted out excessive sanctions;

9.  Whether the court erred in issuing terminating sanctions premised on improper discovery;

10. Whether the court erred in granting unjustified and unjustifiable default judgment and permanent injunction;

11. Whether the court's rulings allowed due process violations to occur;

12. Whether the court's rulings impermissibly enlarged powers of corporate intellectual property owners at the expense of individuals and entrepreneurs and creating is a serious negative impact on Internet development;

13. Whether the court's rulings impermissibly impaired Internet privacy and free speech rights on the Internet.

PROOF OF SERVICE

I am over the age of 18 years, employed in the county of Marin, and not a party to the within action; my business address is 3 Hamilton Landing, Suite 280, Novato, CA 94949.

On August 28, 2008, I served the within:

**CIVIL APPEALS DOCKETING STATEMENT**

By EMAIL and EFILING on the person(s) or entities in that manner and address as follows:

**VIA EMAIL AND EFILING**
**Steven B Fabrizio**
**Katherine A Fallow**
**Duane Charles Pozza**
Jenner and Block
1099 New York Avenue, N.W. Suite 900,
Washington, DC 20001-4412
Telephone: 202-639-6000
Facsimile: 202-639-6066
Email: sfabrizio@jenner.com
Email: kfallow@jenner.com
Email: dpozza@jenner.com

COUNSEL FOR PLAINTIFFS

| | |
|---|---|
| **VIA EFILING** | **VIA EMAIL AND EFILING** |
| **Gregory Paul Goeckner** | **Karen B. Thorland** |
| **Lauren T Nguyen** | Loeb and Loeb |
| Motion Picture Association of America | 10100 Santa Monica Blvd, Ste 2200 |
| 15503 Ventura Blvd | Los Angeles, CA 90067-4164 |
| Encino, CA 91436 | 310-282-2000 |
| 818-995-6600 | Email: kthorland@loeb.com |
| | |
| COUNSEL FOR PLAINTIFFS | COUNSEL FOR PLAINTIFFS |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 28, 2008.

_Jared R Smith_

1

**PROOF OF SERVICE**

# Index of Judgment and Orders

| DOCKET DATE | DOCKET NO. | DESCRIPTION |
|---|---|---|
| 08/14/2008 | 450 | JUDGMENT AND PERMANENT INJUNCTION ("Final Judgment") by Judge Florence-Marie Cooper, in favor of Plaintiffs |
| 04/11/2008 | 352 | ORDER, by Judge Florence-Marie Cooper, DENYING EX PARTE APPLICATION FOR LEAVE TO FILE A MEMORANDUM IN CONNECTION WITH DEFAULT HEARING, Docket No. 348. |
| 04/04/2008 | 346 | TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION TO PRESERVE ASSETS by Judge Florence-Marie Cooper. |
| 12/13/2007 | 325 | ORDER, by Judge Florence-Marie Cooper, GRANTING PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS. |
| 10/31/2007 | 321 | ORDER, by Judge Florence-Marie Cooper, DENYING MOTION FOR REVIEW OF AUGUST 8, 2007 ORDER FOR SANCTIONS, Docket No. 240. |
| 08/27/2007 | 255 | ORDER, by Judge Florence-Marie Cooper, DENYING EX PARTE APPLICATION FOR STAY OF AUGUST 8, 2007 ORDER FOR SANCTIONS, Docket No. 240. |
| 08/24/2007 | 254 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS MOTION FOR REVIEW OF ORDER REGARDING SERVER LOG DATA, Docket No. 177. |
| 08/20/2007 | 247 | ORDER, by Magistrate Judge Jacqueline Chooljian, DENYING DEFENDANTS' EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF AUGUST 8, 2007 ORDER, Docket No. 240, PENDING REVIEW. |
| 08/08/2007 | 240 | ORDER, by Magistrate Judge Jacqueline Chooljian, (1) GRANTING PLAINTIFFS' EX PARTE APPLICATION; (2) GRANTING PLAINTIFFS' REQUEST FOR SANCTIONS, ATTORNEYS' FEES AND COSTS; (3) DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS; AND (4) CAUTIONING DEFENDANTS REGARDING POTENTIAL NON-MONETARY CONSEQUENCES OF |

| | | |
|---|---|---|
| | | FURTHER VIOLATIONS OF DISCOVERY OBLIGATIONS AND ORDERS. |
| 07/27/2007 | 226 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR PROTECTIVE ORDER. |
| 07/19/2007 | 222 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART MPAA'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER REGARDING DEFENDANTS' SUBPOENA FOR DEPOSITION OF THE MPAA, AND FOR ATTORNEY'S FEES AND COSTS. |
| 06/22/2007 | 179 | ORDER, by Judge Florence-Marie Cooper, AMENDING COURT'S ORDER FILED JUNE 21, 2007 (Docket No. 178). The Court hereby amends its ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (Docket No. 178) AS FOLLOWS ON THE FIRST PAGE: This matter is before the Court on Defendants' Motion for Review and Reconsideration of Certain Rulings of the Magistrate Judge on Defendants' Motion to Compel Production of Documents Pursuant to Subpoena to the Motion Picture Association of America (MPAA), filed on April 10, 2007 May 30, 2007 (Docket No. 132, Docket No. 173). AND ON PAGE 7: For the foregoing reasons, the Court hereby DENIES Defendants' Motion For Review and Reconsideration (Docket No. 132 Docket No. 173).In all other aspects and particulars, the order is unchanged. ***MINUTE ORDER NOT AVAILABLE ON PACER**** |
| 06/21/2007 | 178 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS MOTION FOR REVIEW AND RECONSIDERATION, Docket No. 132. |
| 05/29/2007 | 177 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART AND DENYING IN PART PLAINTIFFS MOTION TO REQUIRE DEFENDANTS TO PRESERVE AND PRODUCE SERVER LOG DATA AND FOR EVIDENTIARY SANCTIONS; AND DENYING DEFENDANTS REQUEST FOR ATTORNEYS FEES AND COSTS. |
| 05/15/2007 | 156 | ORDER, by Magistrate Judge Jacqueline Chooljian, |

| | | DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION. |
|---|---|---|
| 05/03/2007 | 135 | ORDER, by Magistrate Judge Jacqueline Chooljian, (1) GRANTING PLAINTIFFS' MOTION TO COMPEL DOCUMENTS; (2) GRANTING PLAINTIFFS' REQUEST FOR DEFENDANTS' REVIEW AND RE-DESIGNATION OF HIGHLY CONFIDENTIAL DOCUMENTS; (3) TENTATIVELY GRANTING PLAINTIFFS' REQUEST FOR REASONABLE EXPENSES AND ATTORNEYS' FEES AND SETTING DATE FOR DEFENDANTS TO BE HEARD RE SAME; (4) DENYING DEFENDANTS' REQUEST FOR REASONABLE EXPENSES AND ATTORNEYS' FEES; AND (5) RE POTENTIAL NON-COMPLIANCE WITH ORDER. |
| 04/16/2007 | 118 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS' MOTION FOR REVIEW AND RECONSIDERATION OF ORDER DENYING MOTION TO COMPEL, Docket No. 85. |
| 02/13/2007 | 85 | ORDER, by Magistrate Judge Jacqueline Chooljian, GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET 2 AND DENYING DEFENDANTS' REQUEST FOR SANCTIONS, Docket No. 69; GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, Docket No. 52; AND DENYING PLAINTIFFS' REQUEST TO DELAY RULING ON MOTIONS. |
| 05/10/2006 | 22 | ORDER, by Judge Florence-Marie Cooper, DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. |

1 | JENNER & BLOCK LLP
2 | STEVEN B. FABRIZIO (*pro hac vice*)
    sfabrizio@jenner.com
3 | KATHERINE A. FALLOW (*pro hac vice*)
    kfallow@jenner.com
4 | DUANE C. POZZA (State Bar No. 225933)
    dpozza@jenner.com
5 | 1099 New York Avenue, NW
6 | Suite 900
7 | Washington, DC 20001                          **JS-6**
8 | Telephone: 202-639-6000
    Facsimile: 202-639-6066
9 |
10 | *Attorneys for Plaintiffs*

11 | UNITED STATES DISTRICT COURT
12 | CENTRAL DISTRICT OF CALIFORNIA

13 | COLUMBIA PICTURES                )
14 | INDUSTRIES, INC., DISNEY         )    **2:06-cv-01093-FMC-JCx**
     ENTERPRISES, INC., PARAMOUNT     )
15 | PICTURES CORPORATION,            )    **JUDGMENT AND**
     TRISTAR PICTURES, INC.,          )    **PERMANENT INJUNCTION**
16 | TWENTIETH CENTURY FOX FILM       )
17 | CORPORATION, WARNER BROS.        )
     ENTERTAINMENT INC.,              )
18 | UNIVERSAL CITY STUDIOS LLLP,     )
19 | and UNIVERSAL CITY STUDIOS       )
     PRODUCTIONS LLLP,                )
20 |          Plaintiffs,             )
21 |     v.                           )
22 |                                  )
     JUSTIN BUNNELL, FORREST          )
23 | PARKER, WES PARKER, VALENCE      )
     MEDIA, LLC, and DOES 1-10,       )
24 |          Defendants.             )
25 |
26 |
27 |
28 |

1  The Court, having terminated this case as a sanction for Defendants'

2  misconduct and having entered default, now renders final judgment as to all claims

3  of Plaintiffs against **Defendant Forrest Parker**.  Pursuant to Federal Rule of Civil

4  Procedure 54(b), this Court determines that there is no just reason for delay in

5  entering final judgment against Defendant Forrest Parker.  It is therefore

6

7  ORDERED, ADJUDGED and DECREED that: Judgment shall be entered

8  against Forrest Parker (Defendant) for willful inducement of copyright infringement,

9  contributory copyright infringement, and vicarious copyright infringement, pursuant

10  to 17 U.S.C. §§ 501, *et seq*.  It is further

11  ORDERED, ADJUDGED and DECREED that: Plaintiffs are awarded

12  statutory damages of $30,000 per infringement pursuant to 17 U.S.C. § 504(c), for

13  each of the 3,699 infringements shown, for a total judgment in the amount of

14  $110,970,000, and judgment shall be entered against Defendant in that amount.

15  Plaintiffs are awarded their costs of court.  It is further

16

17  ORDERED, ADJUDGED and DECREED that:

18  1.  For the purposes of this Permanent Injunction, the "TorrentSpy System"

19  refers to the software, websites, electronic data, forums, guides, and

20  frequently asked questions ("FAQs") that make up or support

21  www.torrentspy.com.  "Copyrighted Works" shall mean copyrighted works,

22  or portions thereof, whether now in existence or later created, in which any

23  Plaintiff (or parent, subsidiary or affiliate of any Plaintiff) owns or controls an

24  exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 *et*

25  *seq*.

26

27  2.  Defendant, and his officers, agents, servants, employees, and attorneys,

28  and all those in active concert or participation with Defendant who receive

JUDGMENT AND
PERMANENT INJUNCTION

actual notice of this Permanent Injunction shall immediately and permanently be enjoined from directly, indirectly, contributorily, or vicariously infringing in any manner any Copyrighted Works, including without limitation by engaging in any of the following activities:

(a) encouraging, promoting, soliciting, or inducing, or knowingly materially contributing to, enabling, facilitating, or assisting, any person or entity, via any computer server, computer program, website, or online system, network or service, including without limitation any peer-to-peer or file-trading network, (i) to reproduce, download, distribute, upload, or publicly perform or display any Copyrighted Work, or (ii) to make any Copyrighted Work available for reproduction, download, distribution, upload, or public performance or display, or

(b) reproducing, downloading, distributing, uploading, or publicly performing or displaying any Copyrighted Work.

3. The terms of paragraph 2 of this injunction shall not apply to any Copyrighted Work for which Defendant has obtained express written authorization or license for the use being made of such Copyrighted Work from each Plaintiff that owns or controls the rights to such Copyrighted Work, to the extent such license remains in force and valid.

4. Prior to Defendant entering into any agreement or transaction whatsoever to sell, lease, license, assign, convey, give away, distribute, loan, barter, hypothecate, encumber, pledge or otherwise transfer, whether or not for consideration or compensation, any part of the software, source code, data files, other technology, domain names, trademarks, or brands used in connection with the TorrentSpy System (a "Transfer of TorrentSpy-Related

Assets"), Defendant shall require, as a condition of any such transaction, that the transferee:

(a) submit to the Court's jurisdiction and venue,

(b) agree to be bound by the terms herein, and

(c) apply to the Court for an order adding it as a party to this Permanent Injunction.

Defendant shall not permit any Transfer of TorrentSpy-Related Assets to close until the Court has entered such an order. Defendant further shall not engage in a Transfer of TorrentSpy-Related Assets with or to any person whom Defendant knows to be engaged in conduct that would violate the terms of Paragraph 2 above.

5. The Defendant shall give notice of this Permanent Injunction to each of his respective officers, agents, servants, employees, attorneys, principals, and direct and indirect shareholders.

6. Nothing in this Permanent Injunction shall limit the right of Plaintiffs to seek to recover damages under 17 U.S.C. § 504, or costs, including attorneys' fees, under 17 U.S.C. § 505.

7. Violation of this Permanent Injunction shall expose the Defendant to all applicable penalties, including for contempt of Court.

1    8. The Court shall maintain jurisdiction over this action for the purposes of

2    enforcing this Permanent Injunction.

3    It is SO ORDERED.

4

5

6    Dated: _Aug. 14_, 2008

7                                          FLORENCE-MARIE COOPER, Judge

8                                          UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JUDGMENT AND
PERMANENT INJUNCTION

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:06-cv-01093-FMC-JCx | Date | April 7, 2008 |
|---|---|---|---|
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | |

| Present: The Honorable | FLORENCE-MARIE COOPER | |
|---|---|---|
| Alicia Mamer | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     ORDER ON EX PARTE APPLICATION    (In Chambers)

The Court has read and considered Defendants' Ex Parte Application for Leave to File a Memorandum in Connection with Default Hearing (docket no. 348), filed April 7, 2008, and Plaintiffs' Opposition thereto.  Unlike DirecTV, Inc. v. Huynh, 503 F.3d 847 (9th Cir. 2007), in which default judgment was entered after the defendants failed to appear, the Court here has already considered, and Defendants have had opportunity to attack, the sufficiency of Plaintiffs' claims.  In denying Defendants' Motion to Dismiss, the Court concluded that "Plaintiffs have sufficiently set forth their claim that Defendants are liable on theories of contributory and vicarious copyright infringement."  (May 10, 2006 Order Den. Defs.' Mot. to Dismiss for Failure to State a Claim (docket no. 22) at 8.)  Accordingly, briefing on the sufficiency of Plaintiffs' claims in light of the factual allegations in the Complaint is neither necessary nor appropriate at this time.  Defendants' request to file a memorandum of points and authorities is DENIED.

Plaintiffs shall submit their declarations in support of damages no later than April 21, 2008.  Defendants shall submit any declarations in opposition to damages by April 28, 2008.

|  | : | N/A |
|---|---|---|
| Initials of Preparer | AM | |

1   JENNER & BLOCK LLP
2   STEVEN B. FABRIZIO (*pro hac vice*)
        sfabrizio@jenner.com
3   KATHERINE A. FALLOW (*pro hac vice*)
        kfallow@jenner.com
4   DUANE C. POZZA (State Bar No. 225933)
        dpozza@jenner.com
5
6   601 Thirteenth Street, N.W.
    Suite 1200 South
7   Washington, DC  20005      NOTE: CHANGES MADE BY THE COURT
8   Telephone:  202-639-6000
    Facsimile:   202-639-6066
9
10  *Attorneys for Plaintiffs*

11                  UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13
    COLUMBIA PICTURES                    )
14  INDUSTRIES, INC., DISNEY             )   Case No. 2:06-cv-01093-FMC-JCx
15  ENTERPRISES, INC., PARAMOUNT         )
    PICTURES CORPORATION,                )
16  TRISTAR PICTURES, INC.,              )   [~~PROPOSED~~] TEMPORARY
                                         )   RESTRAINING ORDER AND
17  TWENTIETH CENTURY FOX FILM           )   ORDER TO SHOW CAUSE RE
    CORPORATION, WARNER BROS.            )   PRELIMINARY INJUNCTION TO
18  ENTERTAINMENT INC.,                  )   PRESERVE ASSETS
19  UNIVERSAL CITY STUDIOS LLLP,         )
    and UNIVERSAL CITY STUDIOS           )
20  PRODUCTIONS LLLP,                    )
21          Plaintiffs,                  )
                                         )
22      v.                               )
                                         )
23  JUSTIN BUNNELL, FORREST              )
    PARKER, WES PARKER, VALENCE          )
24  MEDIA, LLC, and DOES 1-10,           )
25          Defendants.                  )
26
27
28

1    Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order

2  to Show Cause Re Preliminary Injunction to Preserve Assets, having come before

3  the Court, the Court has considered the Application and the accompanying

4  Memorandum of Points and Authorities, Declaration of Steven B. Fabrizio dated

5  April 4, 2008, and exhibits thereto.  Based on the pleadings before it, and all matters

6  of record in this action, and having found that this is a proper case for granting a

7  temporary restraining order and an order to show cause why a preliminary injuction

8  should not issue, and that plaintiffs will suffer irreparable harm unless the requested

9  temporary restraining order is granted:

10    IT IS HEREBY ORDERED that the Application is granted, and defendants,

11  and any of their officers, agents, servants, employees, or persons in active concert or

12  participation with any of them, are hereby restrained and enjoined from selling,

13  transferring or otherwise disposing of the torrentspy.com domain, or the technology

14  that comprises the TorrentSpy website, either by acting individually or through any

15  corporation or other entity that they own, control or operate, until ~~such time as the~~

16  ~~Court has considered and ruled on plaintiffs' proposed final injunctive relief.~~ **the**

17  **hearing date of April 17, 2008.**

18    IT IS HEREBY FURTHER ORDERED that defendants show cause at  9:00

19  a.m. on  April 17, 2008, or as soon thereafter as counsel may be heard in the

20  courtroom of the Honorable Florence-Marie Cooper, Los Angeles, California, why

21  defendants, and any of their officers, agents, servants, employees, or persons in

22  active concert or participation with any of them, should not be preliminarily

23  enjoined from selling, transferring or otherwise disposing of the torrentspy.com

24  domain, or the technology that comprises the TorrentSpy website, either by acting

25  individually or through any corporation or other entity that they own, control or

26  operate, until such time as the Court has considered and ruled on plaintiffs'

27  proposed final injunctive relief.

28

1    A copy of this Temporary Restraining Order and Order to Show Cause Re

2 Preliminary Injunction to Preserve Assets, together with all accompanying legal

3 memoranda, declarations, and exhibits, shall be served upon defendants on or before

4 April 7, 2008.  Defendants' opposition papers shall be filed and served by email on

5 plaintiffs' counsel on or before April 11, 2008.  Plaintiffs'reply papers shall be filed

6 and served by email on or before April 15, 2008.

7    Plaintiff shall ~~not~~ be required to post ~~upon the issuance~~   **bond prior to the**

8 **effectiveness** of this Temporary Restraining Order and Order to Show Cause Re:

9 Preliminary Injunction to Preserve Assets, **in the amount of $100,000**.

10

11    IT IS SO ORDERED.

12

13 Dated:  April 4, 2008

14    _____

15    HON. FLORENCE-MARIE COOPER
     U.S. DISTRICT COURT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER RE PLS.' EX PARTE
APP. FOR TRO AND OSC RE
PRELIMINARY  INJUNCTION TO
PRESERVE ASSETS**

1

2

3

4

5

FILED
CLERK, U.S. DISTRICT COURT

DEC 1 3 2007

CENTRAL DISTRICT OF CALIFORNIA
BY          *cas*          DEPUTY

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10   COLUMBIA PICTURES, INC., et          2:06-cv-01093 FMC-JCx
     al.,

11

12                    Plaintiffs,          **ORDER GRANTING PLAINTIFFS'**
                                           **MOTION FOR TERMINATING**
13   vs.                                   **SANCTIONS**

14

15   JUSTIN BUNNELL, et al.,

16                    Defendants.

17

18          This matter came on for hearing on December 10, 2007 on Plaintiffs' Motion

19   for Terminating Sanctions Based on Defendants' Willful Spoliation of Key

20   Evidence (docket no. 280), filed August 30, 2007. The parties were in possession

21   of the Court's tentative decision to deny the motion. Following oral argument, the

22   matter was taken under submission.

23          Having considered the issues raised in oral argument, and reviewed the

24   evidence cited there and in the parties' papers, and for the reasons and in the manner

25   set forth below, the Court hereby GRANTS the Motion.

26   //

27   //

28   //

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous films and television programs. Defendants operate a website, www.torrentspy.com, that enables users to locate and download dot-torrent files. Using dot-torrent files and an independent computer software program, a "BitTorrent" client, users join a peer-to-peer network that facilitates the copying and distribution of the files that were the subject of the users' search. Defendants' website thereby allegedly permits Internet users to locate and download, view, store, and distribute unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows. In this way, Plaintiffs allege Defendants knowingly enable, encourage, induce, and profit from the online piracy of Plaintiffs' copyrighted works.

On February 23, 2006, Plaintiffs filed a Complaint for copyright infringement. Numerous discovery disputes have arisen between the parties. Plaintiffs now claim that Defendants willfully despoiled evidence in four ways:

1. <u>Deletion and Modification of Torrentspy User Forums Postings</u>

Plaintiffs claim that Defendants responded to the filing of this lawsuit with a plan to delete and modify "hundreds or thousands" of postings on Torrentspy forums whose content included references to copyright infringement. (Mot. at 4-8.) In a private forum posting, "Xanthus"[1] informs its volunteer moderators:

---

[1] "Xanthus" is Defendant Wes Parker. (Parker Am. Decl. ¶ 12.) Parker/Xanthus was the only person in Torrentspy's "senior management" who engaged with the forum's volunteer moderators, including MaggiePixel/Ayn Shipley. (*Id.* at ¶¶ 11-12.)

2

1    We need to make sure that these forums stay clear of anything related to
2    piracy. If people talk about piracy or ask for pirated works, then it can be
3    used against us in court. Please make sure to be on the watch for these
4    kinds of things and remove them promptly. I'd even recommend using the
5    search engine to find past threads that may hurt us.

6    (March 2, 2006 posting by "Xanthus," Fabrizio Decl. Ex. 8.) Xanthus's post
7    yielded a number of responses and proposals from moderators. On March 6,
8    2006, moderator "MaggiePixel" (whose real name is Ayn Shipley) suggested that
9    each moderator review forum threads "for content, and clos[e] threads if
10    possible." (Posting by MaggiePixel, Fabrizio Decl. Ex. 8 at 262.) She proposed
11    the creation of a hidden forum called "Archived Threads" and concluded, "From
12    a legal point of view, we need Xanthus's input on whether hiding the threads is
13    sufficient, or whether he feels the need to have the archivable threads physically
14    removed." (*Id.* at 262-263.) Xanthus posted: "MaggiePixel, this proposal is
15    perfect for our needs. Let's go ahead with this plan." (*Id.* at 264.)

16    Forum postings were modified to replace the names of copyrighted works
17    with, for example, "[some movie 1]" and "[some movie 2]." (Dec. 15, 2005
18    posting by "Flareup," edited by MaggiePixel on March 5, 2006, Fabrizio Decl.
19    Ex. 9 at 291-92; Dec. 4, 2005 posting by "Mikeb353," edited by MaggiePixel on
20    March 4, 2006, Fabrizio Decl. Ex. 10 at 295; Shipley Depo. 74: 10-24, 75: 14-
21    25.) Two forum threads were deleted entirely: a thread on how to "crack" or
22    bypass the copyright security on electronic games and a glossary of terms like
23    CAM, TS, DVDSCR, and Telecine.[2] (Shipley Depo. 59: 13-25, 60: 1-25, 65: 4-

24

25

26    [2]These terms refer to various means of copying existing programs: "CAM"
      refers to copies of films made by using a hand-held camera in a movie theater.
27    Stephen Bates, *Coming Soon to a P.C. Near You: The Past, Present, and Future*
      *of Movie Copyright Infringement on the Internet*, 5 VA. SPORTS & ENT. L.J.
28

3

8.) This process was implemented to "clean up" the site in response to the lawsuit, with an eye to avoiding future complaints of copyright infringement. (Parker Am. Decl. at ¶ 18.) Torrentspy claims that it assumed Plaintiffs would have already seen the existing forum postings. (*Id.*) Thus, its intention was not to destroy evidence but to "steer clear of anything related to piracy." (*Id.* at ¶ 19.) This contention is simply not believable. The destruction of evidence clearly relevant on the issue of copyright infringement cannot be justified by the assumption that it's already been viewed by the plaintiffs.

Most piracy-related threads were closed and removed from public view, leaving their content intact, rather than modified. (*Id.* at 21.) In total, MaggiePixel estimates that she reviewed 2,792 forum threads. (Shipley Depo. 65: 6-7.)

Vbulletin, the software Torrentspy uses to operate the forums, "does not save material which has been edited from a forum post." (Parker Am. Decl. ¶ 5.) Parker claims the forums are tangential to Torrentspy's main operation (the exchange of data over a peer-to-peer network). Torrentspy considered the forums as another way to garner advertising revenue and left the content

97,110 (2005); Shipley Depo. 61: 7-13. "TS" stands for "Telesync," and refers to copies of films made by setting up a camera in the projection booth during the playing of a film. Shipley Depo. 61: 15-23, 62: 5-8. "TC" refers to Telecine, a method of copying film to video (which has a legitimate use in film preservation). *See* NATIONAL FILM PRESERVATION FOUNDATION, THE FILM PRESERVATION GUIDE: THE BASICS FOR ARCHIVES, LIBRARIES, AND MUSEUMS 48 (2004), *available at* www.filmpreservation.org/preservation/fpg.pdf. "DVDSCR" refers to DVD Screeners, copies of films distributed for limited purposes, like advance criticism or consideration for awards, and not meant to be distributed further. *See* Bates at 110 n.120; Shipley Depo. 63: 24-25, 64: 1-15.

1   unmonitored.[3] This benign neglect ended upon the institution of this suit. (*Id.* at

2   ¶¶ 6-9.)

3

4       2. Deletion of Directory Headings Referencing Copyrighted Works

5       TorrentSpy maintained a directory of torrents available for download,

6   which included entries for major television shows. The telelvision directory

7   contained hundreds of entries, in alphabetical order, *e.g.*, *According to Jim,*

8   *Adventures of Superman, ALF, All in the Family, American Idol.* (Fabrizio

9   Decl. Ex. 12; Shipley Depo. 83: 9-15.) Defendants have deleted these directory

10  headings. (*See* Fabrizio Decl. Exs. 12-15; Shipley Depo. 83: 16-18; 91: 2-8.)

11  The torrents filed under these headings were not deleted from the web site, but

12  moved to headings like "TV-Unsorted." (Shipley Depo. 91: 2-8, 13-22.)

13      Prior to March 2006, the Torrentspy website had categories for CAM,

14  Telecine, Telesync, and DVD screeners, which were eliminated as part of the

15  "cleanup" of the site. (Shipley Depo. 82: 16-25, 83: 1-2.) For example, on

16  March 15, 2006 MaggiePixel posted the following:

17  "CAM/TS/TC/DVDSCR sub-categories in the Movie category are being merged

18  into the Movie-unsorted area. New submissions can be placed there, so that site

19  mods/admins are not liable for the creation/management of them." (Fabrizio

20  Decl. Ex. 8 at 283; Shipley Depo. 93: 23-25, 94: 1-2.) Wes Parker made this

21  change himself. (Shipley Depo. 31: 13-21.) No dot-torrent files in these

22  categories were deleted from the site, but instead moved to the "Unsorted"

23  category. (*Id.* at 92: 6-10.)

24  _____

25      [3]The forums addressed many topics, including exchanges on user-
26  generated content; debates on the importance of copyright protection; reviews
    and critiques of popular culture; and discussions and trouble-shooting advice for
27  the main site. (Parker Am. Decl. ¶ 10.) Defendants admit some users discussed
28  how to use Torrentspy's services for exchanging pirated works. (*Id.* at 9.)

1    Plaintiffs contend that, to date, Defendants have not produced previously

2    existing, unaltered versions of their directories, contrary to Defendants'

3    representations to the Court. (Parker Am. Decl. ¶ 22; Fallow Decl. ¶ 5.) The

4    previous directory headings may be available to Plaintiffs as cached on web sites

5    such as Google. (Parker Am. Decl. ¶ 22.)

6

7        3.  April 2007 Destruction of User IP Addresses

8        Plaintiffs contend that Defendants have prevented them from determining

9    the extent of infringement fostered by the Torrentspy site and whether

10   Defendants themselves directly infringe on Plaintiffs' copyrights by uploading

11   files. Defendants have claimed not to have full IP addresses[4] and have produced

12   lists of IP addresses with the fourth octet missing. Wes Parker testified under

13   oath that Torrenspy has never recorded full IP addresses. (Fabrizio Decl. Ex. 4

14   at 175-76) In fact, the record reflects forum conversations between moderators

15   indicating that records of full IP addresses do exist. In a March 1-3, 2006 forum

16   thread between moderators MaggiePixel and Cabana Bob,[5] MaggiePixel asks for

17   four IP addresses to be banned. (Fabrizio Decl. Ex. 30.) She provides the full IP

18   addresses (*e.g.*, "165.228.130.11."). (*Id.*) Other postings describe the process

19   for banning users by username and IP address. (Forum Thread, February 28-

20   March 2, 2006, Fabrizio Decl. Ex. 32; *see also* Fabrizio Decl. Ex. 33.) In these

21   posts, the moderators refer to and occasionally provide lists of, the complete IP

22   addresses of banned users. (*Id.*; *see also* Forum Thread, July 7, 2006, Fabrizio

23   Decl. Ex. 35; Ex. 36.)

24   _____

25       [4]An IP address "consists of four numbers separated by a dot. Each of

26   those numbers is called an octet, and that number can range in value from 0 to

27   255." (Depo. Robert Clymer 43: 21-25, Fabrizio Decl. Ex. 2)

28       [5]Cabana Bob's real name is Robert Clymer. (Parker Am. Decl. ¶ 36.)

6

E-mail exchanges between Xanthus (*i.e.*, Wes Parker), "support@torrentspy.com," and "justin@baventures.com" (Justin Bunnell), that discuss reinstating banned IP addresses include complete IP addresses. (Fabrizio Decl. Ex. 37.) Torrentspy moderators recall that Torrentspy recorded full IP addresses (all four octets) until about April 2007. (Shipley Depo. 36: 15-25, 89: 15-21; Fabrizio Decl. Ex. 1 at 17; Clymer Depo. 44: 12-16, 51: 9-18, Fabrizio Decl. Ex. 2 at 131; Dennis Decl. ¶ 37.) Defendants were ordered by Magistrate Judge Chooljian to produce these IP addresses as part of server logs on February 13, 2007.

### 4. Identities and Addresses of Site Moderators

Defendants stated, under oath, in responses to interrogatories that the true names and addresses of Torrentspy's volunteer forum moderators were unknown, and that they were known to defendants only by their nicknames or "handles" and email addresses. (Fabrizio Decl. Ex. 48 at 18)     Defendants retort that most of their interactions with the volunteer moderators took place over Instant Messenger, using Internet "handles" rather than legal names (e.g., "MaggiePixel" for Ayn Shipley). (Parker Am. Decl. ¶ 36.) To the extent Torrentspy has records of moderators' legal names and addresses, this information is "scattered like a needle in a haystack of other communications." (*Id.*)

Ayn Shipley's deposition testimony contradicts Defendants' explanation. Shipley states that she sometimes used her real name in communications with Defendant Wes Parker. (Shipley Depo. 19: 10-17, Fabrizio Decl. Ex. 1 at 19.) In addition, she sent the names and addresses of moderators to Parker so that he could send them Torrentspy T-shirts. (*Id.* at 10: 18-25, 11: 19-22, 12: 14-20.) Wes Parker testified that he took two or three of the forum moderators to Las Vegas as a thank-you gift. (Fabrizio Ex. 4 at 178-180.)

1    The evidence also demonstrates that Defendants Parker and Bunnell

2  improperly attempted to influence the testimony of site moderators. This

3  apparently was done by implying in instant messages and in telephone

4  conversations that TorrentSpy would pay moderators' legal fees only if the

5  moderators agreed to testify to certain things or to withhold requested evidence,

6  such as their personal computer hard drives. (Shipley Depo. 32: 9-11, 20-25, 33:

7  1-2, 24-25, 34: 1-6; Clymer Depo. 9: 17-25, 10: 1-5, 8-18, 25, 11: 1-6.) Shipley

8  testified that she was told she should delay responding to requests that she turn

9  over her hard drive until the "magic date" of August 2, 2007 (*Id.* at 34: 7-11),

10  which happened to be the discovery cut-off date in this case. Robert Clymer

11  described Defendant Bunnell, during a conversation about Torrentspy paying for

12  Clymer's legal fees, as pressing him to answer the question, "'Well, let me just

13  ask you how you would answer–you never actually banned user by IP address,

14  right?'" (Clymer Depo. 10: 6-18.)

15    Defendants adamantly deny this characterization of their conversations

16  with moderators. (Bunnell Decl. ¶ 6; Parker Am. Decl. ¶ 39; *see also* Shipley

17  Depo. 35: 21-25.) Bunell states that "magic date" is a phrase not found in his

18  vocabulary. (Bunnell Decl. ¶ 4.) Rather, Bunnell and Parker believe Shipley

19  may have heard the date August 2 in reference to the commencement of Parker's

20  annual vacation, not to the date of discovery cut-off in this case. (*Id.*; Parker

21  Am. Decl. ¶ 38.) Paying for moderators' legal fees was "an obvious topic for

22  discussion" once they were served with subpoenas, especially since many

23  moderators are students without the means to hire counsel. (Parker Am. Decl. ¶¶

24  37, 40.)

25                                    * * *

26    On August 30, 2007, Plaintiffs filed the instant Motion for Terminating

27  Sanctions Based on Defendants' Willful Spoliation of Key Evidence.

28

## STANDARD OF LAW

Spoliation occurs when a party destroys evidence after receiving some notice that the evidence was potentially relevant to litigation, thereby impairing the non-spoiling party's "ability to go to trial or threaten[ing] to interfere with the rightful decision of the case." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988). A court may sanction spoliation by: imposing monetary sanctions; instructing the jury to draw an adverse inference against the despoiling party; excluding testimony based on despoiled evidence proffered by the despoiling party; or, if willfulness is found, entering default judgment against the despoiling party. *UMG Recordings, Inc. v. Hummer Winblad Venture Partners et al.*, 462 F. Supp. 2d 1060, 1066 (2006).

The Court's authority to sanction a party for despoiling evidence derives from two sources: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting Fed. R. Civ. P. 37(b)(2)). Entry of default judgment is an appropriate sanction only where spoliation is "due to willfulness, bad faith, or fault," resulting in unfair prejudice to the opposing party that no lesser sanction can remedy. *In re Exxon Valdez*, 102 F.3d 429, 432-33 (9th Cir. 1996); *United States ex rel. Wiltec Guam, Inc.*, 857 F.2d at 603. In deciding whether to enter default judgment as a sanction, the Court must weigh a number of factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d

9

337, 348 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)); *see also Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (1988).

## DISCUSSION

Plaintiffs have convinced the Court that their ability to prove their case has been inalterably prejudiced by Defendants' willful spoliation of evidence, making terminating sanctions the only effective recourse. The Court has concluded that Defendants' conduct constitutes spoliation and second, that termination of the case in favor of Plaintiffs is the proper sanction, applying each of the above factors in turn.

A.    **Willful or Bad Faith Spoliation of Evidence**

The deleted (or modified) evidence includes directory headings naming copyrighted works and forum posts explaining how to locate and download specific copyrighted works. Upon being served with Plaintiffs' suit for copyright infringement, Defendants were on notice that this information would be of importance in the case. In particular, the postings and directory headings are significant in demonstrating whether Defendants knowingly contributed to copyright infringement. This evidence was not deleted or modified negligently, but intentionally in direct response to the institution of this suit. Therefore, Defendants' conduct constitutes willful spoliation.

Defendants maintain that they assumed Plaintiffs must have copied their forum postings and directory headings by the time of filing suit, thereby making any alteration or deletion by Defendants entirely innocent. To the extent that forum threads were closed or hidden, and then made available to Plaintiffs in discovery, this explanation may be sufficient. Given the sheer volume of forum postings on the Torrentspy site, however, Defendants' assertion that they assumed Plaintiffs would have already copied every post demonstrating

1  inducement or enticement of infringement is disingenuous. Nor is a plaintiff

2  obligated to duplicate all publicly available information prior to filing suit, in

3  anticipation that a defendant will thereafter destroy it. *See Leon*, 464 F.3d at 960.

4  Rather, the forum postings and directory headings could have and should have

5  been preserved, notwithstanding Defendants' professed desire to avoid future

6  liability for infringement. (Parker Am. Decl. ¶ 18.) Defendants could have

7  reached that goal simply by taking down from the web site the offending posts,

8  while preserving them and producing them in discovery.[6]  By Defendants' own

9  admission, the edited postings now cannot be recovered in their original form.

10 (Parker Am. Decl. ¶ 5.)

11      The timing of the change in IP address collection belies Defendants'

12 explanations of their failure to produce the full IP addresses called for in

13 discovery. Until April 2007, full IP addresses were available, as evidenced by

14 communications of the forums' moderators. After April 2007, the fourth octet of

15 these IP addresses disappeared. Defendants produced IP addresses with only

16 three octets. User IP addresses, in the context of server logs and dot-torrent file

17 upload records, were a contested subject of discovery well before April 2007.

18 The Court concludes that Defendants were well aware of their obligation to

19 preserve those addresses in their entirety. Their deletion of the fourth octet of

20 these addresses was willful.

21      With regard to the withholding of the full names and addresses of

22 Torrentspy's forum moderators, the evidence establishes that this information

23 was, in some instances known to Defendants and, in other instances, readily

24

25      [6]Defendants state that they have produced unaltered, closed forum threads.

26 Parker Am. Decl. ¶ 21. The irreversible editing of some posts, however, creates
   doubt as to whether all forum posts have been produced; *i.e.*, now that

27 Defendants have altered some posts, it is difficult to determine how many posts

28 have been edited or, perhaps, have disappeared altogether.

available to them.   The Court finds that Defendants' failure to fully disclose the identities and contact information of moderators was willful.

## B. Factors

### 1. Expeditious Resolution of Litigation and Managing the Court's Docket

The first two factors the Court must consider in determining whether default is an appropriate sanction for Defendants' willful spoliation are the public's interest in the expeditious resolution of litigation and the Court's need to manage its docket. Here, Defendants' discovery conduct has unnecessarily drawn out the discovery period in this case.[7] Multiple discovery disputes have consumed a considerable amount of time both here and before the Magistrate Judge. Thus, these factors weigh strongly in favor of terminating the case in favor of Plaintiffs.

### 2. Risk of Prejudice to Plaintiffs

For the Court to impose the sanction of default, it must find that there is a nexus between the Defendants' misconduct and the merits of the case, such that the misconduct "interfere[s] with the rightful decision of the case." *Halaco Eng'g Co.*, 843 F.2d at 381-82. The Court finds that Plaintiffs have suffered prejudice, to the extent that a rightful decision is not possible.

---

[7]*See, e.g.,* May 3, 2007 Order (Judge Chooljian) ("The court notes that the documents requests in issue were propounded in August 2006. It is incomprehensible to this court, particularly in light of the paltry showing made by defendants in connection with Plaintiffs' Motion, that despite the ample amount of time defendants have had to do so, defendants have still not fully responded to said requests and . . . have violated the February 13 Order directing them to do so.")

1    Plaintiffs' main contention in this litigation is that the Torrentspy website

2  entices, promotes, and contributes to copyright infringement by its users. *See* 17

3  U.S.C. § 106. The Supreme Court recently explained, "One infringes

4  contributorily by intentionally inducing or encouraging direct infringement, *see*

5  *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d

6  Cir. 1971), and infringes vicariously by profiting from direct infringement while

7  declining to exercise a right to stop or limit it, *Shapiro, Bernstein & Co. v. H. L.*

8  *Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)." *MGM Studios Inc. v. Grokster,*

9  *Ltd.*, 545 U.S. 913, 930 (2005); *see also* NIMMER ON COPYRIGHT §§ 12.04[A][2],

10  [A][3] (Matthew Bender 2007). Thus, the alteration or deletion of forum posts

11  specifically referencing copyrighted works, or providing guides on how to

12  download "CAM/TS/TC/DVDSCR"s, has prejudiced Plaintiffs' ability to

13  demonstrate Defendants' alleged inducement or encouragement of infringement,

14  necessary to prove contributory infringement. This altered or deleted evidence

15  also would have been relevant to proving Defendants' failure to exercise its right

16  to stop or limit infringement, necessary to prove vicarious infringement.

17    The deletion of the directory headings is similarly prejudicial, and only

18  slightly mitigated to the extent that archived versions of the directory headings

19  may be available elsewhere. Defendants' failure to produce the full contact

20  information of its forum moderators is prejudicial given that the moderators are

21  well-placed to discuss the extent of Torrentspy's ability to supervise its users'

22  infringing activities. The likelihood that other forum moderators would have

23  provided testimony helpful to the plaintiff and damaging to the defendant is

24  demonstrated by the evidence gleaned from the two moderators plaintiffs were

25  successful in locating.

26    In a case such as this, where a substantial number of items of evidence

27  have been destroyed, a plaintiff's burden would be particularly onerous if he

28  were required to prove the relevance of all the destroyed items. "The relevance

of ...[destroyed] documents cannot be clearly ascertained because the documents no longer exist." Therefore, a party "can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon v. IDX Sys. Corp.,* 464 F.3d. at 959.

The Court finds that Plaintiffs have suffered prejudice as a result of Defendants' willful spoliation of evidence. Defendants' misconduct is connected to the merits of the case because the despoiled evidence bears on Plaintiffs' theories of contributory and vicarious liability. Although this prejudice has been mitigated somewhat by Plaintiffs' success in locating some relevant evidence despite Defendants' misconduct, this factor nonetheless weighs strongly in favor of terminating sanctions.

### 3. Public Policy in Favor of Deciding Cases on Their Merits

The fourth factor is the public policy in favor of deciding cases on their merits. This case raises questions of copyright infringement and privacy that are of considerable public importance beyond the narrow interests of the parties here. The filing of an *amicus curiae* brief in connection with a previous motion is evidence of this. Therefore, this factor weighs against the imposition of terminating sanctions against Defendants.

### 4. Availability of Lesser Sanctions

Recognizing that terminating sanctions are an extreme measure, only to be imposed if no lesser sanctions would serve, the Court issued a tentative decision to deny terminating sanctions and invited counsel to address the question of what lesser sanctions would be appropriate. At oral argument, Plaintiffs maintained their position that no alternate sanction could possibly alleviate the harm to Plaintiffs in this case. Defendant offered no alternative sanctions in response.

1    Defendants have already been subjected to lesser sanctions in this case.

2  Monetary sanctions of $30,000 were imposed for violations of discovery orders,

3  and as an additional sanction, Defendants were deemed to have waived certain

4  privilege arguments.  Further, Defendants were warned by the Magistrate Judge

5  that more severe sanctions would be imposed if they continued to ignore her

6  orders.

7    After oral argument, and further examination of the history of this case,

8  the Court concludes that no lesser sanctions would be appropriate or effective.

9  A rule excluding evidence would be futile, since the issue here is not the efforts

10  by Defendants to introduce evidence which could be excluded, but rather

11  Defendants' destruction or concealment of evidence, forcing Plaintiffs to go to

12  trial with "incomplete and spotty evidence" at trial.  *Anheuser-Busch, Inc. v.*

13  *Natural Beverage Distribs.,* 69 F.3d. 337, 348 (9th Cir. 1995)  As the Court

14  found in *Leon,* fashioning a jury instruction which creates a presumption in favor

15  of Plaintiffs would leave Plaintiffs equally helpless to rebut any material that

16  Defendants might use to overcome the presumption.  *Leon,* 464 F.3d. at 960.

17  Monetary sanctions have previously been imposed and have been ineffective.

18

19    **C. Summary**

20

21    Defendants' conduct during discovery in this case has been obstreperous.

22  They have engaged in widespread and systematic efforts to destroy evidence and

23  have provided false testimony under oath in an effort to hide evidence of such

24  destruction.   Indeed, Defendants' lateness and incomplete responses to discovery

25  requests have led the Magistrate Judge to warn or sanction them on more than one

26

27

28

1  occasion.[8]  Although termination of a case is a harsh sanction appropriate only in

2  "extraordinary circumstances," *Halaco Eng'g Co. v. Costle*, 843 F.2d at 380, the

3  circumstances in this case are sufficiently extraordinary to merit such a sanction.

4  Lesser sanctions would not be adequate to punish the defendants for the wrongful

5  conduct and ameliorate the prejudice and harm to the plaintiffs.

6

7                                    **Conclusion**

8

9        Plaintiffs' Motion for Terminating Sanctions is GRANTED.  The Clerk is

10  directed to enter the Default of the defendants in this case.

11

12  **IT IS SO ORDERED.**

13

14

15        Dated: December 13, 2007

16

17

18                    _____
                      FLORENCE-MARIE COOPER, JUDGE
19                    UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26  _____

27        [8]*See* May 3, 2007 Order (Judge Chooljian); August 8, 2007 Order (Judge
   Chooljian) (imposing $30,000 in discovery sanctions and warning Defendants of
28  the possibility of additional sanctions for noncompliance with discovery orders).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:06-cv-01093-FMC-JCx | | Date | October 31, 2007 |
|---|---|---|---|---|
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | | |

| Present: The Honorable | FLORENCE-MARIE COOPER | |
|---|---|---|
| Alicia Mamer | Not present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not present | Not present |

**Proceedings:**     ORDER DENYING MOTION FOR REVIEW    (In Chambers)

The Court is in receipt of the Motion for Review of Order Re: August 8, 2007 Order (docket no. 262), filed by Defendants on August 22, 2007. Defendants' Motion asks the Court to review the Magistrate Judge's August 8, 2007 Order, which responded to Plaintiffs' Ex Parte Application to enforce the Magistrate Judge's May 3, 2007 Order. The Court has reviewed the moving, opposition, and reply documents submitted in connection with this motion and deems it appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

A district court will not modify or set aside a magistrate judge's order unless it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). To the extent that Defendants' Motion objects to the substance of the May 3, 2007 Order, it is untimely. Local Rule 72-2.1. Moreover, the supplemental privilege log submitted on May 24, 2007 was untimely, in violation of the Magistrate Judge's May 3, 2007 Order. Defendants had been warned that failure to timely submit a privilege log would lead to the sanction of waiver; they nonetheless submitted the privilege log ten days late. The Court strongly cautions Defendants that deadlines imposed by the Court must be strictly adhered to; late filings are impermissible except with leave of the Court. Defendants ought not to feign surprise when the Court imposes sanctions about which parties have been warned.
Accordingly, Defendants' Motion is DENIED.

| | : | N/A |
|---|---|---|
| Initials of Preparer | AM | |

# #321

P Send

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:06-cv-01093-FMC-JCx | Date | August 27, 2007 |
|---|---|---|---|
| Title | Columbia Pictures Industries Inc et al v. Justin Bunnell et al | | |

Present: The Honorable FLORENCE-MARIE COOPER

| Alicia Mamer | Not present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not present                              Not present

**Proceedings:**      ORDER ON EX PARTE APPLICATION  (In Chambers)

The Court has read and considered Defendants' Ex Parte Application for Stay of Enforcement of August 8, 2007, Order Pending Review, and Plaintiff's Opposition thereto. The Application is DENIED, for all of the reasons recited in Plaintiff's Opposition.

Initials of Preparer    AM : N/A



DOCKETED ON CM

AUG 27 2007

BY ____ 154

# 255

P Send

DOCKETED ON CM

AUG 2 4 2007

BY_____085

FILED
CLERK, U S  DISTRICT COURT

AUG 2 4 2007

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES, INC., et al.,

                Plaintiffs,

vs.

JUSTIN BUNNELL, et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

2: 06-cv-01093 FMC-JCx

**ORDER DENYING DEFENDANTS'
MOTION FOR REVIEW**

# #254

      This matter is before the Court on Defendants' Objections to and Motion for Review of Order Regarding Server Log Data (docket no. 194), filed June 12, 2007. The Court has read and considered the moving, opposition, and reply documents submitted in connection with this motion. The matter was heard on August 20, 2007, at which time the parties were in receipt of the Court's Tentative Order. For the reasons and in the manner set forth below, the Court hereby **DENIES** Defendants' Motion.

//
//
//
//

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous movies and television programs. Defendants operate a website that serves as a search engine that enables users to locate and download dot-torrent files. Using dot-torrent files and an independent computer software program, a "BitTorrent" client, users join a peer-to-peer network that facilitates the copying and distribution of the files that were the subject of the users' search. Defendants' website thereby allegedly permits Internet users to locate and download, view, store, and distribute unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows. In this way, Plaintiffs allege Defendants knowingly enable, encourage, induce, and profit from the online piracy of Plaintiffs' copyrighted works.

On February 23, 2006, Plaintiffs filed a Complaint asserting a claim for copyright infringement. Numerous discovery disputes have arisen between the parties, and Defendants have repeatedly moved this Court to review and reconsider the rulings of Magistrate Judge Chooljian. On June 12, 2007, Defendants filed their latest challenge, against the Magistrate Judge's May 29, 2007, Order (1) Granting in Part and Denying in Part Plaintiffs' Motion to Require Defendants to Preserve and Produce Server Log Data and for Evidentiary Sanctions and (2) Denying Defendants' Request for Attorneys' Fees and Costs (the May 29 Order), on June 12, 2007.

## STANDARD OF LAW

A district court will not modify or set aside a magistrate judge's order unless it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).[1] The clearly erroneous standard applies to the magistrate judge's factual

---

[1] In addition, the Local Rules require that a party objecting to a Magistrate

2

findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo. *See Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999); *see also Center for Biological Diversity v. Federal Highway Admin.*, 290 F. Supp. 2d 1175, 1199-1200 (S.D. Cal. 2003) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997), for the proposition that "discretionary orders and will be overturned 'only if the district court is left with the definite and firm conviction that a mistake has been made'").

When reviewing discovery disputes, however, "the Magistrate is afforded broad discretion, which will be overruled only if abused." *Wright v. FBI*, 385 F. Supp. 2d 1038, 1041 (C.D. Cal. 2005); *Geophysical Sys. Corp. v. Raytheon Co., Inc.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987) (Tashima, J.) (questions of relevance in discovery context are reviewed under "the clearly implicit standard of abuse of discretion.").

## DISCUSSION

## I.    The Scope of Federal Rule of Civil Procedure 34

At the heart of Defendants' Motion for Review is the following question of first impression: is the information held in a computer's random access memory (RAM) "electronically stored information" under Federal Rule of Civil Procedure 34?

Defendants and *amici* seek to engraft on the definition of "stored" an additional requirement, that the information be not just stored, but stored "for later retrieval." They argue that "electronically stored information" cannot

---

Judge's ruling on a nondispositive matter must "designat[e] the specific portions of the ruling objected to and stat[e] the grounds for the objection." Local Rule 72-2.1.

1   include information held in RAM because the period of storage, which may be as
2   much as six hours, is too temporary. The Court finds this interpretation of
3   "stored" unsupported by the text of the Rule, the accompanying commentary of
4   its drafters, or Ninth Circuit precedent involving RAM. The Court holds that data
5   stored in RAM, however temporarily, is electronically stored information subject
6   to discovery under the circumstances of the instant case.

7       First, even the definition *amici* supplied fails to support their argument that
8   information written to and held in random access memory is not "stored." As
9   *amici* explain, according to the Merriam-Webster Collegiate Dictionary, to store
10  means "to lay away, to accumulate or to place or leave in a location (as a
11  warehouse, library, or *computer memory*) for preservation *or later use or*
12  *disposal*." *Merriam-Webster's Collegiate Dictionary* (Frederick C. Mish et al.
13  eds., 10th ed. 1993) (emphasis added). It is undisputed that RAM is computer
14  memory and that information held in RAM is held there for later use by the
15  computer (e.g., to be used in tasks performed by software or written to a hard
16  drive, flash drive, DVD, or other more permanent medium) or disposal (e.g., to
17  be erased when the computer is turned off or when the data is overwritten with
18  new information as part of the regular computing process).

19      The definition of "to store" from the Random House Dictionary of the
20  English Language specific to the context of computers further undermines
21  Defendants' argument that RAM does not store data: "13. *Computers*. to put *or*
22  retain (data) in a memory unit." Random House dictionary of the English
23  Language (Stuart B. Flexner et al. eds., 2d ed. 1987) (emphasis added). Under
24  this definition, the information need not even be subsequently accessed or used;
25  simply placing the data in the RAM module is sufficient for it to constitute
26  electronically stored information.

27      In addition, RAM itself is *defined* as a storage unit, and, due to its speed
28  relative to hard disk drives, is typically used as the computer's primary storage:

1    "Random Access Memory (RAM): A read/write, nonsequential-access memory

2    used for the *storage* of instructions and data. Note 1: RAM access time is

3    essentially the same for all storage locations. Note 2: RAM is characterized by a

4    shorter access time than disk or tape storage." National Communications System,

5    *Federal Standard 1037C: Telecommunications: Glossary of Telecommunication*

6    *Terms* (Gen. Servs. Admin., 4th ed. 1996) (emphasis added). Accordingly,

7    information held in RAM is "stored" under the plain meaning of the

8    unambiguous language of Rule 34.

9        Second, the Notes of the Advisory Committee to the 2006 Amendments to

10    Rule 34, which amended the Rule to make explicit that it authorized discovery of

11    information stored electronically,[2] indicate that the definition was intended to be

12    read expansively to include all current and future electronic storage mediums:

13        The wide variety of computer systems currently in use, and the
          rapidity of technological change, counsel against a limiting or

14        precise definition of electronically stored information. Rule 34(a)(1)
          is *expansive* and includes *any type of information that is stored*

15        *electronically*. A common example often sought in discovery is
          electronic communications, such as e-mail. The rule covers--either

16        as documents or as electronically stored information--information
          "stored in any medium," to encompass future developments in

17        computer technology. Rule 34(a)(1) is intended to be *broad enough*
          *to cover all current types of computer-based information*, and

18        flexible enough to encompass future changes and developments.

19    Fed. R. Civ. P. 34(a)(1) (2006 amendments) advisory committee's note. Such

20

21        [2] Rule 34(a) states, in part, that "[a]ny party may serve on any other party a

22    request . . . to produce and permit the party making the request, or someone
      acting on the requestor's behalf, to inspect, copy, test, or sample *any* designated

23    documents or *electronically stored information*--including writings, drawings,

24    graphs, charts, photographs, sound recordings, images, and other data or data
      compilations stored *in any medium from which information can be*

25    *obtained*--translated, if necessary, by the respondent into reasonably usable form,

26    or to inspect, copy, test, or sample any designated tangible things which
      constitute or contain matters within the scope of Rule 26(b) and which are in the

27    possession, custody or control of the party upon whom the request is served."

28    Fed. R. Civ. P. 34(a) (emphasis added).

1    clear evidence that Rule 34(a)'s scope was intended to be as broad as possible,

2    and cover data stored "in any medium from which information can be obtained,"

3    leaves no room to interpret the Rule to categorically exclude information written

4    in a particular medium simply because that medium stores information only

5    temporarily. Information in the RAM of Defendants' computers "can be

6    obtained" by Defendant. It is undisputed that the Server Log Data[3] Plaintiffs seek

7    can be copied from RAM in Defendants' computers and produced to Plaintiffs.

8    Rule 34 requires no greater degree of permanency from a medium than that

9    which makes obtaining the data possible. As information can be obtained from

10   RAM, it is within the scope of Rule 34 and subject to discovery under the

11   appropriate circumstances.

12          Finally, as discussed in the Magistrate Judge's May 29 Order, *amici* and

13   Defendants' argument that data in RAM is too ephemeral to satisfy Rule 34's

14   storage requirement is foreclosed by the Ninth Circuit's decision in *Mai Systems*

15   *Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993). To determine if the

16   plaintiff could prevail on a claim of copyright infringement, the court in *Mai*

17   *Systems Corp.* confronted the question of whether a program in RAM was "fixed

18   in a tangible medium of expression," which the applicable statute defined as

19   "sufficiently permanent or stable to permit it to be perceived, reproduced, or

20   otherwise communicated for a period of more than transitory duration." *Id.* at

21   517-518; 17 U.S.C. § 101. Despite the Copyright Act's explicit requirement that

22   the medium store information with a degree of permanence and for "more than

23   transitory duration," the court held that a computer's copying of software into

24

25          [3] Server Log Data, as defined in the May 29 Order, includes (1) the

26   anonymous (masked or encrypted) Internet Protocol (IP) address of users of

27   Defendants' website who request dot-torrent files, (2) the identity of the dot-
     torrent files requested, and (3) the dates and times of such requests. (May 29

28   Order, 3:16-4:1.)

1    RAM was sufficient to meet the statutory prerequisites for liability and affirmed

2    the district court's grant of summary judgment and issuance of a permanent

3    injunction. *Id.* at 519.

4         In light of the Ninth Circuit's holding that RAM is a tangible medium,

5    sufficiently permanent to permit reproduction, *amici* and Defendants' argument

6    that RAM holds data for such a short duration that it is not stored subject to later

7    access and retrieval simply has no merit. Defendants have therefore failed to

8    establish that the Magistrate Judge's legal conclusion that data held in the RAM

9    of computers under Defendants' control is within the scope of discoverable

10   information under Federal Rule of Civil Procedure 34 was contrary to law.

11        In response to *amici*'s concerns over the potentially devastating impact of

12   this decision on the record-keeping obligations of businesses and individuals, the

13   Court notes that this decision does not impose an additional burden on any

14   website operator or party outside of this case. It simply requires that the

15   defendants in this case, as part of this litigation, *after* the issuance of a court

16   order, and following a careful evaluation of the burden to these defendants of

17   preserving and producing the specific information requested in light of its

18   relevance and the lack of other available means to obtain it, begin preserving and

19   subsequently produce a particular subset of the data in RAM under Defendants'

20   control.

21   **II.    The Magistrate Judge's Authority to Order the Requested Discovery**

22        In an attempt to resist complying with the Magistrate Judge's May 29

23   Order, Defendants have raised a number of creative legal challenges, the first of

24   which is that the Magistrate Judge exceeded her authority by issuing an

25   injunction and disposing of ultimate issues in the case. The Federal Magistrates

26   Act provides that a magistrate judge may "hear and determine any pretrial matter

27   pending before the court, except a motion for injunctive relief," and seven other

28   enumerated motions. 28 U.S.C. § 636(b)(1)(A). The Ninth Circuit has held that

7

1    the list of excluded motions is not exhaustive, and courts must "look to the effect

2    of the motion, in order to determine whether it is properly characterized as

3    dispositive or non-dispositive of a claim or defense of a party." *United States v.*

4    *Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004). If it is a final order,

5    dispositive of a claim or defense, it is outside of the magistrate's statutorily

6    granted jurisdiction. *Id.* at 1069.

7        Plaintiffs' Motion to Require Defendants to Preserve and Produce Server

8    Log Data and for Evidentiary Sanctions was neither a motion for injunctive relief

9    nor its functional equivalent, and the May 29 Order granting the motion did not

10   dispose of any of Defendants' claims or defenses. The May 29 Order is a

11   quotidian discovery order, resolving disputes over relevance, burden, and the

12   proper scope of discovery, that is well within the Magistrate Judge's authority

13   and substantial specialized expertise. Magistrate judges regularly compel

14   production of documents and, although courts in other jurisdictions have

15   interpreted orders to preserve evidence as injunctions, the Ninth Circuit has held

16   that all parties are under a duty not to intentionally dispose of evidence they

17   know is relevant. *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425

18   F.3d 708, 720 (9th Cir. 2005); *Pueblo of Laguna v. United States*, 60 Fed. Cl.

19   133, 138 (2004) (holding that "a document preservation order is no more an

20   injunction than an order requiring a party to identify witnesses or to produce

21   documents in discovery.") (citing *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir.

22   1994); *cf. Madden v. Wyeth*, No. 3-03-CV-0167-R, 2003 U.S. Dist. LEXIS 6427,

23   at *1 (N.D. Tex. Apr. 16, 2003) ("A motion to preserve evidence is an injunctive

24   remedy and should issue only upon an adequate showing that equitable relief is

25   warranted.").

26       Moreover, contrary to Defendants' contentions, the May 29 Order does not

27   dispose of any of Defendants' potential First Amendment or other defenses to

28   Plaintiffs' claim for copyright infringement. The May 29 Order addresses only

8

1    Defendants' arguments in opposition to the requested discovery, not whether the

2    First Amendment or the Electronic Communications Privacy Act (ECPA) might

3    factor into a final, permanent injunction prohibiting Defendants from engaging in

4    any form of copyright infringement. That the creation of a server log might be a

5    predicate step in fashioning effective hypothetical final relief does not alter the

6    fact that such final disposition of any of the parties' claims or defenses remains a

7    future event. As the May 29 Order is not dispositive of any claims or defenses, it

8    was within the Magistrate Judge's jurisdiction, and the Court overrules

9    Defendants' objection.

10   **III.    The Fifth Amendment**

11       Defendants argue that the Magistrate Judge violated their Fifth

12   Amendment due process rights by (1) finding that they voluntarily consented to

13   the disclosure of the Server Log Data and (2) ruling against Defendants based on

14   their failure to demonstrate that there are alternative means of acquiring the

15   requested information after denying Defendants' discovery requests that would

16   have led to the production of data Defendants could use to demonstrate such

17   means. Defendants have not provided any authority for the proposition that a

18   magistrate's order could violate a defendants' Fifth Amendment rights or that a

19   motion for review would be the proper venue for obtaining relief for such a

20   hypothetical constitutional injury. Nevertheless, the Court will briefly address

21   Defendants' arguments, construing them as arguments that the Magistrate Judge's

22   factual findings were clearly erroneous and that her legal conclusions were

23   contrary to law, the applicable legal standard.

24       Defendants contend that production of their Server Log Data would violate

25   the Stored Communications Act (SCA), the Wiretap Act, and the Pen Register

26   Statute. The SCA prohibits unlawful access to stored communications, which is

27   defined as either "(1) intentionally access[ing] without authorization a facility

28   through which an electronic communication service is provided; or (2)

1  intentionally exceed[ing] an authorization to access that facility; and thereby

2  obtain[ing] . . . authorized access to a wire or electronic communication while it

3  is in electronic storage in such system . . . ." The May 29 Order, however,

4  contemplates no *unauthorized* access. Defendants are not ordered to access the

5  facility of a third party and obtain stored communications, such as e-mails stored

6  on a remote server. Defendants are also not custodians of private

7  communications, as an Internet Service Provider would be of e-mails sent

8  through its servers (where neither the sender nor the recipient would be parties to

9  the litigation), ordered to disclose the contents of those communications. *Cf.*

10  *Theofel v. Farey-Jones*, 341 F.3d 978, 985 (9th Cir. 2003). Rather, Defendants

11  are the intended recipients of the information contained in the Server Log Data.

12  When users access Defendants' website and request information (such as dot-

13  torrent files), they voluntarily supply their IP addresses and a packet of

14  information containing their request. That information is received and processed

15  in Defendants' RAM on their servers, for their use (which, in addition to the

16  contemporaneous fulfillment of the request, the record reveals has thus far

17  consisted primarily of disclosure to advertisers to generate revenue). (May 29

18  Order 22:1-3; Reporter's Transcript of the April 3, 2007, Discovery Hearing (RT)

19  90-97).) Defendants' access to Defendants' information on servers under

20  Defendants' control does not constitute unauthorized access to a "facility through

21  which an electronic communication service is provided" or "to a wire or

22  electronic communication while it is in electronic storage in such system."

23  Production of the Server Log Data would therefore not violate the SCA.

24       The Wiretap Act makes it an offense to "intentionally intercept[] . . . any

25  wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Wiretap

26  Act and the SCA are both part of the ECPA, and play complementary roles in

27  Congress's regulatory scheme. Under the ECPA, an electronic communication

28  may either be intercepted and actionable under the Wiretap Act or acquired while

1    in electronic storage and actionable under the SCA, but not both. *Konop v.*

2    *Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir.2002). As such, an electronic

3    communication may not simultaneously be actionable under both the Wiretap Act

4    and the SCA. *Id.* The Ninth Circuit has held that the Wiretap Act applies only to

5    "acquisition contemporaneous with transmission," and that "Congress did not

6    intend for 'intercept' to apply to electronic communications when those

7    communications are in 'electronic storage.'" *Theofel*, 359 F.3d at 1077-78,

8    quoting *Konop*. 302 F.3d at 877. Communications are in "electronic storage"

9    under the SCA, and outside the scope of the Wiretap Act, even where the storage

10    is transitory and lasts for only a few seconds. *Quon v. Arch Wireless Operating*

11    *Co.*, 445 F. Supp. 2d 1116, 1135-36 (C.D. Cal. 2006) (citing *Konop*, 302 F.3d at

12    878 n.6). As discussed above, the Server Log Data exists in electronic storage.

13    The Wiretap Act is therefore inapplicable and does not pose any barrier to

14    Defendants' compliance with the May 29 Order.

15            The Pen Register Statute is similarly inapplicable to the ordered discovery,

16    as Defendants' own Motion makes clear. After discussing why the exemption the

17    to the Pen Register Statute's prohibitions on use of pen registers and tap and trace

18    devices that the Magistrate Judge relied upon does not apply in these

19    circumstances, Defendants argued that the Court could not authorize production

20    of the Server Log Data under the Pen Register Statute because the Server Log

21    Data contains "contents" of communications, such as the identity of the dot-

22    torrent files requested. As Defendants note, pen registers and trap and trace

23    devices, by definition, do not record "the contents of any communication." 18

24    U.S.C. § 3127(3)–(4); *see also In re United States for an Order Authorizing the*

25    *Use of a Pen Register & Trap*, 396 F. Supp. 2d 45, 50 (D. Mass. 2005)

26    (interpreting "contents of communications" to include "application commands,

27    search queries, requested file names, and file paths"). Because the May 29 Order

28    requires the production of the contents of communications, Defendants have not

1  been ordered to install a pen register or trap and trace device, and the Pen

2  Register Statute does not bar the ordered discovery. Accordingly, the Magistrate

3  Judge's decision that production of the Server Log Data would not violate the

4  SCA, the Wiretap Act, or the Pen Register Statute was not contrary to law.[4]

5  Defendants argue that the Magistrate Judge improperly based a number of

6  key rulings on their failure to "prove facts where they could not obtain the needed

7  evidence" because of the Magistrate Judge's prior rulings, and the orders of this

8  Court, which concluded that the discovery Defendants were requesting would not

9  lead to relevant or admissible evidence.

10  For example, Defendants note that the Magistrate Judge concluded that

11  "preservation and production of the Server Log Data is appropriate in light of the

12  conclusory and speculative nature of the evidence presented regarding the loss of

13  good will and business, the key relevance and unique nature of the Server Log

14  Data in this action, the lack of a reasonable alternative means to obtain such data,

15  and the limitation imposed by the court regarding the masking of IP addresses."

16  Defendants argue they were not able to present evidence of "alternative means to

17  obtain such data" because "the evidence needed for such proof has been

18  concealed by Plaintiffs in an institutional citadel of privilege." (Mot. 41:1-2.)

19  First, contrary to Defendants' arguments that "the Magistrate Judge's

20  Order implicitly casts the burden of proof onto Defendants," in each instance

21  Defendants cite, the decision is based on the Magistrate Judge's factual findings

22  after a review of the full record that there were no "reasonable alternative means

23  to obtain such data," not on Defendants' "failure to prove" the availability of any

24  alternative means. Second, with respect to two of three challenged findings (the

25  Magistrate Judge's determination that the requested production would not be

26  

27  [4] As the Court's holding rests on independent legal grounds, it is
unnecessary to review the Magistrate Judge's determination that Defendants'

28  website constitutes an "electronic communications service."

1  unduly burdensome and that international law did not prohibit the requested

2  discovery), the burden *was* properly on Defendants to demonstrate why they

3  should be relieved from producing relevant information.

4      Finally, as discussed in this Court's prior orders, the information that was

5  the subject of Defendants' denied discovery requests was irrelevant. Even if

6  Defendants were able to show, as they allege, that Plaintiffs operate "honeypots"

7  and participate in BitTorrent "swarms," thereby acquiring the IP addresses of

8  individual copyright infringers, such evidence would not help them to

9  demonstrate that "reasonable alternative means to obtain" the Server Log Data

10 were available. Although Plaintiffs may have other means of discovering the IP

11 addresses of individual direct infringers, in order to prevail in this action,

12 Plaintiffs will need to establish that *Defendants* were in some way responsible for

13 the direct infringement of others. The Server Log Data will show that individuals

14 access Defendants' website and request and download dot-torrent files, which can

15 be used to obtain Plaintiffs' copyrighted works without permission. This link in

16 the causal chain is essential to proving Defendants' responsibility for copyright

17 infringement under theories of contributory infringement, vicarious infringement,

18 and inducement. Accordingly, the Magistrate Judge's finding of a "lack of a

19 reasonable alternative means to obtain" the Server Log Data was not clearly

20 erroneous or contrary to law.

21 **IV.    The First Amendment**

22     Defendants argue that the Magistrate Judge's rejection of Defendants' First

23 Amendment objections to the requested discovery was contrary to law because

24 Plaintiffs failed to demonstrate a need for the Server Log Data and because the

25 Magistrate Judge failed to perform a proper balancing test. The Court has already

26 discussed why the Magistrate Judge's finding that Plaintiffs had a need for the

27 Server Log Data was not clearly erroneous or contrary to law. The Court also

28 agrees with the Magistrate Judge that "the preservation and disclosure of the

1    Server Log Data does not encroach or substantially encroach" upon the limited

2    First Amendment protection to which the users of Defendants' website are

3    entitled, "particularly in light of the fact that such data does not identify the users

4    of Defendants' website and that the IP addresses of such users have been ordered

5    to be masked." (May 29 Order 23:3-7.)

6        Defendants argue that, under *Adolph Coors Co. v. Wallace*, 570 F. Supp.

7    202, 208 (N.D. Cal. 1983), the Magistrate Judge was required to employ a formal

8    three-part balancing test in determining whether to order the requested discovery.

9    *Adolph Coors Co.*, in addition to not constituting binding precedent, proposed

10   only that "any tribunal confronted with facts and arguments similar to those

11   presented here undertake a sensitive evaluation in three steps." *Id.* In *Adolph*

12   *Coors Co.*, the defendant Solidarity was a political organization comprised

13   exclusively of gay men and lesbian women who sought to exert pressure on the

14   plaintiff brewing company through a boycott in an effort to modify the plaintiff's

15   political positions. *Id.* at 204. The plaintiff requested a list of the names of

16   Solidarity's members and its sources of financial support. *Id.* Solidarity argued

17   that revealing the group's members and donors would chill its associational

18   privacy and freedom of political expression. *Id.*

19       In the instant case, Plaintiffs have sought data that would demonstrate that

20   anonymous individuals accessed Defendants' website and requested dot-torrent

21   files. Plaintiffs are not requesting the names or other identifying information, as

22   the plaintiff sought in *Adolph Coors Co.*, and the May 29 Order ensures that such

23   identifying information will not be disclosed. In addition, in contrast to the strong

24   First Amendment protections for the freedom of association and right to engage

25   in political speech, the privacy interests of Defendants' users are, at best, limited.

26   To the extent the users are engaged in copyright infringement, the First

27   Amendment affords them no protection whatsoever. *Harper & Row, Publishers,*

28   *Inc. v. Nation Enters.*, 471 U.S. 539, 559, 105 S. Ct. 2218; 85 L. Ed. 2d 588

14

1   (1985) ("The essential thrust of the First Amendment is to prohibit improper

2   restraints on the *voluntary* public expression of ideas; it shields the man who

3   wants to speak or publish when others wish him to be quiet. There is necessarily,

4   and within suitably defined areas, a concomitant freedom *not* to speak publicly,

5   one which serves the same ultimate end as freedom of speech in its affirmative

6   aspect.") (emphasis in original) (internal quotations omitted)); *A&M Records v.*

7   *Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First

8   Amendment does not protect use of a peer-to-peer file sharing network that

9   constitutes copyright infringement). Even if the users are engaged in *legal* file

10  sharing, they have little to no expectation of privacy because they are

11  broadcasting their identifying information to everyone in the BitTorrent "swarm"

12  as they download the file. *See, e.g., In re Verizon Internet Servs.*, 257 F. Supp. 2d

13  244, 267 (D.D.C. 2003) (finding that "if an individual subscriber opens his

14  computer to permit others, through peer-to-peer file-sharing, to download

15  materials from that computer, it is hard to understand just what privacy

16  expectation he or she has after essentially opening the computer to the world.").

17  Similarly, because users openly disclose their IP addresses as part of the

18  BitTorrent file transfer process, the Court is not persuaded by Defendants'

19  argument that the retention of the IP addresses of users who obtain dot-torrent

20  files from Defendants' website will "chill" their speech. Accordingly, the Court is

21  satisfied that the Magistrate Judge properly weighed Defendants' First

22  Amendment concerns against the need for the requested discovery, and that her

23  resolution of the matter was not contrary to law.

24  **V.    Impact of International Law**

25          Defendants insist that the Magistrate Judge erred in rejecting their

26  argument that the law of the Netherlands, where Defendants have placed their

27  servers, prohibits the courts of the United States from ordering the requested

28  discovery in this action.   First, the Magistrate Judge properly found that

1   Defendants had failed to meet their burden in establishing that Netherlands law

2   would prohibit retention of the Server Log Data or production of an encrypted,

3   anonymous version of that data to Plaintiffs. *See United States v. Vetco, Inc.*, 691

4   F.2d 1281, 1289 (9th Cir. 1981) ("The party relying on foreign law has the

5   burden of showing that such law bars production."). Defendants argue the

6   Magistrate Judge erred, citing a recent opinion of the Amsterdam District Court

7   that held as follows:

8       A service provider may, in certain circumstances, be obliged to
        provide rights holders (or their representatives) with the information
9       asked for. For this, the Court must first of all be satisfied that there
        have been (unlawful) infringement activities by the subscribers
10      concerned and, secondly, that it is beyond reasonable doubt that
        those whose identifying information is made available are also
11      actually those who have been guilty of the relevant activities.

12  *BREIN Foundation v. UPC Nederland B.V.*, Fabrizio Decl. Ex. 28. As the quoted

13  text makes evident, however, *BREIN Foundation* does not support Defendants'

14  argument. It places restrictions only on the production of "identifying

15  information." As the Server Log Data Defendants must produce is anonymous,

16  *BREIN Foundation*, even if it were the applicable legal standard, would not

17  prohibit its production.

18      Second, as the Supreme Court has stated, "[i]t is well settled that [foreign]

19  statutes do not deprive an American court of the power to order a party subject to

20  its jurisdiction to produce evidence even though the act of production may violate

21  that statute." *Societe Nationale Industrielle Aerospatiale v. United States Dist.*

22  *Court for S. Dist.*, 482 U.S. 522, 544 n.29, 107 S. Ct. 2542, 96 L. Ed 2d 461

23  (1987); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468,

24  1474 (9th Cir. 1992); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1287 (9th Cir.

25  1981); May 29 Order 29:14-17. Assuming, *arguendo*, that Netherlands law

26  would prohibit the discovery ordered, the Magistrate Judge analyzed the issue

27  under the applicable legal standard, considered the relevant, non-exhaustive list

28  of factors enumerated in *Richmark Corp.*, and determined that the factors

16

1  weighed in favor of permitting the ordered discovery. Although Defendants

2  disagree with the Magistrate Judge's ultimate decision, they have failed to

3  establish that her factual findings were clearly erroneous or that her legal

4  conclusions were contrary to law.

5  **VI.  Defendants' Control of the Routing of Server Log Data**

6        Defendants' final objection is a cryptic argument that the Magistrate

7  Judge's factual finding that "Defendants have the ability to manipulate at will

8  how the Server Log Data is routed" is clearly erroneous because it was based on

9  insufficient evidence. In support of this contention, Defendants state that

10  "Panther," the third-party service Defendants recently began using that prevents

11  requests being received in the RAM of Defendants' servers, "never logged."

12  However, as Defendants' representative testified during the Magistrate Judge's

13  evidentiary hearing, Defendants "could disengage and resume the functions

14  currently performed by Panther if directed to log the Server Log Data in issue."

15  (May 29 Order 10:27-28 (citing RT 72, 103-04).)

16        The Magistrate Judge's factual findings were based on a full day of

17  testimony, including testimony by expert witnesses called by both parties, as well

18  as hundreds of pages of briefing, technical declarations, and even multiple rounds

19  of supplemental briefing. Her finding that the "data in issue which is currently

20  routed to a third party entity under contract to defendants and received in said

21  entity's RAM . . . is within defendants' possession, custody or control by virtue of

22  defendants' ability to manipulate at will how the data in issue is routed" was

23  founded on her "consideration of the extensive arguments and evidence

24  presented" and "the court's assessment of the credibility of the declarants and

25  witnesses." (May 29 Order 1:25-2:8.) Moreover, the Magistrate Judge's decision

26  with respect to Defendants' ability to route the Server Log Data to themselves or

27  through Panther at will was also based on "the change in the method of

28  operation" from routing the data to Defendants' servers to employing Panther

1  "and the timing thereof," as Defendants engaged Panthers' services just one

2  month prior to the Magistrate Judge's evidentiary hearing. (*Id.* at 8:24-10:28.) As

3  the record reflects that Defendants have the ability to reroute the Server Log Data

4  through their own servers, should it prove impracticable for Defendants to

5  acquire the information from Panther, the Court finds that the Magistrate Judge's

6  finding that Defendants' control the routing of the Server Log Data was not

7  clearly erroneous.

## CONCLUSION

9      For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion

10  for Review (docket no. 194).

13  **IT IS SO ORDERED.**

14  Dated: August _24_, 2007

17                                 FLORENCE-MARIE COOPER, JUDGE
18                                 UNITED STATES DISTRICT COURT

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date | August 20, 2007 |
| Title | Columbia Pictures Industries, Inc. et al. v. Justin Bunnell, et al. | | |

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Nancy Hackney | none | none |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| none | none |

**Proceedings:**      (IN CHAMBERS)

### ORDER DENYING EX PARTE APPLICATION FOR STAY OF ENFORCEMENT OF AUGUST 8, 2007 ORDER

Defendants' Ex Parte Application for Stay of Enforcement of August 8, 2007 Order Pending Review is **DENIED**. The Ex Parte Application does not meet the requisite standards for issuance of a stay and is untimely in that it was filed <u>after</u> defendants were required to comply with the August 8, 2007 Order.

IT IS SO ORDERED.

Initials of
Deputy Clerk      nhac



DOCKETED ON CM

AUG 21 2007

BY _____ 057

247

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. CV 06-1093 FMC(JCx) | | Date  August 8, 2007 |
| Title    Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al. | | |

Present: The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

**ORDER (1) GRANTING PLAINTIFFS' EX PARTE APPLICATION; (2) GRANTING PLAINTIFFS' REQUEST FOR SANCTIONS, ATTORNEYS' FEES AND COSTS; (3) DENYING DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS; AND (4) CAUTIONING DEFENDANTS REGARDING POTENTIAL NON-MONETARY CONSEQUENCES OF FURTHER VIOLATIONS OF DISCOVERY OBLIGATIONS AND ORDERS**

Pending before the court is Plaintiffs' Ex Parte Application to Enforce Compliance with Court's May 3 Order, and For Attorneys' Fees and Costs ("Ex Parte Application") [1]

The Ex Parte Application seeks to enforce compliance with this court's May 3, 2007 order granting plaintiffs' April 10, 2007 motion to compel the production of documents and for expenses, including attorneys' fees ("May 3 Order") [2] The May 3 Order directed defendants to (i) produce, by no later than May 14, 2007, all documents responsive to request nos 2, 6, 9, 10,[3] 11, 14, 16, 20, 22, 26, 27,

---

[1] The court has received, reviewed, and considered the Ex Parte Application, the supporting declaration of Katherine A. Fallow with attached exhibits, defendants' opposition to the Ex Parte Application, defendants' supporting declaration of defendant Justin Bunnell, plaintiffs' reply, the second declaration of Katherine A. Fallow with attached exhibits, and plaintiffs' supplemental reply

[2] The May 3 Order was preceded by a February 13, 2007 Order (""February Order") granting plaintiffs' initial motion to compel the production of documents. The February Order directed, inter alia, that defendants, by no later than February 23, 2007: (i) produce any unproduced non-privileged existing documents responsive to certain of plaintiff's document requests, including request nos 6, 10, 14 and 42· and (ii) produce any privilege log as to the requests in issue in said motion (request nos 2, 6, 9, 10, 11, 14, 16, 20, 22, 26, 27, 40, 41 and 42) The February Order further cautioned defendants (in boldface print) that the failure timely to produce an adequate privilege log may be deemed a waiver of the privilege

[3] As to request no. 10, the May 3 Order did not encompass "server log data" which was then the subject of another motion pending before this court, and is currently pending before the assigned District Judge on review.

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 1 of 4

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date | August 8, 2007 |
| Title | Columbia Pictures Industries, Inc., et al  v. Justin Bunnell, et al. | | |

40, 41, and 42 except privileged documents identified on a privilege log produced no later than February 23, 2007 (and which existed prior to, or as of that date); (ii) produce all documents responsive to such requests which existed on or before February 23, 2007 and were not included on a privilege log produced by that date; and (iii) produce, by no later than May 14, 2007, a supplemental privilege log with respect to those documents responsive to such requests that came into existence after February 23, 2007 and had been withheld based on a privilege claim. The May 3 Order cautioned defendants (in boldface print) that the failure timely to produce the supplemental privilege log may be deemed a waiver of the privilege. The May 3 Order further directed defendants to pay plaintiffs $500 per day for each day beyond May 14, 2007 that defendants failed to comply with the May 3 Order.

The Ex Parte Application specifically requests that the court: (1) order the immediate production of certain outstanding categories of documents responsive to plaintiffs' document requests, namely (a) financial and corporate documents (request nos. 2, 6, 26, 27, 40 and 41); (b) email accounts (request nos. 20, 22); (c) Google Analytics Reports (request no. 20); (d) forum software,[4] and (e) an unredacted user registration table (request no. 22); (2) expressly warn defendants that their failure fully to comply will result in the court making a report and recommendation for non-monetary sanctions, including evidentiary sanctions and, as appropriate, terminating sanctions; (3) deem defendants' privilege waived as to any claimed privileged documents not identified on a privilege log timely produced to plaintiffs by May 14, 2007 as set forth in the May 3 Order; (4) order payment of sanctions of $500 a day for non-compliance since May 14, 2007, as set forth in the May 3 Order; and (5) order defendants to pay plaintiffs' attorneys fees and costs incurred in making this motion, pursuant to Fed. R. Civ. P. 37(b). Defendants also request attorneys' fees and costs incurred in opposing the Ex Parte Application.

Based on the court's consideration of the arguments and evidence presented in conjunction with the Ex Parte Application, IT IS HEREBY ORDERED:

1.    The Ex Parte Application is granted. Defendants are **forthwith** to produce documents/items as set forth below.

2.    Defendants shall produce to the extent not already produced, all financial and corporate documents responsive to request nos. 2, 6, 26, 27, 40 and 41 in their possession, custody and control. This encompasses an obligation to make reasonable inquiry of third parties (such as financial institutions, attorneys in Nevis, etc ) who are defendants' agents or over whom defendants have control These documents further specifically include, to the extent not already produced, bank/corporate records which are available to defendants upon request, such as Valence Media account records at Bank of America, account records for the three accounts referenced in paragraph 6 of the Declaration of Katherine A Fallow filed June 26, 2007, financial books and tax records for Valence Media and Zerobit Studios, LLC, and records reflecting income received by defendants in relation to TorrentSpy from Valence Media, Zerobit Studios, LLC, Vernon Equities, and other entities.

---

[4]Plaintiffs alternatively request that defendants be directed to provide plaintiffs with all of their configurations, graphics, and other modifications to the forum software so that plaintiffs may purchase the generic software and configure it to be identical to defendants' versions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No | CV 06-1093 FMC(JCx) | Date | August 8, 2007 |
|---|---|---|---|
| Title | Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al. | | |

3       Defendants shall produce to the extent not already produced, all email communications responsive to request nos. 20 and 22 in their possession, custody and control, including (i) emails to/from the email accounts of Wes Parker and Forrest Parker; (ii) emails from Justin Bunnell's e-mail accounts, including justin@valencemedia.com, (iii) emails from the staff@torrentspy com account; (iv) emails from the Torrentspy "admin" account; (v) emails from the Torrentspy "feedback" account; (vi) e-mails from the Torrentspy "sales" account, if any; and (vii) e-mails from the forums@torrentspy com account and feedback@torrenspy.com, if any

4.       Defendants shall produce to the extent not already produced all Google Analytics Reports in their possession, custody or control (including those available upon reasonable inquiry to appropriate third parties) concerning the number of TorrentSpy users on a daily and monthly basis

5.       With respect to the "forum software" in issue, plaintiffs' alternative request is granted. Defendants are directed to provide plaintiffs with all of their configurations, graphics, and other modifications to the forum software in issue so that plaintiffs may purchase the generic software and configure it to be identical to defendants' versions.

6.       Defendants are directed to produce an unredacted version of the user registration table Defendants previously had an opportunity to litigate this issue and failed to prevail. The court will not revisit its prior ruling at this juncture.

7.       Defendants are directed to produce all allegedly privileged documents responsive to request nos. 2, 6, 9, 10, 11, 14, 16, 20, 22, 26, 27, 40, 41, and 42 which (a) existed on or before February 23, 2007 and were not included in the February 23 privilege log – these documents appear to include documents listed as nos. 57-77 on the supplemental privilege log belatedly provided to plaintiffs on February 25, 2007; and (b) came into existence between February 24, 2007 and May 14, 2007 and were not included in a privilege log produced by May 14, 2007   Defendants are deemed to have waived any privilege with respect to such documents

8.       As defendants have failed or failed timely to comply with the May 3, 2007 Order, defendants are directed to pay to plaintiffs $30,000 which represents the sum of $500 per day for each day beyond May 14, 2007 that defendants failed to comply with the May 3 Order up to and including July 13, 2007 – the date on which plaintiffs represent that responsive documents were still outstanding. The pleadings before the court demonstrate that the defendants have failed or failed timely to comply with the May 3 Order – not the first order with which defendants have failed to comply Among other conduct, defendants belatedly produced on July 10, 2007 – the night before the deposition of Wes Parker and two days before the deposition of Forrest Parker – a significant volume of emails from the accounts of Wes Parker and Forrest Parker. Moreover, while defendants have represented in their opposition to the Ex Parte Application that they would produce the "sent mail" folders from the admin@torrentspy.com and feedback@torrentspy.com email accounts because they inadvertently failed to include such documents in their prior production, plaintiffs represent in their supplemental reply, that defendants still had not produced such documents as of July 13, 2007.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No | CV 06-1093 FMC(JCx) | Date | August 8, 2007 |
| --- | --- | --- | --- |

| Title | Columbia Pictures Industries, Inc., et al. v. Justin Bunnell, et al. |
| --- | --- |

9       Plaintiffs' request for attorneys' fees and costs pursuant to Fed. R. Civ. P. 37(b)(2) is granted to the extent the attorneys' fees and costs exceed the sum awarded above, as defendants have not demonstrated that noncompliance with the May 3 Order was substantially justified or an award is otherwise unjust. Indeed, the record reflects that defendants failed to make a reasonable inquiry in an effort to locate the documents requested. For example, defendant Bunnell conceded that he failed to inquire with Bank of America as to whether he could obtain financial records older than six months from his online bank account that were responsive to plaintiffs' document requests. Moreover, defendants appear to have destroyed relevant financial records referenced in plaintiffs' reply at page 4, lines 20-21, after the litigation commenced. Plaintiffs are directed to file a declaration setting forth the exact hours worked by counsel in connection with defendants' failure to comply with the May 3 Order, the usual hourly fees of such counsel, and proof of any costs incurred by August 23, 2007. (If the amount in issue does not exceed the sum awarded above, plaintiffs may instead file a document notifying the court of that fact). Defendants may file an opposition challenging the reasonableness of the hours or hourly rates and costs by September 6, 2007. The matter of the amount of fees and costs to be ordered will then be deemed submitted, and pursuant to Local Rule 7-15, decided without further oral argument.

10.     Defendants' request for attorneys' fees and costs is denied.

**11.     Defendants are cautioned that the failure to produce documents in compliance with this order by August 16, 2007, or any future failure to comply with defendants' discovery obligations or other discovery orders may result in a recommendation to the assigned District Judge to impose further monetary sanctions as well as non-monetary sanctions in a form authorized by Fed. R. Civ. P. 37(b)(2) and/or other applicable law, including but not limited to evidentiary sanctions, an adverse jury instruction, and/or terminating sanctions.**

IT IS SO ORDERED.

Initials of Deputy Clerk        kc

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date   July 27, 2007 |
| Title | Columbia Pictures Industries, Inc. v. Justin Bunnell, et al. | |

Present: The Honorable  Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs. | Attorneys Present for Defendant: |
|---|---|
| None | None |

**Proceedings:**   **(In Chambers) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EX PARTE APPLICATION FOR PROTECTIVE ORDER**

On July 23, 2007, plaintiffs filed an "Ex Parte Application for a Protective Order Regarding Defendants' Notice of Taking Oral Deposition of Plaintiffs and for Attorneys' Fees and Costs" ("Ex Parte Application") and a supporting declaration of Katherine A Fallow ("Fallow Decl ") with attached exhibits ("Fallow Exhibit (or Ex )"). On July 25, 2007, defendants filed an Opposition to the Ex Parte Application and supporting declarations of Kirk J Retz ("Retz Decl.") and Jared R. Smith ("Smith Decl.), the latter of which has exhibits attached ("Smith Exhibit (or Ex )")

On or about July 2, 2007, defendants served a notice of subpoena for deposition of plaintiffs most knowledgeable on 98 topics identified in an exhibit attached thereto ("deposition topics"). (Fallow Decl. ¶ 2; Fallow Ex. 1, Retz Decl. ¶ 2, Smith Decl. ¶ 2, Smith Ex. A). The depositions are currently scheduled for August 1-2, 2007. (Retz Decl. ¶ 2). The Ex Parte Application primarily requests that the court limit the deposition topics and the scope of such depositions to those topics listed in Fallow Exhibit 11 ("plaintiffs' proposed deposition topics").[1] Defendants urge the court to deny the Ex Parte Application, and to require the deponents to testify regarding the deposition topics or, alternatively, the topics proposed in Smith Exhibit E ("defendants' alternative proposed deposition topics").

As a threshold matter the court addresses the parties' opposing contentions regarding the impact of the court's prior July 19, 2007 order regarding the scope of the MPAA deposition on the instant dispute ("July 19 Order") The court's consideration of the instant Ex Parte Application is not constrained by the July 19 Order as the July 19 Order (i) was issued in an expedited fashion because it related to a deposition scheduled for the next day, (ii) was issued without benefit of consideration of defendants' opposition brief (which was filed after the court ruled), and (iii) was expressly without prejudice to the right of the parties to move for an order allowing or limiting examination on additional categories subject to the scheduling order in this case.

---

[1] As plaintiffs appear to have no objections to the following deposition topics in their original form, the court will not address such topics and imposes no limitations relative thereto. 11, 36, 39, 46, 57, 60, 70, 73, 75, 76, 78, 92, and 93. As the Ex Parte Application does not specifically articulate any objections as to the following deposition topics, the court likewise will not address such topics and imposes no limitations relative thereto: 1-4, 17, 20, 62, 63, 77, 90, 95, and 98.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No | CV 06-1093 FMC(JCx) | Date | July 27, 2007 |
|---------|---------------------|------|---------------|

| Title | Columbia Pictures Industries, Inc. v. Justin Bunnell, et al. |
|-------|-------------------------------------------------------------|

Based upon the court's consideration of the above-described pleadings, IT IS HEREBY ORDERED:

1.    The Ex Parte Application is granted in part and denied in part as set forth below, and denied to the extent it seeks sanctions.

2.    As to topics 5-7, 10, 12-14, 21, 29, 30, 32-35, 37, 38, 40-43, 45, 47, 54-56, 58, 66, 67, 69, 91 and 97 for which plaintiffs have asserted attorney-client/work product privilege objections, the Ex Parte Application is denied without prejudice to the extent it seeks to preclude inquiry on such topics based upon such privileges [2] In the event defendants inquire about matters which call for responses covered by the attorney-client or attorney work-product privileges, Fed. R. Civ. P. 30(d)(1) affords to plaintiffs the right to instruct the deponents not to answer  The court in this instance, declines to authorize in advance, a refusal to answer questions predicated on such privileges without benefit of having before it, among other things, the precise questions in issue.

3.    As to topics 7-9, 44, and 89:  Absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of works other than those listed on Exhibit A to the Complaint to demonstrate **liability**, defendants are permitted to inquire about the works listed on Exhibit A to the Complaint and works currently alleged to have been infringed by defendants which plaintiffs currently plan to include in a summary judgment motion ("Additional Works"), and no other works  If plaintiffs/plaintiffs' counsel affirmatively make such representation, defendants may inquire only about works listed on Exhibit A to the Complaint

4.    As to topics 15, 16, 26, and 53: (a) defendants may inquire about general or unrestricted distribution of works or parts of works listed in Exhibit A to the Complaint from October 1, 2002 to February 23, 2006, (b) absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of works reflected on Exhibit A beyond February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works beyond such date; (c) absent an affirmative representation on the record at the deposition by plaintiffs/plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of the Additional Works from October 1, 2002 to February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works up to such date; and (d) absent an affirmative representation on the record at the deposition by plaintiffs/ plaintiffs' counsel that plaintiffs do not intend in a summary judgment motion to offer evidence of infringement of the Additional Works beyond February 23, 2006, to demonstrate liability, defendants are permitted to inquire about general or unrestricted distribution of such works beyond such date.  Defendants may not otherwise make inquiry regarding these topics.

---

[2]The court notes that even though plaintiffs argue that topic 7 calls for privileged information, such topic, albeit in a narrowed form, is included in plaintiffs' proposed deposition topics.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-1093 FMC(JCx) | Date | July 27, 2007 |
| Title | Columbia Pictures Industries, Inc. v. Justin Bunnell, et al. | | |

    5      As to topics 27, 49, 74 and 96, the Ex Parte Application is granted

    6.     As to topics 18, 19, 22-25, 30, 31, 48, 50-52, 59, 61, 71, 72 and 94, the Ex Parte Application is granted.

    7.     As to topics 28, 64, 65, 68, and 79-88, the Ex Parte Application is granted. Defendants are precluded from inquiring about damages/injunctive relief as contemplated by such topics at this stage of the proceedings.

    8.     To the extent the court has granted the Ex Parte Application, plaintiffs' counsel shall have the right to instruct the deponents not to answer questions as to such topics.

    9      Nothing in this order shall be construed to reopen discovery in the related case of Bunnell v MPAA, No. 06-3206 FMC(JCx)

    IT IS SO ORDERED

                                      Initials of Deputy Clerk     kc

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

DOCKETED ON CM
JUL 19 2007
BY
197

**CIVIL MINUTES - GENERAL**

Case No.   CV 06-1093 FMC(JCx)                    Date   July 19, 2007

Title   Columbia Pictures Industries, Inc. v. Justin Bunnell, et al.

Present· The Honorable Jacqueline Chooljian, United States Magistrate Judge

| Kimberly I. Carter | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs· | Attorneys Present for Defendant. |
|---|---|
| None | None |

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

**Proceedings:**   **(In Chambers) ORDER GRANTING IN PART AND DENYING IN PART MPAA'S EX PARTE APPLICATION**

On July 18, 2007, the Motion Picture Association of America ("MPAA") filed an "Ex Parte Application for a Protective Order Regarding Defendants' Subpoena for Deposition of the MPAA, and for Attorneys' Fees and Costs" ("Ex Parte Application") and a supporting declaration of Katherine A. Fallow ("Fallow Declaration") with attached exhibits ("Fallow Exhibit __"). The Ex Parte Application primarily requests that the court limit the scope of questioning at a deposition scheduled for July 20, 2007, to those topics listed in paragraph 3 of Fallow Exhibit 12. Although defendants have not filed an opposition thereto, the Ex Parte Application reflects that defendants disagree with the MPAA's position as reflected in the Ex Parte Application. The Ex Parte Application also requests sanctions against defendants

IT IS HEREBY ORDERED:

1.      The Ex Parte Application is granted in part as set forth below, and denied without prejudice to the extent it seeks sanctions.

2.      The scope of the questioning at the July 20, 2007 deposition of the MPAA representative is limited to those topics listed in paragraph 3 of Fallow Exhibit 12, subject to any applicable privilege or any protection afforded by the work product doctrine. Counsel for MPAA and plaintiffs shall have the right to instruct the deponent not to answer questions that seek to go beyond the aforementioned topics

3.      This order is without prejudice to the right of any party to move the court for an order allowing or limiting examination on additional categories subject to the Amended Scheduling Order filed April 12, 2007.

4.      Nothing in this order shall be construed to reopen discovery in the related case of Bunnell v. MPAA, No. 06-3206 FMC(JCx)

IT IS SO ORDERED.

Initials of Deputy Clerk      kc

[ORIGINAL]

✓ Priority
∠ Send
___ Clsd
✓ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK US DISTRICT COURT

JUN 2 1 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SCANNED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

COLUMBIA PICTURES, ET AL.,                )    CV 06-01093 FMC (JCx)
                                          )
                    Plaintiffs,           )
                                          )    **ORDER DENYING DEFENDANTS'**
vs.                                       )    **MOTION FOR REVIEW AND**
                                          )    **RECONSIDERATION**
JUSTIN BUNNELL, ET AL.,                   )
                                          )
                    Defendants.           )
_____  )

This matter is before the Court on Defendants' Motion for Review and Reconsideration of Certain Rulings of the Magistrate Judge on Defendants' Motion to Compel Production of Documents Pursuant to Subpoena to the Motion Picture Association of America (MPAA), filed on April 10, 2007 (docket no. 132). The Court has read and considered the moving and opposition documents submitted in connection with this motion. The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for June 25, 2007, is hereby removed from the Court's calendar. For the reasons and in the manner set forth below, the Court hereby **DENIES** Defendants' Motion.

//

//

DOCKETED ON CM

JUN 2 2 2007

BY _____ 015

178

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are motion picture studios that own copyrights or exclusive reproduction and distribution rights to numerous movies and television programs. Defendants operate a website as part of an online computer network known as "BitTorrent," which is a network that facilitates the copying and distribution of large files between users. Plaintiffs filed a Complaint for copyright infringement on February 23, 2006, alleging that through Defendants' website, Torrentspy.com, Defendants enable and encourage Internet users to locate and download unauthorized copies of Plaintiffs' copyrighted motion pictures and television shows for free.

Magistrate Judge Chooljian has issued orders on two separate motions to compel brought by Defendants. Judge Chooljian issued the first order on February 13, 2007 (February 13 Order), granting in part and denying in part Plaintiffs Motion for Protective Order, filed on January 18, 2007, and Defendants' Motion to Compel Further Responses to Requests for Production, Set 2, filed on January 23, 2007. On March 1, 2007, Defendants' filed a motion for review and reconsideration of the February 13 Order. The Court denied Defendants' motion on April 16, 2007.

Judge Chooljian's May 15, 2007, order (May 15 Order) granted in part and denied in part Defendants' Motion to Compel Production of Documents Pursuant to Subpoena to the Motion Picture Association of America (MPAA). The MPAA subpoena, which Defendants issued on February 2, 2007, contains many requests that are the same as or similar to the requests propounded on Plaintiffs, which were at issue in Judge Chooljian's February 13 Order. On May 30, 2007, Defendants filed the instant Motion for Review and Reconsideration.

## STANDARD OF LAW

A district court will not modify or set aside a magistrate judge's order unless

1   it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).[1] The

2   clearly erroneous standard applies to the magistrate judge's factual findings while

3   the contrary to law standard applies to the magistrate judge's legal conclusions,

4   which are reviewed de novo. *See Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 422

5   (C.D. Cal. 1999); *see also Center for Biological Diversity v. Federal Highway*

6   *Admin.*, 290 F. Supp. 2d 1175, 1199-1200 (S.D. Cal. 2003) (quoting *Weeks v.*

7   *Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997), for the

8   proposition that "discretionary orders and will be overturned 'only if the district

9   court is left with the definite and firm conviction that a mistake has been made'").

10      When reviewing discovery disputes, however, "the Magistrate is afforded

11   broad discretion, which will be overruled only if abused." *Wright v. FBI*, 385 F.

12   Supp. 2d 1038, 1041 (C.D. Cal. 2005); *Geophysical Sys. Corp. v. Raytheon Co.,*

13   *Inc.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987) (Tashima, J.) (questions of relevance in

14   discovery context are reviewed under "the clearly implicit standard of abuse of

15   discretion.").

16                    **DISCUSSION**

17      Defendants contend that the Magistrate Judge's May 15 Order is clearly

18   erroneous or contrary to law in two principal respects: (1) it limits discovery to a

19   time period ending with the commencement of the litigation, and (2) it excludes

20   certain requests from the scope of discovery.

21   **I.**     **Time Period of Discovery**

22      Defendants contend that the Magistrate Judge erred in sustaining the

23   MPAA's objection that the requests at issue are overbroad and unduly

24

25      [1] In addition, the Local Rules require that a party objecting to a Magistrate

26   Judge's ruling on a nondispositive matter must "designat[e] the specific portions

27   of the ruling objected to and stat[e] the grounds for the objection." Local Rule 72-

28   2.1.

1    burdensome to the extent that they seek production of documents created after

2    the commencement of litigation.[2] The MPAA argued to Judge Chooljian that,

3    while the MPAA is not a party to the suit, its in-house counsel are serving as

4    Plaintiffs' outside counsel of record in this case, and the only post-litigation

5    documents that are likely to be responsive to the requests at issue would be

6    subject to either the attorney-client privilege or the attorney work product

7    doctrines. *See* Fed. R. Civ. P. 26(b)(3). Judge Chooljian found that the burden of

8    preparing a privilege log for the proposed discovery outweighed the likely

9    benefit, and denied Defendants' Motion to Compel with respect to documents

10   created after litigation commenced.

11        In the Court's order denying Defendants' motion for review and

12   reconsideration of the February 13 order, the Court upheld the Magistrate

13   Judge's decision to limit discovery on certain of Defendants' discovery requests

14   to this same time period. That the MPAA is not a party to this action is not a

15   material distinction in light of the fact that the MPAA and Plaintiffs use the same

16   counsel.

17        The Court is satisfied that the Magistrate Judge weighed the burden and

18   expense of an unlimited discovery period against any likely benefit, and that her

19   decision to restrict the time period was well within her discretion under Federal

20   Rule of Civil Procedure 26(b)(2) and not clearly erroneous or contrary to law.

21   **II.    Scope of Discovery**

22        **A.    Defendants' Document Requests 28 and 40**

23   Defendant objects to the Magistrate Judge's conclusion that a portion of

24

25

26

27
_____

28   [2] The requests at issue are: 1–5, 7, 9, 11, 12, 14, 20, 22, 26, 28, 32, 36, 40-42, 46, 56, 59, 60, 62-64, 66. (Mot. 2)

1  Defendants' Document Request 28,[3] and Defendants' Document Request 40[4] in

2  its entirety, were not relevant or reasonably calculated to lead to the discovery of

3  admissible evidence.

4      The Magistrate Judge's conclusion is consistent with her February 13

5  Order, which the Court affirmed in its denial of Defendants' motion for review

6  and reconsideration, and in which the Magistrate Judge rejected the argument

7  that the practices of other internet service providers that function similarly to the

8  Defendants' web site are relevant. Accordingly, the Court finds that the

9  Magistrate Judge's decision to deny a portion of Document Request 28 and

10  Document Request 40 in its entirety was not clearly erroneous or contrary to law.

11  **B.    Defendants' Document Request 46**

12      Defendant also objects to the Magistrate Judge's conclusion that

13  Defendants' Document Request 46[5] sought evidence that was not relevant or

14  reasonably calculated to lead to admissible evidence, making essentially the

15  same argument they made in arguing their motion for review and reconsideration

16  of the February 13 Order. Defendants intended to get information on "spoofs"

17  (fake files created and distributed by Plaintiffs as anti-piracy tools) and on any

18  copyrighted materials that Plaintiffs have authorized people to access or copy.

19

20

[3] Defendants' Document Request 28 sought "[a]ll documents related to or referencing

21  BItTorrent or the web site accessible at www.bittorrent.com." The Magistrate Judge granted

22  Defendants' Motion to Compel with respect to the portion of the request that sought documents related to or referencing the web site. Defendants ask the Court to review the Magistrate Judge's

23  determination with respect to the portion that seeks documents related to or referencing BitTorrent. (Decl. of Ira Rothken (Rothken Decl.), Ex. C 8.)

24

[4] Defendants' Document Request 40 sought "[a]ll documents related to or referencing

25  Google and torrent files." (Rothken Decl., Ex. C 9.)

26

[5] Defendants' Document Request 46 sought "[a]ll documents related to digital files that

27  contain in the file name or meta data all or part of the name of plaintiffs' copyrighted works that were made available or distributed via the internet by any of the Plaintiffs or those acting on their

28  behalf." (Rothken Decl., Ex. C 10.)

1   (Mot. 9.)

2       The information Defendants seek regarding Plaintiffs' authorization for

3   the use of copyrighted materials is adequately covered in Defendants' Document

4   Request 26,[6] which the Magistrate Judge did not deny.

5       To the extent that Defendants seek information on spoofs, the Magistrate

6   Judge made it clear in her February 13 Order that discovery requests would not

7   include spoofs, and the Court affirmed that ruling when it denied Defendants'

8   motion for review and reconsideration of that order. The Magistrate Judge

9   rejected Defendants' arguments on the relevance of spoofs again in the her May

10  15 Order. This Court continues to find that the Magistrate Judge's decision to

11  reject these arguments and deny the request is neither clearly erroneous nor

12  contrary to law.

13      **C.    Defendants' Document Request 66**

14      Defendants contend that the Magistrate Judge erred in concluding that

15  Defendants' Document Request 66, which sought "[a]ll documents related to use

16  of Digital Rights Management technology in files made available via Torrent

17  files or the BitTorrent Network," was not relevant. Defendants argue that

18  Plaintiffs' Digital Rights Management technology constitutes "standard technical

19  measures" under the Digital Millennium Copyright Act (DMCA),17 U.S.C.

20  §512(i)(2), and that standard technical measures must be made "available to any

21  person on reasonable and non-discriminatory terms." (Mot. 10.)

22      Because the section of the DMCA that Defendants cite is a definition

23  section meant to explain the conditions a service provider must meet in order to

24

25  ───────────────

26      [6] Defendants' Document Request 26 seeks "[a]ll documents related to or
    referencing agreements involving the distribution of copyrighted works of any

27  plaintiff over the Internet through the use of any torrent file." (Rothken Decl., Ex
    C 8.)

28

6

be eligible for the limitations on liability established by the DMCA, and is not
meant as a justification for discovery, the Court finds that the Magistrate Judge's
ruling on this request is neither clearly erroneous nor contrary to law.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion
For Review and Reconsideration (docket no. 132).


**IT IS SO ORDERED.**

Dated: June _21_ , 2007


_Florence Marie Cooper_

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT



FILED
CLERK, U.S. DISTRICT COURT

MAY 29 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA PICTURES INDUSTRIES, et al.,<br><br>         Plaintiff,<br><br>         v.<br><br>JUSTIN BUNNELL, et al.,<br><br>         Defendants. | ) Case No. CV 06-1093 FMC(JCx)<br>)<br>) ORDER (1) GRANTING IN PART<br>) AND DENYING IN PART<br>) PLAINTIFFS' MOTION TO<br>) REQUIRE DEFENDANTS TO<br>) PRESERVE AND PRODUCE<br>) SERVER LOG DATA AND FOR<br>) EVIDENTIARY SANCTIONS; AND<br>) (2) DENYING DEFENDANTS'<br>) REQUEST FOR ATTORNEYS' FEES<br>) AND COSTS<br>)<br>) [UNDER SEAL] |

## I.    SUMMARY

Pending before the court are (1) plaintiffs' motion to require defendants to preserve and produce certain electronic data, and for evidentiary sanctions, based upon defendants' failure to date to preserve and produce such data; and (2) defendants' request for attorneys' fees and costs.

Based upon the court's consideration of the extensive arguments and evidence presented, the court's assessment of the credibility of the declarants and witnesses who testified at the evidentiary hearing in this matter, and the applicable law, the court finds: (1) the data in issue is extremely relevant and within the



DOCKETED ON CM

JUN 20 2007

BY



scope of information sought by plaintiffs' discovery requests; (2) the data in issue which was formerly temporarily stored in defendants' website's random access memory ("RAM") constituted "electronically stored information" and was within the possession, custody and control of defendants; (3) the data in issue which is currently routed to a third party entity under contract to defendants and received in said entity's RAM, constitutes "electronically stored information," and is within defendants' possession, custody or control by virtue of defendants' ability to manipulate at will how the data in issue is routed;[1] (4) defendants have failed to demonstrate that the preservation and production of such data is unduly burdensome, or that the other reasons they articulate justify the ongoing failure to preserve and produce such data; (5) defendants must preserve the pertinent data within their possession, custody or control and produce any such data in a manner which masks the Internet Protocol addresses ("IP addresses") of the computers used by those accessing defendants' website; (6) sanctions against defendants for spoliation of evidence are not appropriate in light of the lack of precedent for requiring the retention of data in RAM, the lack of a preservation request specifically directed to data present only in RAM, and the fact that defendants' failure to retain such data did not violate any preservation order; and (7) awarding attorneys' fees and costs are not appropriate.

## II.    PROCEDURAL HISTORY

On February 23, 2006, plaintiffs filed a complaint against defendants for copyright infringement.  Plaintiffs allege, inter alia, that defendants knowingly

---

[1]It may also be the case that the data in issue is within defendants' possession, custody and control by virtue of defendants' contractual relationship with the third party entity.  In that circumstance, defendants would, at a minimum, have an obligation to make reasonable inquiry of the third party entity for the data in issue.  See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006).

1 enable, encourage, induce, and profit from massive online piracy of plaintiffs'
2 copyrighted works through the operation of their internet website. The complaint
3 is predicated on theories of contributory infringement, secondary infringement,
4 and inducement. Defendants filed an Answer on May 24, 2006.

5        On March 12, 2007, plaintiffs filed a "Notice of Motion and Local Rule
6 37-1 Joint Stipulation Regarding Plaintiffs' Motion for an Order (1) Requiring
7 Defendants to Preserve and Produce Certain Server Log Data, and (2) for
8 Evidentiary Sanctions" ("Plaintiffs' Motion"), a declaration of plaintiffs' counsel
9 Duane C. Pozza ("Pozza I Decl."), a declaration of plaintiffs' expert Ellis
10 Horowitz ("Horowitz I Decl."), a declaration of defendants' counsel Ira P.
11 Rothken, and a declaration of defendant Wes Parker ("Parker I Decl."), as well as
12 accompanying exhibits to each declaration. Plaintiffs' Motion requests that the
13 court issue an order requiring defendants to preserve and produce certain data
14 responsive to plaintiffs' First Request for Production of Documents, Request Nos.
15 10 and 12.[2] Specifically, plaintiffs seek the preservation and production of the
16 following data: (a) the IP addresses of users of defendants' website who request
17 "dot-torrent" files; (b) the requests for "dot-torrent files"; and (c) the dates and
18 ///
19 ///
20
21

22     [2]Request No. 10 seeks "all documents that identify the dot-torrent files that
have been made available by, searched for, or downloaded by users of TorrentSpy,
23 including documents that identify the users who have made available, searched
24 for, or downloaded such dot-torrent files." Request No. 12 seeks "all documents,
including server logs, databases of a similar nature, or reports derived from such
25 logs or databases that [defendants] maintain, have ever maintained, or have
26 available that record the activities of TorrentSpy or its users, including documents
concerning . . . Electronic communications of any type between TorrentSpy and
27 [users]; . . . Logs of user activities; and . . . Logs or records of dot-torrent files
28 made available, uploaded, searched for, or downloaded on TorrentSpy."

1  times of such requests (collectively "Server Log Data").[3]  Plaintiffs' Motion also

2  seeks evidentiary sanctions against defendants for their alleged spoliation of the

3  Server Log Data.  Defendants request that the court require plaintiffs to pay

4  reasonable expenses incurred in opposing Plaintiffs' Motion, including attorneys'

5  fees, pursuant to F.R. Civ. P. 37(a)(4)(B).

6      On March 20, 2007, plaintiffs filed a supplemental memorandum in support

7  of Plaintiffs' Motion ("Plaintiffs' Supp. Memo I"), a supplemental declaration of

8  Duane C. Pozza, and accompanying exhibits.  On the same date, defendants filed a

9  supplemental memorandum in opposition to Plaintiffs' Motion ("Defendants'

10  Supp. Memo I") and a supplemental declaration of Wes Parker ("Parker II Decl.").

11      On March 21, 2007, the court directed the parties to file additional items.

12  On March 27, 2007, plaintiffs filed a supplemental brief ("Plaintiffs' Supp. Memo

13  II") and another declaration of Ellis Horowitz ("Horowitz II Decl."), and

14  defendants filed a supplemental brief ("Defendants' Supp. Memo II"), a joint

15  declaration of Justin Bunnell and Wes Parker ("Jt. Bunnell/Parker Decl."), and

16  accompanying exhibits.  On March 30, 2007, in response to the court's request

17  that the parties submit statements as to whether certain declarants should attend

18  and be available to testify at the hearing on this matter, the parties each submitted

19  brief additional filings.

20      On April 3, 2007, the court held an evidentiary hearing at which declarants

21  Ellis Horowitz, Wesley Parker, and Justin Bunnell testified, and the court heard

22

23  _____

24      [3]As the Server Log Data is temporarily stored in RAM and constitutes a
   document that identifies dot-torrent files that have, at a minimum, been searched
25  for by users of TorrentSpy, it is encompassed by Document Request No. 10.
   Similarly, as the Server Log Data constitutes an available document concerning
26  electronic communications between TorrentSpy and users and a record of dot-
27  torrent files made available or searched for on TorrentSpy, it is also encompassed
28  by Document Request No. 12.

4

1 │ the arguments of counsel.[4]  The court took Plaintiffs' Motion under submission at

2 │ the conclusion of the hearing.[5]

3 │ **III.    FACTS**[6]

4 │       Defendants operate a website known as "TorrentSpy" which offers dot-

5 │ torrent files for download by users. (Horowitz I Decl. ¶ 5).  The dot-torrent files

6 │ offered on defendants' website do not contain actual copies of a full-length

7 │ content item. (Horowitz I Decl. ¶ 6).  Rather, they contain data used by a

8 │ "BitTorrent client" on a user's computer to access the content in issue.

9 │ (Horowitz I Decl. ¶ 6).

10 │       As certain aspects of the technical operation of the website are relevant to

11 │ the resolution of this matter, the court first sets forth its understanding and

12 │ findings, based upon the evidence presented, of the operation of the relevant

13 │ aspects of:  (i) websites in general; (ii) defendants' website prior to the filing of

14 │ Plaintiffs' Motion; and (iii) defendants' website proximate or subsequent to the

15 │ filing of Plaintiffs' Motion, as the record reflects that the method of operation

16 │ changed during the pendency of this action.

---

19 │     [4]"RT" refers to the Reporter's Transcript of the April 3, 2007 hearing.

20 │     [5]Subsequent to the hearing, plaintiffs and defendants submitted proposed
21 │ findings regarding Plaintiffs' Motion for the court's consideration.

22 │     [6]The court finds plaintiffs' expert Ellis Horowitz to be the most credible of
23 │ the three technical declarants/witnesses (i.e., Horowitz, Parker, and Bunnell).  To
24 │ the extent the testimony and statements of Parker and Bunnell conflict with those
   │ of Horowitz, the court accepts the testimony and statements of Horowitz.  The
25 │ court finds that defendant Parker's testimony is credible in part and gives it some
26 │ weight.  However, as discussed below, the court finds that portions of Parker's
27 │ declarations and testimony are unsupported and not credible.  The court finds that
   │ defendant Bunnell's testimony is largely unsupported and lacks credibility.

## A.    Operation of Websites in General

In general, when a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or the file. (Horowitz I Decl. ¶ 11; Horowitz II Decl. ¶ 3). The request includes the IP address of the user's computer, and the name of the requested page or file, among other things.[7] (Horowitz I Decl. ¶ 11; Horowitz II Decl. ¶ 3). Such information is copied into and stored in RAM. (Horowitz II Decl. ¶ 4). RAM is a form of temporary storage that every computer uses to process data. (Horowitz II Decl. ¶ 4). Every user request for a page or file is stored by the web server program in RAM in this fashion. (Horowitz II Decl. ¶ 4). The web server interprets and processes that data, while it is stored in RAM, in order to respond to user requests. (Horowitz II Decl. ¶ 4). The web server then satisfies the request by sending the requested file to the user. (Horowitz II Decl. ¶ 3). If the website's logging function is enabled, the web server copies the request into a log file, as well as the fact that the requested file was delivered. (Horowitz I Decl. ¶ 12; Horowitz II Decl. ¶ 3). If the logging function is not enabled, the request is not retained. (Horowitz I Decl. ¶ 12; Horowitz II Decl. ¶ 3). While logging such information can be useful to a website operator in many respects, and may be a usual practice

///

///

---

[7]An IP address is a standard way of identifying a computer that is connected to the Internet. United States v. Heckenkamp, 482 F.3d 1142, 1144 (9th Cir. 2007). With an IP address, a party could identify the Internet Service Provider ("ISP") providing internet service to the user of the computer corresponding to such IP address. See In Re Charter Communications, Inc., 393 F.3d 771, 774 (8th Cir. 2005). Only the ISP, however, could link the particular IP address to an individual subscriber. Id. As in the case of a subscriber to a particular telephone number, the identity of the subscriber to an IP address is not necessarily indicative of the person using the service at a given time.

1   of many website operators, such logging is not essential to the functionality of a

2   website.[8]  (Horowitz I Decl. ¶ 13; RT 41-42).

3        **B.**    **Operation of Defendants' Website Prior to the Filing of Plaintiffs'**

4            **Motion**

5        Defendants' web server is located in the Netherlands.  (Jt. Bunnell/Parker

6   Decl. ¶ 6).  A factor in the decision to use a server in the Netherlands was to attract

7   business from those individuals who did not wish their identities to be known, as

8   defendants believe the Netherlands to have stricter privacy laws governing such

9   information. (RT 122-23).  Defendants use the web server Microsoft Internet

10   Information Services (IIS) 6.0 to operate their website.  (Horowitz I Decl. ¶ 9

11   Horowitz II Decl. ¶ 2; Jt. Bunnell/Parker Decl. ¶ 5).  The IIS web server program

12   contains logging functionality – meaning that it has the capacity, if the logging

13   function is not disabled, to retain the Server Log Data.  (Horowitz I Decl. ¶ 10;

14   Horowitz II Decl. ¶ 2; Jt. Bunnell/Parker Decl. ¶ 5).[9]

15        Since its inception, defendants' website's logging function has not been

16   enabled to retain the Server Log Data.  (RT 99; Parker I Decl. ¶ 3).  Such logging

17   is not necessary to, or part of defendants' business operations.  (Parker I Decl.

18   ¶ 3).  The decision not to enable the logging function was based, at least in part, on

19   the belief that the failure to log such information would make the site more

20   ///

21   ///

22   ///

23   ————————————

24      [8]As a general matter, logging data can be useful for maintenance and upkeep

25   of a site, to identify and correct technical problems with the site, to examine the
website traffic patterns and evaluate the performance of the site, and to audit and

26   evaluate data related to advertising on the site.  (Horowitz I Decl. ¶ 3).

27      [9]It is the default when IIS is installed, for logging to be on.  (RT 144;

28   Horowitz I Decl. ¶ 10).

1  attractive to users who did not want their identities known for whatever reason.[10]

2  (RT 122).  Although defendants did not affirmatively retain the Server Log Data

3  through logging or other means, the data went through and was temporarily stored

4  in the RAM of defendants' website server for approximately six hours.  (RT 47-

5  48, 49-50, 54-55, 76; Jt. Bunnell/Parker Decl. ¶ 5).

6      C.    **Operation of Defendants' Website Proximate or Subsequent to**

7          **the Filing of Plaintiffs' Motion**

8        At some point proximate or subsequent to the filing of Plaintiffs' Motion,

9  defendants altered the method through which the website operates.  (RT 54).

10  Defendants' server no longer receives all, or all facets of the Server Log Data, or

11  at least not in the same way.[11]  (RT 47, 56, 111).  Instead, defendants now contract

12

13  _____

14      [10]Defendants' privacy policy, which is posted on defendants' website,

15  advises users, inter alia, that the site "will not collect any personal information
    about you [the user] except when you [the user] specifically and knowingly

16  provide such information."  (Parker I Decl., Ex. B).  The policy further reflects

17  that the site reserves the right at any time to modify, alter or update the policy, but
    that if the site does so, it will post the changes so that users are always aware of

18  what information the site collects, how the information is used, and under what

19  circumstances the information is disclosed. (Parker I Decl., Ex. B).  Defendants
    have presented no evidence as to whether or how the term "personal information"

20  is defined in the privacy policy.  As an IP address identifies a computer, rather

21  than a specific user of a computer, it is not clear that IP addresses, let alone the

22  other components of the Server Log Data in issue, are encompassed by the term
    "personal information" in defendants' website's privacy policy.  See supra note 7.

23

24      [11]Prior to the filing of Plaintiffs' Motion, defendants' website provided links
    to third-party sites that have torrent files on their sites, as well as links to torrent

25  files on the cache of defendants' website.  (RT 111).  Once defendants made the

26  recent change in their method of operation, defendants' website no longer does
    such caching.  (RT 111).  Instead, a third party under contract to defendants

27  performs that function.  (RT 111).  However, when a user runs a search on

28                                          (continued...)

1    with a third party entity, "Panther," which essentially serves as a middleman in the

2    process. (RT 98). Panther has multiple servers around the world, including

3    approximately 25 servers in the United States. (RT 48, 55). Requests from users

4    who visit defendants' website for a dot-torrent file on defendants' server are now

5    routed from a location not hosted on defendants' server to a Panther server

6    geographically proximate to the users making the requests. (RT 53, 56-57).

7    Panther's servers in the United States serve United States users. (RT 124). In

8    cases involving an initial request for a specific dot-torrent file, defendants' website

9    now receives such request **from Panther**. (RT 57). Defendants' website sends

10   the requested dot-torrent file to Panther. (RT 57). Panther then sends the file to

11   the original requesting party. (RT 57). However, once a particular dot-torrent file

12   has been requested from defendants' website by Panther, Panther then caches it

13   and can provide it in response to subsequent requests for the same dot-torrent file

14   without the need to obtain it from defendants' server. (RT 51-53, 57-58). In the

15   latter circumstance, defendants' server no longer receives data reflecting a request

16   to download the particular dot-torrent file. (RT 58). Thus, Panther now receives

17   the Server Log Data in issue in its RAM. (RT 98). Panther, however, does not

18   retain logs of such information.[12] (RT 75). Defendant Parker testified that

19

20   _____

21       [11](...continued)

22   defendants' website, every search is a request on defendants' server. (RT 126).
     Similarly, when a user gets a list of results back, clicks one of those links, and gets

23   taken to a detailed dot-torrent page hosted by defendants' server, all of those pages

24   – on which the names of dot-torrent files are identified – are hosted on
     defendants' server. (RT 127).

25

26       [12]Defendant Parker testified that he was advised by a Panther representative

27   that Panther does not have the capacity for full-server logging on all of its servers.
     (RT 75). Although plaintiffs argue that Panther can selectively log certain data,

28                                                                      (continued...)

9

1    defendants switched to Panther because it allows for significantly faster

2    processing and delivery of content. (RT 102-03). Defendants deny that the

3    decision to contract with Panther was motivated by a desire to avoid being in

4    possession of Server Log Data or to bypass a possible court order. (RT 50, 103,

5    123).[13]

6    ## D.    Plaintiffs' Preservation Request

7    On May 15, 2006, defendants sent a notice to plaintiffs' counsel formally

8    reminding counsel and plaintiffs of their obligation to preserve all potentially

9    discoverable evidence in their possession, custody or control related to the

10   litigation, including all logs for the TorrentSpy website, and records of all

11   communications between defendants and users of the website, including instant -

12   messaging and other chat logs. (Pozza I Decl., Ex. H). This notice did not

13   specifically request that defendants preserve Server Log Data temporarily stored

14   only in RAM. Plaintiffs do not point to any other preservation request which

15   specifically addresses data temporarily stored only in RAM. The court further

16   notes that prior to the filing of Plaintiffs' Motion, the docket does not reflect that

17   plaintiffs sought a preservation order.

18   ///

19   ///

20

21

22   [12](...continued)
     there is no evidence in the record as to whether Panther specifically has the

23   capacity to log the Server Log Data in issue. (RT 177).

24
     [13]In light of the change in the method of operation, and the timing thereof,

25   as well as the other evidence in the record, the court finds that defendants have the

26   ability to manipulate at will how the Server Log Data is routed. Indeed,
     defendants represent that they could disengage and resume the functions currently

27   performed by Panther if directed to log the Server Log Data in issue. (RT 72,

28   103-04).

**IV.    DISCUSSION**

    **A.    The Server Log Data in Issue Is Relevant**

    Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  F.R. Civ. P. 26(b)(1).  Plaintiffs argue that the Server Log Data is relevant to numerous claims and defenses, including whether defendants' users have directly infringed plaintiffs' copyrighted works, and to what extent defendants' website is used for purposes of copyright infringement.  (Plaintiffs' Motion at 1, 15-20).  The court agrees.  This case is predicated on theories of vicarious infringement, contributory infringement, and inducement.  (Complaint ¶¶ 34-36).  Primary infringement is a necessary predicate to such claims.  Perfect 10, Inc. v. Amazon.com, Inc., 2007 WL 1428632, *15 (9th Cir. May 16, 2007) (citing A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2) (9th Cir. 2001)).  Defendants contest primary infringement.  (Answer ¶ 33).  Indeed, defendant Parker's testimony suggests his view that without logs, a case cannot be made against a website alleged to have engaged in secondary/ contributory infringement because such logs are "essential" to finding direct infringers.  (RT 129-30).  There can be no serious dispute that the Server Log Data in issue is extremely relevant and may be key to the instant action.[14]

---

    [14]Defendants contend that plaintiffs' request for Server Log Data is overbroad because the vast majority of the website's users are located overseas such that their conduct cannot constitute copyright infringement.  (RT 115-20, 125-26).  The court rejects this contention.  First, defendants' evidence regarding the volume of overseas traffic lacks foundation and is speculative at best.  Second, even if defendants are correct regarding the asserted volume of overseas traffic, the court still finds such data to be relevant or reasonably calculated to lead to the discovery of relevant admissible evidence.  Having said that, if (1) it is technically feasible; (2) defendants could reliably demonstrate that (i) Panther's United States

(continued...)